

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ANTON/BAUER, INC.
    Plaintiff,

v.

    Civil Action No.
    3:01 CV 577 (CFD)

PAG, LTD.,
    Defendant

## RULING ON MOTION FOR PRELIMINARY INJUNCTION

The plaintiff, Anton/Bauer, Inc. ("Anton/Bauer"), brings this action pursuant to 35 U.S.C. §§ 271(b) and (c) alleging infringement of U.S. Patent No. 4,810,204 ("'204 patent"), which discloses a battery pack connection "in which a battery pack can be quickly and efficiently replaced upon discharge of the batteries." U.S. Patent No. 4,810, 204 (issued March 7, 1989). Anton/Bauer claims that the defendant, PAG, Ltd. ("PAG") has induced or contributed to infringement of the '204 patent by offering the PAG L75 battery pack for sale. Anton/Bauer alleges that end-users of PAG's L75 battery pack infringe the '204 patent when they use PAG's battery pack together with Anton/Bauer products designed to employ the connection described in the '204 patent.

Anton/Bauer has moved for a preliminary injunction [Doc. #3]. PAG opposes Anton/Bauer's motion for preliminary injunction, arguing that consumers who use PAG's L75 battery pack with Anton/Bauer products designed to employ the connection described in the '204 patent are performing a permissible repair of a patented combination.

I.    Findings of Fact

The Court finds the following facts in connection with Anton/Bauer's preliminary injunction:

1. PAG is a United Kingdom corporation based in London, England.

2. Anton/Bauer is a Delaware corporation with its principal place of business in Connecticut.

3. Anton/Bauer manufactures battery packs and connecting components used to power portable, professional broadcast video cameras.

4. The Anton/Bauer battery packs and connecting components relevant to this case incorporate a releasable connection as shown and claimed in the '204 patent, owned by Anton/Bauer and issued on March 7, 1989.

5. The connection claimed in the '204 patent includes (1) a flat "female plate" having a plurality of keyhole slots and at least one elongated electrical terminal; (2) a flat "male plate" including a plurality of shaped headed projections adapted to be received in the keyhole slots to lock the "female" and "male" plates together, including at least one elongated electrical terminal which mates with the electrical terminal on the "female plate" when the plates are locked together; and (3) a "releasable locking means" on the "female plate" for engaging at least one of the headed projections for locking and preventing movement between the plates once they are assembled in mating relation.

6. The "female plate" component is normally affixed to the camera or other electrically operated device, such as a battery charger.

7. The "male plate" is usually a portion of the housing of the battery pack within which an electrical battery or AC/DC power source is contained. The electrical battery or AC/DC source powers the camera through the mating terminal connection.

8. Anton/Bauer manufactures and sells both "female plates" and battery packs whose

-2-

-3-

casing includes "male plates." Anton/Bauer also manufactures and sells battery chargers for recharging its battery packs.

9. Anton/Bauer holds 100 percent of the U.S. market for "female plates" that comprise the "releaseable locking means on said female plate" required by claims 9 and 11 of the '204 patent.

10. Anton/Bauer's "female plates" are sold to members of the portable television video camera industry and are attached to certain commercial television portable video cameras manufactured by Sony, Hitachi, Panasonic, Ikegami, Philips, JVC, and others. Current sales of the "female plates" generally occur in two ways. The first instance occurs when a camera manufacturer purchases an Anton/Bauer product containing a "female plate" directly from Anton/Bauer. The camera manufacturer incorporates the "female plate" into a camera and then sells the camera, with the "female plate" attached, to the public. The second instance occurs when Anton/Bauer sells a "female plate" directly to an end-user as an after-market product.

11. PAG introduced its PAG L75 battery pack in the United States in April 2000.

12. The housing of the PAG L75 battery pack contains a "male plate" which allows the battery pack to be fitted to Anton/Bauer's products containing a "female plate" with a latch as shown in Figures 14-19 of the '204 patent.

13. PAG does not make, use, or sell any "female plate" in the United States with a "releasable locking means on said female plate."

14. PAG's L75 battery pack can also be used with older "female plate" designs such as the design disclosed in Anton/Bauer's now expired patent, U.S. Patent No. 4,218,107 ("'107 patent").

15. The expired '107 patent discloses all aspects of the male-female battery pack connection claimed in the '204 patent except for the components of the "releasable locking mechanism on said female plate" specified in claims 9 and 11 of the '204 patent.

16. There are few, if any, "female plates" in existence which incorporate the design disclosed in the expired '107 patent.

17. PAG advertises that its PAG L75 battery pack can be used with any Anton/Bauer mount, i.e. Anton/Bauer product containing a "female plate."

18. PAG sought the opinion of a patent counsel regarding the PAG L75 battery pack design and began corresponding with Anton/Bauer about the '204 patent in October 2000.

II.  Conclusions of Law

Injunctive relief in patent cases is authorized by 35 U.S.C. § 283.[1] Generally, the law of the Federal Circuit, rather than the law of the regional circuits, provides the standards relevant to the issuance of injunctions in patent cases. See Hybritech, Inc. v. Abbott Lab., 849 F.2d 1446, 1451 & n.12 (Fed. Cir. 1988); Brainard v. Custom Chrome, Inc., 872 F. Supp. 39, 41 (W.D.N.Y. 1994); Flo-Con Systems, Inc. v. Leco Corp., 845 F. Supp. 1576, 1578-79 & n.2 (S.D. Ga. 1993).

The Federal Circuit requires that four factors be considered by a district court when deciding whether a patent owner is entitled to a preliminary injunction. See Reebok Int'l., Ltd. v. J. Baker, Inc., 32 F.3d 1552, 1555 (Fed. Cir. 1994). Each factor must be considered in context with the other factors and the conduct which is sought to be enjoined. The four factors are:

---

[1] 35 U.S.C. § 283 provides:
> The several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable.

-4-

(1) whether the movant has sufficiently established a reasonable likelihood of success on the merits; (2) whether the movant would suffer irreparable harm if the injunction were not granted; (3) whether the balance of hardships tips in the movant's favor; and (4) what impact, if any, will the injunction have on the public interest.

Intel Corp. v. ULSI Sys. Tech. Inc., 995 F.2d 1566, 1568 (Fed. Cir. 1993), cert. denied, 114 S. Ct. 923 (1994); Smith Int'l. Inc. v. Hughes Tool Co., 718 F.2d 1573 (Fed. Cir. 1983), cert. denied, 464 U.S. 996 (1983).

### A. Substantial Likelihood of Success on the Merits

A patent owner can show a reasonable likelihood of success on the merits if it can demonstrate the patent in question is valid, enforceable, and infringed. See Nutrition 21 v. U.S., 930 F.2d 867, 869-70 (Fed. Cir. 1991). A presumption of validity attaches to all patents. See 35 U.S.C. § 282. Further, if the alleged infringer does not challenge the patent's validity with evidence, then the patent owner need do nothing to establish its rights under the patent. See New England Braiding Co. v. A.W. Chesterton Co., 970 F.2d 878, 882-83 (Fed. Cir. 1992).

#### 1. Validity

As PAG has offered no evidence challenging the validity of the '204 patent, in order to establish the validity of the '204 patent, Anton/Bauer must show only that it owns the patent and that the patent has not expired. See New England Braiding Co., 970 F.2d at 882-83. The parties do not appear to dispute that Anton/Bauer owns the '204 patent and that the patent does not expire until March 7, 2009. Thus, the Court assumes both proper ownership and non-expiration of the patent.

#### 2. Infringement

It appears that the PAG L75 battery pack can be used in two in two ways: (1) it can be

-5-

-6-

used in combination with "female plate" products based on Anton/Bauer's now-expired '107 patent; and (2) it can be used in combination with Anton/Bauer's products containing "female plates" and locking mechanisms as described in the '204 patent. Anton/Bauer challenges only the second use for the PAG L75 battery pack. Moreover, as the PAG L75 battery pack does not contain a "female plate," Anton/Bauer does not argue that it directly infringes the '204 patent, but contends that end-users of the PAG L75 battery pack and Anton/Bauer products containing "female plates" and locking mechanisms as described in the '204 patent would infringe claims 9 and 11 by forming the combination in Figures 14 to 19 of the patent. Thus, Anton/Bauer argues that the PAG L75 battery pack contributes to or induces infringement of the '204 patent.

35 U.S.C. § 271 provides, in relevant part:

(a) Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.
(b) Whoever actively induces infringement of a patent shall be liable as an infringer.
(c) Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

35 U.S.C. § 271. Claims of contributory or induced infringement require a showing of direct infringement by some third party. Aro Mfg. Co. v. Convertible Top Replacement Co., 365 U.S. 336, 340-46 (1981); Met-Coil Systems Corp. v. Corners Unlimited, Inc., 803 F.2d 684, 687 (Fed. Cir. 1986). PAG contends that Anton/Bauer has failed to offer evidence of direct infringement of the '204 patent by any party, because (1) end-users of Anton/Bauer products containing a "female

-6-

-7-

plate" may replace or repair parts of the '204 patented combination under the doctrine of permissible repair; (2) end-users of Anton/Bauer products containing a "female plate" have an implied license to use "male plates" other than those made by the patentee; (3) the PAG L75 battery pack is a staple article of commerce; and (4) PAG lacks the requisite knowledge or intent for such infringement.[2]

        a.   *Permissible Repair*

The principle of permissible repair, originating in the principle of exhaustion of the patent after its first sale, permits one lawfully using a patented item to preserve and maintain the item in a usable, functional status by repairing the item, including replacing its component parts, without infringing the patented item. 6 D. Chisum, *Patents*, § 16.03[3] (2001); Wilson v. Simpson, 50 U.S. (9 How.) 109 (1850) (distinguishing the right of a purchaser of a patented planing machine to replace the machine's cutting-knives when they became worn or spent, from the patentee's sole right to make or renew the entire machine). As noted by the Federal Circuit, "[t]he Supreme Court has taken an expansive view of the conduct that constitutes permissible repair of a patented combination of unpatented elements." Sage Products, Inc. v. Devon Industries, Inc., 45 F.3d

---

[2] Generally, there is direct infringement if any one of a patent's claims covers the alleged infringer's product or process. See 35 U.S.C. §§ 271(g), 287(b). All elements of that claim need to be met in order for infringement to be found. See Netword, LLC v. Centraal Corp., 242 F.3d 1347, 1353-54 (Fed. Cir. 2001). Here, it appears that PAG's L75 battery pack contains a "male plate" that is identical to an Anton/Bauer "male plate" used to employ the '204 patented connection, except for a connector hole which receives the third plunger-pin of an Anton/Bauer "female plate" used to employ the '204 patented connection. Thus, PAG alleges, its L75 battery packs will not connect with the third plunger-pin of Anton/Bauer's products employing "female plates" and as a result, the L75 battery pack will not communicate battery charge level to the products employing "female plates." PAG does raise the issue of the significance of this difference to a finding of direct infringement by an end-user of the L75 battery pack with Anton/Bauer "female plates" used to employ the '204 patented connection. Accordingly, this opinion does not reach that issue.

-7-

-8-

1575, 1578 (Fed. Cir. 1995). In Aro Manufacturing, the Supreme Court held that the replacement of a worn fabric top constituted permissible repair of a patented combination of a fabric automobile convertible top and an associated metal support structure. 365 U.S. 336 (1981). The Court set forth the standard governing the replacement of unpatented parts of a patented article:

> [R]econstruction of a patented entity, comprised of unpatented elements, is limited to such a true reconstruction of the entity as to "in fact make a new article," after the entity, viewed as a whole, has become spent.... Mere replacement of individual unpatented parts, one at a time, whether of the same part repeatedly or different parts successively, is no more than the lawful right of the owner to repair his property.

Aro, 365 U.S. at 346 (citations omitted).

"[T]here is no bright-line test for determining whether reconstruction or repair has occurred." Sandvik Aktiebolag v. E.J. Co., 121 F.3d 669, 674 (Fed. Cir. 1997). While the Supreme Court has cautioned against reliance on any specific set of "factors" in distinguishing permissible from prohibited activities, see Jazz Photo Corp. v. Int'l Trade Comm'n, 264 F.3d 1094, 1106 (Fed. Cir. 2001), a court may consider: "the nature of the actions by the defendant, the nature of the device and how it is designed (namely, whether one of the components of the patented combination has a shorter useful life than the whole), whether a market has developed to manufacture or service the part at issue and objective evidence of the intent of the patentee." Sandvik Aktiebolag, 121 F.3d at 673. The ultimate determination of repair or reconstruction is based upon "the totality of the circumstances." Id.

To support its argument that the use of a PAG L75 battery pack with Anton/Bauer's products containing a "female plate" as described in the '204 patent falls within the permissible repair doctrine, PAG points to (1) the nature of the PAG L75 battery pack as a replacement

-8-

-9-

battery pack, (2) the short life-span of battery packs, and (3) the industry marketplace for replacement battery packs. Anton/Bauer, however, maintains that the use of a PAG L75 battery pack in combination with Anton/Bauer's products containing a "female plate" as described in the '204 patent is a complete reconstruction of the '204 patented combination.

The Court concludes, based upon the totality of the circumstances, that the use of a PAG L75 battery pack with an Anton/Bauer product containing a "female plate" described in the '204 patent is not "permissible repair" of the connection disclosed in the '204 patent. Specifically, the Court finds that the nature and design of the '204 patented combination indicates that replacing a "female" or "male plate" of the '204 patented combination amounts to reconstruction of that combination.

The facts here, while very similar in some respects to those in Everpure, Inc. v. Cuno, Inc., 705 F. Supp. 725 (1988), aff'd 875 F.2d 300 (Fed. Cir. 1989), are sufficiently different to conclude that the connection of a "male plate" contained on a PAG L75 battery pack and an Anton/Bauer "female plate" does not amount to permissible repair of the '204 patented combination. More recent Federal Circuit decisions such as Jazz Photo, and Supreme Court decisions such as Aro Manufacturing, do not compel a different conclusion. Everpure involved the replacement of a filtration cartridge in a patented water filtration system for commercial liquid vending machines and coffee makers. The patent for the water filtration system, which included a fixed head which receives the water and an interlocking, removable and replaceable filter cartridge through which the water flowed from the head, like the '204 patent:

> covers the entire unit, or combination of elements, and the totality of the patent claims. Aro I, 365 U.S. at 344, 81 S.Ct. at 603. Neither the head nor the cartridge, apart from their configuration as designed to permit their interconnection, are claimed to be

-9-

-10-

> separately protected by the '171 patent. Rather, the patent covers the combination of the
> two elements. The stated purpose of the patent, the description of the components and
> their interrelationship, the asserted unique features and advantages of the invention's
> function, in addition to the claims, make the patent one of totality. Indeed, the drawings
> display only the function, the uniqueness, the configurations of the head and the cartridge
> as they achieve interconnection. Thus, the patent protects the interconnection of the head
> and the cartridge, the configurations of the head and the cartridge as they achieve the
> interconnection and the features produced in relation to the combined unit's function by
> the particular interconnection.

Everpure, 705 F. Supp. at 729. Thus, the "combination" nature of the '204 patent is similar to the patent at issue in Everpure. In both Everpure and the instant case, the particular elements of the patented system are not themselves separately patented. As well, the particular way the elements combine to produce the whole is covered by the patent.

However, in the instant case, the particular way the male and female plates combine *is the invention*. Unlike in the water filtration system in Everpure or the convertible top in Aro, the '204 patented combination is more than the total sum of separate, replaceable parts. It is a mechanical and electrical connection—a locking mechanism containing elements that permit quick and easy separation and rejoining. Perhaps an apt analogy is to the advance in technology brought about through the invention of the nut and bolt combination which provided a locking combination not present with the use of simple nails. What is novel about a nut and bolt combination is not the end nut and bolt product, but the capability of the nut and bolt to connect in a particular way without disconnecting and thus providing a fixed connection. The same is true with regard to the '204 patented combination. The particular locking mechanism is the invention. While PAG characterizes the '204 patented combination as a device composed of a battery pack and camera mount, the '204 patent discloses a broader combination. The invention is the interconnection between "male" and "female" plates, regardless of whether a battery is

-10-

-11-

attached to the "male plate" or a camera is attached to the "female plate." In that regard, while PAG has pointed to the need to replace the battery cells that are often attached to "male plates", PAG has not presented evidence of "the need, desire or practice of repairing an element of the *connection combination*." Pl's Mem. Law Conc. Comb'n Patents at 7.

Even assuming the '204 patented combination–the male and female plates–has the capability of becoming "spent," the Court concludes that the parts of the '204 patented combination do not become spent before the unit as a whole. In contrast, in Everpure, though the "neck" or casing of Everpure's cartridge never needed replacement, the filter contained inside did need replacement. Accordingly, the court held there that the replacement of the filtration cartridges by end-users with the defendant's filtration cartridges (using the defendant's adapter) did not rise to the level of reconstruction in light of, inter alia, the life of the cartridge as compared to the filtration head, the easy assembly and disassembly of the filtration unit, the instruction to replace worn-out filtration cartridges, and the need to replace worn-out filtration cartridges.

Here, Anton/Bauer has presented sufficient evidence to show that the elements of the connection combination never need replacement. Anton/Bauer has presented evidence that its "male plates" do not have a shorter useful life than the patented combination as a whole, but rather, have the same service life as the "female plates." See De Sorbo Aff. at 1-3. Accordingly, neither plate becomes spent before the patented combination as a whole. Compare Sandvik Aktiebolag, 121 F.3d at 674 (noting that "[t]he drill tip was not manufactured to be a replaceable part" and "was not intended or expected to have a life of temporary duration in comparison to the drill shank"), with Aro, 365 U.S. at 337-38 (noting that the fabric had a much shorter expected

-11-

life than the convertible car top); Porter v. Farmers Supply Serv., Inc., 790 F.2d 882, 883 (Fed. Cir. 1986) ("The useful life of a disk is measured in weeks, that of a harvester is five or six years. The district court found, and it is undisputed, that a purchaser can expect to wear out many disks during the useful life of the header."). Thus, unlike the filter in the water filtration system in Everpure and the fabric top of the convertible top structure in Aro, the "male plate" is not properly characterized as a replaceable part of the patented combination.

Accordingly, the Court finds that an end-user's union of a "male plate" contained on a PAG L75 battery pack and an Anton/Bauer "female plate" does not amount to "permissible repair" of the '204 patented combination.

b.  *Implied License*

PAG also contends that a purchaser of an unpatented component of the '204 patented combination possesses an implied license to acquire other unpatented components of the '204 patented combination from a source other than the patentee. Specifically, PAG argues, because Anton/Bauer's "female plates" have no non-infringing uses and are sold without any notice of express restriction from Anton/Bauer as to the use of the "female plates," purchasers of an Anton/Bauer "female plate" have an implied license to "practice the final stage of the '204 patent procedure, which is to acquire a 'male plate' to be used in combination with the 'female plate.'"

The Court concludes, however, that the doctrine of "implied license" does not apply here. There are two elements to the "implied license" doctrine: (1) the patent holder must offer for sale an incomplete product that has no substantial use other than to be further manufactured into a complete patented and allegedly infringing article; and (2) the circumstances of the sale of the patent holder's product to the end-user indicates an implied license should be inferred—that is, the

-12-

patent holder's actions must lead the end-user to believe it could purchase or use additional components in order to make the product functional. See Met-Coil, 803 F.2d at 687; Cyrix Corp. v. Intel Corp., 846 F. Supp. 522, 537-38 (E.D. Tex.) (citing U.S. v. Univis Lens Co., Inc., 316 U.S. 241, 250 (1942)), aff'd, 42 F.3d 1411 (Fed. Cir. 1994); Universal Elecs., Inc. v. Zenith Elecs. Corp., 846 F. Supp. 641, 645-46 (N.D. Ill.), aff'd, 41 F.3d 1520 (Fed. Cir. 1994).

First, unlike the remote control transmitters supplied by Universal for use with Zenith receivers in Universal Electronics, 846 F. Supp. at 646, the microprocessors in Cyrix, 846 F. Supp. at 539, the corner pieces for use with Met-Coil roll-forming machines in Met-Coil, 803 F.2d at 686-87, and the lens blanks in Univis, 316 U.S. at 252, the PAG L75 battery pack is not a "replacement" for any component of the mechanical and electrical connection disclosed in the '204 patented combination. See discussion at Part II.A.2.a. supra. Moreover, the Court does not find that the circumstances of the sale of Anton/Bauer products containing a "female plate" indicates an implied license to form the '204 patented combination with a "male plate" supplied by one other than the patentee. While Anton/Bauer does not expressly restrict the use of its products containing a "female plate" with otherwise unauthorized parts, cf. Met-Coil, 802 F.2d at 687; Universal Elecs., 846 F. Supp. at 647-48, the evidence does not suggest that Anton/Bauer's actions regarding the sale of "female plates" lead the end-user to believe it may purchase or use additional non-Anton/Bauer components in order to make the "female plates" functional. Accordingly, the Court declines to find the existence of an implied license of the type asserted by PAG.[3]

---

[3] As noted earlier, 35 U.S.C. § 271(c) provides that "[w]hoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a

-13-

c.  *Staple Article of Commerce*

PAG also argues there is no contributory infringement because its PAG L75 battery pack is a staple article of commerce. See 35 U.S.C. § 271(c) (providing that no contributory infringement exists where one "offers to sell or sells . . . a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention" that is a "a staple article or commodity of commerce suitable for substantial noninfringing use"). To support its argument, PAG points out that the PAG L75 battery pack may be used in connection with "female plates" based on the expired '107 patent, which Anton/Bauer concedes is a non-infringing use. The Court finds, however, that this limited non-infringing use of the PAG L75 battery pack is not substantial, and thus, does not confer upon the PAG L75 battery pack the status of a staple article of commerce. Cf. Universal Elecs., 846 F. Supp. at 652 (finding Universal remote control transmitter to be a staple article of commerce suitable for substantial non-infringing use because it could operate many electronic devices not manufactured by Zenith).

d.  *Requisite Intent*

Finally, PAG contends that it lacks the requisite knowledge or intent for contributory or induced infringement. PAG points to its pre-suit correspondence with Anton/Bauer as evidence that it intended specifically to avoid infringement. The Court finds, however, PAG does have the

---

patented process, constituting a material part of the invention" shall be liable as a contributory infringer. While PAG argues that the mere sale of a material, albeit unpatented, component of a patented combination exhausts the rights provided to the patent owner by § 271(c), the decisions cited by PAG do not support the conclusion that the rights derived from this section are waived by a patent owner merely by separately offering for sale a material component of a patented combination.

requisite knowledge and intent, in light of the evidence that (1) PAG knew of the '204 patent, (2) end-users of the PAG L75 battery pack are urged by PAG to use the PAG L75 battery pack with Anton/Bauer mounts, and (3) very few, if any, "female plates" disclosed in the expired '107 patent exist in the marketplace.

Accordingly, the Court finds that Anton/Bauer is likely to succeed on the merits of its claims of contributory or inducement of infringement.

B. Irreparable Harm

A showing of validity and infringement raises the rebuttable presumption of irreparable harm. See, e.g., Hybritech, Inc., 849 F.2d at 1456 & n.37; H.H. Robertson, Co. v. United Steel Deck, Inc., 820 F.2d 384, 390 (Fed. Cir. 1987); Smith Int'l., Inc. v. Hughes Tool Co., 718 F.2d 1573, 1581 (Fed. Cir. 1983). If there is no evidence to refute the presumption of irreparable harm, the presumption stands. Cf. Smith Int'l., Inc., 718 F.2d at 1581 ("[T]here do not appear to be any equitable considerations in this case that could in any way offset the strong showing of validity and infringement made by [the infringer], coupled with the presumption of irreparable harm."). Here the Court does not find PAG's evidence to counter the presumption of irreparable harm. Furthermore, Anton/Bauer has demonstrated that it has diligently guarded its patented technology to establish its market position and create business relationships. Allowing the PAG L75 battery pack to be marketed by PAG could significantly impact Anton/Bauer's business. In light of these facts, the Court finds that any solicitation by PAG of infringing sales of the PAG L75 battery pack will cause irreparable harm to Anton/Bauer.

C. Balance of Hardships

In considering the balance of hardships, the court must balance the harm caused to

Anton/Bauer that will result if the injunction is denied and the harm to PAG if the injunction is granted. See, e.g., Al-Site Corp. v. Cable Car Sunglasses, 911 F. Supp. 410, 418 (N.D. Cal. 1994). In this case the balance tips in favor of Anton/Bauer. Anton/Bauer has been manufacturing and selling products with "male" and "female" connector plates for over eighteen years. During that time Anton/Bauer has relied on the strength of its patents to enable it to market its products. The PAG L75 battery pack advertisements and any future solicitation would disrupt the market for Anton/Bauer's products and interfere with the business relationships Anton/Bauer has established through the '204 patent. If PAG were allowed to sell the PAG L75 battery pack, it would have a significant impact on the sales of Anton/Bauer's battery packs and connecting components. In addition, PAG has not demonstrated that its own harm from enforcement of the '204 patent outweighs this harm to Anton/Bauer.

C.  Public Interest

The public interest factor to be considered by the court typically focuses on whether there exists a critical public interest that would be harmed by the grant of the injunction. See, e.g., Hybritech, Inc. v. Abbott Lab., 849 F.2d 1446, 1456 (Fed. Cir. 1988). PAG has not raised any critical public interest which would be adversely impacted by granting the injunction.

For the foregoing reasons, the plaintiff's motion for preliminary injunction [Doc. #3] is GRANTED.

It is therefore ORDERED that, during the pendency of these proceedings:

1. PAG shall refrain from advertising and marketing the PAG L75 battery pack or any product that contains the "male plate" described in the '204 patent for the duration of the '204 patent; and

2. PAG shall refrain from offering for sale the PAG L75 battery pack or any product

-16-

-17-

that contains the "male plate" described in the '204 patent for the duration of the '204 patent.

SO ORDERED this 12Th day of June 2002, at Hartford, Connecticut.

CHRISTOPHER F. DRONEY
UNITED STATES DISTRICT JUDGE