UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANTON/BAUER, INC.<br><br>       PLAINTIFF<br><br>VS.<br><br>PAG, LTD.<br><br>       DEFENDANT<br><br>VS.<br><br>ANTON/BAUER,INC. AND<br>ALEX DESORBO<br><br>       DEFENDANT | CIVIL ACTION<br>NO. 3:01-CV-577 (CFD)<br><br><br><br><br><br>May 4, 2004 |

### AFFIDAVIT OF ANTON WILSON

1. My name is Anton Wilson. I am over the age of eighteen years and believe in the obligations of an oath.

2. I am one of the founding principals of Anton/Bauer, Inc. ("Anton/Bauer") and am fully familiar with the patented technology in issue in this litigation. I am the inventor designated in United States Patent No. 4,810,204 which I assigned to Anton/Bauer, Inc.



3. Anton/Bauer has been involved in the professional camera and video industry for 34 years.

4. I am the author of numerous industry articles on the practice and use of film and video equipment including *Anton Wilson's Cinema Workshop* now in its 4th edition which is a widely used reference for filmmakers and videographers.

5. I had been the Executive Vice President until 1990, then Chairman of the Board of Directors prior to my retirement in 1997. I was a consultant to the company from 1997 through 2002. I have been issued for several patents and am responsible for the development of dozens of Anton/Bauer's products.

6. During my time at Anton/Bauer, I subscribed to numerous industry trade journals and magazines, such as TV Technology, Broadcast Engineering, Millimeter and others which track the development in the industry and the products being manufactured for use in the industry. During that time period, I examined scores of physical samples of products sold by other manufacturers in the industry to familiarize myself with their design and use and how they could be coordinated with Anton/Bauer's product line. I also attended over 60 trade shows at which products used in the industry were marketed and sold.

7. Claim 9 of the '204 patent teaches a direct mechanical and electrical connection between a single male plate attached to a battery (or the like) housing or which forms a side of the housing, and a single female plate which is normally affixed to a camera or electrically operated device. The female plate has a plurality of keyhole slots and at least one elongated electrical terminal. The male plate has a plurality of shaped headed projections adapted to be received in the keyhole slots of the female plate serving to connect the female and male plates. This mechanism forms the mechanical connection described in the patent.

8. The female plate also has a releasable locking means which engages at least one of the headed projections for locking and preventing relative movement between the plates once they are assembled in a mating relation. This locking means consists of at least one rotatable member on the back side of the female plate which has a pin that engages over the head of the corresponding male projection to lock the plates together. When the member is rotated, the pin is moved out of engagement to enable uncoupling of the plates. This mechanism forms the releasable locking means of the '204 patent.

9. Claim 11 teaches a specific version of the releasable locking means where the pin engages over the head of the male projections by virtue of a torsion spring disposed



3

between the bottom of the rotatable member and a fixed support on the back side of the female plate.

10. The male plate also includes at least one elongated electrical terminal which mates with the corresponding electrical terminals on the female plate. When these terminals are locked together by virtue of the mechanical connection, they form an electrical connection.

11. The purpose of the '204 patent was to improve the battery pack and device connection combination as disclosed in United States Patent Nos. 4,218,107 and 4,550,968. I was the inventor as designated in both those patents and assigned them to Anton/Bauer.

12. In the background section of the '204 patent, Anton/Bauer explained that under the '107 patent, the female plate was connected to an electrical device and the male plate was part of a battery pack. To connect the two plates, the user positioned the male plate against the female plate with initial alignment occurring between the recess and the housing and with said alignment preventing lateral shifting of the plates with respect to the slots and the keyholes. The user could then move the male plate in only the direction of the keyhole slots until the headed projections entered into circular openings of the keyholes. The male plate was then further moved to position the

4



projections within the slots of the keyholes with said moving causing an electrical connection between the male and the female terminals and engagement with a flexible locking strip to prevent movement of the plates. See '204 Patent, at column 1, lines 52-64.

13. The '204 patent improved upon the releasable connection taught by the '107 patent, replacing the flexible locking strip with a "positive, thumb-activated pivoted locking mechanism having a locking pin adapted to be positioned over one of the headed projections on the male plate after it is seated in the slot portion of a corresponding keyhole slot in the female plates." Id. at Col. 3, lines 50-55. In the first paragraph of the summary section of the '204 patent, Anton/Bauer explained that when the releasable connection was detached, "the entire male plate and headed projections can be moved up and out of corresponding closed keyhole slots, breaking the electrical connection between the terminal contacts on the male and female plates." Those terminal contacts are the very terminal contacts that are mentioned in Claim 9 (see id. at Col. 12, lines 35-42) and described in the description of the preferred embodiment. See Column 6 at lines 50-60 (describing electrical terminal assembly of the female plates); Column 7, lines 19-24 (describing electrical terminal assembly of the male plates); Column 7, lines 31-42 and Column 9, lines 23-34 (describing process of

5



electrical connection formed by mating of the plates); and Column 8, lines 21-27 (describing detachment releasable locking means breaker for electrical connection).

14. The '204 Patent issued on March 7, 1989.

15. Anton/Bauer began manufacturing its '204 female plate during 1987. More specifically, Anton/Bauer at that time set about to discontinue the use of female plates of the '107 and '968 patents in its products and commenced manufacture and sale of female plates taught by the '204 patent.

16. As of the time that I left the employment of Anton/Bauer, the company had not been manufacturing '107 or '968 female plates for at least 10 years.

17. The Anton/Bauer female plate and the Sony "V" or "wedge" mount plate are two widely used battery connection means in the professional video camera industry. Anton/Bauer sells its Anton/Bauer female plates to Panasonic to be affixed to its cameras as well as to resellers to be affixed to other brand cameras. Sony "V" or "wedge" mount means are integral to Sony cameras.

18. It is common for manufacturers, including Anton/Bauer and Sony, to make use of these plates for attaching any number of devices to the back of a camera which do not employ the teachings of the '204 patent, or for that matter, the '107 or '968.

6



19. For example, I am familiar with adapters that battery manufacturers build to accommodate different power sources with different camera mountings. There are a number of manufacturers who build such adapters to permit a connection to be made with a battery whose mounting connection is incompatible with the female fitting which happens to be mounted to the camera or other device. I am aware that PAG made such an adapter to mount its own incompatible connecting batteries to the '204 female plate.

20. These adapter units do not infringe the '204 patent, because the '204 teaching is not employed to effect the direct and releasable mechanical and electrical connection of a battery or the like. In the PAG 9518 adapter, for example, the '204 female and the male plate of the PAG adapter are attached, but the PAG male plate is not part of a battery or power source housing; nor are the male and female '204 designs used to form a releasable connection for a battery or other power source. Rather, the PAG male plate only (without the battery) forms part of an adapter. The other part of this adapter is a female plate for PAG's own PAGlok mounting system which is mated then to a PAG battery with a male PAGlok plate. Claim 9 of the '204 patent teaches a battery connection consisting of a male and female plate – one to be attached to the device to be powered and the other attached to the power source. In this adapter

7



scenario there is a '204 male and female plate, but there is as well at least one adapter attached to a alternate source of power with its own releasable means for mechanical and electrical connection.

21. By contrast, the PAG L75 is a battery with a housing constructed integrally with a '204 male plate, designed to directly mount to the '204 female plate. The unit sold by PAG consists of a male plate attached to the battery and the connection, when made to a '204 female plate attached to a device (such as a video camera), is identical to that taught by the patent. It forms a releasable connection for the battery consisting solely of a male and a female plate.

22. It is also common for manufacturers to make use of the Anton Bauer female plate as a hanger for any number of accessory uses, particularly with high definition film production. Sometimes, these uses do not involve any power connection at all; sometimes the power connection is formed by a separate connection after the accessory device is attached to the camera. When I was at Anton Bauer, I recall several instances where manufacturers of such devices called Anton Bauer to discuss these uses. In some instances, we sold male plates to these manufacturers to facilitate the devices they were selling.



_[signature]_
Anton Wilson

Subscribed to and sworn to before me this 4 day of May, 2004.

_[signature: Frank Maselli]_
Notary Public/Commissioner of the Superior Court
My Commission Expires: 12-06-05

BPRT/57052.2/JTS/513578v1

Frank Maselli
Notary Public State of New York
Westchester County Lic #01MA6034177
Commission Expires 12/05/05

9