**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ANTON/BAUER, INC.,          ) | |
|     Plaintiff,           ) | |
|                    ) | Civil Action |
| v.                    ) | File No.: 3:01-CV-577-CFD |
|                    ) | |
| PAG LIMITED,         ) | |
|     Defendant,          ) | |
|                    ) | |
| v.                    ) | |
|                    ) | |
| ANTON/BAUER, INC. and ALEX  ) | |
| DESORBO,              ) | |
|                    ) | |
|     Counterclaim and Third Party  ) | |
|     Defendants          ) | |

## LOCAL RULE 56(a)(2) STATEMENT

1.    Plaintiff, Anton/Bauer, Inc. ("Anton/Bauer") is a corporation duly organized and existing under the laws of the State of Delaware having its principal place of business at 14 Progress Drive, Shelton, Connecticut 06480. Anton/Bauer is in the business of manufacturing battery packs especially designed for use to power professional portable video cameras. See Stipulation at ¶ 5, attached hereto as Exhibit A.

**PAG'S RESPONSE: Admitted to the extent that this paragraph repeats paragraph 5 of the Stipulations, which are attached as Exhibit A to Plaintiff's Motion for Summary Judgment (hereinafter "the PI Stipulations").**

2.    Anton/Bauer's battery packs are constructed to incorporate a releasable connection between the camera and batteries contained within the pack as shown and claimed in U.S. Patent No. 4,810,204 ("the '204 patent"). The battery pack connection of the '204 patent-in-suit includes (1) a flat female plate (known as the Gold Mount™) having a plurality of keyhole slots and at least one elongated electrical terminal (the female plate is also manufactured by Anton/Bauer and is normally affixed to the camera or other electrically operated device, such as a battery charger); and (2) a flat male plate including a plurality of shaped headed projections adapted to be received in the keyhole slots to releasable lock the female and male plates together, the male plate also including at least one elongated electrical terminal which mates with the electrical terminal on the female plate when the plates are locked together (the male plate is usually a portion of the

housing of the pack containing an electrical battery or AC-to DC power source for powering the camera through the mating terminal connection); and (3) a releasable locking means on the female plate for engaging at least one of the headed projections for locking and preventing relative movement between the plates once they are assembled in mating relation. See Ex. A, Stipulation at ¶ 6.

**PAG'S RESPONSE: Admitted to the extent that this paragraph repeats paragraph 6 of the PI Stipulations. All else is denied since the Court has not construed the claims.**

3.      The '204 patent-in-suit comprises 18 claims. In this action, Anton/Bauer asserts that PAG has infringed claims 9 and 11 of the '204 patent. See id., Stipulation at ¶ 21.

**PAG'S RESPONSE: Admitted.**

4.      Claims 9 and 11 of the '204 patent require, inter alia, a "male plate," a "female plate," and a "releasable locking mechanism on said female plate." See id., Stipulation at ¶ 22.

**PAG'S RESPONSE: Admitted.**

5.      The "releasable locking mechanism on said female plate" required by the claims of the '204 patent must comprise (1) at least one rotatable member on the backside of the female plate, (2) a pin on said rotatable member between said member and the backside of the female plate, and (3) a means urging the member to a closed condition with said pin disposed in the path of movement of said headed projection inserted in said slot. See id., Stipulation at ¶ 23.

**PAG'S RESPONSE: Admitted to the extent that this paragraph recites claim 9 of the '204 patent. All else is denied since the Court has not construed the claims.**

6.      The battery packs at issue in this lawsuit are primarily directed to the professional camera/battery market. In this market, Anton/Bauer generally sells the female plate in two ways. See id., Stipulation at ¶ 11.

**PAG'S RESPONSE: Admitted to the extent that this paragraph repeats paragraph 11 of the PI Stipulations. PAG also admits that Anton/Bauer has indicated that it generally sells its female plate in two ways.**

7.    The first instance occurs when a camera manufacturer purchases a Gold Mount™ "female plate" directly from plaintiff. The Gold Mount™ generically includes female plates of the type described in the '204 patent. The camera manufacturer incorporates the "female plate" into a camera as an OEM-type part, and then, sells the camera with the Gold Mount™ "female plate" attached thereto to the public. See id., Stipulation at ¶ 12.

   **PAG'S RESPONSE: Admitted to the extent that this paragraph repeats paragraph 12 of the PI Stipulations.**

8.    The second instance occurs when plaintiff sells its Gold Mount ™ "female plate" to end users, such as individuals or major television networks, as an after-market product. Either way, the only way for the end user, a would-be direct infringer, to obtain the "releasable locking means on said female plate" required by claims 9 and 11 of the '204 patent, is by the sale, authorization, and consent to use by plaintiff. See id., Stipulation at ¶ 13.

   **PAG'S RESPONSE: Admitted to the extent that this paragraph repeats paragraph 13 of the PI Stipulations.**

9.    Anton/Bauer also manufactures and sells battery chargers for recharging its batteries. Anton/Bauer's charger employs the connection described in paragraphs 2-5. See id., Stipulation at ¶ 7.

   **PAG'S RESPONSE: Admitted to the extent that this paragraph repeats paragraph 7 of the PI Stipulations.**

10.   Defendant, PAG, Limited ("PAG") is a United Kingdom corporation based in London, England. PAG introduced its PAG L75 battery pack in the United States in April of 2000. See id., Stipulation at ¶ 1.

   **PAG'S RESPONSE: Admitted.**

11.   The PAG L75 battery pack in question may also be fitted to plaintiff's Gold Mount™ products employing a female plate with a latch as shown in Figs. 14-19 of U.S. Patent No. 4,180,204. See id., Stipulation at ¶ 2.

   **PAG'S RESPONSE: Admitted.**

12.   PAG's accused L75 battery packs can only be construed to employ the male plate of the claimed releasable connection. See id., Stipulation at ¶ 3.

   **PAG'S RESPONSE: Denied, since the Court has not construed the claims pursuant to Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995) (en banc) aff'd 517 U.S. 370 (1996).**

13.    Anton/Bauer's female plates are sold principally to camera manufacturers, like Panasonic, which attach them to the back of their cameras and which, in turn, promote use of the Anton/Bauer male plates (the battery pack side of the combination).  See Exhibit B, reproducing a true and accurate copy of select pages of the Deposition of Alex DeSorbo, at p. 162 [hereinafter, "DeSorbo Depo."].

    **PAG'S RESPONSE:  PAG Admits that Anton/Bauer sells female plates to camera manufacturers, like Panasonic, but denies all other portions of this paragraph.**

14.    The resulting purchase of the male plates are made exclusively through Anton/Bauer or its authorized dealers or distributors.  See Affidavit of Alex DeSorbo at ¶¶ 3-4, a true and accurate copy of which is attached hereto as Exhibit C.

    **PAG'S RESPONSE:  Denied.**

15.    In a small percentage of other instances, Anton/Bauer sells either component of the combination directly to a purchaser, sells the female plate to parties who want to replace a different camera female plate with the Anton/Bauer female plate, or sells the female plates to other manufacturers for any number of noninfringing uses.  See id. at ¶ 5.

    **PAG'S RESPONSE:  PAG admits that Anton/Bauer may sell female plates to parties who want to replace a different camera female plate with the Anton/Bauer female plate but denies all other portions of this paragraph.**

16.    Anton/Bauer's intention whenever it sells its female plate is that it be used only in combination with an Anton/Bauer male plate attached to a battery pack or in some noninfringing alternate manner.  Id. at ¶ 6.

    **PAG'S RESPONSE:  Denied.  The Court has not construed the claims to determine what is a "noninfringing alternate manner."**

17.    Anton/Bauer has not condoned the use of any other male plate to be used with the '204 female plate.  See id. at ¶ 7.

    **PAG'S RESPONSE:  Denied.  Plaintiff admits that it places no express restrictions on the use of its female plates at the time of sale.  See Plaintiff's Brief at 8.**

18.    Anton/Bauer plates, both the female and male, are marked with the '204 Patent Number to advise the purchaser/end user that the device is protected by a patent.  See id. at ¶ 7.

    **PAG'S RESPONSE:  Denied.  See Plaintiff's 30(b)(6) Deposition Transcript at page 77, which is attached as Exhibit G.**

19.    Panasonic, the camera manufacturer who purchases the largest portion of Anton/Bauer's female plates to incorporate on its cameras, specifically advertises the use of the female plate with the Anton/Bauer male plate. See id. at ¶ 3.

**PAG'S RESPONSE: PAG has insufficient information to be able to admit or deny this paragraph, so to that extent, this paragraph is denied. PAG needs general discovery to fully respond to this paragraph.**

20.    Anton/Bauer likewise advertises its female/male plates to be utilized in combination with on another. See id. at ¶ 7.

**PAG'S RESPONSE: PAG has insufficient information to be able to admit or deny this paragraph, so to that extent, this paragraph is denied. PAG needs general discovery to fully respond to this paragraph.**

21.    Anton/Bauer's warranty language declares void the protections afforded under the warranty in the event that the device in question is used with, among other things, unauthorized attachments. See id. at ¶ 10.

**PAG'S RESPONSE: Denied.**

22.    Anton/Bauer has been a party to past suits to enforce its intellectual property rights, which include: Anton/Bauer, Inc. v. Energex Systems Corporation, No. 93 Civ. 4682 (DLB) (S.D.N.Y.) and Anton/Bauer, Inc. v. Pana-Tek, Inc. 3:98 CV 604 (CFD) (D. Conn.). See id. at ¶ 11.

**PAG'S RESPONSE: Admitted.**

23.    Anton/Bauer has advised its dealers and distributors by letters dated April 23, 2001 and April 6, 1998, both before and after this litigation was commenced, that it did not condone infringing uses of its Anton/Bauer female plates. See id. at ¶ 12.

**PAG'S RESPONSE: Denied. See Exhibits C2 and C3 of Plaintiff's Brief.**

24.    PAG has not expressed any opinion on the circumstances by which Anton/Bauer's products are sold. See Exhibit D attached hereto, reproducing select portions of PAG's 30(b)(6) deposition at p. 33.

**PAG'S RESPONSE: Denied. See PAG's Pleadings (*i.e.*, Docket Nos. 102 & 109).**

25.    A true and accurate copy of the Court's decision dated June 12, 2002, is attached hereto as Exhibit E.

**PAG'S RESPONSE: Admitted.**

26.     A true and accurate copy of United States Patent No. 4,810,204 (the "'204 Patent") is
        attached hereto as Exhibit F.

        **PAG'S RESPONSE:  Admitted.**

27.     Anton Wilson is one of the founding principals of Anton/Bauer, Inc. is fully familiar with
        the patented technology in issue in this litigation, and is the inventor designated in the
        '204 patent), which he assigned to Anton/Bauer.  <u>See</u> Affidavit of Anton Wilson,
        attached as Exhibit G ("Wilson Aff.") at ¶ 2.

        **PAG'S RESPONSE:  PAG admits that Anton Wilson is a named inventor of the
        '204 patent.  All remaining portions of this paragraph are denied due to insufficient
        information. PAG needs general discovery to fully respond to this paragraph.**

28.     Anton/Bauer has been involved in the professional camera and video industry for 34
        years.  <u>See id.</u>, Wilson Aff. at ¶ 3.

        **PAG'S RESPONSE:  PAG has insufficient information to admit or deny this
        paragraph, so it is deemed denied. PAG needs general discovery to fully respond to this
        paragraph.**

29.     Anton Wilson had been the Executive Vice President of Anton /Bauer until 1990, then
        Chairman of the Board of Directors prior to his retirement in 1997.  He was a consultant
        to the company from 1997 through 2002.  He has been issued several patents and is
        responsible for the development of dozens of Anton/Bauer's products.  <u>See id.</u>, Wilson
        Aff. at ¶ 5.

        **PAG'S RESPONSE:  PAG has insufficient information to admit or deny this
        paragraph, so it is deemed denied. PAG needs general discovery to fully respond to this
        paragraph.**

30.     Claim 9 of the '204 patent teaches a direct mechanical and electrical connection between
        a single male plate attached to a battery (or the like) housing or which forms a side of the
        housing, and a single female plate which is normally affixed to a camera or electrically
        operated device.  The female plate has a plurality of keyhole slots and at least
        one elongated electrical terminal.  The male plate has a plurality of shaped headed projections
        adapted to be received in the keyhole slots of the female plate serving to connect the
        female and male plates.  This mechanism forms the mechanical connection described in
        the patent.  <u>See id.</u>, Wilson Aff. at ¶ 7.

        **PAG'S RESPONSE:  Denied.  The Court has not construed claim 9 of the '204
        patent.**

31.     The female plate also has a releasable locking means which engages at least one of the headed projections for locking and preventing relative movement between the plates once they are assembled in a mating relation.  This locking means consists of at least one rotatable member on the back side of the female plate which has a pin that engages over the head of the corresponding male projection to lock the plates together.  When the member is rotated, the pin is moved out of engagement to enable uncoupling of the plates. This mechanism forms the releasable locking means of the '204 patent. See id., Wilson Aff. at ¶ 8.

**PAG'S RESPONSE:  Denied. The Court has not construed claim 9 of the '204 patent.**

32.     Claim 11 teaches a specific version of the releasable locking means where the pin engages over the head of the male projections by virtue of a torsion spring disposed between the bottom of the rotatable member and a fixed support on the back side of the female plate. See id., Wilson Aff. at ¶ 9.

**PAG'S RESPONSE:  Denied. The Court has not construed claim 11 of the '204 patent.**

33.     The male plate also includes at least one elongated electrical terminal which mates with the corresponding electrical terminals on the female plate.  When these terminals are locked together by virtue of the mechanical connection, they form an electrical connection. See id., Wilson Aff. at ¶ 10.

**PAG'S RESPONSE:  Denied. The Court has not construed claim 9 of the '204 patent.**

34.     Claim 9 requires that the male plate be positioned so that the terminals of the male and female plate actually connect: "With the one terminal within the main terminal." See Ex. F at Col. 12, Lines 46-47.

**PAG'S RESPONSE:  Denied. The Court has not construed claim 9 of the '204 patent.**

35.     The terminals referenced in the '204 Patent are electrical in nature. See id. at Col. 6, Line 53-55; Col. 7 at Lines 24-44; Col. 8 at Lines 23-28.

**PAG'S RESPONSE:  Denied. The Court has not construed claim 9 of the '204 patent.**

36.     The terminals on the female plate permit the electrical connection to the device from the reverse side of the plate. See id. at Col. 6, at 50-54.  The terminal on the male plate has a "female contact terminal block in the housing for receiving the companion female

7

electrical contact terminal." Id. at Col. 7, 19-24. These female contact terminals, in turn, are connected by wires to the battery. Id. at 30-35. Once the plates are joined, the "male terminals received in the female contact terminals in holes will self-align and make appropriate contact." Id. at 34-39. When the releasable connection is detached, "the entire male plate and headed projections can be moved up and out of corresponding keyhole slots, breaking the electrical connection between the terminal contacts on the male and female plates." Id. at Col. 12, Lines 35-42.

**PAG'S RESPONSE: Denied. The Court has not construed claim 9 of the '204 patent.**

37. The purpose of the '204 patent was to improve on the way in which the battery pack and device connection combination as disclosed in United States Patent Nos. 4,218,107 ("the '107 patent") and 4,550,968 ("the '968 patent"). Anton Wilson was the inventor as designated in both those patents and assigned them to Anton/Bauer. See Ex. G, Wilson Aff. at ¶ 11.

**PAG'S RESPONSE: PAG admits that Anton Wilson is a named inventor for the '107 and '204 patents. PAG does not have sufficient information to admit or deny the remaining portions of this paragraph, so those remaining portions are deemed denied. PAG needs general discovery to fully respond to this paragraph.**

38. In the background section of the '204 patent, Anton/Bauer explained that under the '107 patent, the female plate was connected to an electrical device and the male plate was part of a battery pack. To connect the two plates, the user positioned the male plate against the female plate with initial alignment occurring between the recess and the housing and with said alignment preventing lateral shifting of the plates with respect to the slots and the keyholes. The user could then move the male plate in only the direction of the keyhole slots until the headed projections entered into circular openings of the keyholes. The male plate was then further moved to position the projections within the slots of the keyholes with said moving causing an electrical connection between the male and the female terminals and engagement with a flexible locking strip to prevent movement of the plates. See Ex. F, '204 Patent, at column 1, lines 52-64; Ex. G, Wilson Aff. at ¶ 12.

**PAG'S RESPONSE: PAG admits that column 1, lines 52-64 are self evident, but all other aspects of this paragraph are denied.**

39. The '204 patent improved upon the releasable connection taught by the '107 patent, replacing the flexible locking strip with a "positive, thumb-activated pivoted locking mechanism having a locking pin adapted to be positioned over one of the headed projections on the male plate after it is seated in the slot portion of a corresponding keyhole slot in the female plates." See Ex. F, '204 Patent at Col. 3, lines 50-55. In the first paragraph of the summary section of the '204 Patent, Anton/Bauer explained that when the releasable connection was detached, "the entire male plate and headed

projections can be moved up and out of corresponding closed keyhole slots, breaking the electrical connection between the terminal contacts on the male and female plates." Those terminal contacts are the very terminal contacts that are mentioned in Claim 9 ; see id. at Col. 12, lines 35-42; and described in the description of the preferred embodiment. See id. at Column 6 at lines 50-60 (describing electrical terminal assembly of the female plates); Column 7, lines 19-24 (describing electrical terminal assembly of the male plates); Column 7, lines 31-42 and Column 9, lines 23-34 (describing process of electrical connection formed by mating of the plates); and Column 8, lines 21-27 (describing detachment releasable locking means breaker for electrical connection); see generally Ex. G, Wilson Aff. at ¶ 13.

**PAG'S RESPONSE:  PAG admits that cited portions of the '204 patent are self evident, but all other aspects of this paragraph are denied.**

40.    The '204 Patent issued on March 7, 1989.  See Ex. G, Wilson Aff. at ¶ 14.

**PAG'S RESPONSE:  Admitted.**

41.    Anton/Bauer began manufacturing its '204 female plate during 1987.  More specifically, Anton/Bauer at that time set about to discontinue the use of female plates of the '107 and '968 patents in its products and commenced manufacture and sale of female plates taught by the '204 patent.  See Ex. G, Wilson Aff. at ¶ 15.

**PAG'S RESPONSE:  PAG has insufficient information to admit or deny this paragraph, so it is deemed denied. PAG needs general discovery to fully respond to this paragraph.**

42.    As of the time that Anton Wilson left the employment of Anton/Bauer, the company had not been manufacturing '107 or '968 female plates for at least 10 years.  See id., Wilson Aff. at ¶ 16.

**PAG'S RESPONSE:  PAG has insufficient information to admit or deny this paragraph, so it is deemed denied. PAG needs general discovery to fully respond to this paragraph.**

43.    The Anton/Bauer female plate and the Sony "V" or "wedge mount plate are two widely used battery connection means in the professional video camera industry.  Anton/Bauer sells its Anton/Bauer female plates to Panasonic to be affixed to its cameras as well as to resellers to be affixed to other brand cameras. Sony "V" or "wedge" mount means are integral to Sony cameras. See id., Wilson Aff. at ¶ 17.

**PAG'S RESPONSE:  PAG admits that Anton/Bauer's female plate and Sony's "V" mount plate are used in the professional video camera industry and that Anton/Bauer represents that it sells Anton/Bauer female plates to Panasonic.  But remaining portions of**

**this paragraph deemed denied due to insufficient information. PAG needs general discovery to fully respond to this paragraph.**

44.    It is common for manufacturers, including Anton/Bauer and Sony, to make use of these plates for attaching any number of devices to the back of a camera which do not employ the teachings of the '204 patent, or for that matter, the '107 or '968 patents. See id., Wilson Aff. at ¶ 18.

**PAG'S RESPONSE: Denied. This Court has not construed the claims of the '204 patent.**

45.    For example, there are adapters that battery manufacturers build to accommodate different power sources with different camera mountings. There are a number of manufacturers who build such adapters to permit a connection to be made with a battery whose mounting connection is incompatible with the female fitting that happens to be mounted to the camera or other device. PAG made such an adapter to mount its own incompatible connecting batteries to the '204 female plate. See Ex. G, Wilson Aff. at ¶ 19.

**PAG'S RESPONSE: Denied. This Court has not construed the claims of the '204 patent.**

46.    Generally, these adapter units do not infringe the '204 patent because the '204 teaching is employed to effect the direct and releasable mechanical and electrical connection of a battery or the like. In the PAG 9518 adapter, for example, the '204 female and the male plate of the PAG adapter are attached, but the PAG male plate is not part of a battery or power source housing; nor are the male and female '204 designs used to form a releasable connection for a battery or other power source. Rather, the PAG male plate only (without the battery) forms part of an adapter. The other part of this adapter is a female plate for PAG's own PAGlok mounting system which is mated then to a PAG battery with a male PAGlok plate. Claim 9 of the '204 patent teaches a battery connection consisting of a male and female plate – one to be attached to the device to be powered and the other attached to the power source. In this adapter scenario there is a '204 male and female plate, but there is as well at least one adapter attached to a alternate source of power with its own releasable means for mechanical and electrical connection. See id., Wilson Aff. at ¶ 20.

**PAG'S RESPONSE: Denied. This Court has not construed the claims of the '204 patent.**

47.    By contrast, the PAG L75 is a battery with a housing constructed integrally with a '204 male plate, designed to directly mount to the '204 female plate. The unit sold by PAG consists of a male plate attached to the battery and the connection, when made to a '204 female plate attached to a device (such as a video camera), is identical to that taught by

the patent. It forms a releasable connection for the battery consisting solely of a male and a female plate. See id., Wilson Aff. at ¶ 21.

**PAG'S RESPONSE: Denied. The '204 patent has not been construed by the court for PAG to be able to answer.**

48. It is also common for manufacturers to make use of the Anton/Bauer female plate as a hanger for any number of accessory uses, particularly with high definition film production. Sometimes, these uses do not involve any power connection at all; sometimes the power connection is formed by a separate connection after the accessory device is attached to the camera. During Anton Wilson's time at Anton/Bauer, there were several instances where manufacturers of such devices called Anton/Bauer to discuss these uses. In some instances, Anton/Bauer sold male plates to these manufacturers to facilitate the devices they were selling. See id., Wilson Aff. at ¶ 22.

**PAG'S RESPONSE: PAG has insufficient information to admit or deny this paragraph, so it is deemed denied. PAG needs general discovery to fully respond to this paragraph.**

49. Attached hereto as Exhibit H is a photograph of the Aspen Model # Dual NP/AB.

**PAG'S RESPONSE: PAG admits that Exhibit H appears to be a photograph of Aspen Model # Dual NP/AB.**

50. A true and accurate copy of the 1999 Aspen Electronics, Inc. catalog is attached hereto as Exhibit I.

**PAG'S RESPONSE: PAG admits that Exhibit I appears to be a copy of the 1999 Aspen Electronics, Inc. catalog, but PAG lacks sufficient information to admit or deny whether it is a true and accurate copy.**

51. Attached hereto as Exhibit J is a photograph of the Aspen PSM-160.

**PAG'S RESPONSE: PAG admits that Exhibit J appears to be a photograph of Aspen PSM-160.**

52. Attached hereto as Exhibit K are photographs of the Absolute # VB-NH 13A4.

**PAG'S RESPONSE: PAG admits that Exhibit J appears to be a photograph of the Absolute #VB-NH 13A4.**

53. James B. Hurwitz is the Western United States Regional Sales Manager for Telecast Fiber Systems, Inc. ("Telecast"). He is also the Product Manager for Telecast's

"Copperhead" device.  See Affidavit of James B. Hurwitz, attached as Exhibit L ("Hurwitz Aff.") at ¶ 2.

**PAG'S RESPONSE:  PAG lacks sufficient information to admit or deny this paragraph, so it is deemed denied. PAG needs general discovery to fully respond to this paragraph.**

54.    Telecast is a Massachusetts corporation formed in 1991.  Telecast is a leading manufacturer of portable and fixed fiber optic systems for television broadcast production and other high performance video/audio communications.  Its video, audio, and communications systems are used worldwide by TV networks, teleproduction companies, private and government institutions and facilities, and telecommunications providers. See Ex. L, Hurwitz Aff. at ¶ 3.

**PAG'S RESPONSE:  PAG lacks sufficient information to admit or deny this paragraph, so it is deemed denied. PAG needs general discovery to fully respond to this paragraph.**

55.    Telecast manufactures a device, called a "Copperhead," which is a fiber optic multiplexing system that is adapted to mount directly between a video camera and camera battery pack, eliminating the need for triaxial adapters or other electrical cables at the camera and remote equipment.  A fiber optic cable carries upstream and downstream television signals between the camera-mountable transceiver and a remote base station transceiver.  James B. Hurwitz is one of the inventors of this device.  See id., Hurwitz Aff. at ¶ 6.

**PAG'S RESPONSE:  PAG lacks sufficient information to admit or deny this paragraph, so it is deemed denied. PAG needs general discovery to fully respond to this paragraph.**

56.    Depending on customer specification, the Copperhead device comes equipped from its manufacturer with either an Anton/Bauer, Sony or PAG male plate, and is mounted to the corresponding female counterpart on the camera. See id., Hurwitz Aff. at ¶ 7.

**PAG'S RESPONSE:  PAG lacks sufficient information to admit or deny this paragraph, so it is deemed denied. PAG needs general discovery to fully respond to this paragraph.**

57.    The standard Copperhead device is typically powered through a battery source.  The Copperhead "PowerPlus" device, an accessory to the standard "Copperhead," is powered directly through a hybrid copper/fiber optic cable, as opposed to a battery.  See id., Hurwitz Aff. at ¶ 8.

**PAG'S RESPONSE:  PAG lacks sufficient information to admit or deny this paragraph, so it is deemed denied. PAG needs general discovery to fully respond to this paragraph.**

58.    Thomas Dickinson is the General Manager of Bexel Corp. ("Bexel"). See Affidavit of Thomas Dickinson, attached hereto as Exhibit M ("Dickinson Aff.") at ¶ 2.

**PAG'S RESPONSE:  PAG lacks sufficient information to admit or deny this paragraph, so it is deemed denied. PAG needs general discovery to fully respond to this paragraph.**

59.    Bexel was formed in 1981. It specializes in providing video and camera equipment and ancillary support products to the film production industry.  Bexel has the largest inventory of rental equipment in the world for professional video, audio and customer specialty rental configurations.  Bexel clients range from individual customers to outfitting all equipment for large productions such as broadcast television shows and the Olympics.  Bexel frequently designs and fabricates tailor-made technical solutions to address special needs presented by its customers. See Ex. M, Dickinson Aff. at ¶ 3.

**PAG'S RESPONSE:  PAG lacks sufficient information to admit or deny this paragraph, so it is deemed denied. PAG needs general discovery to fully respond to this paragraph.**

60.    Preston Cinema Systems ("Preston") makes a device known as the FI+Z which can attach to the back of a camera via an Anton/Bauer female plate. See id., Dickinson Aff. at ¶ 10.

**PAG'S RESPONSE:  PAG lacks sufficient information to admit or deny this paragraph, so it is deemed denied. PAG needs general discovery to fully respond to this paragraph.**

61.    The FI+Z allows a zoom lens on the camera to be operated remotely.  It is attached to the back of the system with the female plate on the camera and the male plate on the device. The device can be powered remotely, in which case no power unit is attached to it.  It can also be powered by a battery pack.  The device comes equipped with a female plate (the manufacturer is specified by the customer) and a battery pack with a corresponding male plate is then attached to the power unit and the camera.  When a charge is required, the battery is released from the back-most connection; the device is not released to charge a battery. See id., Dickinson Aff. at ¶ 11.

**PAG'S RESPONSE:  PAG lacks sufficient information to admit or deny this paragraph, so it is deemed denied. PAG needs general discovery to fully respond to this paragraph.**

62.    Products Bexel has considered in the past include a DVC-820 Down Converter and DV Encoder for HD Acquisition (made for Panasonic cameras) and its counterpart the DVC-800 (made for Sony cameras), both made by Miranda Corporation. These devices are designed to enhance electronic acquisition of material using HD cameras such as the Sony HD CAM or Panasonic AJ-HDC27F. The DVC-800/820 units provide a unique combination of outputs and functionality to facilitate monitoring, and rough cut editing in the preparation of dailies while a photographer is on site. See id., Dickinson Aff. at ¶ 12.

**PAG'S RESPONSE: PAG lacks sufficient information to admit or deny this paragraph, so it is deemed denied. PAG needs general discovery to fully respond to this paragraph.**

63.    The DVC-units must be attached to the back of a camera. The DVC-800-IDX model mates to a Sony HD CAM, which camera uses a standard Sony V mount female plate. The DVC-800-IDX has a Sony male plate affixed to it, which is then attached directly to that V mount. See id., Dickinson Aff. at ¶ 13.

**PAG'S RESPONSE: PAG lacks sufficient information to admit or deny this paragraph, so it is deemed denied. PAG needs general discovery to fully respond to this paragraph.**

64.    The DVC-820-ANTON is attached directly to a Panasonic HD camera using the Anton/Bauer female mount. The DVC-820-ANTON attaches directly to that mount. The DVC-820-ANTON itself comes with a plate having three mushroom lugs and an electrical terminal. The lugs fit into the holes of the female plate and the terminal on the male and female plates are connected when the attachment is made. See id., Dickinson Aff. at ¶ 14.

**PAG'S RESPONSE: PAG lacks sufficient information to admit or deny this paragraph, so it is deemed denied. PAG needs general discovery to fully respond to this paragraph.**

65.    The device is designed to be affixed to the camera through not only use of the Sony or Anton/Bauer mounting plate, but also by two screws which are affixed to the camera. The device does not release from the camera unless those screws are removed. In situations where a battery pack is then connected to the device, it is the battery pack that is released, not the device. See id., Dickinson Aff. at ¶ 15.

**PAG'S RESPONSE: PAG lacks sufficient information to admit or deny this paragraph, so it is deemed denied. PAG needs general discovery to fully respond to this paragraph.**

66.   The DVC-820 device may be powered by an energy source located in a belt or remaining
      stationary on a table through use of a cable and plug.  See id., Dickinson Aff. at ¶ 16.

      **PAG'S RESPONSE:   PAG lacks sufficient information to admit or deny this
paragraph, so it is deemed denied. PAG needs general discovery to fully respond to this
paragraph.**

67.   Alternatively, the DVC-820 device may be powered by a battery pack such as that
      provided by Sony, Anton/Bauer, or PAG.  Miranda sells adapters for the DVC device that
      accommodate battery packs by each of the manufacturers.  See id., Dickinson Aff. at
      ¶ 17.

      **PAG'S RESPONSE:   PAG lacks sufficient information to admit or deny this
paragraph, so it is deemed denied. PAG needs general discovery to fully respond to this
paragraph.**

68.   The Evertz down converter, model number F9-2410 MD, operates similarly to the way
      the Miranda device works and accomplishes the same purpose.  See id., Dickinson Aff. at
      ¶ 18.

      **PAG'S RESPONSE:   PAG lacks sufficient information to admit or deny this
paragraph, so it is deemed denied. PAG needs general discovery to fully respond to this
paragraph.**

69.   The Evertz device is sold to be attached to the already existing camera plate (based upon
      the customer's specifications) by use of a male counterpart.  The back of the device
      comes equipped with another female plate (again, as ordered by the customer) to which
      the corresponding battery pack (equipped with the male plate) is then attached.  The unit
      and camera are then powered by that battery pack.  When a charge is required, the battery
      is released from the back-most connection; the device is not released to charge a battery.
      See id., Dickinson Aff. at ¶ 19.

      **PAG'S RESPONSE:   PAG lacks sufficient information to admit or deny this
paragraph, so it is deemed denied. PAG needs general discovery to fully respond to this
paragraph.**

70.   The FireStore FS-3 and DR-DV5000 are hard disk video recording devices.  See id.,
      Dickinson Aff. at ¶ 20.

      **PAG'S RESPONSE:   PAG lacks sufficient information to admit or deny this
paragraph, so it is deemed denied. PAG needs general discovery to fully respond to this
paragraph.**

71.    The FS-3 mounts to Sony cameras with the standard Sony V mount and to Panasonic cameras with the standard Anton/Bauer female mount. The device is sold with the male plate that connects with the female plate on the camera. The unit may be powered either remotely through a battery belt or a stationary power supply, or through a battery connection. Focus Enhancements, in fact, sells units with Sony, Anton/Bauer or PAG configurations. The battery, when change is required, is released from the back-most connection, the device is not released to change a battery. The DR-DV5000 is designed specifically for a JVC Camcorder and is attached and operates in the same fashion as the FS-3. See id., Dickinson Aff. at ¶ 21.

    **PAG'S RESPONSE:  PAG lacks sufficient information to admit or deny this paragraph, so it is deemed denied. PAG needs general discovery to fully respond to this paragraph.**

72.    Bexel has also designed, fabricated, and rented a power distribution box that attaches directly to the Anton/Bauer female plate. The box receives power from a remote source (there is no battery pack) and distributes it, through wiring, to the camera and through cables to a script light (a device for powering the zoom lens and other ancillary uses). The camera has the Anton/Bauer female plate and the box has the Anton/Bauer male plate and these are mechanically and electrically connected. See id., Dickinson Aff. at ¶ 22.

    **PAG'S RESPONSE:  PAG lacks sufficient information to admit or deny this paragraph, so it is deemed denied. PAG needs general discovery to fully respond to this paragraph.**

73.    The industry also uses wireless audio signal receivers, including the Azden 1000 URX/AB made by Azden Corp. The 1000 URX version attaches directly to the camera with Velcro strips. The 1000 URX/AB version, however, attaches directly to the camera by use of the camera -side Anton/Bauer female plate and an Anton/Bauer male plate attached to the receiver. The device may then be powered remotely, or a user may take advantage of the female plate on the reverse side of the receiver, to attach an Anton/Bauer battery pack (with male plate). When a charge is required, the battery is released from the back-most connection; the device is not released to charge a battery. See id., Dickinson Aff. at ¶ 23.

    **PAG'S RESPONSE:  PAG lacks sufficient information to admit or deny this paragraph, so it is deemed denied. PAG needs general discovery to fully respond to this paragraph.**

74.    All of the female mounts for the Panasonic HD camera that Bexel has in its possession are marked with U.S. Patent No. 4,810,204. See id., Dickinson Aff. at ¶ 24.

**PAG'S RESPONSE:    PAG lacks sufficient information to admit or deny this paragraph, so it is deemed denied. PAG needs general discovery to fully respond to this paragraph.**

75.    J. Thomas Webb is the Chief Executive Officer of Camplex Corp. ("Camplex"). See Affidavit of J. Thomas Webb, attached hereto as Exhibit N ("Webb Aff.") at ¶ 2.

**PAG'S RESPONSE: Admitted.**

76.    Camplex was formed in 1989. It specializes in designing and making and marketing electronic signal conveyance products for the television production industry. See Ex. N, Webb Aff. at ¶ 3.

**PAG'S RESPONSE:    PAG lacks sufficient information to admit or deny this paragraph, so it is deemed denied. PAG needs general discovery to fully respond to this paragraph.**

77.    Camplex designed and makes a device, called a "CP 301B," which consists of a lightweight camera adapter and rack-mountable control unit which multiplexes video and audio signals through a single coax cable between the production control center and the camera location. See id., Webb Aff. at ¶ 5 and Ex. 1 thereto.

**PAG'S RESPONSE: Admitted.**

78.    The Camplex CP 601 is another modular system that Camplex designed and makes that sends component video signals from the camera to the control point on a single cable. The system consists of a control unit and the camera adapter. See id., Webb Aff. at ¶ 6 and Ex. 2 thereto.

**PAG'S RESPONSE: Admitted.**

79.   The CP 301B and CP 601 are often sold with a plate to allow mechanical docking of the device with the Anton/Bauer female plate attached to the camera. The adapter plate is model number CAB-23. Camplex also sells adapter plates that similarly configure its device for use with Sony female plates (Model No. CBP-23) and PAG female plates (PAG-23). In each instance, the female plate on the camera simply acts as the docking mechanism for our device. The customer specifies these particular docking requirements as part of our configuration checklist. See id., Webb Aff. at ¶ 7 and Ex. 3 thereto at § K.

**PAG'S RESPONSE:   PAG lacks sufficient information to admit or deny this paragraph, so it is deemed denied. PAG needs general discovery to fully respond to this paragraph.**

80.   The CAB-23 consists of a metal plate to which are affixed three-headed projections which mate with the holes in the Anton/Bauer female plate. There is, however, no electrical terminal. The connection to the Anton/Bauer female plate is only mechanical, not electrical. See id., Webb Aff. at ¶ 7 and Ex. 2 thereto at 1, 2.

**PAG'S RESPONSE:   Denied to the extent that this paragraph incorporates claim terms that have not been construed by the court.**

81.   As typically sold, the CP 301B and CP 601 are powered remotely through a cable connected to a stationary power source or battery pack. There is no direct battery connection that makes use of the hotshoe (the Anton/Bauer electrical terminals). See id., Webb Aff. at ¶ 8.

**PAG'S RESPONSE:   PAG lacks information as to the meaning of "hotshoe (the Anton/Bauer electric terminals)" to be able to admit or deny this paragraph, so it is deemed denied.**

82.   When Camplex first designed the Camplex CP 301B, Camplex contacted Anton/Bauer to advise Anton/Bauer of Camplex's intention to make use of Anton/Bauer's Gold Mount because Camplex knew that Anton/Bauer held the patents, having seen that the plates were marked with patent numbers. Anton/Bauer had no objection to Camplex's use of Anton/Bauer's female plate in this way. Camplex currently makes its own male mechanical adapter plates, which Camplex engineered to fit the Anton/Bauer female plates. When Camplex's customers do not have an Anton/Bauer female plate, Camplex purchases the female plates used in the CPN 2378 from Anton/Bauer. See id., Webb Aff. at ¶ 12.

**PAG'S RESPONSE:   PAG lacks sufficient information to admit or deny this paragraph, so it is deemed denied. PAG needs general discovery to fully respond to this paragraph.**

83.     Attached hereto as Exhibit O is a photograph of the Aspen NP/AB.

**PAG'S RESPONSE:  PAG admits that Exhibit O appears to be a photograph of the Aspen NP/AB.**

84.     The Aspen NP/AB device employs the three-stud mount system for interfacing NP-style batteries with the Anton/Bauer female plate.  See Ex. C, DeSorbo Aff. at ¶ 13.

**PAG'S RESPONSE:  Admitted.**

85.     This device, however, does not employ the specific mechanical connection with releasable locking means which allows for the quick release capability taught under the '204 Patent.  See id.  Rather, the Aspen NP/AB has a different mechanical connection. One of its headed projections is purposefully smaller to avoid the pin assembly discussed in Claim 9.  Id.

**PAG'S RESPONSE:  Denied to the extent that this paragraph incorporates claim terms that have not been construed by the court.**

86.     Aspen forms its locking connection by use of a lever on its male plate which engages the perimeter of the Anton/Bauer female plate when the two are fully mated.  The Aspen NP/AB release is also different from Claim 9.  To release the Aspen adapter, the user must depress the lever on the side of the adapter, releasing the adapter from the '204 female plate, and moving the two components apart.  See id.

**PAG'S RESPONSE:  PAG cannot admit or deny this paragraph because the Court has not construed claim 9 of the '204 patent to enable comparison to the Aspen NP/AB device.**

87.     Attached hereto as Exhibit P is a copy of the Frezzi Energy Systems Catalog.

**PAG'S RESPONSE:  PAG admits that Exhibit P appears to be a copy of the Frezzi Energy Systems Catalog.**

88.     Attached hereto as Exhibit Q is a copy of the Frezzolini 2004 Products Catalog.

**PAG'S RESPONSE:  PAG admits that Exhibit Q appears to be a copy of the Frezzolini 2004 Products Catalog.**

89.     Attached hereto as Exhibit R is the IDX Absolute Power Solutions Product Catalog.

**PAG'S RESPONSE:  PAG admits that Exhibit R appears to be a copy of the IDX Absolute Power Solutions Products Catalog.**

90.    Attached as Exhibit S is a photograph of the IDX NH-100AB.

**PAG'S RESPONSE:  PAG admits that Exhibit S appears to be a photograph of the IDX NH-100AB.**

91.    Attached as Exhibit T is a photograph of the Frezzolini ABSO1FR Adapter Plate for Anton/Bauer mounts to Sony batteries.

**PAG'S RESPONSE:  PAG admits that Exhibit T appears to be a photograph of the Frezzolini ABS01FR Adapter Plate.**

92.    Attached as Exhibit U is the 2003 Anton/Bauer Product Catalog, as well as photographs of the Anton/Bauer ABSO XLR.

**PAG'S RESPONSE:  PAG admits that Exhibit U appears to be the 2003 Anton/Bauer Product Catalog and photographs of the Anton/Bauer ABS0 XLR.**

93.    Attached as Exhibit V is a true and accurate copy of United States Patent No. 6,638,086 B2.

**PAG'S RESPONSE:  Admitted.**

94.    Attached as Exhibit W are photographs of the PAG 9518 PAGlok Adaptor.

**PAG'S RESPONSE:  Admitted.**

95.    Attached as Exhibit X is a copy of PAG's 2003 Product Catalog.

**PAG'S RESPONSE:  Admitted.**

96.    In the professional camera industry, there are four significant manufacturers of batteries: Anton/Bauer, PAG, Sony and IDX.  See Ex. C, DeSorbo Aff. at ¶ 15.  The batteries produced by each of these manufacturers are configured in such a way so that it regularly mates with its own unique connector plate and are incompatible with one another by design.  Id.

**PAG'S RESPONSE:  PAG lacks sufficient information to admit or deny this paragraph, so it is deemed denied. PAG needs general discovery to fully respond to this paragraph.**

97.    The PAG 9518 is specifically marketed by PAG as being compatible with Anton/Bauer batteries.  See Ex. X, PAG's catalog.  PAG has acknowledged that its Model 9518 "adapts PAGlok batteries with Anton/Bauer-type mounts."  See Exhibit Y attached

hereto, reproducing a true and accurate copy of PAG's Supplemental Responses to Plaintiff's Interrogatories at No. 6.

**PAG'S RESPONSE:  Admitted.**

98.    The PAG 9518 enables camera operators to utilize PAG batteries in conjunction with a camera that is equipped with an Anton/Bauer female plate connection. The PAG 9518 does not practice a releasable connection for a battery pack or the like comprised of only two plates, the male and female. The 9518 adapter has intervening elements between the DC device and the battery other than the Anton/Bauer female and male plates. The release when activated on the Anton/Bauer female plate, releases the adaptor only; the battery remains attached and can neither be replaced nor charged. See Ex. C, DeSorbo Aff. at ¶ 7.

**PAG'S RESPONSE:  Denied to the extent that this paragraph incorporates claim terms that have not been construed by the court.**

99.    Attached as Exhibit Z is a photograph of the Anton/Bauer NP/BP adapter.

**PAG'S RESPONSE:  PAG admits that Exhibit Z appears to be a photograph of the Anton/Bauer NP/BP adapter.**

100.   Anton/Bauer manufactures the NP/BP battery adaptor. In this device, a version of the male plate is affixed to a container that in turn is capable of holding an NP battery. The container is then connected to the camera through the female plate. There is no direct connection to the battery or the like. Rather, the direct connection from the battery pack is to the container that holds the battery. In fact, the battery is removed by lifting the lid on the container while the container remains affixed to the adapter plate. The '204 releasable connection only releases the adapter from the female '204 plate. See id., DeSorbo Aff. at 18; see Ex. B, DeSorbo Depo. at p. 66.

**PAG'S RESPONSE:  Denied to the extent that this paragraph incorporates claim terms that have not been construed by the court.**

101.   Attached as Exhibit AA hereto is a Miranda Corporation Product Catalog concerning the DVC-800.

**PAG'S RESPONSE:  PAG admits that Exhibit AA appears to be the Miranda Corporation Product Catalog.**

102.   Attached as Exhibit BB hereto is an Everetz Product Catalog displaying the F9-2410MD.

**PAG'S RESPONSE:  PAG admits that Exhibit BB appears to be the Evertz Product Catalog.**

103.    Attached as Exhibit CC hereto are product materials for  Focus Enhancements Model
        Nos. FS-3 and DR-DV 5000, as well as photographs of the Firestore FS-3.

        **PAG'S RESPONSE:  PAG admits that Exhibit CC appears to be product materials
for Focus Enhancements and photographs of the Firestore FS-3.**

104.    Attached as Exhibit DD hereto is an illustration of the Azden 1000 URX/AB and
        photographs of same.

        **PAG'S RESPONSE:  PAG admits that Exhibit DD appears to be an illustration of
the Azden 1000 URX/AB and photographs of same.**

105.    PAG has not conducted an independent analysis to determine whether there are <u>any</u> non-
        infringing alternatives, and takes <u>no position</u> with respect to whether <u>any</u> noninfringing
        alternatives exist.  <u>See</u> Ex. D, PAG Depo. at pp. 135-36; <u>see</u> <u>id</u>. at pp. 122-123
        (concerning IDX NH-100 AB); pp. 171-172 (Anton/Bauer NP-BP Adaptor); pp. 193-94
        (Aspen NP/AB); pp. 197-198 (Azden Model 1000 URX/AB); pp. 198-199 (ABSO XLR);
        pp. 204-206 (Focus Enhancements Model DR-DV 5000); pp. 207-208 (Focus
        Enhancements Fire Store FS-3); pp. 117-120 (Sony SOABSO1FR); pp. 120-134 (IDX
        NH-100AB); pp. 198-99 (Anton/Bauer ABSO XLR); pp. 213-216 (Camplex CAB-23);
        pp. 216-221 (Aspen PSM-160); pp. 222-223 (Absolute VB-NH13A4).

        **PAG'S RESPONSE:  Denied.**

## DISPUTED ISSUES OF MATERIAL FACT

1.      Comparison to each of the devices identified by Plaintiff as a noninfringing use for the female plate of the '204 patent cannot be made until the Court interprets the claims at issue.

2.      There has been no <u>Markman</u> hearing in this litigation to date.

3.      This Court has not construed the claim terms of the '204 patent as a matter of law.

4.      The phrase "or the like" appears in the preamble of claim 9.  <u>See</u> Exhibit "A," Column 12, lines 31-62.

5.      The phrase "or the like" appears in the preamble of claim 11.  <u>See</u> Exhibit "A," Column 12, lines 31-62.

6.      Plaintiff's Brief in Support of its Motion for Summary Judgment does not define the ordinary meaning for the claim phrase "or the like."  <u>See</u> Plaintiff's Brief at 23.

7.      The only meaning of the claim phrase "or the like" in Plaintiff's Brief in support of its Motion for Summary Judgment is based on extrinsic evidence testimony of Plaintiff's CEO. <u>See</u> Plaintiff's Brief at 23.

8.      Plaintiff's Brief in support of its Motion for Summary Judgment contains no claim interpretation for the claim phrase "a plurality of depending slots" in claim 9 of the '204 patent. <u>See</u> Plaintiff's Brief at 13-29.

9.      Plaintiff's Brief in support of its Motion for Summary Judgment contains no claim interpretation for the claim phrase "one elongate terminal" in claim 9 of the '204 patent. <u>See</u> Plaintiff's Brief at 13-29.

10.    Plaintiff's Brief in support of its Motion for Summary Judgment contains no claim interpretation for the claim phrase "elongate in the same direction" in claim 9 of the '204 patent. See Plaintiff's Brief at 13-29.

11.    Plaintiff's Brief in support of its Motion for Summary Judgment contains no claim interpretation for the claim phrase "a plurality of spaced headed projections" in claim 9 of the '204 patent. See Plaintiff's Brief at 13-29.

12.    Plaintiff's Brief in support of its Motion for Summary Judgment contains no claim interpretation for the claim phrase "head and leg portions" in claim 9 of the '204 patent. See Plaintiff's Brief at 13-29.

13.    Plaintiff's Brief in support of its Motion for Summary Judgment contains no claim interpretation for the claim phrase "elongated mating terminal" in claim 9 of the '204 patent. See Plaintiff's Brief at 13-29.

14.    Plaintiff's Brief in support of its Motion for Summary Judgment contains no claim interpretation for the claim phrase "one terminal within a mating terminal" in claim 9 of the '204 patent. See Plaintiff's Brief at 13-29.

15.    Plaintiff's Brief in support of its Motion for Summary Judgment contains no claim interpretation for the claim phrase "means … for engaging" in claim 9 of the '204 patent.

16.    The claim phrase "means … for engaging" is a means plus function claim term that is construed pursuant to 35 U.S.C. § 112, paragraph six.

17.    Plaintiff's Brief in support of its Motion for Summary Judgment contains no claim interpretation for the claim phrase "relative movement" in claim 9 of the '204 patent. See Plaintiff's Brief at 13-29.

18.     Plaintiff's Brief in support of its Motion for Summary Judgment contains no claim interpretation for the claim phrase "path of movement" in claim 9 of the '204 patent. <u>See</u> Plaintiff's Brief at 13-29.

19.     The word "direct" is not recited in claim 9 of the '204 patent. <u>See</u> Exhibit "A," Column 12, lines 31-62.

20.     The word "single" is not recited in claim 9 of the '204 patent. <u>See</u> Exhibit "A," Column 12, lines 31-62.

21.     The phrase "mechanical connection" is not recited in claim 9 of the '204 patent. <u>See</u> Exhibit "A," Column 12, lines 31-62.

22.     The phrase "electrical connection" is not recited in claim 9 of the '204 patent. <u>See</u> Exhibit "A," Column 12, lines 31-62.

23.     The phrase "elongated electrical terminal" is not recited in claim 9 of the '204 patent. <u>See</u> Exhibit "A," Column 12, lines 31-62.

24.     The phrase "the elongated electrical terminal(s) on the male plate are inserted in the corresponding electrical terminal(s) on the female plate" is not recited in claim 9 of the '204 patent. <u>See</u> Exhibit "A," Column 12, lines 31-62.

25.     The claim term "comprising" in claim 9 of the '204 patent is a well known transitional phrase that is inclusive or open-ended and does not exclude additional unrecited elements. <u>See</u> Exhibit "A," Column 12, lines 31-62.

26.     Plaintiff places no express restriction on the use of its Gold Mount female plates at the time of sale. <u>See</u> Plaintiff's Brief at 8.

27.     Plaintiff argued to the Federal Circuit as a factor supporting its position that the circumstances of the sale of its female plates do not support inference of a license that Plaintiff marks the female plates with the number of the '204 patent.

28.     DeSorbo Deposition Exhibit 6 is one of Anton/Bauer's Gold Mount female plates that is not marked with the '209 patent number, even though Plaintiff contends that it is covered by the '209 patent.

29.     In Plaintiff's Local Rule 9(c)(1) Statement submitted with Plaintiff's Cross Motion of Summary Judgment, which was filed on or about May 6, 2002 (Docket No. 49), the following statement is contained on page 5: "Plaintiff's "female plate" has no non-infringing uses."

30.     In Plaintiff's Cross Motion of Summary Judgment, which was filed on or about May 6, 2002 (Docket No. 49), the following statement is contained on page 4: "[T]he female and the male plates have no use at all until and unless they are combined with one another."

31.     In Plaintiff, Anton/Bauer, Inc.'s Memorandum of Law In Response to the Court's April 16, 2002 Order, which was filed on or about April 16, 2002 (Docket No. 51), the following statement is contained on page 4:

> [T]he unpatentable individual components of the patented '204 connection (the male and female plates) would not be individually covered by the claims of the '204 patent, but in view of the fact that they have no other use but as a practical matter to be used in an infringing '204 combination....

32.     In Plaintiff, Anton/Bauer, Inc.'s Memorandum of Law Concerning Combination Patents, which was filed on or about May 13, 2002 (Docket No. 53), the following statement is contained on page 6:

> [T]he combination of the '204 [patent] consists of its two primary elements - both in and of themselves not staple articles of commerce and neither suitable for any non-infringing use.

33.    In Plaintiff, Anton/Bauer, Inc.'s Memorandum of Law Concerning Combination Patents, which was filed on or about May 13, 2002 (Docket No. 53), the following statement is contained on page 6:

> [In the Black & Decker patents, t]he components are unpatented, 'non-staple' items that have no use other than their use within the patented combination. They cannot be used in any way other than in the combination. These are the exact same circumstances surrounding the combination patent in this case.

34.    Neither Anton/Bauer's letters of April 23, 2001 nor April 6, 1998 states that Anton/Bauer does not condone infringing uses of its Anton/Bauer female plates.

Respectfully submitted this 29th day of June, 2004.

_____

Stephen R. Risley  (ct22652)
J. Scott Culpepper  (ct22653)
N. Andrew Crain (ct24514)
**THOMAS, KAYDEN, HORSTEMEYER
& RISLEY, L.L.P.**
100 Galleria Parkway, Suite 1750
Atlanta, Georgia 30339
Telephone: (770) 933-9500
Facsimile: (770) 951-0933

Brien P. Horan (ct06870)
**ROBINSON & COLE, LLP**
280 Trumbull Street
Hartford, Connecticut 06103
Telephone: (860) 275-8200
Facsimile: (860) 275-8299

Counsel for Defendant

*00148085*

27

IN THE UNITED STATES DISTRICT COURT
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ANTON/BAUER, INC., | ) | |
|     Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 3:01-CV-577-CFD |
| | ) | |
| PAG, LTD. | ) | |
|     Defendant, Counterclaim and | ) | |
|     Third Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANTON/BAUER, INC. and | ) | |
| ALEX DESORBO, | ) | |
|     Counterclaim and Third | ) | |
|     Party Defendants. | ) | |

## CERTIFICATE OF SERVICE

I certify that on the 29th day of June, 2004, a true and correct copy of the above and foregoing "LOCAL RULE 56(a)(2) STATEMENT" was served on the following counsel of record:

James T. Shearin, Esq.
Brian C. Roche, Esq.
**PULLMAN & COMLEY, LLC**
850 Main Street
Bridgeport, Connecticut 06604

Allen D. Brufsky, Esq.
**HAHN LOESER + PARKS, LLP**
3301 Bonita Beach Road, Suite 308
Bonita Springs, Florida 34134

by depositing a copy of the same in the United States mail with sufficient first class postage.

N. Andrew Crain (ct24514)
Counsel for PAG, Limited