# EXHIBIT 4
# PART 1

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANTON/BAUER, INC. <br>    PLAINTIFF <br> VS. <br><br> PAG, LTD. <br>    DEFENDANT <br> VS. <br><br> ANTON/BAUER, INC. AND <br> ALEX DESORBO <br>    DEFENDANT | CIVIL ACTION <br> NO. 3:01-CV-577 (CFD) <br><br><br><br><br> MAY 25, 2004 |

## MEMORANDUM OF LAW IN SUPPORT OF THE PLAINTIFF, ANTON BAUER, INC.'S MOTION FOR SUMMARY JUDGMENT

At issue in this dispute is United States Patent No. 4,810,204 (the "'204 Patent"). Pursuant to Fed. R. Civ. P. 56(c) and D. Conn. L. Civ. R. 56 & 7(a), the plaintiff, Anton Bauer, Inc. ("Anton/Bauer"), submits this memorandum of law in support of its motion for summary judgment on the defendant, PAG, Ltd.'s ("PAG") implied license defense.

In order to succeed on its implied license defense, PAG must satisfy the following factors. First, PAG is obligated to show that the circumstances of the sale of the female plate plainly indicate that an implied license should be inferred. Second, PAG must demonstrate that the female plate of the '204 Patent has no non-infringing use. PAG cannot satisfy either prong of its implied license defense. The circumstances of sale surrounding Anton/Bauer's female plate show that Anton/Bauer has never abandoned its intellectual property rights. Moreover, during the course of discovery specifically directed to the implied license issue, Anton/Bauer has identified a wide variety of non-infringing uses of the '204 Patent's female plate. For all of these

reasons set forth in greater detail below, Anton/Bauer respectfully requests that its motion for summary judgment be granted and that PAG's cross-motion be denied.

## I. PROCEDURAL HISTORY

Anton/Bauer commenced this action under the patent laws of the United States, 35 U.S.C. § 271 et seq., for infringement of the United States Patent owned by Anton/Bauer, the '204 Patent. In its Answer, PAG raised numerous counterclaims against Anton/Bauer for attempted monopolization and monopolization under 15 U.S.C. § 2, violation of 15 U.S.C. § 1125(a) (the Lanham Act § 43(a)), violation of Conn. Gen. Stat. § 42-110b and § 42-110g ("CUTPA"), and for defamation. PAG further sought a declaratory judgment on the basis of invalidity and noninfringement of the '204 Patent. Additionally, PAG filed a Third Party Complaint against Anton/Bauer and Alex DeSorbo ("Mr. DeSorbo") asserting violations of Federal unfair competition, false description and false representation under 15 U.S.C. § 1125(a), violation of CUTPA, and for defamation.

On June 12, 2002, this Court, after a multi-day hearing on Anton/Bauer's Motion for Preliminary Injunction, granted said preliminary injunction ("Court's Decision"). Summarily stated, the District Court granted the preliminary injunction on the basis that the validity of the patent in suit was not questioned (Court's Decision at 5), nor was there any doubt as to PAG's contributory and induced infringement of that patent. Id. at 14-15. The Court went on to hold that PAG's defenses of implied license, exhaustion, staple article and permissible repair lacked merit. Id. at 7-15. Thereafter, PAG appealed the granting of that preliminary injunction. The Federal Circuit reversed this Court's ruling on May 21, 2003. Anton/Bauer, Inc. v. PAG, Ltd., 329 F.3d 1343 (Fed. Cir. 2003). The Federal Circuit concluded that Anton/Bauer could not demonstrate likelihood of success on the merits in the face of PAG's implied license defense, at least not based upon the record then before the court.

2

On June 6, 2003, PAG renewed its Motion for Summary Judgment, originally filed on April 1, 2003, wherein it argued that the implied license defense necessitated a finding of non-infringement in its favor. The parties subsequently engaged in substantial motion practice over the issue of whether or not Anton/Bauer was entitled to conduct discovery under Rule 56(f) of the Federal Rules of Civil Procedure in order to respond to PAG's renewed motion for summary judgment. After oral argument, this Court allotted the parties ninety days, which was subsequently extended by further order of the Court, to complete discovery solely on the issue of PAG's implied license defense. This motion followed.

## II.   FACTUAL BACKGROUND

Plaintiff, Anton/Bauer is a corporation duly organized and existing under the laws of the State of Delaware having its principal place of business at 14 Progress Drive, Shelton, Connecticut 06480. Anton/Bauer is in the business of manufacturing battery packs especially designed for use to power professional portable video cameras. See Stipulated Facts of Plaintiff Anton Bauer, Inc. and PAG, Ltd., dated June 6, 2001. ("Stipulation"), Exhibit A,[1] at ¶ 5. Anton/Bauer's battery packs are constructed to incorporate a releasable connection between the camera and batteries contained within the pack as shown and claimed in U.S. Patent No. 4,810,204. The battery pack connection of the '204 patent-in-suit includes (1) a flat female plate (known as the Gold Mount™) having a plurality of keyhole slots and at least one elongated electrical terminal (the female plate is also manufactured by Anton/Bauer and is normally affixed to the camera or other electrically operated device, such as a battery charger); and (2) a flat male plate including a plurality of shaped headed projections adapted to be received in the keyhole slots to releasable lock the female and male plates together, the male plate also including at least

---

[1]   All exhibits referenced in this memorandum of law are attached to Anton/Bauer's Local Rule 56(a)1 Statement dated May 25, 2004.

3

one elongated electrical terminal which mates with the electrical terminal on the female plate when the plates are locked together (the male plate is usually a portion of the housing of the pack containing an electrical battery or AC-to DC power source for powering the camera through the mating terminal connection); and (3) a releasable locking means on the female plate for engaging at least one of the headed projections for locking and preventing relative movement between the plates once they are assembled in mating relation. See Ex. A, Stipulation at ¶6. The '204 patent-in-suit comprises 18 claims. Plaintiff asserts that PAG has infringed claims 9 and 11 of the '204 patent. See id., Stipulation at ¶21. Claims 9 and 11 of the '204 patent require, inter alia, a "male plate," a "female plate," and a "releasable locking mechanism on said female plate." See id., Stipulation at ¶22. The "releasable locking mechanism on said female plate" required by the claims of the '204 patent must comprise (1) at least one rotatable member on the backside of the female plate, (2) a pin on said rotatable member between said member and the backside of the female plate, and (3) a means urging the member to a closed condition with said pin disposed in the path of movement of said headed projection inserted in said slot. See id., Stipulation at ¶23.

The battery packs at issue in this lawsuit are primarily directed to the professional camera/battery market. In this market, Anton/Bauer generally sells the female plate in two ways. See id., Stipulation at ¶11. The first instance occurs when a camera manufacturer purchases a Gold Mount™ "female plate" directly from plaintiff. The Gold Mount™ generically includes female plates of the type described in the '204 patent. The camera manufacturer incorporates the "female plate" into a camera as an OEM-type part, and then, sells the camera with the Gold Mount™ "female plate" attached thereto to the public. See id., Stipulation at ¶12. The second instance occurs when plaintiff sells its Gold Mount ™ "female plate" to end users, such as individuals or major television networks, as an after-market product. Id. See also Ex. B, a true

4

and accurate copy of select pages of the Depo. of Alex DeSorbo at p. 41, lines 23-24, p. 42, lines 6-10 [hereinafter, "DeSorbo Dep."].[2] Either way, the only way for the end user, a would-be direct infringer, to obtain the "releasable locking means on said female plate" required by claims 9 and 11 of the '204 patent, is by the sale, authorization, and consent to use by plaintiff. See Ex. A, Stipulation at ¶13. Anton/Bauer also manufactures and sells battery chargers for recharging its batteries. Anton/Bauer's charger employs the connection described in the preceding paragraph. See id., Stipulation at ¶7.

Defendant, PAG, Limited ("PAG") is a United Kingdom corporation based in London, England. PAG introduced its PAG L75 battery pack in the United States in April of 2000. See id., Stipulation at ¶1. The PAG L75 battery pack in question may be fitted to plaintiff's Gold Mount™ products employing a female plate with a latch as shown in Figs. 14-19 of the '204 Patent. See id., Stipulation at ¶2. PAG's accused L75 battery packs employ the male plate of the claimed releasable connection. See id., Stipulation at ¶3.

### III. STANDARD OF REVIEW ON SUMMARY JUDGMENT IN FEDERAL CIRCUIT

Patent cases are no different from any other type of litigation in terms of the burden placed on a summary judgment movant by Rule 56 of the Federal Rules of Civil Procedure. Howes v. Medical Components, Inc., 814 F.2d 638, 643 (Fed. Cir. 1987); SRI Int'l v. Matsushita Electric Corp., 775 F.2d 1107, 1116 (Fed. Cir. 1985). On a motion for summary judgment, the Court will construe all facts in the light most favorable to the non-movant. Dynacore Holdings Corp v. U.S. Philips Corp., 363 F.3d 1263, 1273 (Fed. Cir. 2004). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

---

[2] All pages of the DeSorbo Depo. cited herein are reproduced chronologically in Exhibit B.

that the moving party is entitled to judgment as a matter of law." International Rectifier Corp. v. Ixys Corp., 361 F.3d 1363, 1369 (Fed. Cir. 2004) (quoting Fed. R. Civ. P. 56(c)); see also Dynacore Holdings, 363 F.3d at 1273.

IV.   **DISCUSSION OF LAW**

   A.   **Standard of Implied License Defense**

The implied license defense is grounded in the notion that a patent holder should be estopped from claiming infringement where its actions have clearly demonstrated that it has abandoned the intellectual property rights embodied in its patent by implicitly creating a license for the use of the products covered by its patent. See generally Wang Laboratories, Inc. v. Mitsubishi Electronics America, Inc., 103 F.3d 1571, 1580 (Fed. Cir. 1997) Within the context of patent law, "an implied license merely signifies a patentee's waiver of the statutory right to exclude others from making, using or selling the patented invention." Id. (citation omitted). The Federal Circuit has held that "[a] patentee grants an implied license to a purchaser when (1) the patentee sells an article that has no noninfringing uses and (2) the circumstances of the sale plainly indicate that the grant of a license should be inferred." Anton/Bauer, Inc. v. PAG, Ltd., 329 F.3d 1343, 1350 (Fed. Cir. 2003). Although the availability of a non-infringing use can involve issues of fact, see, e.g., LG Electronics, Inc. v. Asustek Computer, Inc., 01-1552 CW, 2002 WL 31996860, *4 (N.D. Cal. Aug. 20, 2002), the existence of an implied license is ultimately a question of law, see Glass Equipment Dev., Inc. v. Besten, Inc., 174 F.3d 1337, 1341 (Fed. Cir. 1999). Notably, it is the party asserting the defense who has the burden to prove both prongs of the implied license test. Glass Equipment, 174 F.3d at 1342.

The "circumstances of sale" prong of the implied license test requires a fact-based determination, Hewlett-Packard Co. v. Repeat-O-Type Stencil Manufacturing Corp., 123 F.3d

6

1445, 1453 (Fed. Cir. 1997), as to whether the actions undertaken by the patentee have led another to believe it can practice the patented combination in an infringing manner with immunity. Wang, 103 F.3d at 1582. The courts have considered circumstances such as whether the infringer was coaxed by the patentee to enter the market, where the infringer was provided with designs and suggestions and led to believe it could infringe, and where the patentee unreasonably delayed in bringing the action. Wang, 103 F.3d at 1582.

In assessing the non-infringing alternatives prong of the implied license test, the alleged infringer must show that the article at issue has no noninfringing uses. See, e.g., United States v. Univis Lens, 316 U.S. 241, 249 (1942); Met-Coil Systems Corp. v. Kosners Unlimited, Inc., 803 F.2d 684, 685-87 (Fed. Cir. 1986) (affirming decision of district court). The Court is not concerned with whether the non-infringing alternatives are the most profitable, but only whether they are "reasonable." Glass Equip. Dev., Inc., 174 F.3d at 1343. This requirement places a heavy burden on the accused infringer because a noninfringing use may be broadly understood and need only be reasonable or practical. See, Bandag, Inc. v. Al Bolser's Tire Stores, Inc., 750 F.2d 903, 925 (Fed. Cir. 1974) (considering resale, modification, and idle time as reasonable noninfringing uses); see also General Elec. Co. v. Continental Lamp Works, Inc., 280 F. 846, 851 (2d Cir. 1922) (considering whether an element of a patented combination has no practical use other than in the practice of the invention). The law does not even require that reasonable non-infringing uses be of a commercial nature; "general scientific research and study" may constitute a non-infringing use. Trustees of Columbia Univ. v. Roche Diagnostics GMbH, 272 F. Supp. 2d 90, 115 (D. Mass. 2002).

7

## V.  ARGUMENT

### 1.  Circumstances of Sale

The first prong of the implied license test addresses the circumstances of the sale. In this case, PAG has argued that the circumstances by which Anton/Bauer sells its female plate are such that end users would assume they have an implied right to use the PAG infringing male plate without violating the '204 patent. More specifically, PAG has argued that the absence of any express declaration by Anton/Bauer advising purchasers of limitations to which the female plate may be put eliminates Anton/Bauer's ability to seek the protections afforded by the '204 patent. Anton/Bauer submits that argument has no force.

While Anton/Bauer does not dispute that the sale of its female plates are not accompanied by express restriction as to the specific uses to which the female plate may be used, that fact alone is not enough for PAG to be entitled to judgment on the circumstances of sale prong of the implied license test. When the Federal Circuit was presented with this issue after the Court's decision, the only fact it had before it was the acknowledged fact that Anton/Bauer's sale of its female plates were unaccompanied by an express restriction. Anton/Bauer, 329 F.3d at 1351. It had no record, however, as to any other circumstances that surrounded the sale. Nor did the Federal Circuit have knowledge of the legitimate, non-infringing uses to which the female plate may be put. These alternatives to direct infringment clearly illustrate the circumstances within the marketplace which demonstrate the knowledge, understanding and acceptance by the market at large of the ownership and legitimate source of both components of the '204 combination.

As noted, Anton/Bauer's female plates are sold principally to camera manufacturers like Panasonic, which attach them to the back of their cameras and which, in turn, promote use of the Anton/Bauer male plates (the battery pack side of the combination). See Ex. B, DeSorbo Depo. at p. 162. The resulting purchase of the male plates are made exclusively through Anton/Bauer

8

or its authorized dealers or distributors. See Affidavit of Alex DeSorbo ("DeSorbo Aff."), attached as Exhibit C, at ¶¶ 3-4. In a small percentage of other instances, Anton/Bauer sells either component of the combination directly to a purchaser, sells the female plate to parties who want to replace a different camera female plate (for example, one containing a Sony or a PAG female plate) with the Anton/Bauer female plate, or sells the female plates to other manufacturers for any number of non-infringing uses. Id. at ¶ 5.

Anton/Bauer's intention whenever it sells its female plate is that it be used only in combination with an Anton/Bauer male plate attached to a battery pack or in some noninfringing alternate manner. Id., DeSorbo Aff. at ¶ 6. Anton/Bauer has not condoned the use of any other male plate to be used with the '204 female plate. Id. at ¶ 7. Indeed, quite the opposite is true. Anton/Bauer plates, both the female and male, are marked with the '204 patent number to advise the purchaser/end user that the device is protected by a patent. Id. at ¶ 7. See also 35 U.S.C. § 287(a). Panasonic, the camera manufacturer who purchases the largest portion of Anton/Bauer's female plates to incorporate on its cameras, specifically advertises the use of the female plate with the Anton/Bauer male plate. Id., DeSorbo Aff. at ¶ 3. Anton/Bauer likewise advertises its female and male plates to be utilized in combination with one another. Id. at ¶ 7. And, Anton/Bauer states in writing that the warranty attached to its female plate is declared void in the event that its female plates are used with, among other things, unauthorized attachments, including infringing battery packs. Id. at ¶ 10.

Anton/Bauer has also been vigilant in enforcement of its intellectual property rights. It has sued for infringement of its patent rights in several cases involving the predecessor battery pack combination to the '204 patent, Anton/Bauer Inc. v. Energex Systems Corporation, No. 93 Civ. 4682 (DLD) (S.D.N.Y.) (directed to the '204, 4,218,107 ('107) & 4,550,968 ('968) patents)

9

and <u>Anton/Bauer Inc. v. Pana-tek Inc.</u>, 3:98 CV 604 (CFD) (D. Conn.) (directed to the '107, '204, 4,822,296 & '968 patents). <u>Id</u>., DeSorbo Aff. at ¶ 11. Further, Anton/Bauer has advised its dealers and distributors by letters dated April 23, 2001 and April 6, 1998, both before and after this litigation was commenced, that it did not condone infringing uses of its Anton/Bauer female plates. <u>Id</u>. at ¶ 12. These enforcement mechanisms exemplify the restriction Anton/Bauer has conveyed to the market on the infringing use of its female plates.

Further, given the presence of the number of commonly accepted, non-infringing uses of the Anton/Bauer female plate, no express restriction *could* be made. This is a fundamental point which the Federal Circuit did not and could not consider because it believed there were no non-infringing alternatives. See <u>Anton/Bauer</u>, 329 F.3d at 1351. That is, in the hypothetical situation where the purchaser's only choice is between combinations involving an infringing use and the intended, permitted use (which is what the Federal Circuit assumed the facts to be), failure of the patentee to advise the purchaser of which use is acceptable should be held against a patentee. But, where the purchaser's alternatives to the intended and permitted use involve both infringing and non-infringing <u>alternatives</u>, an express restriction cannot be made. This is because third parties who make non-infringing alternatives have recognized the restrictions imposed by the patent and designed legally acceptable options. In such instances, it is in Anton/Bauer's interest to welcome these alternatives since it increases the market's acceptance of Anton/Bauer's mounts. Moreover, in such situations, the patentee, Anton/Bauer, could not attempt to restrict the non-infringing uses because that would arguably run afoul of the antitrust laws and its own legitimate self-interest.

Importantly, PAG, which bears the burden on this defense, admits that it has no information related to the circumstances by which Anton/Bauer's products are sold. See Fed. R.

Civ. P. 30(b)(6) Deposition of PAG, Ltd., through David Hardy ("PAG Depo."), excerpts of which are reproduced at Exhibit D, at p. 32.[3] It therefore has no knowledge to refute Anton/Bauer's position that the industry shares the same understanding Anton/Bauer has, to wit, that Anton/Bauer has restricted the use of its female plates to circumstances which do not infringe its '204 patent. See Exhibit C, DeSorbo Aff. at ¶ 6.[4] Anton/Bauer submits that in the absence of such evidence, PAG must be deemed to have failed in meeting this burden and therefore this prong of the implied license test must be construed in Anton/Bauer's favor.

### 2. Non-Infringing Alternatives

The second prong of the implied license test is directed to whether or not there exists non-infringing uses of the non patented female plate component of the patent combination. See Anton/Bauer, Inc., 329 F. 3d at 1350. An analysis of infringement – and therefore non-infringement – involves two steps. Scanner Technologies Corp. v. Icos Vision System, Corp., N.V.,--- F.3d ---, WL 868404, slip op. at p.4 (Fed. Cir. April 23, 2004).

First, the court must determine the scope and meaning of the claims in issue. Id. The standard for interpreting claim terms is well established:

> The language of the claim defines the boundary of its scope. . . . Accordingly, the claim construction inquiry . . . begins and ends in all cases with the actual words of the claim. . . . Claim terms must be construed as they would be understood by a person of ordinary skill in the art to which the invention pertains. . . . The words used in the [claim] are interpreted in light of the intrinsic evidence of record, including the written description, the drawings, and the prosecution history, if in evidence.

Scanner Technologies Corp., supra, at p.5; see also Deering Precision Instruments, LLC v. Victor Distribution Systems, Inc., 347 F.3d 1314, 1322 (Fed. Cir. 2003) (patent claim

---

[3] All pages of the PAG Depo. cited herein are reproduced chronologically in Exhibit D.

[4] This court previously concluded that PAG had offered no evidence which identified any circumstances of sale that conveyed the existence of or implied license to the industry. See Court's Decision, attached as

construction analysis begins with the ordinary meaning of a disputed claim term); Invitrogen Corp. v. Biocrest Mfg., L.P., 327 F.3d 1364, 1367 (Fed. Cir. 2003) (patent claim language generally carries the ordinary meaning of the words in their normal usage in the field of invention at the time of invention).

Typically, courts will resort initially to the relevant dictionary definitions to determine "ordinary meaning." See E-Past Technologies, Inc. v. 3 Com Corp., 343 F.3d 1364, 1367 (Fed. Cir. 2003). To further aid in the claim construction process, a court may also examine the specification, the prior art, and other evidence, such as the understanding of skilled artisans at the time of invention, to discern the context and normal usage of the words in the patent claim. Alloc, Inc. v. International Trade Com'n., 342 F.3d 1361, 1368 (Fed. Cir. 2003). This intrinsic record can also resolve ambiguity in the claim language, or where clear, trump an inconsistent dictionary definition. Kumar v. Ovonic Battery Co., Inc., 351 F.3d 1364, 1367-1368 (Fed. Cir. 2003). When a patent claim term has multiple dictionary definitions, the construing court must consult the intrinsic record to identify which of the different possible meanings is most consistent with the use of the term by the inventor. Tehrani v. Hamilton Medical, Inc., 331 F.3d 1355, 1361 (Fed. Cir. 2003).

While certain terms may be at the center of a patent claim construction debate, the context of surrounding words of the claim also must be considered in determining the ordinary and customary meaning of those terms. Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc., 334 F.3d 1294, 1299 (Fed. Cir. 2003); Arlington Industries, Inc. v. Bridgeport Fittings, Inc., 345 F.3d 1318, 1325 (Fed. Cir. 2003).

---

Exhibit E, at 13. This finding was not reversed on appeal, other than with respect to the Federal Circuit's discussion of the absence of an express restriction.

The second step the court exercises in an infringement analysis is to compare the allegedly infringing device (or non-infringing device) to the claims as then construed. Scanner Technologies Corp. vs. Icos Vision Systems Corp., N.V., F.3d 2004 WL 868404, slip op. at p.4 (Fed. Cir. April 23, 2004). Summary judgment of non-infringement is appropriate "if, after viewing the alleged facts in the light most favorable to the non-movant, there is no genuine issue whether the accused device is encompassed by the claims." Id. (citation and internal quotations omitted).

### A. The Anton/Bauer Female Plate to the '204 Patent Has Numerous Noninfringing Uses

PAG maintains that the '204 Patent female plate has no other uses outside of the combination taught by the '204 Patent. (A true and accurate copy of the '204 Patent is attached as Exhibit F). The basis for PAG's conclusion in this regard is allegedly Anton/Bauer's stipulation as to this fact. There is no indication that PAG has performed any analysis whatsoever of this issue. As Anton/Bauer has argued previously, it has never agreed to this point.[5] Indeed, as the record presented here reveals, even PAG knows the claim is untrue. In fact, the frailty of PAG's implied license defense has been fully exposed during the course of discovery on this issue. Anton/Bauer has identified four categories of products with which the female plate of the '204 Patent are used in a noninfringing manner. In the face of this evidence, PAG cannot raise any genuine dispute as to the existence of non-infringing alternatives and this motion should be granted.

The relevant claims in this case are Claims 9 and 11 of the patent. Claim 9 is an independent claim; Claim 11 depends upon Claim 9. Anton/Bauer submits that the meaning of

---

[5] In reopening discovery on the implied license question, this Court has rejected PAG's argument. As such, PAG can no longer hide behind its misconstruction of Anton/Bauer's statements to try to support this defense.

13

both claims should be determined from the language of the claims themselves, construed in it ordinary and customary meaning. Such meaning is fully consistent with and supported by the specification, the prior art and other intrinsic evidence.

### Claim 9:

> 9. A releasable connection for a battery pack or the like comprising a relatively flat male plate and a relatively flat female plate,
> said plates being adapted to be releasably locked together in connected position;
> said female plate including a plurality of depending slots, and at least one elongate terminal, said terminal and slots being elongate in the same direction;
> said male plate including a plurality of spaced headed projections with there being one for each slot and with each projection having head and leg portions, and at least one elongated mating terminal;
> said male plate being positioned abutting the female plate with the legs of the projections being located in associated slots and with the one terminal within the mating terminal;
> releasable locking means on said female plate for engaging at least one of the headed projections in one of said slots to lock said plates in connected position by preventing relative movement between said plates in the direction of said slots by maintaining the engagement of said locking means with said headed projection until said locking means is released; and said releasable locking means includes at least one rotatable member on the backside of the female plate;
> a pin on said rotatable member between said member and the backside of said female plate; and
> means urging the member to a closed condition with said pin disposed in the path of movement of said headed projection inserted in said slot.

### Claim 11

> 11. The invention as defined in claim 9 wherein said urging means is a torsion spring disposed between the bottom of said rotatable member and a fixed support on the backside of said female plate.

As relevant here, there are four key elements of Claim 9:

- 1) a direct, releasable connection for a battery pack or the like, comprised of a single male plate and a single female plate

- 2) a mechanical connection formed when a plurality of headed projections on the male plate are located within depending slots on the female plate, and

14

- 3) an electrical connection formed when the elongated electrical terminal(s) on the male plate are inserted in the corresponding electrical terminal(s) of the female plate;

- 4) which connection includes a releasable, locking means created by a locking means located on the female plate engages one of the headed projections on the male plate to lock the plates together, which releasable locking means consists of a rotable member on the backside the female plate which rotable member has a pin located between the member and the backside of the plate and a means to move the member into a closed condition thereby placing the pin in the path of movement of the headed projection, and which locking means is released when the rotable member is rotated in the opposite direction and the pin is removed from the path of the headed projection.[6]

Anton/Bauer submits that these elements are readily apparent from the language of the claims, the patent specification, and the stipulation between the parties. See Ex. G, Wilson Aff. at ¶¶ 7-8, and 10; Ex. A, Stipulation at ¶ 6.

While PAG's contention has been that the only use for Anton/Bauer's female plate practices each of these elements, it is now clear that a wide variety of manufacturers have displayed their ingenuity in manufacturing and marketing numerous devices which do not impair Anton/Bauer's intellectual property rights. These manufacturers have acknowledged the construction of the Patent and the protections afforded to Anton/Bauer since 1989. Rather than infringe the Patent, they have in some instances worked with Anton/Bauer in designing these creative alternatives. Anton/Bauer has identified these devices below and discussed in the context of each what elements of claim 9, as construed, are missing.

---

[6] Claim 11 simply describes one possible alternative of the releasable locking means set forth in Claim 9, to wit, a torsion spring disposed between the bottom of the rotatable member and a fixed support on the back side of the female plate. (See Aff. of Anton Wilson, (hereinafter "Wilson Aff."), attached as Exhibit G, at ¶9.

15

### 1.   Devices That Have No Electrical Connection

The first category of noninfringing alternatives are those devices that do not form the "electrical connection". This category of devices employs the mechanical mounting elements of the '204 Patent without forming any electrical connection to or with the '204 female plate. Examples of these devices include the following:

- Camplex Corp. ("Camplex"), CP 301B (See discussion infra);

- Camplex 601 (See discussion infra);

- Aspen Electronics, Inc. ("Aspen") Model # Dual NP/AB (a/k/a 2NP AB). This device is depicted in Exhibit H, and described in Aspen's 1999 Product Catalogue, Exhibit I, at PAG Bates #000995;

- Aspen PSM-160. This device is depicted in Exhibit J, and described in Aspen's 1999 Product Catalogue, Exhibit I, at PAG Bates #000994 and #000998.

- Absolute # VB-NH 13 A4. This device is depicted in Exhibit K and described in the DeSorbo Aff., Exhibit C, at ¶ 23.

- Telecast Fiber Systems Copperhead Power Plus (See discussion infra).

- Bexel hanger assembly (See discussion infra).

As the patent teaches, Claim 9 requires the female plate to have "a plurality of depending slots, and at least on elongate terminal, said terminal and slots being elongated in the same direction" and the male plate to have "a plurality of spaced headed projections with there being one for each slot and with each projection having head and leg portions, and at least one elongated mating terminal." See Ex. F, '204 Patent, Column 12, lines 36-43. The male plate is then positioned abutting the female plate with the legs of the projections being located in

associated slots and with the one terminal within the mating terminal[.]"[7] A terminal is defined as "a device attached to the end of a wire or cable or to a piece of electrical apparatus for convenience in making connections." Webster's Third New Int'l Dictionary Unabridged, p. 2359 (1993). "Abutting" is defined as "to border on : reach or touch with an end." Id. at p. 8. The claim thus teaches an electrical connection between the plates formed when the female plate's elongated terminal is joined (i.e. abutted) with the elongated mating terminal on the male plate. See Ex. G, Wilson Aff. at ¶¶ 7 & 10. Indeed, Claim 9 requires that the male plate be positioned so that the terminals of the male and female plate actually connect: "with the one terminal within the mating terminal." Ex. F, '204 Patent, Col. 12, lines 46-47.

The patent specification also makes clear that these terminals are electrical in nature. See Ex. F, '204 Patent at Col. 6, lines 53-55; Col. 7, lines 31-44; Col. 8, lines 23-28. The female plate is secured to the electrical device, id. at Col. 6, lines 23-26; Col. 8, lines 66-67, and the male plate "constitutes one side of a closed container, which contains rechargeable batteries," id. at Col. 6, lines 24-28; Col. 8, lines 65-66. The terminals on the female plate permit the electrical connection to the device from the reverse side of the plate. Id. at Col. 6, lines 50-54. The terminal on the male plate has a female contact terminal block in the housing for "receiving the companion female electrical contact terminal." Id. at Col. 7, lines 21-22. These female contact terminals, in turn, are connected by wires to the battery. Id., lines 30-35. Once the plates are joined, the "male terminals received in the female contact terminals in holes will self-align and make appropriate contact." Id. at 37-39. When the releasable connection is detached, "the entire male plate and headed projections can be moved up and out of corresponding keyhole slots,

---

[7] It is clear from this language that the "projections" and the "terminals" serve different functions. The inventor's choice of different terms in close proximity to each other creates a strong presumption of different meanings. See, e.g. Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp., 93 F.3d 1572, 1579 (Fed.