# EXHIBIT 4
# PART 2

breaking the electrical connection between the terminal contacts on the male and female plates." Id. at Col. 8, lines 35-42.

Manufacturers of this first category of devices recognize that the '204 female plate can be utilized for something other than forming an electrical connection for a battery (or the like). Rather, they employ the '204 female plate as a docking means to the camera, a means by which to make a mechanical, but not electrical, connection. See Ex. G, Wilson Aff. at ¶22. Absent from these devices is the elongated terminals of the male plate. Thus, the docking cannot result in an electrical connection as taught by the patent. Once attached, these manufacturers' innovative technology can be used in conjunction with the camera. In the literal language of the claim, the male plate does not include "at least one elongated mating terminal" (Ex. F, '204 Patent, Col. 12 at lines 42-43), and the male and female plates do not have their respective terminals positioned "with one terminal within the mating terminal" (id. at lines 46-47).

By way of example, Telecast's Copperhead "Powerplus" is a fiber optic multiplexing system that is mounted directly to the back of a camera by use of the '204 female plate. See Aff. of James B. Hurwitz ("Hurwitz Aff."), attached as Exhibit L, at ¶ 6;[8] see also Aff. of Thomas Dickinson ("Dickinson Aff."), attached as Exhibit M, at ¶ 8.[9] This device is utilized in remote TV production and eliminates the need for triaxial adapters or other electrical cables at both the camera and the remote equipment which can often inhibit the ease with which remote shooting is performed. See Ex. L, Hurwitz Aff. at ¶ 6. A fiber optic cable on the device carries upstream and downstream television signals between the camera mountable tranceiver and a remote base

---

Cir. 1996).. As discussed below, the projections serve a function of establishing the mechanical connection. (See discussion infra). The terminals, on the other hand establish the electrical connection.

[8] Hurwitz is the Western United States Regional Sales Manager for Telecast Fiber Systems, Inc., the manufacturer of Telecast's Copperhead "Power Plus". He is also the project manager for the "Copperhead" device. See Ex. L, Hurwitz Aff. at ¶ 91.

18

station transceiver. Id. The Copperhead "Powerplus" is powered directly through a hybrid copper/fiber optic cable, as opposed to any battery source and elongated terminals. Id. at ¶8; Ex. M, Dickinson Aff. at ¶ 9. As such, there is no electrical connection, within the meaning of the '204 Patent, employed in this device, which would be present if it were powered through a battery pack or the like through the '204 plate.

A second example of this category is the Camplex devices. The Camplex CP-301B and CP-601 can be equipped with a plate that allows these devices to mechanically dock to the Anton/Bauer female plate attached to the camera. See Aff. of J. Thomas Webb ("Webb Aff."), attached as Exhibit N, at ¶ 7.[10] Generally, the CP-301B multiplexes video and audio signals through a single coax cable between the production control center and the camera location. See id. at ¶ 5. This provides an alternative to the heavy multicore or more expensive triax cables that are typically necessary to perform this function. The CP-601 is another modular system designed by Camplex that sends component video signals from the camera to a control point on a single cable. See id. at ¶ 6. The docking plate is known as CAB-23. It is depicted in Camplex's brochure. See id. at Exhibit N, at Ex. 1 at 15 and Exhibit 3. It is a simple plate attached to the side of the Camplex device with three projections that mate with the '204 female plate. It permits these Camplex devices to be mechanically connected to the AB female plate. See Ex. B, Webb Aff. at ¶¶ 7-8. However, there is no electrical terminal and therefore there is no electrical connection.[11] Id. at ¶¶ 8-9. Rather, the devices are powered through a cable connected to a

---

[9] Dickinson is the General Manager of Bexel Corp., the largest renter of professional video, audio and customer specialty rental configurations in the world. See Ex. O, Dickinson Aff. at ¶¶ 2-3.

[10] Webb is the Chief Executive Officer of Camplex Corp., which designs, makes and markets electronic signal conveyance products for the television production industry. See Ex. N, Webb Aff. at ¶¶ 2-3.

[11] Recognizing that Anton/Bauer held the '204 Patent given the marking on its plates, Camplex advised Anton/Bauer of its intention to manufacture its devices before they were ever manufactured. See Ex. N, Webb. Aff. at ¶12.

stationary power source or battery pack which runs directly to the camera, not the female plate. Id. at ¶ 9.[12] There is thus is no electrical connection as described in the '204 Patent.

A third example is described by Tom Dickinson of Bexel Corp. See Ex. M, Dickinson Aff. at ¶ 10. Bexel has affixed the female plate to the underside of the camera, with no electrical connection to the camera itself. It simply acts as a hanger assembly. Bexel then uses that female plate to attach camera accessories, such as the Copperhead device, for simple convenience, not for effectuating an electronic connection.

### 2.    Devices That Have No Mechanical Connection

The second category of noninfringing alternative uses of the '204 female plate consists of those devices that do not form the mechanical connection taught under the '204 Patent. A representative example of this category is the NP/AB which was originally manufactured by Aspen Electronics, Inc. and is now sold by Anton/Bauer. This device is depicted at Exhibit O and described in Aspen's Product Catalogue, Exhibit I, at PAG Bates #000994.

Claim 9 requires a releasable, mechanical connection. The very first claim element requires that the male and female plates be "releasably locked together in a connected position." Ex. F, '204 Patent at Col. 12, lines 34-35. The mechanical connection required for infringement is further limited because the claim requires the female plate to have "a plurality of depending slots... elongated in the same direction" and the male plate to have "a plurality of spaced headed projections there being one for each slot and with each projection having head and leg portions...." Id., lines 36-43. The plates are "releasably locked together in connected position," id. at Col. 12, lines 34-35, when the male plate is "positioned abutting the female plate with the

---

[12] Camplex also makes a sleeve for an on-board Anton/Bauer battery. See Ex. N, Webb Aff. at ¶¶ 10-11, and Exhibit 1 at 15. Recognizing Anton/Bauer's intellectual property rights, when designing this sleeve, Camplex coordinated its manufacturer with Anton/Bauer, id. at ¶ 12, further demonstrating circumstances

legs of the projections being located in associated slots...." Id. at 44-47. The specification also makes this clear, specifically detailing the way in which the two plates are coupled together. Id. at Col. 8, line 65 to Col. 9, line 18; see also Ex. G, Wilson Aff. at ¶ 7.

This mechanical connection required must also embody a releasable locking means whereby at least one headed projection on the male plate inserted into the female plate is locked in a connected position until that locking is released. See Ex. F, Col. 12, lines 48-54. This releasable locking must include "at least one rotating member on the backside of the female plate" id., lines 56-57, which rotatable member must further contain a pin "between said member and the backside of the female plate... and a means for urging the member to a closed condition with said pin disposed in the path of movement of said headed projection inserted into the slot," id., lines 53-63. This element is explained in the specification. See id., Col. 7, line 55 to Col. 8, line 47; Ex. G, Wilson Aff. at ¶ 8. These limitations on the claim are expressly stated in the claim language and cannot be ignored in any assessment of infringement.

The Aspen NP/AB device employs the three stud mount system for interfacing NP style batteries with the Anton/Bauer female plate. See Ex. C., DeSorbo Aff. at ¶ 13. This device, however, does not employ the specific mechanical connection with releasable locking means which allows for the quick release capability taught under the '204 Patent. Id. The Aspen NP/AB has a different mechanical connection. One of its headed projections is purposely smaller to avoid engaging the pin assembly of the female plate locking means discussed in claim 9. Id. Aspen forms its locking connection by the use of a lever on its male plate which engages the perimeter of the Anton/Bauer female plate when the two are fully mated. Id. The Aspen NP/AB release is also different from claim 9. To release the Aspen adapter, the user must

---

in the marketplace of the recognized implicit restrictions on the use of the '204 components and the knowledge of the community of Anton/Bauer's combination patent.

21

depress the lever on the side of the adapter, releasing the adapter from the '204 female plate, and moving the two components apart. Id. This release mechanism for this device fails to embody several of the claim limitations, the absence of any one of which precludes literal infringement.

### 3. Devices That Have No Direct Connection

The third category of noninfringing alternatives consists of those devices that form both an electrical and mechanical connection but do so with intervening elements, connectors, or components between a battery and the DC device in a manner not taught in the '204 Patent. This is perhaps the most prolific area of noninfringing alternatives to direct infringement. It consists essentially of adapters designed to fit to the '204 female which, by their very nature, prevent the direct releasable connection for a battery pack or the like to a DC device that is central to the '204 Patent. By adapting the female plate of the '204 to allow batteries of other designs to be releasably connected, the '204 patent is thoroughly circumvented and the use of these adapters are non-infringing. The following devices are illustrative of this non-infringing category:

- PAG 9518 PAGlok Connector (See discussion infra);

- Anton/Bauer NP/BP Battery Adapter (See discussion infra);

- Frezzolini Energy Systems, Inc. ("Frezzolini") HM-NP1-1 Battery Case With Gold Mount Adapter. This device is depicted in Frezzolini's Product Catalogue, Exhibit P, at Bates # 001046.

- Frezzolini NP-1 3PI 3-Position NP-1 Battery Case With Gold Mount Adapter. This device is depicted in Frezzolini's 2004 product catalogue, Exhibit Q, at 17.

- IDX A-AB2E V-Mount Adapter Plate. This device is depicted in IDX's product catalogue, Exhibit R, at Bates #000945.

22

- IDX NH-100 AB Single NP-1 Holder Box With Anton/Bauer Gold Mount Plate. This device is depicted in Exhibit S, and described in IDX's Product Catalogue, Exhibit R, at Bates #000950.

- IDX NH-201 AB Dual NP-1 Holder Box With Anton/Bauer Gold Mount Plate. This device is depicted in IDX's Product Catalogue, Exhibit R, at Bates #000950.

- Frezzolini ABS 01 FR Adapter Plate f/Anton/Bauer Mounts to Sony batteries. This device is depicted in Exhibit T.

- Anton/Bauer ABSO XLR. This device is depicted in Anton/Bauer 2003 Product Catalogue, Exhibit U, at 14 and described in the DeSorbo Aff., Exhibit C, at ¶24; see also photographs at Exhibit U.

The claim language of claim 9 of the '204 Patent clearly describes "[a] releasable connection for a battery pack or the like compromising a relatively flat male plate and a relatively flat female plate[.]" Ex. F, '204 Patent at Col. 12 at lines 31-33. "A battery pack means a series of cells connected in such a way to form a battery." See Ex. B, DeSorbo Depo., at p. 65, lines 1-2; see also Webster's Third New Int'l Dictionary Unabridged p. 187 (1993) (defining a battery as "a group of two or more cells connected together to furnish electric current"). "Or the like" refers to some other power source. See Ex. B, DeSorbo Depo. at p. 66, lines 17-20. As taught by Claim 9, the connection to the battery pack consists of only two elements, a female plate (which typically is secured to the device to be powered, e.g., the camera (Ex. F, '204 patent, Col. 8, lines 66-67), and the male plate (which is typically part of the battery pack container (id., lines 65-66). The first claim element requires "said plates being adapted to be releasably locked together in a connected position." Id., lines 34-35. By describing the limitation with language which contains both "locked together" and "connected," this element

23

teaches the union for the battery pack or the like must be immediate and without any intervening component, in other words, connected directly to each other. This direct connection is additionally important because it is through the direct connection of the plates and the releasable locking means on the female plate that the battery pack or the like is released. See discussion supra; Ex. G, Wilson Aff. at ¶ 8.

In the professional camera industry, there are four significant battery mounting types: Anton/Bauer, PAG, Sony v-wedge and NP types. See Ex. C, DeSorbo Aff. at ¶ 15. Each of these battery types are configured in such a way so that it regularly mates with its own unique connector plate and are incompatible with one another by design. Id. As PAG has acknowledged:

> There are various types of battery (sic) for such cameras and it is not uncommon that the cameraman may wish or have to use two or more different types of battery for the camera. This may be because he/she wishes to take advantage of different characteristics of the batteries or because of availability. This has only been possible by providing an adapter between the camera fixings and the battery fixings.

See PAG's U.S. Patent No. 6,638,086 B2, attached as Exhibit V, at Col. 1, lines 17-23. Given the fact that individuals may desire to utilize different types of batteries with different mounting configurations on the same camera, as PAG admits, it has become a common practice for manufacturers to produce adaptors "which fit between a battery of different type and the camera, charger or other item." Id. at Col. 2, lines 36-37; see also Ex. G, Wilson Aff. at ¶¶ 18-20.

Ironically, although it has asserted an implied license defense, PAG itself cannot escape the fact that it manufactures the PAG 9518, an adapter which is specifically marketed by PAG to permit the use of PAG batteries with an Anton/Bauer female plate. This device is depicted in Exhibit W and described in the 2003 PAG Product Catalogue, Exhibit X, at Bates #000903. PAG's Product Catalogue, Exhibit X at Bates #000903, shows an Anton/Bauer female mount to

24

which the 9518 is attached for use with a PAGlok battery. (Notably, the same picture also demonstrates a direct infringement through use of the L75 with no adapter plate.) Indeed, PAG admits that its model 9518 "adapts PAGlok batteries with Anton/Bauer type mounts." See Ex. Y, a true and accurate copy of PAG's Supplemental Resp. to Plaintiff's Ints. at #6. The PAG 9518 enables camera operators to utilize PAG batteries in conjunction with a camera that is equipped with an Anton/Bauer female plate connector. The connection, however, is not as is taught by Claim 9 as it consists of four elements: Anton/Bauer female plate + compatible Anton/Bauer male plate connection + PAG female plate + PAG compatible male plate connection with battery. See DeSorbo Aff., Exhibit C, at ¶17; Wilson Aff., Exhibit G, at ¶ 20. Accordingly, the adapter does not practice a "releasable" connection for a battery pack or the like comprised of only two plates, the female and male. The 9518 adapter, like the other adapters in this category, has intervening elements between the DC device and the battery other than the Anton/Bauer female and male plates, to wit, the female and male components of the PAG battery connection. The release when activated on the Anton/Bauer female plate releases the adapter only; the battery remains attached to the adapter and can neither be replaced nor charged. DeSorbo Aff., Exhibit C, at ¶ 7. In order to release the battery, the user must activate the release mechanism on the PAG plates. Stated another way, a battery or the like can only be released from the adapter by employing the PAG release mechanism. DeSorbo Aff., Exhibit C, at ¶ 16.

A second example is the Anton/Bauer NP/BP Battery Adapter. This device is depicted in Exhibit Z, and described in Anton/Bauer's 2003 Product Catalogue, Exhibit U, at 22. In this device, a version of the male plate is affixed to a container that, in turn, is capable of holding an NP battery. The container is then connected to the camera through the female plate. There is no direct electric connection to a battery or the like. Rather, the direct connection from the battery

25

pack is to the container that holds the battery. In fact, the battery is removed by lifting the lid on the container while the container remains affixed to the adapter plate and the female plate. The '204 releasable connection only releases the adapter from the female '204 plate, not the battery from the adapter. (Ex. C, DeSorbo Aff. at ¶ 18; Ex. B, DeSorbo Depo. at p. 66, lines 2-7.)

The other devices set out above similarly incorporate the additional elements as utilized in the PAG Model 9518 and as such, go beyond the scope of the teachings of the '204 Patent of a single male and female plate one each attached to either a "battery or the like" and a DC device forming the "releasable connection for a battery or the like".

### 4. "Sandwich" Devices That Are Not a Battery Pack or the Like

The fourth category of noninfringing devices consists of secondary devices (not a DC power source) designed to mount to a '204 female plate attached to the primary device (e.g. as a camera). For convenience, this category of devices may be referred to as "Sandwich" devices. Devices falling within this category include the following:

- Azden Model 1000 URX/AB. See discussion infra.

- JVC Professional Products Corp. ("JVC") Focus Enhancements Model DR-DV 5000. See discussion infra.

- JVC Professional Products Corp. ("JVC") Focus Enhancements Fire Store FS-3. See discussion infra.

- Miranda Corp. DVC 820XXX. This device is depicted in Exhibit AA and described in the Dickinson Aff., Exhibit M, at ¶¶ 12-17.

- Everetz F9-2410 MD. This device is depicted in Exhibit BB and described in the Dickinson, Exhibit M, at ¶¶ 18-19.

- Anton/Bauer QR WRB 25. This device is described in Anton/Bauer's 2003 Product Catalogue, Exhibit U, at 21.
- Preston F I & Z remote servo focus and zoom system. This device is described in the Dickinson Aff., Exhibit M, at ¶¶ 10-11.
- Telecast Copperhead. This device is described in the Hurwitz Aff., Exhibit L, at ¶¶ 6-8.

As previously noted, Claim 9 teaches "[a] releasable connection <u>for a battery pack or the like</u>." The sandwich devices falling within this category include products such as wireless remote audio, hard disk video recording devices, and high definition TV signal converters, among others. See Ex. G, Wilson Aff. at ¶ 22. None concern a battery pack or the like. Rather, these types of devices form a first connection employing the '204 male and female plates and then, in some instances, a second connection employing a second '204 female plate to mate with the male plate of the battery. The first connection does not form a releasable connection for a battery pack or the like and, as such, does not intrude upon the teachings of the '204 Patent.

By way of illustration, Focus Enhancements Model Nos. FS-3 and DR-DV 5000, made by JVC Professional Products Corporation, when attached to a camera, allow the photographer to shoot video direct-to-disk or simultaneously to tape and disk. These devices are depicted in Exhibit CC and described in the Dickinson Aff., Exhibit M, at ¶¶ 20-21 and DeSorbo Aff., Exhibit C, at ¶ 18. The FS-3 is sold with a male plate that connects with the '204 female plate on the camera. The unit is powered either remotely through a battery belt or a stationery power supply, see Ex. M, Dickinson Aff. at ¶ 21; Ex. C, DeSorbo Aff. at ¶ 18, or the unit may contain a second '204 female plate to which a battery connection may be made, Ex. M, Dickinson Aff. at

27

¶ 21.[13] In both instances, the device attached to the camera by use of the female and male plates is not a connection for a battery pack or the like and thus there is no infringement. The battery, when a change is required, is released from the back-most connection; the device is not released to change the battery. Id.; Ex. C, DeSorbo Aff. at ¶ 18.

Another example is Azden Corporation's 1000 URX device, which allows broadcast wireless receivers to be connected directly to the camera by use of the camera's Anton/Bauer female plate and an Anton/Bauer male plate attached directly to the receiver. This device is depicted in Exhibit DD, and described in the Dickinson Aff., Exhibit M, at ¶23. The 1000 URX version attaches to the camera with velcro strips. The 1000 URX AB attaches by use of the '204 female plate. See Ex. M, Dickinson Aff. at ¶ 23 & Ex. C, DeSorbo Aff. at ¶¶ 19-20. This device may be powered remotely (with no battery pack or the like) or the user may attach an Anton/Bauer battery pack with a second '204 male plate to a second female plate located on the outside of the receiver. See Ex. M, Dickinson Aff. at ¶ 23; Ex. C, DeSorbo Aff. at ¶ 20. Either way, the receiver is neither a battery pack or the like and thus the '204 claims are not infringed. See Ex. C, DeSorbo Aff. at ¶ 20.

Each of these devices in this category do not infringe the '204 combination in that they are not, under any reasonable interpretation, "a battery or the like". In the cases where a second '204 combination may be employed to power the "sandwich" device (and perhaps the camera), the only "releasable connection for a battery or the like" is this second combination – the first remains the releasable connection only for the accessory device.

While PAG has continuously claimed that the Anton/Bauer female plate could be used in no other manner than that taught by the '204 Patent, the vast array of devices identified above

---

[13] Focus Enhancements, in fact, sells units with Sony, Anton/Bauer or PAG configurations.

clearly demonstrate otherwise. The adapters allow the end-user to use the female plate with another manufacturer's batteries without infringing the patent. The mechanical connection and sandwich devices permit use of the female plate with any number of devices having nothing to do with the batteries. Simply stated, while PAG may have seen fit to adopt the teachings of the '204 Patent as its own by products like the L75, others within this industry have demonstrated great ingenuity in utilizing the Anton/Bauer '204 female plate for uses which do not intrude upon Anton/Bauer's intellectual property rights. Netword, LLC v. Centraal Corp., 242 F.3d 1347, 1353 (Fed. Cir. 2001) (To establish literal infringement of a patent claim, all elements of the claim must be embodied in the accused system). Accord Cole v. Kimberly-Clark Corp., 102 F.3d 524, 532 (Fed. Cir. 1996). Given the existence of these noninfringing alternatives, PAG cannot succeed on its implied license defense as a matter of law. As such, Anton/Bauer is entitled to summary judgment on this issue.

### B. PAG Cannot Refute Anton/Bauer's Evidence of Noninfringing Alternatives

Even were PAG to now disagree with the categories of noninfringing alternatives presented to it by Anton/Bauer during the course of discovery, PAG cannot present countervailing evidence on this issue. As previously noted, PAG bears the burden of proof in its implied license defense. In the face of this defense, Anton/Bauer has identified numerous devices that qualify as noninfringing alternatives. Surprisingly, PAG has taken no position on whether these devices in fact refute its implied license defense. PAG's conscious decision to perform no analyses whatsoever of the noninfringing devices qualifies as a waiver of this defense and as such, PAG can present no evidence to this Court which contradicts Anton/Bauer's assertions in this regard. This is confirmed by PAG's 30(b)(6) deposition testimony in this matter. Examples of this will be explored in greater detail below.

29

During the course of PAG's 30(b)(6) deposition, Anton/Bauer's counsel inquired as to whether PAG had any position concerning whether the devices identified by Anton/Bauer in its discovery responses qualified as a noninfringing alternative. Throughout its deposition, PAG confirmed that it had no position on these devices. The following deposition testimony is illustrative of this fact.

> Q. Have you done anything, sir, made any effort whatsoever to make a determination of whether or not there are any noninfringing alternative uses of the '204 female plate?
>
> A. Yes, sir. . . . We refer the matter to our attorneys.
>
> Q. Okay. But other than that you have done nothing?
>
> A. No, we don't even see ourselves as qualified.
>
> Q. Mr. Gardener has done nothing?
>
> A. Nothing.
>
> Q. Mr. Lavender has done nothing?
>
> A. Nothing.
>
> Q. Both father and son?
>
> A. Nothing but refer the matter to our legal attorneys.
>
> Q. And notwithstanding the fact that you were noticed for a deposition to talk about these noninfringing alternatives, you didn't do any independent analysis on behalf of PAG to make your own determination as to whether there are noninfringing alternatives?
>
> A. Correct.
>
> Q. Neither did Mr. Gardener?
>
> A. No.
>
> Q. Nor the Lavenders?
>
> A. No.

30

>   Q. Nor anyone else at PAG?
>
>   A. No.

(See Ex. D, PAG Depo. at pp. 135-36.) This testimony evidences that PAG has not only abandoned its implied license defense and has not seen fit to present a countervailing position to Anton/Bauer's with respect to the availability noninfringing alternatives, but clearly had no basis for its proposition that there are no other uses for the '204 female plate. Having never made an analysis of the devices in the marketplace PAG was lacking of any knowledge to put forth an implied license defense at all.

Anton/Bauer's counsel focused PAG to various individual devices during the course of the 30(b)(6) deposition where PAG confirmed that it had no idea whether the corresponding alternative was non-infringing. See id. at pp. 122-123 (concerning IDX NH-100 AB); pp. 171-172 (Anton/Bauer NP-BP Adaptor); pp. 193-94 (Aspen NP/AB); pp. 197-198 (Azden Model 1000 URX/AB); pp. 198-199 (ABSO XLR); pp. 204-206 (Focus Enhancements Model DR-DV 5000); pp. 207-208 (Focus Enhancements Fire Store FS-3); pp. 117-120 (Sony SOABSO1FR); pp. 120-134 (IDX NH-100AB); pp. 198-99 (Anton/Bauer ABSO XLR); pp. 213-216 (Camplex CAB-23); pp. 216-221 (Aspen PSM-160); pp. 222-223 (Absolute VB-NH13A4).

It is PAG that bears the burden of proof on each aspect of the implied license defense, not Anton/Bauer. Anton/Bauer in its 30(b)(6) deposition notice alerted PAG that it intended to inquire on the topic of noninfringing alternatives, including those items identified in response to PAG's own discovery requests. Despite this fact, PAG did nothing to prepare itself in this regard and affirmatively indicated that it did not have a position on this issue. PAG "was not at liberty . . . to delay reviewing information on those topics until after the deposition" and attempt to create an issue at some later date. Newport Electronics, Inc. v. Newport Corp., 157 F Supp. 2d 202,

31

220 (D. Conn. 2001). It is well-established that a party may not produce unprepared witnesses in response to a 30(b)(6) deposition notice. The policy behind this doctrine is clear as litigation is not a game of hide and seek. As one Court has aptly noted,

> If need be, the responding party "must prepare deponents by having them review prior fact witness deposition testimony as well as documents and deposition exhibits."... Any other interpretation of the Rule would allow the respondent corporation to "sandbag" the deposition[ ] process "by conducting a half-hearted inquiry before the deposition but a thorough and vigorous one before trial."... We understand that the burden upon the responding party, to prepare a knowledgeable Rule 30(b)(6) witness, may be an onerous one, but we are not aware of any less onerous means of assuring that the position of a corporation, that is involved in litigation, can be fully and fairly explored.

Prokosch v. Catalina Lighting, Inc., 193 F.R.D. 633, 638-39 (D. Min. 2000) (internal citations omitted).

By its conduct, not only has PAG failed to take any position on whether the devices themselves infringe upon the '204 Patent, they have also abandoned any position with respect to the business reasonableness of these devices. Indeed, PAG itself has been manufacturing and selling the Model No. 9518 non-infringing adapter for years prior to the introduction of the L75 infringing product to the marketplace. The 9518 adapter is just one of the many prolific examples of how manufacturers have designed adapter plates to permit the use of batteries of incompatible types, providing the purchaser of the '204 female plate with viable, available, reasonable and commercially accepted alternatives to infringement of the '204 combination. The other categories of non-infringing alternatives noted by Anton/Bauer demonstrate uses of the female plate to attach products to the camera not anticipated by the teachings of the patent as they are not "battery packs or the like." Each of these items are being actively marketed by their manufacturers and, in some instances, reflect innovative and cutting edge technology in the professional camera industry. All of these categories, demonstrate that the female plate can be

32

used in a variety of ways that are not infringing – from the attachment of devices not contemplated by the patent teachings to the use of batteries otherwise incompatible with the female plate. A direct infringer thus has alternatives to infringement – from being able to power the camera to using the female plate for a completely different use than the patent teaches to adapting other batteries to the female plate. Likewise, PAG had alternatives to inducing infringement, had marketed alternatives in the past and had no basis in fact or evidence for its defense that it was shielded by an implied license inferred by a direct infringer.

## VI.   CONCLUSION:

The existence of this vast array of non-infringing alternatives coupled with the circumstances of Anton/Bauer's sales of its female plate undermine both prong's of PAG's implied license defense. As such, Anton/Bauer is entitled to summary judgment on PAG's implied license defense.

PLAINTIFF/COUNTERCLAIM DEFENDANT
ANTON/BAUER, INC. and ALEX DeSORBO

By: _____
James T. Shearin, Esq. – ct 01326
Brian C. Roche, Esq. – ct 17975
Pullman & Comley, LLC
850 Main Street, P.O. Box 7006
Bridgeport, CT 06601-7006
Phone: (203) 330-200
Facsimile: (203) 576-8888

Allen D. Brufsky, Esq. – ct 04490
475 Galleon Drive
Naples, Florida 34102
(239) 261-9393
(239) 261-9696

## CERTIFICATION

Pursuant to Fed. R. Civ. P. Rule 5 (b), I hereby certify that a copy of the above was mailed on the date hereon to all counsel and pro se parties of record, via certified mail/return receipt requested.

Stephen R. Risley, Esq.
J. Scott Culpepper, Esq.
Thomas, Kayden, Horstemeyer & Risley, L.L.P.
100 Galleria Parkway, Suite 1750
Atlanta, Georgia 30339

Brien Horan, Esq.
Robinson & Cole, LLP
280 Trumbull Street
Hartford, CT 06013

/James T. Shearin – ct 01326
Brian C. Roche   – ct 17975

BPRT/57052.2/JTS/517905v1

34