## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANTON/BAUER, INC.,<br>    Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action |
| v. | ) | File No.: 3:01-CV-577-CFD |
| | ) | |
| PAG, LTD., | ) | |
|     Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANTON/BAUER, INC. and ALEX | ) | |
| DESORBO, | ) | |
|     Counterclaim and Third Party | ) | |
|     Defendants | ) | |

**DEFENDANT, PAG LTD'S, RESPONSE TO PLAINTIFF, ANTON/BAUER'S,
MEMORANDUM OF LAW IN SUPPORT OF ITS PROPOSED CLAIM
CONSTRUCTION OF U.S. PATENT NO. 4,810,204**

Stephen R. Risley (ct22652)
J. Scott Culpepper (ct22653)
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2600 One Atlanta Plaza
950 East Paces Ferry Road, NE
Atlanta, Georgia 30326
Telephone: 404-760-4300
Facsimile: 404-233-1267

Jason M. Kuselias (ct20293)
ROBINSON & COLE, LLP
280 Trumbull Street
Hartford, Connecticut 06103
Telephone: 860-275-8200
Facsimile: 860-275-8299

Attorneys for Defendant,
PAG, LTD

ATI 30044237.1

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

LIST OF DEFENDANT, PAG, LTD's, Exhibits .......................................... v

I.     INTRODUCTION ..................................................................................... 1

     A.   "A Battery Pack 'Or The Like'" .................................................. 1

     B.   "A Plurality Of Spaced Headed Projections   With Each Projection Having Head And Leg Portions" ............................................................ 2

II.    STATEMENT OF FACTS ................................................................... 3

    A. "A Battery Pack 'Or The Like'" .................................................... 3

    B "A Plurality Of Spaced Headed Projections   With Each Projection Having Head And Leg Portions" ............................................................ 4

        1. Figure 5 .......................................................................... 4

        2. Column 7, Lines 3-7 ...................................................... 5

        3. Portions Of The Specification Ignored By Anton/Bauer ................ 5

            i.    The '204 Patent Is An "Improvement" Patent ................ 6

                a.    The "Improved" "Projections" And "Leg Portions" .......... 7

           ii. The Problematic Prior Art Battery Pack Connections ........................ 8

              a. The Prior Art '107 Patent ...................................................... 8

              b. The Prior Art '968 Patent...................................................... 9

           iii.    "Summary Of The Invention" Section Of The '204 Patent ......... 10

           iv.    "Brief Description of the Drawings" Section Of The '204 Patent............................................................ 10

           v.    "Detailed Description" Section Of The '204 Patent ..................... 11

III.   PAG'S PROPOSED CONSTRUCTIONS AND LEGAL SUPPORT THEREFOR ...... 11

    A. Claim Construction Law ................................................................ 11

        1. Intrinsic Evidence ......................................................... 12

           i. The Claim Language........................................................ 13

           ii. The Specification ............................................................ 13

              a. Reading-In Limitations vs. Construing "The Invention" ........................................................ 15

              b. A Patentee Can Be A Lexicographer ..................................... 17

              c. Distinguishing The Invention From The Prior Art .............. 18

# TABLE OF CONTENTS
(continued)

**Page**

  d. Claims Can Be Properly Limited To The Only
   Disclosed Embodiment ..................................................... 18

  iii. The Prosecution History ................................................. 19

 B. The Disputed Claim Term At Issue ........................................................ 19

  1. "A Battery Pack 'Or The Like'" ..................................................... 21

  2. "A Plurality Of Spaced Headed Projections   With Each Projection
   Having Head And Leg Portions" ........................................................ 22

   i. Anton/Bauer's Proposed Construction Should Be Rejected ............... 22

   ii. PAG's Proposed Construction Should Be Adopted ......................... 24

    a. PAG's Proposed Construction Is Correct ........................ 24

IV. CONCLUSION ............................................................................................ 26

## TABLE OF AUTHORITIES

**I.    CASE LAW**

Advanced Cardiovascular Sys, Inc., 242 F.3d 1337, 1345(Fed. Cir. 2001). .................................15

Alloc, Inc. v. International Trade Comm'n, 342 F.3d 1361 (Fed. Cir. 2003)................................15

Bell Atlantic Network Servs., Inc. v. Covad Comms. Group, Inc.,
262 F.3d 1258 (Fed. Cir. 2001)........................................................................13, 17

CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359 (Fed. Cir. 2002). .........................................14

Comark Communications v. Harris Corp., 156 F.3d 1182 (Fed. Cir. 1998). ................................15

Markman v. Westview Instrus., Inc., 517 U.S. 370 (1996). ..........................................................14

Medrad, Inc. v. MRI Devices Corp., 401 F.3d 1313 (Fed. Cir. 2005)...........................................14

Microsoft Corp. v. Multi-Tech Sys., Inc., 357 F.3d 1340 (Fed. Cir. 2004)...................................16

Modine Mfg. Co. v. United States Int'l Trade Comm'n, 75 F.3d 1545 (Fed. Cir. 1996)........16, 19

Netword, LLC v. Central Corp., 242 F.3d 1347 (Fed. Cir 2001). ..................................................14

O.I. Corp. v. Tekmar Co., 115 F.3d 1576 (Fed. Cir. 1997). ..........................................................18

Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005).............................................12, 13, 14, 19

Renishaw PLC v. Marposs Societa' per Azioni, 158 F.3d 1243 (Fed. Cir. 1998).............12, 14, 24

SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc., 242 F.3d 1337
(Fed. Cir. 2001)...............................................................................................15. 17, 18

Standard Oil Co. v. American Cyanamid Co., 774 F.2d 448 (Fed. Cir. 1985).............................13

Sunrace Roots Enter. Co., LTD v. SRAM Corp., 336 F.3d 1298 (Fed. Cir. 2003).......................15

Toro Co. v. White Consolidated Indus., Inc., 199 F.3d 1295 (Fed. Cir. 1999). ......................18, 19

Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576 (Fed. Cir. 1996). ............................11, 13, 19

Wang Lab., Inc. v. America Online, Inc., 197 F.3d 1377 (Fed. Cir. 1999). ............................18, 19

Watts v. XL Sys., Inc., 232 F.3d 877 (Fed. Cir. 2000). ..................................................................16

ATI 30044237.1

**B.**     <u>**STATUTES, RULES, & REGULATIONS**</u>

35 United States Code §112, Fifth Paragraph.................................................................17

Code of Federal Regulations § 1.83(a) .........................................................................27

Manual of Patent Examining Procedure § 608.02(d)....................................................28

ATl 30044237.1

## LIST OF DEFENDANT, PAG, LTD'S, EXHIBITS

"A"     United States Patent No. 4,810,204 (previously filed along with "Defendant, PAG
        LTD's, Opening Claim Construction ('Markman') Memorandum," January 20,
        2006 (Docket No. 161)

"B"     United States Patent No. 4,218,107 (previously filed along with "Defendant, PAG
        LTD's, Opening Claim Construction ('Markman') Memorandum," January
        20, 2006 (Docket No. 161)

"C"     United States Patent No. 4,550,968 (previously filed along with "Defendant, PAG
        LTD's, Opening Claim Construction ('Markman') Memorandum," January
        20, 2006 (Docket No. 161)

"D"     Plaintiff Anton/Bauer's Claim Constructions (previously filed along with
        "Defendant, PAG LTD's, Opening Claim Construction ('Markman')
        Memorandum," January 20, 2006 (Docket No. 161)

"E"     Defendant, PAG, Ltd's Disputed Claim Term Constructions (previously filed
        along with "Defendant, PAG LTD's, Opening Claim Construction ('Markman')
        Memorandum," January 20, 2006 (Docket No. 161)

"F"     Anton/Bauer Web Site Product Information For the Gold Mount® Quick Change
        System (filed herewith)

## I.    INTRODUCTION

Defendant, PAG, LTD ("PAG"), hereby submits its Memorandum in response to Plaintiff, Anton/Bauer, Inc.'s ("Anton/Bauer"), proposed claims constructions filed with the Court on January 20, 2006. Although PAG does not agree with any of Anton/Bauer's proposed constructions, PAG focuses this Memorandum on Anton/Bauer's proposed constructions for the following two phrases: (1) "or the like;" and (2) "a plurality of spaced headed projections… with each projection having head and leg portions."[1]

### A.    "A Battery Pack 'Or The Like'"

Based on the law and facts of this case, Anton/Bauer's proposed construction for the phrase "a battery pack or the like" is irreconcilable with its own proposition. On one hand, Anton/Bauer suggests that "a battery pack 'or the like'" should be construed as "a structure that *furnishes* power." See Anton/Bauer's Memorandum at 11 (emphasis added). On the other hand, however, Anton/Bauer states that an example of such a "structure" is a device that "taps," or actually *drains* power, namely a "power *tap*." See Anton/Bauer's Memorandum at 11 (emphasis added). Thus, Anton/Bauer's proposed definition cannot be correct because a "structure" that is like "a battery pack" should furnish power, not "tap" or drain power, according to Anton/Bauer's own construction.

Anton/Bauer's proposed definition only supports PAG's contention that, based on the intrinsic record of the patent-in-suit, the phrase "a battery pack 'or the like,'" is so vague and indefinite that it cannot be construed.

---

[1] PAG's proposed constructions for each disputed term is attached to "Defendant, PAG LTD's, Opening Claim Construction ('Markman') Memorandum" filed January 20, 2006 (Docket No. 161) as DX "E."

**B.**    **"A Plurality Of Spaced Headed Projections... With Each Projection Having Head And Leg Portions"**

Similarly, based on the law and facts of this case, Anton/Bauer's proposed construction for the phrase "a plurality of spaced headed projections... with each projection having head and leg portions" should not be adopted by the Court. Anton/Bauer cannot point to any evidence in the intrinsic record, i.e. the specification of U.S. Patent No. 4,810,204 (the "'204 patent"), that supports Anton/Bauer's proposed definition that does not also fully support PAG's proposed construction.

The problem with Anton/Bauer's evidence, however, is that Anton/Bauer only cites two passages from the '204 patent while it totally ignores the remainder of the '204 patent. Not surprisingly, the remainder of the '204 patent undercuts Anton/Bauer's proposed construction, support PAG's construction, and shows the Court how a person of ordinary skill in the art having read the '204 patent would understand and construe the "projections" claim phrase. See Defendant, PAG LTD's, Opening Claim Construction ('Markman') Memorandum, Docket No. 161, filed January 20, 2006.

Indeed, after reading the entire '204 patent and its specification, the "inescapable conclusion" is that PAG's construction is correct for at least the following four reasons:

(i)     the inventor of the '204 patent defined and described "the invention" as having "projections" and "leg portions" that have a "half-moon shaped" end portion;

(ii)     the inventor of the '204 patent defined his invention as a new and improved design as compared to the designs of U.S. Patent No. 4,218,107 (the "'107 patent") and U.S. Patent No. 4,550,968 (the "'968 patent"), and the

"projections" and "leg portions" of the prior art designs described in the '107 and

'968 patents have symmetrical end portions without a "half-moon shape;"

      (iii)    the inventor of the '204 patent, acting as a lexicographer, defined

and specified that "each" "projection" and "leg portion" must have a "half-moon

shaped" end portion; and

      (iv)    the inventor of the '204 patent did not disclose or suggest any

embodiment other than "projections" and "leg portions" with "half-moon shaped"

end portions.

See Defendant, PAG LTD's, Opening Claim Construction ('Markman') Memorandum,

Docket No. 161, filed January 20, 2006.

## II.    STATEMENT OF FACTS

###     A.    "A Battery Pack 'Or The Like'"

Anton/Bauer's only support of its proposed construction for the phrase "a battery pack

'or the like,'" is Column 11, Lines 20-25 of the '204 patent. See Anton/Bauer's Memorandum at

11. That cited passage of the '204 patent, in pertinent part, provides:

> other power or electronic control connections such as the connection of AC power
> supplies, *power taps*, micro controls, camera control equipment and the like….

DX "A," '204 Patent at Col. 11, Lines 20-23 (emphasis added).

A "power tap" is a device that taps or drains power, it does not furnish power. See e.g.,

DX "F," Anton/Bauer Web Site Product Information For the Gold Mount® Quick Change

System. As set forth in Anton/Bauer's own product literature, a power tap "allows a camera

mounted light, wireless microphone, or other D.C. accessory *to be powered from the camera*

*battery*." DX "F,"Anton/Bauer Web Site Product Information For the Gold Mount® Quick

Change System. As a power tap drains or taps power from the battery, it is not "like" a battery

pack, which furnishes power. In fact, a battery pack and a power tap have opposite functions. A battery pack furnishes power, whereas a power tap drains power – usually from the battery.

In addition, a power tap does not connect to the female plate in the same way that a battery pack connects to a female plate. Instead, Anton/Bauer's power tap "mates directly with the PowerTap *receptacle* [which is on the side of the female plate of] the Gold Mount." DX "F," Anton/Bauer Web Site Product Information For the Gold Mount® Quick Change System (emphasis added). Thus, a power tap is not "like" a battery pack.

**B.    "A Plurality Of Spaced Headed Projections... With Each Projection Having Head And Leg Portions"**

Anton/Bauer's only support of its proposed construction for the phrase "a plurality of spaced headed projections... with each projection having head and leg portions" is Figure 5 and Column 7, Lines 3-7 of the '204 patent. See Anton/Bauer's Memorandum at 20. PAG agrees with Anton/Bauer that Figure 5 and Column 7, Lines 3-7, are highly relevant to the proper construction of "projection" claim phrase.

**1.    Figure 5**

Both parties agree that Figure 5 of the '204 patent depicts the claimed "projections" at issue. Reference number "56" of Figure 5 clearly teaches a person having ordinary skill in the art that the claimed "projections" have a "half-moon shaped" end portion or back plate:



DX "A," '204 Patent at Figure 5.  The inventor of the '204 patent also explained that Figure 5,

with its "half-moon shaped" "projections" and "leg portions," depicts the "invention" of the '204

patent:

> FIG. 5 is an exploded perspective view of *the headed projection* of the battery
> pack connection *of the present invention* and further illustrates its manner of
> securement to the male plate of the battery pack connection.

DX "A," '204 Patent at Col. 5, Lines 35-38 (emphasis added).

### 2.    Column 7, Lines 3-7

Likewise, both parties also agree that Column 7, Lines 3-7, of the '204 patent also

accurately describe the claimed "projections" at issue:

> The male plate 12 is formed with a plurality of *projections 26, each of*
> *which has* a large circular head 27 and an integral narrow *leg portion 28*
> terminating in a circular *end portion 54 which is cut linearly along a top edge 56*
> *to provide a substantial half-moon shape.*

DX "A," '204 Patent at Col. 7, Lines 3-7 (emphasis added).  Thus, both of Anton/Bauer's two

references to the specification of the '204 patent teach a person having ordinary skill in the art

that the "projections" claimed in the '204 patent have "half-moon shaped" end portions.

### 3.    Portions Of The Specification Ignored By Anton/Bauer

Although Anton/Bauer acknowledges Figure 5 and Column 7, Lines 3-7, of the '204

patent, it inexplicably ignores several other key portions of the '204 patent that are relevant to

the Court's construction of the phrase "a plurality of spaced headed projections... with each

projection having head and leg portions."

### i.     The '204 Patent Is An "Improvement" Patent

As stated by the inventor of the '204 patent, "*the present invention* [of the '204 patent] is direct[ed] to <u>further</u> *improving* several features of the battery pack connection." DX "A," '204 Patent at Col. 3, Lines 13-15.[2][3] The "further improve[ments]" described in the '204 patent are based on the predecessor designs of a battery pack connection shown in Plaintiff's U.S. Patent No. 4,218,107 (the "'107 patent") and U.S. Patent No. 4,550,968 (the "'968 patent").[4]

Although the inventor of the '204 patent believed that the inventions of the '107 and '968 patents "generally proved satisfactory in use," the invention of the '204 patent was specifically described as directed to a handful of "improvements" over the '107 and '968 patented designs. DX "A," '204 Patent at Col. 3, Lines 15-47.

In particular, and with respect to the disputed claim term, the inventor of the '204 patent intended to "improve" over the designs of the '107 patent and the '968 patent with an "improved securement means:"

> While the foregoing generally proved satisfactory in use, *the present invention* is direct[ed] to further improving several features of the battery connections.... with *improved securement means for the headed projections on the surface of the male plate to prevent loss thereof.*

DX "A," '204 Patent at Col. 3, Lines 13-15 and Lines 42-47 (emphasis added).

---

[2] The notation "DX" is shorthand for "Defendant's Exhibit." Defendant's Exhibits "A" through "E" are filed herewith.

[3] The "Column" numbers of a U.S. Patent refer to the numbers at the top of each column of the specification of a patent. The '204 patent has Columns "1" through "6." The "Line" numbers refer to the numbers that are found down the middle of each page of the specification of a patent, in between the two columns of text on each page of the specification of the patent.

[4] The inventor of the '204 patent, Mr. Anton Wilson, is also the sole inventor of the '107 patent. All three patents, the '204 patent, the '107 patent, and the '968 patent, are owned by Plaintiff, Anton/Bauer, Inc.

### a.    The "Improved" "Projections" And "Leg Portions"

The inventor of the '204 patent intended to provide his "improved securement means" by virtue of "improved" headed "projections" and "leg portions." In fact, the inventor of the '204 patent stated that "in accordance with *the present invention*," his new, "improved" headed projections were "improved" by virtue of having "half-moon shaped" end portions or back plates:

> The headed *projections* on the male plate have *a half-moon shaped back plate* seated in a complementally shaped slot on the wall of the male plate *to preclude inadvertent turning and loosening* of the screwthreaded mounting of the headed projection *with concomitant loss of the projection* from the plate if its mounting completely comes apart.

DX "A," '204 Patent at Col. 4, Lines 43-49 (emphasis added).

The inventor of the '204 patent confirmed that his "present invention" was the "half-moon shaped" "projections" and "leg portions" in Figure 5 of the '204 patent:



DX "A," '204 Patent at Figure 5. Reference number "56" of Figure 5 clearly shows a person having ordinary skill in the art how the inventor of the '204 patent "improved" the headed

projection of the '204 patent by adding a "half-moon shaped" end portion or back plate, as compared to the symmetrical headed projections of the '107 and '968 patents.

### ii.    The Problematic Prior Art Battery Pack Connections

### a.    The Prior Art '107 Patent

Contrary to the "projections" described and defined in the '204 patent-in-suit, which have "half-moon shaped" end portions, the "projections" in the '107 patent merely have symmetrical end portions:

> a plurality of projections 26, *each of which has* a large head 27 and an integral narrow leg portion 28. Each projection may be secured to the male plate by being formed with an axial threaded hole into which a screw 29 from the backside of the male plate is threadable."

DX "B," '107 Patent at Col. 3, Lines 5-10. In other words, the legs of the projections in the '107 patent have symmetrical, non-half-moon shaped, end portions; they do not have "a circular end portion 54 which is cut linearly along a top edge 56 to provide a substantial half-moon shape." See DX "A," '204 Patent at Col. 7, Lines 3-7; DX "C," '107 Patent. Consistent with this "symmetrical" end portion definition, Figures 3 and 4 of the prior art '107 patent also define projections with "symmetrical" end portions that do not have a half-moon shape. See DX "C," '107 Patent at Figures 3 and 4.[5]

As the projections of the '107 patent do not have a "a circular end portion 54 which is cut linearly along a top edge 56 to provide a substantial half-moon shape," the projections of the '107 patent are, according to the '204 patent-in-suit, subject to "inadvertent turning and loosening" along "with concomitant loss of the projection from the plate 12." See DX "A," '204 Patent at Col. 7, Lines 3-7 and Lines 13-15. Thus, the projections of the '107 patent fail to provide an "improved securement means for the headed projections on the surface of the male

---

[5] Figure 4 of the '107 Patent is reproduced at page ___ of this Memorandum.

plate to prevent loss thereof." See DX "A," '204 Patent at Col. 3, Lines 45-47; DX "B," '107 Patent.

### b.     The Prior Art '968 Patent

As with the '107 patent, the "projections" of the '968 patent also have symmetrical end portions – not "half-moon shaped" end portions:

> a plurality of projections 26, *each of which has* a large head 27 and an integral narrow leg portion 28.  Each projection may be secured to the male plate by being formed with an axial threaded hole into which a screw 29 from the backside of the male plate is threadable."

DX "C," '968 Patent at Col. 4, Lines 23-28.  Consistent with this "symmetrical" end portion definition, Figures 3 and 4 of the prior art '968 patent also define projections that have "symmetrical" end portions without a half-moon shape.  See DX "C," '968 Patent at Figures 3 and 4.[6]

As the projections of the '968 patent do not have a "a circular end portion 54 which is cut linearly along a top edge 56 to provide a substantial half-moon shape," the projections of the '968 patent, according to the '204 patent-in-suit, also are subject to "inadvertent turning and loosening" along "with concomitant loss of the projection from the plate 12."  See DX "A," '204 Patent at Col. 7, Lines 3-7 and Lines 13-15.  Thus, the projections of the '968 patent fail to provide an "improved securement means for the headed projections on the surface of the male plate to prevent loss thereof."  See DX "A," '204 Patent at Col. 3, Lines 45-47; DX "C," '968 Patent.

---

[6] Figure 4 of the '968 Patent is reproduced at page 24 of this Memorandum.

### iii.  "Summary Of The Invention" Section Of The '204 Patent

In the "Summary Of The Invention" section of the '204 patent, the inventor defined the "improved securement means for the headed projections" (see DX "A," '204 Patent at Background Of The Invention, Col. 3, Lines 13-15 and Lines 45-47) as having "projections" with "a half-moon shaped back plate:"

> In accordance with *the present invention*.... *The headed projections on the male plate have a half-moon shaped back plate* seated in a complementally shaped slot on the wall of the male plate *to preclude inadvertent turning and loosening* of the screwthreaded mounting of the headed projection with *concommitant loss of the projection from the plate* if its mounting completely comes apart."

DX "A," '204 Patent at Col. 3, line 50 and Col. 4, lines 35-36 and lines 43-49 (emphasis added). No other "improved securement means" or "projection" is described in the "Summary Of The Invention" section, or anywhere else in the '204 patent. DX "A," '204 Patent.

### iv.  "Brief Description Of The Drawings" Section Of The '204 Patent

In the "Brief Description Of The Drawings" section of the '204 patent, the inventor again reiterated that his "invention" includes not just any "projection," but only a "projection" with a "half-moon shaped end portion:"

> "Further objects and advantages of *the invention* will become apparent from the following description and claims, and from the accompanying drawings, wherein:

> FIG. 5 is an exploded perspective view of *the headed projection* of the battery pack connection *of the present invention* and further illustrates its manner of securement to the male plate of the battery pack connection."

DX "A," '204 Patent at Col. 5, Lines 18-20 and lines 35-38 (emphasis added). No other "improved securement means" or "projection" is shown in the "Brief Description Of The Drawings" section of the '204 patent, or any other section of the '204 patent. DX "A," '204 Patent.

v.    **"Detailed Description" Section Of The '204 Patent**

Finally, in the "Detailed Description Of The Preferred Embodiment" section of the '204

patent, the inventor reiterates for the fifth time that his "invention" is a "projection" with a "leg

portion" that has a "half-moon shaped" end portion:

> Referring now to the drawings in detail… the battery pack of *the present invention* is generally indicated by reference numeral 10 in FIG. 13 and includes a female plate 11 and a male plate 12.

> The male plate 12 is formed with *a plurality of projections 26*, *each of which has* a large circular head 27 and *an integral narrow leg portion 28 terminating in a circular end portion 54 which is cut linearly along a top edge 56 to provide a substantial half-moon shape*…. The *half-moon shaped end portion* 54 is seated in a complementary shaped slot 60 on the front wall of the male plate 12 *to preclude inadvertent turning and loosening of the threaded projection 26, with concommitant loss of the projection* from the plate 12 if its mounting completely comes apart.

DX "A," '204 Patent at Col. 6, Lines 17-22 and Col. 7, Lines 3-16 (emphasis added).

## III.    **PAG'S PROPOSED CONSTRUCTIONS AND LEGAL SUPPORT THEREFOR**

### A.    **Claim Construction Law**

"It is well-settled that, in interpreting an asserted claim, the court should look first to the

intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in

evidence, the prosecution history…. Such intrinsic evidence is the most significant source of the

legally operative meaning of the disputed claim language." Vitronics Corp. v. Conceptronic,

Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996).   The intrinsic record of this case leads to the

"inescapable conclusion" that the "projection" and "leg portion" terms of claims 9 and 11 of the

'204 patent must be construed as having "half-moon shaped" end portions.

### 1.    **Intrinsic Evidence**

When the Court considers the intrinsic evidence, it must do so through the eyes of a person having ordinary skill in the art. The person of ordinary skill in the art does not construe the words of a claim in a vacuum, but rather only after having read the entire intrinsic record, in particular, the specification of the patent at issue. Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005) ("Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification.").

The specification of the patent-in-suit must be studied in order to determine what the inventor truly invented because "[t]he patent system is based on the proposition that claims cover *only* the invented subject matter." Phillips, 415 F.3d at 1321 (emphasis added); Renishaw PLC v. Marposs Societa' per Azioni, 158 F.3d 1243, 1250 (Fed. Cir. 1998) ("Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of *what the inventors actually invented* and intended to envelop with the claim. The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.") (emphasis added).

In the present case, based on the inventor's own words and own description of his "invention," the "invention" of the '204 patent, in relevant part, is "projections" and "leg portions" that have a "half-moon shaped" end portion. Claims 9 and 11 of the '204 patent should be construed consistent with this "invention." Phillips, 415 F.3d at 1321 ("[t]he patent system is based on the proposition that claims cover *only* the invented subject matter.") (emphasis added).

### i.    The Claim Language

"[T]he words of a claim 'are generally given their ordinary and customary meaning.'"
Phillips, 415 F.3d at 1312.  "[T]he ordinary and customary meaning of a claim term is the
meaning that the term would have to a person of ordinary skill in the art in question at the time of
the invention, i.e. as of the effective filing date of the patent application." Phillips, 415 F.3d at
1312; Bell Atlantic Network Servs., Inc. v. Covad Comms. Group, Inc., 262 F.3d 1258, 1267
(Fed. Cir. 2001) ("As a starting point, we give claim terms their ordinary and accustomed
meaning as understood by one of ordinary skill in the art.").

The ordinary meaning of a disputed claim term, however, can only be determined *after*
reading the *entire* patent. Phillips, 415 F.3d at 1321 ("Properly viewed, the 'ordinary meaning'
of a claim term is its meaning to the ordinary artisan after reading the entire patent."); Phillips,
415 F.3d at 1313 ("Importantly, the person of ordinary skill in the art is deemed to read the
claim term not only in the context of the particular claim in which the disputed term appears, but
in the context of the entire patent, including the specification.").

### ii.    The Specification

The specification of a patent is the most important source for claim interpretation because
it shows what the inventor truly invented and claimed as his/her invention.[7] Vitronics, 90 F.3d at
1582 (the specification "is always highly relevant to the claim construction analysis. Usually, it
is *dispositive*; it is the *single best guide* to the meaning of a disputed term.") (emphasis added);
Standard Oil Co. v. American Cyanamid Co., 774 F.2d 448, 452 (Fed. Cir. 1985) ("[t]he
descriptive part of the specification aids in ascertaining the scope and meaning of the claims in as

---

[7] The "specification" of the '204 patent is the written description set-forth in the patent at
Column 1, Line 1 through Column 11, Line 26.  The "specification" of the '204 patent also
includes Figures 1 through 19.

much as the words of the claims must be based on the description. The specification is, thus, the _primary basis_ for construing the claims.") (emphasis added); Phillips, 415 F.3d at 1317 ("It is therefore entirely appropriate for a court, when conducting claim construction, to _rely heavily_ on the written description for guidance as to the meaning of the claims.") (emphasis added).

The specification is the most important claim construction tool because it provides the context in which the disputed claim terms appear, and in which they must be interpreted. Medrad, Inc. v. MRI Devices Corp., 401 F.3d 1313,1319 (Fed. Cir. 2005) ("we must look at the ordinary meaning in the context of the written description and the prosecution history."); Netword, LLC v. Central Corp., 242 F.3d 1347, 1352 (Fed. Cir 2001) ("The claims are directed to the invention that is described in the specification; they do not have meaning removed from the context from which they arose."); CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359, 1366 (Fed. Cir. 2002) (the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess).

The meaning of the disputed claim terms cannot be construed in a vacuum. Medrad, 401 F.3d at 1319 ("We cannot look at the ordinary meaning of the term… in a vacuum. Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history."); Markman v. Westview Instrus., Inc., 517 U.S. 370, 389 (1996) ("[A claim] term can be defined only in a way that comports with the instrument as a whole.") Renishaw, 158 F.3d at 1250 ("The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.") (emphasis added).

a.     **Reading-In Limitations vs. Construing "The Invention"**

Although the specification of a patent is critical to proper claim construction, limitations that appear in the specification of a patent, but not the claims, generally are not read into the claims. <u>Comark Communications v. Harris Corp.</u>, 156 F.3d 1182, 1186 (Fed. Cir. 1998). There is, however, a delicate balance between properly using the specification for claim construction purposes and improperly using the specification to read limitations into a claim. This balance turns on how the specification characterizes the claimed "invention." <u>Sunrace Roots Enter. Co., LTD v. SRAM Corp.</u>, 336 F.3d 1298, 1305 (Fed. Cir. 2003) ("That balance turns on how the specification characterizes the claimed invention.").

To determine the tip of the balance, the Court must look to whether the specification refers to a limitation only as a part of less than all possible embodiments, or whether the specification, read as a whole, suggests that the very character of the invention requires the limitation be a part of every embodiment. <u>Alloc, Inc. v. International Trade Comm'n</u>, 342 F.3d 1361, 1370 (Fed. Cir. 2003). Where the specification makes clear at various points that the claimed invention is narrower than the claim language might imply, it is <u>*entirely permissible and*</u> <u>*proper*</u> to limit the claims to what is described in the specification. <u>SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.</u>, 242 F.3d 1337, 1345 (Fed. Cir. 2001).

Certainly, where the inventor of a patent makes general statements such as "the present invention is," those statements must be viewed as limiting the scope of the claimed invention consistent with the inventor's characterization of "the present invention." <u>Alloc</u>, 342 F.3d at 1368-69 ("A patent applicant may consistently and clearly use a term in a manner either more or less expansive than its general usage in the relevant art, thereby expanding or limiting the scope of the term in the context of the patent claims.") (The "specification describes 'the invention'

under the heading 'Technical Problems and Objects of the Invention,' as... where a play exists.... Thus, the specification teaches that *the invention as a whole*, not merely a preferred embodiment, provides for play in the positioning of floor panels.") (emphasis added); Microsoft Corp. v. Multi-Tech Sys., Inc., 357 F.3d 1340, 1347-48 (Fed. Cir. 2004) ("When the specification 'makes clear that *the invention* does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question.") ("In light of those clear statements in the specification that *the invention* ('the present system') is directed to communications 'over a standard telephone line,' we cannot read the claims... to encompass data transmission over a packet-switched network such as the Internet. Instead, the specification shared by all three patents leads to the 'inescapable conclusion' that the communications between the local and remote sites of the claimed inventions must occur directly over a telephone line.") (emphasis added); Watts v. XL Sys., Inc., 232 F.3d 877, 883 (Fed. Cir. 2000) ("the specification actually limits the invention to structures that utilize misaligned taper angles, stating that the '*present invention* utilizes [the varying taper angle] feature."); Modine Mfg. Co. v. United States Int'l Trade Comm'n, 75 F.3d 1545, 1551 (Fed. Cir. 1996) ("When the preferred embodiment is described in the specification as *the invention* itself, the claims are not necessarily entitled to a scope broader than that embodiment.").

This is particularly true when the inventor makes statements of what "the invention" is in the "Summary of the Invention" section of the specification, or any other section of a patent prior to the "Detailed Description" section of the patent. Microsoft, 357 F.3d at 1348 ("Those statements, some of which are found in the 'Summary of the Invention' portion of the

specification, are not limited to describing a preferred embodiment, but more broadly describe the overall inventions of all three patents."); Bell Atlantic, 262 F.3d at 1270 (description of "the invention" was set forth in the Summary of the Invention section of the patent "before we even reach the Detailed Description of the Preferred Embodiments").

In the present case, the inventor of the '204 patent repeatedly described his "invention" as having "half-moon shaped" end portions.    More specifically, the patentee described his "invention" as having "half-moon shaped" end portions in the "Background Of The Invention" section, the "Summary Of The Invention" section, the "Brief Description Of The Drawings" section, and the Figures of the '204 patent, all of which sections precede the "Detailed Description Of The Preferred Embodiment" section of the '204 patent.    Similar to the Federal Circuit's SciMed Life Sys. case, the characterization of the "half-moon shaped" end portions as a part of "the present invention" is "strong evidence that the claims should not be read to encompass the opposite structure." SciMed Life Sys., 242 F.3d at 1343.

### b.    A Patentee Can Be A Lexicographer

A patentee may act as a lexicographer and define words in the specification either expressly or by implication.  Bell Atlantic, 262 F.3d at 1269 ("the patentee may act as his own lexicographer by using the specification to define terms either expressly or 'by implication.'"). A patentee defines a term by implication when the patentee uses the term consistently throughout the specification and no other definition or embodiment is suggested for that term. Bell Atlantic, 262 F.3d at 1271 ("when a patentee uses a claim term throughout the entire patent specification, in a manner consistent with only a single meaning, he has defined that term 'by implication.'").

In the present case, the inventor of the '204 patent expressly, implicitly, and pictorially defined "*each*" "projection" and "leg portion" as having a "half-moon shaped" end portion. The patentee's specific definition of this claim term should not be contradicted.

### c.    Distinguishing The Invention From The Prior Art

The invention, and corresponding claim terms, can also be defined by statements made in the specification in an effort to distinguish the patented invention from the prior art. O.I. Corp. v. Tekmar Co., 115 F.3d 1576, 1581 (Fed. Cir. 1997) (limiting claims because the specification described only non-smooth or conical passages and distinguished over the prior art based on these characteristics); SciMed Life Sys., 242 F.3d at 1342-43 ("discussing the disadvantages of certain prior art structures" and explaining how the described invention is better).

The inventor of the patent in this case clearly distinguished the "projections" and "leg portions" of the '204 patent as being different from the "projections" and "leg portions" of the prior art '107 and '968 patents because of the "half-moon shaped" end portions. The "projections" and "leg portions" of the prior art '107 and '968 patents are clearly prior art. In addition, the patentee of the '204 patent was also undeniably critical of the prior art designs and repeatedly pointed out how the '204 patent design functioned more effectively than the prior art designs.

### d.    Claims Can Be Properly Limited To The Only Disclosed Embodiment

When the specification of a patent only discloses one embodiment, the claims can be properly limited to the sole embodiment. Toro Co. v. White Consolidated Indus., Inc., 199 F.3d 1295, 1301-02 (Fed. Cir. 1999) ("the specification describes the advantages of the unitary structure as important to the invention.... This is not simply the preferred embodiment; it is the only embodiment.") ("This is not a case of limiting the claims to a 'preferred embodiment' of an

invention that has been more broadly disclosed…. No such broader invention is here described."); Wang Lab., Inc. v. America Online, Inc., 197 F.3d 1377, 1382-83 (Fed. Cir. 1999) (limiting claims to the only embodiment described, a character-based protocol, and specifically not encompassing a bit-mapped protocol); Modine, 75 F.3d at 1551 ("When the preferred embodiment is described in the specification as the invention itself, the claims are not necessarily entitled to a scope broader than that embodiment.").

As in Toro, Wang, and Modine, the '204 patent only discloses one embodiment of a "projection" and "leg portion," and that sole embodiment has a "half-moon shaped" end portion. In this case, the "half-moon shaped" end portion is "the only subject matter that is described and enabled in the specification" of the '204 patent, and for this reason is, in fact, "the invention itself, and not simply a 'preferred' example." Wang Labs., 197 F.3d at 1383.

### iii.    The Prosecution History

If it is in evidence, the prosecution history must also be considered by the Court. Vitronics, 90 F.3d at 1582. The prosecution history, however, often is not helpful. Phillips, 415 F.3d at 1317 (the prosecution history "often lacks the clarity of the specification and thus is less useful for claim construction purposes.").

PAG does not presently believe that the prosecution history of the '204 patent is helpful to the claims construction analysis in this case.

### B.    The Disputed Claim Term At Issue

Plaintiff alleges that PAG infringes claims 9 and 11 of the '204 patent. Claim 9 provides:

9.    A releasable connections for a battery pack or the like comprising a relatively flat male plate and a relatively flat female plate,

said plates being adapted to be releasably locked together in connected position;

said female plate including a plurality of depending slots, and at least one elongate terminal, said terminal and slots being elongate in the same direction;

said male plate including a plurality of spaced headed ***projections*** with there being one for each slot and with *each projection* having head and *leg portions*, and at least one elongated mating terminal;

said male plate being positioned abutting the female plate with the legs of the projections being located in associated slots and with the one terminal within the mating terminal;

releasable locking means on said female plate for engaging at least one of the headed projections in one of said slots to lock said plates in connected position by preventing relative movement between said plates in the direction of said slots by maintaining the engagement of said locking means with said headed projection until said locking means is released; and said releasable locking means includes

at least one rotatable member on the backside of the female plate;

a pin on said rotatable member between said member and the backside of said female plate; and

means urging the member to a closed condition with said pin disposed in the path of movement of said headed projection inserted in said slot.

DX "A," '204 Patent at Col. 12, Lines 31-62 (emphasis added).

Claim 11, which depends from claim 9, provides:[8]

11.    The invention *as defined in claim 9* wherein said urging means is a torsion spring disposed between the bottom of said rotatable member and a fixed support on the backside of said female plate.

DX "A," '204 Patent at Col. 12, Line 67 through Col. 13, Line 2 (emphasis added).

Although PAG disagrees with all of Anton/Bauer's proposed definitions, PAG

respectfully requests the Court to reject Anton/Bauer's proposed constructions for the phrase "a

---

[8] "Dependent" claims include all of the terms of the claim from which they depend. In other words, claim 11 of the '204 patent includes all of the terms of claim 9, including the "projections" and "leg portions" claim terms. See 35 U.S.C. §112, paragraph 5 ("A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers.").

battery pack 'or the like,'" and "a plurality of spaced headed *projections*... with each projection

having head and *leg portions*...."

### 1.    "A Battery Pack 'Or The Like'"

Anton/Bauer's proposed construction for the phrase "a battery pack 'or the like'" should

be rejected by the Court as it is non-sensical. Anton/Bauer's proposed definition is that:

> **Or the like** means a similar functional structure to a battery pack, i.e. to *furnish*
> electric current.

See Anton/Bauer's Memorandum at 10 (bold in the original, italics added). Anton/Bauer further

proffers that examples of "or the like" similar devices include:

> other power or electronic control connections such as the connection of AC power
> supplies, *power taps*, micro controls, camera control equipment and the like....

DX "A," '204 Patent at Col. 11, Lines 20-23 (emphasis added). See also Anton/Bauer's

Memorandum at 11 ("these similar structures... AC power supplies; power taps").

Anton/Bauer's proposed definition is non-sensical. On one hand, Anton/Bauer suggests

that "a battery pack 'or the like'" should be construed as "a structure that *furnishes* power." See

Anton/Bauer's Memorandum at 10-11 (emphasis added). On the other hand, however,

Anton/Bauer suggests that an example of such a "structure" is a device that taps, or actually

drains, power namely a "power *tap*." See Anton/Bauer's Memorandum at 11 ("these similar

structures... AC power supplies; power taps")(emphasis added); DX "A," '204 Patent at Col. 11,

Lines 20-23 ("power taps... and the like"); DX "F," Anton/Bauer Web Site Product Information

For the Gold Mount® Quick Change System (a power tap "allows a camera mounted light,

wireless microphone, or other D.C. accessory *to be powered from the camera*

*battery*.")(emphasis added). Thus, Anton/Bauer's proposed definition, which includes a power

tap, cannot be correct because a "structure" that is like "a battery pack" furnishes power, it does not "tap" or drain power.

In addition, according to Anton/Bauer's construction, the battery pack is associated with the male plate of the claim. The power tap, on the other hand, has no direct connection or interaction with the male plate. Rather, the power tap connects to the female plate through a separate plug on the side of the female plate – not with the three depending slots on the plate. Anton/Bauer's proposed construction of the term "or the like" cannot be correct.

Anton/Bauer's proposed definition only supports PAG's contention that, based on the intrinsic record of the patent-in-suit, the phrase "a battery pack 'or the like,'" is so vague and indefinite that it cannot be construed.[9]

### 2. "A Plurality Of Spaced Headed *Projections* ... With *Each Projection Having Head And Leg Portions*"

#### i. Anton/Bauer's Proposed Construction Should Be Rejected

Anton/Bauer's proposed construction for the phrase "a plurality of spaced headed projections... with each projection having head and leg portions" should also be rejected by the Court. Anton/Bauer's proposed definition is that:

> The **plurality of spaced headed projections** means more than one headed projection set apart from one another. The headed projections are extending elements or features that have an enlarged uppermost part relative to a lower, narrower portion, making them headed projections.

See Anton/Bauer's Memorandum at 10 (bold in the original).

Anton/Bauer's only support for its proposed construction is Figure 5 and Column 7, Lines 3-7. Column 7, Lines 3-7 provide that:

---

[9]   The fact that this claim term cannot be construed raises concerns about the validity of these patent claims under 35 U.S.C. 112. However, the issue of claim validity is not before the Court at this time. This issue will be fully addressed later in this litigation.

> The male plate 12 is formed with a plurality of _projections 26, each of which has_ a large circular head 27 and an integral narrow _leg portion 28_ terminating in a circular _end portion 54 which is cut linearly along a top edge 56 to provide a substantial half-moon shape_.

DX "A," '204 Patent at Col. 7, Lines 3-7 (emphasis added). This passage clearly does not include any of the words used in Anton/Bauer's proposed definition, such as "extending," "elements," or "relative to." No express language in the '204 patent supports any part of Anton/Bauer's proffered definition. In fact, the cited passage supports PAG's proposed construction that the "projections" have "half-moon shaped" end portions.

To the extent Anton/Bauer's construction is based on its present-day description of what is depicted in Figure 5, Figure 5 clearly shows that the "projections" of the '204 patent have "half-moon shaped" end portions:



DX "A," '204 Patent at Figure 5. Thus, Anton/Bauer's only two sources of claim construction actually support PAG's proposed construction. More importantly, Anton/Bauer has not, and cannot, explain why its proposed construction relies on portions of its cited passage in Column 7 and part of what is shown in Figure 5, while other portions, such as the half-moon shaped end

portions, are inexplicably omitted from Anton/Bauer's discussion.  Anton/Bauer's proposed construction, which omits the "half-moon shaped" end portion limitation, should be rejected.

### ii.    PAG's Proposed Construction Should Be Adopted

Contrary to Anton/Bauer's proposed definition, PAG's proposed construction should be adopted by the Court as it is consistent with how a person of ordinary skill in the art would construe the "projections" claim term after having read and understood the entirety of the '204 patent. The phrase "a plurality of spaced headed projections... with each projection having head and leg portions" should be construed as:

> *The parts on the male plate that protrude from the surface of the male plate, each of which has a large circular head and an integral narrow leg portion. The leg portion of each projection terminates in a circular end portion, which is cut linearly along a top edge to provide a substantial half-moon shape.*

### a.    PAG's Proposed Construction Is Correct

PAG's construction should be adopted by the Court as it is wholly consistent with the intrinsic record of the '204 patent. <u>Renishaw</u>, 158 F.3d at 1250 ("The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.") (emphasis added).  Indeed, after reading the entire '204 patent and its specification, the "inescapable conclusion" is that PAG's construction is correct.

The claim construction evidence compels PAG's proposed claim construction for at least the following four reasons:

(i)    "the invention" is defined as having projections and leg portions that have an end portion with a half-moon shape;

(ii)    the invention is distinguished over the prior art as a new and improved design as compared to the '107 and '968 patents, and the "projections"

and "leg portions" of the '107 and '968 patents have symmetrical end portions without a "half-moon shape;"

 (iii) the inventor of the '204 patent, acting as a lexicographer, defined "projections" and "leg portions" as having end portions with a "half-moon shape;" and

 (iv) no other embodiment of the "projections" or "leg portions" are disclosed in the '204 patent other than "projections" and "leg portions" with "half-moon shaped" end portions.

Any one of these four reasons, standing alone, mandates that PAG's construction is correct. <u>See</u> Defendant, PAG LTD's, Opening Claim Construction ('Markman') Memorandum, Docket No. 161, filed January 20, 2006.

IV.    **CONCLUSION**

For the above-stated reasons, PAG respectfully submits that Anton/Bauer's proposed constructions should be rejected by the Court and that PAG's proposed constructions should be adopted by the Court.

This 17th day of February, 2006.

ROBINSON & COLE, LLP


Jason M. Kuselias (ct20293)
ROBINSON & COLE, LLP
280 Trumbull Street
Hartford, Connecticut 06103
Telephone: 860-275-8200
Facsimile: 860-275-8299
Email: jkuselias@rc.com

Stephen R. Risley (ct22652)
J. Scott Culpepper (ct22653)
2600 One Atlanta Plaza
950 East Paces Ferry Road, NE
Atlanta, Georgia 30326
Telephone: 404-760-4300
Facsimile: 404-233-1267
Email: srrisley@rkmc.com
Email: jsculpepper@rkmc.com

Attorneys for Defendant

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANTON/BAUER, INC.,<br>    Plaintiff, | ) ) ) | |
| v. | ) ) ) | CIVIL ACTION NO.<br>3:01-CV-577-CFD |
| PAG, LTD.<br>    Defendant, | ) ) ) | |
| v. | ) ) | |
| ANTON/BAUER, INC. and<br>ALEX DESORBO,<br>    Counterclaim and Third<br>    Party Defendants | ) ) ) ) ) | |

### CERTIFICATE OF SERVICE

The undersigned certifies that on the 17th day of February, 2006, a true and correct copy of the above and foregoing "DEFENDANT, PAG LTD'S, RESPONSE TO PLAINTIFF, ANTON/BAUER'S, MEMORANDUM IN SUPPORT OF ITS PROPOSED CLAIM CONSTRUCTION OF U.S. PATENT NO. 4,810,204" was served on the following counsel of record:

James T. Shearin
PULLMAN & COMLEY, LLC
50 Main Street
Bridgeport, CT 06604

Allen D. Brufsky
CHRISTOPHER & WEISBERG, P.A.
200 E. Las Olas Boulevard, Suite 2040
Ft. Lauderdale, FL 33301

by depositing a copy of the same in the United States mail, in a properly addressed envelope with sufficient first class postage affixed thereto.

Jason M. Kuselias (ct20293)
Stephen R. Risley  (ct22652)
J. Scott Culpepper  (ct22653)

Attorneys for Defendant