# EXHIBIT D

PART 1

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Tyco Healthcare Group LP          :
d/b/a United States               :
Surgical, a division of Tyco      :
Healthcare Group LP               :
                                  :
    Plaintiff-Counterclaim     :
    Defendant                  :
                                  :
v.                                :        No. 3: 04 CV 1702    (JBA)
                                  :
Ethicon Endo-Surgery, Inc.        :
                                  :
    Defendant-                 :
    Counterclaimant            :

Claim Construction of Disputed Terms in U.S. Patents
6,063,050, 6,280,407, 6,468,286, 6,682,544

The Complaint filed by plaintiff Tyco Healthcare Group L.P.,
also known as United States Surgical ("Tyco") alleges defendant's
infringement of four patents it acquired between May 2000 and
January 2004. See Complaint [Doc. # 1]. The parties have filed
a Joint Claim Construction which identifies their agreements and
disagreements as to certain claim terms in U.S. Patent No.
6,063,050 (the "'050 Patent") (entitled "Ultrasonic Dissection
and Coagulation System") (Complaint [Doc. # 1] Ex. A), U.S.
Patent No. 6,280,407 (the "'407 Patent") (also entitled
"Ultrasonic Dissection and Coagulation System") (Complaint Ex.
B), U.S. Patent No. 6,468,286 (the "'286 Patent") (entitled
"Ultrasonic Curved Blade") (Complaint Ex. C), and U.S. Patent No.
6,682,544 (the "'544 Patent") (also entitled "Ultrasonic Curved

1

Blade) (Complaint Ex. D). See Joint Claims Constructions &

Prehearing Stmt. [Doc. # 32].

These four patents relate to a medical tool that uses

ultrasonic energy to effect cutting and blood coagulation during

surgery and is commonly used in laparoscopic or endoscopic

surgeries (typically minimally invasive surgeries). Plaintiff

does not claim to have been the first to invent this type of

technology, but claims that its patents made "substantial

improvements that, in combination, provide a more effective and

functional system." Pl. Claim Construction Br. [Doc. # 35] at 3.

Plaintiff claims that defendant has infringed its patents by

incorporating these improvements into its own products,

specifically defendant's "UltraCision Harmonic Scalpel Curved

Blade" surgical instrument.

## II.  AGREEMENT ON VARIOUS CLAIM TERMS

The parties' submissions reflect the following agreed term

constructions:

- For the '050 Patent, Claim 1 and all dependent claims,
  and the '407 Patent Claim 1 and all dependent claims:
  **"Housing"** is construed as "a case or enclosure for
  parts of the ultrasonic surgical instrument."[1]

- For the '050 Patent, Claim 1 and all dependent claims:
  **"Elongated outer tube extending from the housing"** is

_____

[1] Colloquy with counsel at the Markman hearing indicates
that characteristics of the "housing" differ between the '050
Patent and the '407 Patent, see Markman Tr. [Doc. # 57] at 124-
26, but there is no need to reflect these characteristics in the
construction of the claim term "housing" itself.

construed as "a long, hollow generally cylindrical
outer body extending from the housing."

- For the '050 Patent, Claim 9:  **"Transducer removably
  connected to the housing"** is construed as "a transducer
  configured, as part of its normal use, to be joined
  with and be unjoined with the housing so that when
  connected the transducer may transmit its ultrasonic
  vibrations to the parts of the instrument designed for
  reception and transmission of ultrasonic vibrations."

- For the '407 Patent, Claim 1 and dependent Claim 7:
  **"Transducer adapted to be removably supported on the
  handle portion of the housing"** is construed as "a
  transducer configured, as part of its normal use, to be
  held up or in position by and to be removed from the
  handle portion of the housing so that when connected
  the transducer may transmit its ultrasonic vibrations
  to the parts of the instrument designed for the
  reception and transmission of the ultrasonic
  vibrations."

- For the '407 Patent, Claim 1 and dependent Claim 7:
  **"Tool member supported on"** is construed as "the working
  end of the instrument held up or in position by the
  distal end of the vibration coupler."

- For the '286 Patent, Claims 6, 7 and all dependent
  claims: **"Tissue engaging stops"** is construed as "the
  portions of the clamp that engage tissue and prevent
  tissue from moving past the proximal portion end of the
  blade surface."

- For the '286 Patent, Claim 7 and all dependent claims:
  **"Vibration coupler supported by and extending distally
  from the handle assembly"** is construed as "the
  vibration coupler is held up or held in position by the
  handle assembly and extends distally from the handle
  assembly; the vibration coupler conducts high frequency
  vibration from the ultrasonic transducer to the distal
  end of the instrument."

- For the '286 Patent, Claims 7, 9, 12 and all dependent
  claims: **"Handle assembly"** is construed as "the proximal
  end of the instrument that is grasped by the hand of
  the user."

3

- For the '286 Patent, Claims 10, 11, 12 and all dependent claims: **"Coupling member"** is construed as a "component that connects two other parts."

- For the '286 Patent, Claim 19: **"Concavity"** is construed as "a shape that is curved inward."

- For the '544 Patent, Claims 9, 12 and all dependent claims: **"Handle assembly"** is construed as "the proximal end of the instrument that is grasped by the hand of the user."

- For the '544 Patent, Claim 13 and dependent Claim 16: **"Transducer removably supported on the handle assembly"** is construed as "a transducer configured, as part of its normal use, to be held up or in position by and to be removed from the handle assembly so that when connected the transducer may transmit its ultrasonic vibrations to the parts of the instrument designed for the reception and transmission of the ultrasonic vibrations."

- For the '544 Patent, Claim 18: **"Dimensioned to be received within a 5 mm trocar assembly"** is construed as "designed so as to fit into the hollow receptacle of a 5 mm trocar cannula."

- For the '544 Patent, Claims 23 and 24: **"Tissue receiving stop"** is construed as "the portion of the clamp that engages tissue and prevents tissue from moving past the proximal portion end of the blade surface."

- For the '544 Patent, Claim 24: **"Blade surface"** is construed as "the face that engages tissue to achieve cutting."

## III. CLAIM CONSTRUCTION

### A.    Standard

The construction of patent claims is a matter of law within the exclusive province of the Court.  See Markman v. Westview Instruments, Inc., 517. U.S. 370 (1996).  In construing patent

4

claims, the words of a claim are typically "given their ordinary and customary meaning," see e.g., Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996), which meaning has been interpreted as "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005). Claim construction, therefore, "begins with the claims themselves, the written description, and, if in evidence, the prosecution history." Microsoft Corp. v. Multi-Tech Sys., Inc., 357 F.3d 1340, 1346 (Fed. Cir. 2004).

As Phillips clarified, in determining the meaning given to a claim term by a person of ordinary skill in the art, that person "is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." Phillips, 415 F.3d at 1313 (also stating "[t]he best source for understanding a technical term is the specification from which it arose, informed, as needed, by the prosecution history," id. at 1315 (citing cases)). Philips warns, however, that courts should "avoid importing limitations from the specification into the claims." Phillips, 415 F.3d at 1323.

When the proper claim construction is not "readily apparent" from the claim term and other intrinsic evidence, a court may look to "sources available to the public that show what a person

5

of skill in the art would have understood disputed claim language to mean." Phillips, 415 F.3d at 1314. There is no "magic formula" to claim construction, and a court is "[not] barred from considering any particular sources or required to analyze sources in any specific sequence, so long as those sources are not used to contradict claim meaning that is unambiguous in light of the intrinsic evidence." Phillips at 1324.

**B.   The '050 Patent**

1.   Claim 1 ("handle")

       Claim 1 (and all dependent claims) of the '050 Patent uses the term "handle" as follows: "a housing including a first **handle** and a second **handle** movable with respect to the first **handle**," and "a clamp member extending distally of the distal portion of the outer tube and pivotable between an open position and a clamped position by movement of the second **handle** between first and second positions . . . " See '050 Patent, Claim 1 (emphasis added). Plaintiff proposes the following construction: "The part of the instrument designed to be grasped by the hand," while defendant proposes: "A part of the housing that can be grasped by the hand by inserting one or more fingers through an opening therein."

       The plaintiff's proposed instruction that "handle" be construed as "the part of the instrument designed to be grasped by the hand," comports with the agreed ordinary and customary

6

meaning of "handle" as "a part that is designed esp. to be grasped by the hand or that may be grasped by the hand," see Def. Claim Construction Br. [Doc. # 40] at 10, and there is a heavy presumption in claim construction that claim terms carry their "ordinary and customary meaning[s]." Phillips, 415 F.3d at 1312-13 (internal quotation and citation omitted).

While defendant's argument that this ordinary meaning cannot be adopted given various distinctions drawn by the patentees between "handle" and various other terms[2] may correctly reflect that the patentees did not intend that these other terms be given the identical construction as "handle," in the Court's view, adopting defendant's proposed construction to avoid this result is neither necessary nor appropriate. Claim terms will "take on their ordinary and accustomed meanings unless the patentee demonstrated an intent to deviate from the ordinary and accustomed meaning of a claim term by redefining the term or by characterizing the invention in the intrinsic record using words or expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." Teleflex, 299 F.3d at 1327. No such indication of intent to deviate from the ordinary meaning of "handle" appears either in the Claim 1 itself or in the specifications. See '050 Patent, Claim 1, 10:47-50, 11:63-66,

_____

[2] See Def. Claim Construction Br. at 10-12 (comparing "handle" with, inter alia, "stationary gripping member" described at '050 Patent, 4:35-41, 6:20-26).

14:9-12.

Moreover, it is improper for a court to "import" limitations into a claim from the specifications. See e.g., N. Am. Container, Inc. v. Plastipak Packaging, Inc., 415 F.3d 1335, 1348 (Fed. Cir. 2005) ("[U]nless required by the specification, limitations that do not otherwise appear in the claims should not be imported into the claims."); Seachange Int'l, Inc. v. C-COR Inc., 413 F.3d 1361, 1376 (Fed. Cir. 2005) ("[I]t is improper to import a limitation into a claim where the limitation has no basis in the intrinsic record."); Playtex Prods., Inc. v. Proctor & Gamble Co., 400 F.3d 901, 906 (Fed Cir. 2005) ("The court must take care in its analysis, when locating in the written description the context for a disputed term, not to import a limitation from that written description."). Defendant's proposed limitation that the construction require that the "handle" contain an opening into which fingers can be inserted appears in neither the claim itself, nor the specifications, and thus there is no basis for "importing" that limitation into the claim construction.

2.   Claims 11 and 12 ("camming members")

Claims 11 and 12 of the '050 Patent use the term "camming members" as follows: "The surgical instrument of claim 1, wherein the clamp member includes a pair of pivot pins and pair of **camming members** spaced from the pivot pins," see '050 Patent,

8

Claim 11 (emphasis added), and "The surgical instrument of claim
1, wherein the actuator tube includes a pair of slots engageable
with a pair of **camming members** of the clamp member," see '050
Patent Claim, 12 (emphasis added).  Plaintiff proposes construing
the term as: "The parts on the clamp (followers) that are
imparted motion by the cam slots" and defendant proposes:
"Protrusions (followers) the motion of which is controlled by
movement of the "slots" with which they are engaged."

The main issues in dispute appear to be: (1) defendant's use
of the word "protrusions" to describe the "camming members" and
(2) the parties' disagreement concerning the type of movement
and/or control imparted by the cam slots to the camming members.

As to the first issue, the use of the word "protrusions" is
inappropriate because that word is not invoked in the claim or
the specifications.  In fact, the patentees did use the word
"protrusions" elsewhere in the patent, thus suggesting that if
they had wished to use that term here, they knew how to do so.
See e.g., '050 Patent 10:47-50, 12:24-26.  Thus the Court will
not import such a limitation into the claim absent any basis for
such a limitation in the intrinsic evidence.

As to the second issue, defendant acknowledges both that a
"cam" is a well-known structure in the art, see Def. Claim
Construction Br. at 27; Houser Decl. [Doc. # 41, Ex. 8] at ¶ 7,
and that definitions for "cam" "almost uniformly refer to the cam

9

as being a structure which communicates or imparts motion to a 'follower,'" see Def. Claim Construction Br. at 27.  Plaintiff agrees that a "cam" imparts motion to a "follower."  See Pl. Reply Br. at 7.  There is no basis for defendant's proposed use of "controlled" in either the claims or the specifications.[3]

Lastly, there was much discussion at the Markman hearing regarding the type of motion imparted by the cam slots to the camming members.  Counsel appeared to be in agreement that a cam is a mechanism that effects the translation of motion, for example, the translation of linear motion into rotary motion. With respect to the cam mechanism in the patents at issue here, counsel also appeared to be in agreement that the cam slots impart that translated motion to the camming members and guide the motion of the camming members as the camming members engage with the surface of the cam slots.  See Markman Tr. at 52-53, 59, 107-08.  Accordingly, this concept is incorporated into the Court's construction of "camming members" as:  "The follower parts of the cam mechanism that are imparted motion by the cam slots and whose motion is guided by the cam slots."

---

[3]  Although the plain language of the claims and specifications is determinative on this issue and therefore resort to extrinsic evidence is neither necessary nor appropriate, the Court notes that plaintiff's expert testified that many factors can influence the movement of the cam followers, indicating that the "cam slots" do not definitively "control" the movement of the cam members.  See Markman Tr. 56, 59.

3.   Claim 12 ("slots engageable with a pair of camming members")

Claim 12 of the '050 Patent uses the term "slots engageable with a pair of camming members" as follows: "The surgical instrument of claim 1, wherein the actuator tube includes a pair of **slots engageable with a pair of camming members of the clamp member**." '050 Patent, Claim 12 (emphasis added).  Plaintiff proposes construing the term as: "Openings or grooves that impart motion to the camming members" and defendant proposes: "Narrow openings or grooves that engage and control the motion of the camming members."

The Court construes the disputed term as "openings or grooves that impart motion to and guide the motion of the camming members."   It is clear from a review of the claim language, the other intrinsic evidence, and the parties' discussions in the briefing, that the ordinary meaning of "slots" is "openings or grooves."   See Pl. Claim Construction Br. at 30; Def. Claim Construction Br. at 28-29.  There is no basis for importing defendant's limitation of the "slots" as being "narrow."  The issue of the use of the word "control" is the same as that discussed above with respect to the term "camming members" and, for the same reasons, the Court concludes that use of that word is improper.  Defendant also proposes using the word "engage" to describe the relationship between the "camming members" and the "slots," but this qualification similarly appears to be without

basis in either the claim language or specifications,

particularly where the use of the words "impart" and "guide" more

accurately describes the interaction between camming members and

slots.

C.   **The '407 Patent**

1.   Claim 1 ("extending between")

Claim 1 (and dependent Claim 7) of the '407 Patent uses the

term "extending between" in the following context: "[A] vibration

coupler having a proximal and a distal end, the vibration coupler

being positioned within the housing and **extending between** the

elongated body portion and the handle portion." '407 Patent,

Claim 1 (emphasis added).  Plaintiff's proposed construction is

"stretching from one object to another object" and defendant

proposes "spanning the distance that separates."

Defendant argues that while the patent repeatedly describes

the vibration coupler as "extending through" the elongated body,

it does not describe "any embodiment" where the vibration coupler

"extends between" the elongated body portion and the handle

portion.  See '407 Patent 4:49-51, 6:32-34, 8:65-9:3, 12:19-22.

Defendant argues that accordingly, the claim term "extending

between" must be construed as written, and thus as differentiated

from the term "extending through," which is used in the

specifications.  See Def. Claim Construction Br. at 13.

Plaintiff responds that defendant's definition "directly

12

contradicts" prior claim language, which, plaintiff contends,
"make[s] clear that [the elongated body portion and the handle
portion] are connected" and therefore the "distance that
separates" to which defendant refers in its proposed construction
does not in fact exist.  See Pl. Claim Construction Br. at 3
(referring to '407 Patent, Claim 1 ("An ultrasonic surgical
instrumental comprising: a housing **including** an elongated body
portion and a handle portion")) (emphasis added).  At the Markman
hearing, plaintiff argued further that "there is nothing that
precludes the handle portion and the elongated tube from being
right up against one another, and still the vibration coupler
would be going between the two or extending between the two."
Markman Tr. at 20.  Plaintiff compared the disclosure in Claim 1
to "the roadway on the Lincoln Tunnel or Holland Tunnel,"
reasoning, "it certainly extends between New Jersey and New York,
but also New York and New Jersey touch one another. . . .
[E]xtending between doesn't require that there be a gap."  Id.

     Because the Court agrees that nothing in the claim language
or specification requires that there be any space ("the
distance," as proposed by defendant) between the elongated body
portion and the handle portion, the Court adopts plaintiff's
construction, "stretching from one object to another object."

**D.    The '286 Patent**

1.   Claims 1, 6, 7, and 8 ("clamp member")

13

Claims 1, 6, 7, and 8 (and all dependent claims) of the '286
Patent use the term "clamp member" as follows:

- "[A] clamp member supported adjacent to the cutting jaw, the **clamp member** being moveable in relation to the cutting jaw between an open position in which at least a portion of the clamp member is spaced from the cutting jaw and a closed position in which the **clamp member** and the cutting jaw are in substantially juxtaposed alignment," <u>see</u> '286 Patent, Claim 1(c) (emphasis added);

- "[A] rotatable member operatively associated with the vibration coupler, the **clamp member** and the cutting jaw, the rotatable member being rotatable to cause corresponding rotation of the **clamp member** and cutting jaw about a longitudinal axis of the instrument," <u>see</u> <u>id</u>. Claim 1(d) (emphasis added);

- "An ultrasonic instrument according to claim 1, wherein the **clamp member** includes a pair of tissue engaging stops," <u>see</u> <u>id</u>. Claim 6 (emphasis added);

- "[A] **clamp member** supported adjacent to the cutting jaw, the **clamp member** and the cutting jaw defining a tissue receiving area, the **clamp member** being moveable between open and closed positions in relation to the cutting jaw and having a tissue engaging stop positioned to engage tissue and prevent positioning of tissue beyond the proximal end of the cutting surface of the cutting jaw," <u>see</u> <u>id</u>. Claim 7(d) (emphasis added);

- "An ultrasonic instrument according to claim 7, further including an actuator tube slidably positioned about the vibration coupler, a distal end of the actuator tube including a cam slot configured to receive cam members formed on the **clamp member**, the actuator tube being moveable between advanced and retracted positions about the vibration coupler in response to actuation of the handle assembly to effect movement of the **clamp member** between the open and closed positions," <u>see</u> <u>id</u>.

14

Claim 8 (emphasis added).[4]

Plaintiff proposes construing the term as: "A part configured to hold, grasp, or apply pressure to tissue, that is movable and works with a component of the instrument (e.g. the cutting jaw), for holding, grasping, or applying pressure to the tissue." Defendant proposes: "A part configured to hold, grasp, or apply pressure to tissue, that is movable and which is separate and distinct from the tissue contacting member."

The parties thus agree on the first phrase in this construction: that a "clamp member" is "a part configured to hold, grasp, or apply pressure to tissue, that is movable." Additionally, it is clear from the claim language and the specifications that the ordinary and customary meaning of "clamp member" in the context of this patent includes the feature that the "clamp member" works with the cutting jaw, for holding, grasping, or applying pressure to tissue. See e.g., '286 Patent Claim 1(c), Claim 1(d), Claim 7(d), 2:5-13.

The parties dispute, however, whether the "clamp member" is necessarily "separate and distinct from" the tissue contact surface.[5] The basis of the parties' dispute is the meaning of

_____

[4] The term is further utilized in dependent Claims 12, 14, 17 and 19.

[5] While defendant proposes that the "clamp member" must be separate and distinct from the "tissue contacting member," the term actually used in Claim 17 of the '286 Patent is "tissue contact surface" and the patent's actual terminology will be

15

dependent Claim 17, which provides: "An ultrasonic instrument according to claim 7, wherein the clamp member includes a tissue contact surface removably fastened to the clamp member." Defendant argues that the "clamp member" must thus be separate and distinct from the "tissue contact surface" in order for it to be capable of being "removably fastened" to the tissue contact surface, as described in the claim and specifications. See Def. Claim Construction Br. at 16-17; Markman Tr. 124; see also '286 Patent 3:64-4:9. Plaintiff argues that it is improper to limit the claim language based on dependent Claim 17. See Pl. Claim Construction Br. at 22; Pl. Reply Br. at 5-6; Markman Tr. 25-26.

While plaintiff is correct that as a general matter claim language should not be limited by dependent claims,[6] the Federal Circuit has also held that a term used in multiple claims should be construed identically in each of those claims. See Nazomi Commc'ns, Inc. v. Arm Holdings, PLC, 403 F.3d 1364, 1370 (Fed. Cir. 2005); Dayco Prods. Inc. v. Total Containment, Inc., 329 F.3d 1358, 1371 (Fed. Cir. 2003) ("[I]f a claim term appears in more than one claim it should be construed the same in each.").

_____

used. See '286 Patent, Claim 17.

[6] See Nazomi Commc'ns, Inc. v. Arm Holdings, PLC, 403 F.3d 1364, 1370 (Fed. Cir. 2005) ("The concept of claim differentiation normally means that limitations stated in dependent claims are not to be read into the independent claim from which they depend.") (internal quotation and citation omitted).

16

Thus, because Claim 17 requires that the "clamp member" and the "tissue contact surface" be separate and distinct, such that they are capable of being "removably fastened," it is proper as a matter of claim construction for all those claims in the '286 Patent that invoke the term "clamp member" to be consistently construed to reflect that limitation. Accordingly, the Court construes the term as: "A part configured to hold, grasp, or apply pressure to tissue, that is movable, that works with a component of the instrument (e.g. the cutting jaw), and which is separate and distinct from the tissue contact surface."

## 2.  Claim 8 ("cam slot")

_____Claim 8 (and all dependent claims) of the '286 Patent uses the term "cam slot" in the following context:

> An ultrasonic instrument according to claim 7, further
> including an actuator tube slidably positioned about
> the vibration coupler, a distal end of the actuator
> tube including a **cam slot** configured to receive cam
> members formed on the clamp member, the actuator tube
> being moveable between advanced and retracted positions
> about the vibration coupler in response to actuation of
> the handle assembly to effect movement of the clamp
> member between the open and closed positions.

'286 Patent, Claim 8 (emphasis added).  Plaintiff seeks to construe this term as "[an] opening or groove that imparts motion to the camming member," while defendant proposes, "narrow opening or groove that engages and controls the motion of the camming members."

The Court adopts the following construction: "opening or

17

groove that imparts motion to and guides the camming member."

The Court refers to its discussion above regarding a similar term

in the '050 Patent, and concludes that the '286 Patent claim

language itself and the specifications support the finding that

this construction reflects the ordinary and customary meaning of

this claim term.  See '286 Claim 8, 4:21-23, 5:51-54, 6:9-18; see

also Markman Tr. 52-53, 59, 107-08 (discussion with counsel

regarding the translation of movement from the cam slots to the

camming members).  As noted above, it would be inappropriate to

import defendant's proposed limiting terms "narrow" and

"control."  Additionally, as noted above, the terms "impart" and

"guide" most accurately describe the interaction between the cam

slot and the camming member.

3.   Claim 8 ("cam members")

       Claim 8 (and all dependent claims) of the '286 Patent

invokes the term "cam members" as follows:

> An ultrasonic instrument according to claim 7, further
> including an actuator tube slidably positioned about
> the vibration coupler, a distal end of the actuator
> tube including a cam slot configured to receive **cam
> members** formed on the clamp member, the actuator tube
> being moveable between advanced and retracted positions
> about the vibration coupler in response to actuation of
> the handle assembly to effect movement of the clamp
> member between the open and closed positions.

'286 Patent, Claim 8 (emphasis added).  Plaintiff's proposed

construction of this term is: "The parts on the clamp (followers)

that are imparted motion by the cam slots," while defendant

18

proposes: "Protrusions (followers) the motion of which is controlled by movement of the 'slots' with which they are engaged."

The Court will construe this term as: "The follower parts of the cam mechanism that are imparted motion by the cam slots and whose motion is guided by the cam slots." The issues are the same as those discussed above with respect to "camming members" in the '050 Patent Claims 11 and 12. For the reasons discussed above, defendant's proposed use of the words "protrusions" and "controlled" is inappropriate because there is no basis in the claim or specification for importing such terms into the claim construction.[7] Additionally, as earlier discussed, the words "impart" and "guide" best describe the interaction and engagement between the cam slots and cam members.

4.   Claim 11 ("swivel member")

Claim 11 (and all dependent claims) in the '286 patent uses the term swivel member in the following context: "An ultrasonic instrument according to Claim 10, wherein the coupling member

_____

[7]  Moreover, the use of the word "protrusions" would be improper given that the patentees used that term elsewhere in the specifications, and therefore knew how to use it to describe this claim term, if they had so desired. See '286 Patent, 5:16-18 ("**Protrusions** project outwardly from sidewalls of swivel member and extend through cam slots of movable handle) (emphasis added), 5:48-50 ("In the open position, moveable handle is spaced rearwardly from stationary handle portion and **protrusions** are positioned in the lower proximal portion of cam slots.") (emphasis added).

includes a **swivel member**, the **swivel member** being positioned to
permit rotation of the coupling member in relation to the
moveable handle." '286 Patent, Claim 11 (emphasis added).
Plaintiff proposes construing the term as "component designed to
permit swiveling or rotation of another part," whereas defendant
proposes "a component that permits the coupling member to pivot
freely."

The Court construes this term as: "A component designed to
permit the coupling member to swivel or rotate."[8]  First, this
construction comports with the plain language of Claim 11, which
expressly describes what the "swivel member" is designed to do.
See '286 Patent, Claim 11 ("the coupling member includes a swivel
member, the swivel member being positioned to **permit rotation of
the coupling member**") (emphasis added); accord '286 Patent, 5:13-
18 ("Swivel member 108 is preferably formed from molded half-
sections 108a and 108b and permits rotation of the coupling
member relative to movable handle 36." ); 6:1-6 ("Referring to
FIGS. 11-15, when movable handle 36 is pivoted clockwise about

---

[8]  While plaintiff argues that the swivel member permits the
swiveling or rotation of "another part" instead of, specifically,
the "coupling member," see Markman Tr. at 37, the Court does not
see a basis for this construction in the intrinsic evidence.  The
claim language specifically provides that the swivel member
permits rotation of the **coupling member.**  While the coupling
member may in turn permit rotation of the rotation knob, see id.
at 37-38, it is the coupling member that interfaces with the
swivel member.  Accord id. at 38 ("[T]he coupling member is sort
of the interface between the swivel member and the rotation
knob.").