# EXHIBIT D

PART 2

pivot member 82 towards stationary handle portion 28, in the direction indicated by arrow "A" in FIG. 11, cam slot 88 engages protrusion 90 of the swivel member 108 to advance coupling member 98 distally within cavity 110 of rotation knob.").   Second, defendant's proposal of "pivot freely," instead of "swivel" or "rotate," imports a term that has no basis in the intrinsic evidence; the words "pivot freely" describe motion different from simply "swivel" or "rotate."

5.   Claim 12 ("adjacent the handle assembly")

Claim 12 (and dependent Claim 13) of the '286 Patent uses this disputed claim term in the following context:

> An ultrasonic instrument according to claim 11, wherein the coupling member is operably connected to a rotatable knob positioned **adjacent the handle assembly,** the rotatable knob being rotatably secured to the handle assembly such that rotation of the rotatable knob in relation to the handle assembly effects corresponding rotation of the coupling member and the clamp member.

'286 Patent, Claim 12 (emphasis added).   Plaintiff proposes construing the term as "near the handle assembly," whereas defendant proposes, "directly next to the handle assembly."

As the parties' submissions indicate, standard dictionary definitions result in multiple possible constructions.   See Pl. Claim Construction Br. at 20; Def. Claim Construction Br. at 14-15.   The defendant acknowledges that where the claim language is not determinative, and the Court is confronted with multiple definitions, the Court should consult the other intrinsic

21

evidence.  See Novartis Pharms. Corp. v. Eon Labs Mfg., Inc., 363 F.3d 1306, 1309-10 (Fed. Cir. 2004).  In this case, the intrinsic evidence does not define the term, nor does it suggest that the term has some specialized meaning in the relevant art.  Additionally, plaintiff argues that defendant's proposed construction would in fact exclude the patented instrument itself because such a construction wrongly implies that the knob and the handle assembly "touch" each other, when in fact, while they may touch each other, nothing in the patent requires that they touch each other.  See Pl. Reply Br. at 4-5 & n.10; Markman Tr. at 23-25.

The Federal Circuit recently held that where the intrinsic evidence did not define the term "adjacent" or suggest that the term had a specialized meaning in the relevant art, the appropriate construction of the term "adjacent" was "not distant."  See Free Motion Fitness, Inc. v. Cybex Int'l, Inc., 423 F.3d 1343, 1348-49 (Fed. Cir. 2005).  The Circuit noted that there were multiple possible dictionary definitions and concluded that the intrinsic evidence served to "point away" from the more restrictive definitions where there was nothing in the intrinsic evidence to suggest that such a narrowing definition was appropriate.  See id.  As was the case in Free Motion, nothing in the intrinsic evidence of the '286 Patent requires the adoption defendant's more restrictive definition, "directly next to," and

22

thus the Court adopts plaintiff's construction, "near," as guided

by the decision in <u>Free Motion</u>.[9]

6.    Claim 15 ("curved along the longitudinal axis")

Claim 15 of the '286 patent uses the term "curved along the

longitudinal axis" in the following context: "An ultrasonic

instrument according to claim 7, wherein the cutting surface of

the cutting jaw is **curved along the longitudinal axis** of the

instrument."  '286 Patent, Claim 15 (emphasis added).

Plaintiff's proposed construction of the term is: "Deviating from

a straight line along the lengthwise dimension," while

defendant's proposed construction is: "Curved outwardly and

downwardly in the distal direction."

Defendant urges that its proposed construction is

appropriate because the intrinsic evidence in the patent abstract

and specifications describes a cutting jaw that "is curved

outwardly and downwardly."  See '286 Patent, Abstract ("The

cutting jaw has a blade surface which is curved downwardly and

outwardly in the distal direction with respect to the

longitudinal axis . . . "), 1:65-67 ("The cutting jaw has a blade

surface which is curved outwardly and downwardly along its

---

[9] Defendant also argues that use of the word "near" in the
construction would allow the "adjacent" parts to be anywhere on
the instrument (given that the instrument itself is relatively
small).  See Def. Claim Construction Br. at 14.  This is clearly
not the case, however, given that "near" is a relative term to be
interpreted in the context of the instrument as a whole, which
would take into account the relative size of the instrument.

surface and thus, curved with respect to the axis of vibration"),

4:26-28 ("Cutting jaw 58 includes a curved blade surface 59 that

slopes downwardly and outwardly in the distal direction."),

Figure 4.  Plaintiff argues, however, that the references to

"outward" and "downward" in the intrinsic evidence indicate that

the patentees clearly knew how to include explicit language in

the claims if they wanted to, and chose not to do so.

As noted in Phillips, the specifications are properly

consulted in order to ascertain the ordinary meaning to be given

to claim terms, particularly where the claim terms themselves are

vague.  See Phillips, 415 F.3d at 1315.  However, as discussed

above, courts must avoid importing limitations from the

specifications into the construction of the claims.  To avoiding

importing limitations, "it is important to keep in mind that the

purposes of the specification are to teach and enable those of

skill in the art to make and use the invention and to provide the

best mode for doing so."  Phillips, 415 F.3d at 1323.

> One of the best ways to teach a person of ordinary
> skill in the art how to make and use the invention is
> to provide an example of how to practice the invention
> in a particular case.  Much of the time, upon reading
> the specification in that context, it will become clear
> whether the patentee is setting out specific examples
> of the invention to accomplish those goals, or whether
> the patentee instead intends for the claims and the
> embodiments in the specification to be strictly
> coextensive. . . . The manner in which the patentee
> uses a term within the specification and claims usually
> will make the distinction apparent.

Id.

24

In this case, while the intrinsic evidence does describe a
cutting surface that is curved outwardly and downwardly, nothing
in the intrinsic evidence requires that the cutting surface be so
curved.    Indeed, as Ethicon's counsel acknowledged at the <u>Markman</u>
hearing, the cutting surface could be curved along the lengthwise
axis "<u>up or down</u>," as long as it did not curve "side to side" –
which curvature, the Court notes, would no longer be along the
longitudinal axis, but a curve along the latitudinal axis.    <u>See</u>
<u>Markman</u> Tr. at 115 (emphasis added).    Additionally, as Tyco
argues, the intrinsic evidence demonstrates that the patentees
clearly knew the appropriate terminology to use in their claims
had they sought to limit their claimed invention to one with a
blade surface that curved outward and downward; the patentees
chose not to do so.[10]    Accordingly, the Court will not import any

_____

[10] The parties also dispute whether the patent background and
prosecution history are relevant and, if so, the import of these
sources.    Defendant argues that these sources (both of which
describe blades that curve outwardly and downwardly) indicate a
specific need that the patentees sought to address, by remedying
past deficiencies in earlier technology.    <u>See</u> Def. Claim
Construction Br. at 19-20 & n.11, 22-23 (citing, <u>inter alia</u>,
<u>CVI/Beta Ventures, Inc. v. Tura LP</u>, 112 F.3d 1146, 1160 (Fed.
Cir. 1997) ("In construing claims, the problem the inventor was
attempting to solve, as discerned from the specification and the
prosecution history, is a relevant consideration."); <u>Microsoft</u>
<u>Corp. v. Multi-Tech Sys., Inc.</u>, 357 F.3d 1340, 1347-50 (Fed. Cir.
2004) (finding that prosecution history was relevant to the
interpretation of claim terms, given that the prosecution history
included statements made regarding an earlier and related
patent)).    Plaintiff argues that defendant's suggestion that the
patent history is relevant and supports its construction is
"legally and factually wrong," given that (1) the law provides
that the prosecution history cannot be used to "enlarge, diminish

limitations from the specification into its claim construction

and will adopt plaintiff's proposed construction: "Deviating from

a straight line along the lengthwise dimension."[11]

---

or vary the limitations of the claims," (2) the inventions in the
earlier patents differed from the '286 Patent, and (3) the patent
history demonstrates that if the inventors had wanted to use the
term "outwardly and downwardly," they knew how to do so.  See Pl.
Claim Construction Br. at 25, Pl. Reply Br. at 7.
     The Court declines to consider the patent background and
prosecution history, however, because the claim language and
intrinsic evidence provide adequate guidance to construe the
claims.  Moreover, the Court agrees with plaintiff's contention
that the patent history in this instance is ambiguous – it could
be read as demonstrating that the inventors sought to remedy a
problem by using a blade surface that curves "outwardly and
downwardly," or it could be read as indicating that the patentees
knew how to specify the "outward and downward" direction of the
blade if they wanted to, and chose not to do so.  Cf. Phillips,
415 F.3d at 1317 (noting, "because the prosecution history
represents an ongoing negotiation between the [Patent & Trademark
Office] and the applicant, rather than the final product of that
negotiation, it often lacks the clarity of the specification and
thus is less useful for claim construction purposes").

[11]  At the Markman hearing, counsel for Ethicon also argued
that plaintiff's proposed use of the phrase "deviating from a
straight line . . . " was contrary to the claim language, which
provides that the blade surface is "curved along the longitudinal
axis."  See Markman Tr. at 117-18 (plaintiff's language
"contradict[s] the claim language itself where you have language
that says you must curve along the axis, and then you are saying,
well, it can deviate from the axis, that's just contrary to the
plain language of the claims").  The Court is constrained to
disagree based on the claim language.  Plaintiff's proposed
language – "deviating from a straight line . . . " is simply
plaintiff's description of the curvature of the blade; the
balance of plaintiff's proposed construction describes the nature
of the curvature – "along the lengthwise dimension."  Contrary to
Ethicon's contention, the claim language does not provide that
the blade surface exactly follows the longitudinal axis – if it
did, the blade surface would not be curved at all, but would be
straight – instead, the claim language provides that it is curved
"along the longitudinal axis" – i.e., curved in the up or down
direction.

7.   Claim 17 ("removably fastened")

Claim 17 of the '286 Patent provides for "[a]n ultrasonic
instrument according to claim 7, wherein the clamp member
includes a tissue contact surface **removably fastened** to the clamp
member." '286 Patent, Claim 17 (emphasis added).  Plaintiff
would construct "removably fastened" as "designed so as to be
capable of being held secure to something else and designed so as
also to be capable of being unsecured and taken away from."
Defendant proposes, "designed so as to be capable of being held
secure to something else and also adapted to be unsecured and
taken away from."

Thus, the dispute between the parties as to this claim term
is whether to use the phrase "and designed so as also to be
capable . . . " (plaintiff's construction), or "and also adapted
to be . . ." (defendant's construction).  At the <u>Markman</u> hearing,
plaintiff argued that use of the word "adapted" suggests that "a
user might have reason to, or could, if he or she so wished,
remove that tissue contact surface, but that doesn't happen.
It's designed such that if you wish to pull it out you could, but
it wouldn't actually ever be pulled out in actual use." <u>Markman</u>
Tr. at 36.  In contrast, defendant argued that "it's designed so
[it] can [be] take[n] on and off, and what they disclose in the
patent for these tissue contact surfaces is a simple tongue-and-
groove mechanism so that the tissue contact surface can be

27

applied to the clamp member and then removed again."  Id. at

130.[12]

While the Court is dubious about the distinction drawn

between "designed" and "adapted" as having a meaningful

difference, the Court nonetheless sees no basis in the claim

language or specification for the differentiation defendant

proposes.  The patent simply provides no indication that the term

"removably" should be construed using the word "adapted" while

the term "fastened" is construed using the word "designed."

Additionally, the words "capable of being" more closely track the

dictionary definition, than does defendant's "adapted" language.

See Webster's Third New Int'l Dictionary (plaintiff's Ex. G) at

1921 ("[C]apable of being removed, displaced, transferred,

dismissed, or eradicated.").  Accordingly, the Court will

construe the term "removably fastened," as "designed so as to be

capable of being held secure to something else and designed so as

also to be capable of being unsecured and taken away from."

**E.   The '544 Patent**

1.   Claim 1 ("the clamp including a camming member which
      operatively engages the actuation member such that movement
      of the actuation member pivots the clamp between the open
      and clamped positions")

      Claim 1 (and all dependent claims) of the '544 Patent uses

_____

[12] In fact, the specifications provide that the "tongue and
groove fastening assembly" is the preferred method, "although
other fastening assemblies are envisioned."  '544 Patent, 4:2-6.

28

the above claim term in the following context:

> [A] clamp pivotally mounted adjacent the distal end of the outer tube, the clamp being movable in relation to the jaw member between open and clamped positions, the **clamp including a camming member which operatively engages the actuation member such that movement of the actuation member pivots the clamp between the open and clamped positions."**

'544 Patent, Claim 1 (emphasis added). Plaintiff proposes the following construction: "The camming member of the clamp (follower) and the actuation member constitute a camming mechanism to pivot the clamp." Defendant proposes: "A protrusion (follower) the motion of which is controlled by movement of the 'slot' with which it is engaged."[13]

The Court adopts plaintiff's construction and construes the claim as follows: "The camming member of the clamp (follower) and the actuation member constitute a camming mechanism to pivot the clamp." First, the parties agree that the "camming member" is the follower part of the camming mechanism. Moreover, this construction is consistent with the claim language itself and the specifications. See '544 Claim 1, 4:26-30, 6:15-24, Figure 13. Lastly, as addressed above, there is no basis for importing the words "protrusions" or "controlled" into the claim construction.

2.    Claims 2 and 3 ("slot for receiving the camming member of the clamp / pair of slots")

---

[13] Defendant originally argued that the means-plus-function limitation in 35 U.S.C. § 112 applied to this claim term, but has since withdrawn that argument. See Markman Tr. at 6.

_____Claims 2 and 3 of the '544 Patent use the claim term "slot
for receiving the camming member of the clamp / pair of slots" as
"[a]n ultrasonic instrument according to claim 1, wherein the
actuation member includes a **slot for receiving the camming member
of the clamp**," '544 Patent, Claim 2 (emphasis added), and "[a]n
ultrasonic instrument according to claim 2, wherein the clamp
includes a pair of camming members and the actuation member
includes a **pair of slots**, each one of the **pair of slots** being
positioned to receive one of the pair of camming members," '54
Patent, Claim 3 (emphasis added). Plaintiff's proposed
construction of the term is: "Opening or groove that imparts
motion to the camming member," while defendant's proposal is:
"Narrow opening or groove that receives and controls the motion
of the camming member."

The Court incorporates its discussion <u>infra</u> of similar claim
terms in the '050 and '286 Patents  construes the term as:
"Opening or groove (or a pair of openings or grooves) that
imparts motion to and guides the motion of the camming member."
See <u>Omega Eng'g, Inc. v. Raytek Corp.</u>, 334 F.3d 1314, 1334 (Fed.
Cir. 2003) (the Court will "presume, unless otherwise compelled,
that the same claim term in the same patent or related patents
carries the same construed meaning). Additionally, with respect
to this claim term, the claim language itself contradicts
defendant's proposed use of the word "control," because the

claims explicitly use the word "receive," where "control" could have been included if the patentees had so desired.  Similarly, and as discussed above, it would be inappropriate to import defendant's notion of "control" where there is no basis for it in either the claim language or specification and the words "impart" and "guide" more accurately reflect the interaction between the slots and the camming member.

3.   Claim 6 ("curved blade surface")

Claim 6 and dependent Claim 8 of the '544 Patent include the claim term "curved blade surface" in the following context: "An ultrasonic instrument according to claim 1, wherein the jaw member includes a **curved blade surface**," '544 Patent, Claim 6 (emphasis added), and "An ultrasonic instrument according to claim 6, wherein the **curved blade surface** includes a longitudinally extending cutting edge," '544 Patent, Claim 8 (emphasis added).  Plaintiff's proposed construction of the Claim 6 term is: "Blade surface that has a deviation from a straight line," while defendant proposes: "Surface adapted to be used for cutting that is curved outwardly and downwardly in the distal direction."

As in the case of the '286 Patent claim term, discussed above, defendant supports its proposed construction by pointing to the specifications in the '544 Patent that describe a blade surface that is "curved outwardly and downwardly." See '544

31

Patent 1:67-2:2, 4:31-55, Figure 4.  Nevertheless, nothing in the
'544 Patent requires that the blade surface be curved outwardly
and downwardly and, as discussed above, counsel for Ethicon
acknowledged that the blade surface could curve upward, as well
as downward.  Markman Tr. at 115.  Additionally, the presumption
that similar claims in related patents should be construed
consistently applies here, counseling for construing the '544
Patent claim term consistently with the '286 Patent claim term
described above.  See Omega Eng'q, 334 F.3d at 1334.
Accordingly, the Court adopts plaintiff's proposed construction
of the claim term.

4.    Claim 8 ("longitudinally extending cutting edge")

As noted above, Claim 8 of the '544 Patent uses the term
"longitudinally extending cutting edge" in the following context:
"An ultrasonic instrument according to claim 6, wherein the
curved blade surface includes a **longitudinally extending cutting
edge**."  '544 Patent, Claim 8 (emphasis added).  Plaintiff
proposes construing the term as "the edge of the blade surface
that engages tissue to achieve cutting and extends along the
lengthwise dimension."  Defendant proposes: "Edge adapted for
cutting that extends outwardly and downwardly in the distal
direction."

First, the Court notes that Claim 8 is a claim dependent on
Claim 6, which is discussed above.  The "curved blade surface"

32

claim term from Claim 6 and dependent Claim 8, however, is distinct from the "longitudinally extending cutting edge" that is at issue here. Specifically, as defendant's counsel explained at the Markman hearing, "[what] claim 8 is adding to the independent claim [6] is [that] you can have a cutting edge which is longitudinally extending" on the curved blade surface. Markman Tr. at 118-19. This is because, the "blades" are designed for cutting with harmonic energy and therefore, "the blade can be . . . quite blunt or flat," id. at 118, and thus claim 8 adds a longitudinally extending cutting edge to the curved blade surface claimed in Claim 6.

It is clear from the claim language and other intrinsic evidence that the customary and ordinary meaning of "cutting edge" is a "blade surface designed for cutting," and thus, the Court will incorporate that description in its construction. Additionally, while the specifications of the '544 Patent describe the cutting edge as one that curves "downwardly and outwardly in the distal direction," '544 Patent 4:31-55, Figures 4 & 11, the Court will not import that limitation from the specifications into the claim language where there is no indication in the intrinsic evidence that the cutting edge must be curved in the downward and outward direction, particularly where counsel for Ethicon acknowledged that the cutting edge could extend upwards. Thus, the Court construes the term as:

33

"The edge of the blade surface designed for cutting that extends along the lengthwise dimension."

5.    Claims 9 and 12 ("adjacent the handle assembly")

Claims 9 and 12 (and all dependent claims) in the '544 Patent use the term adjacent the handle assembly as follows:

- "An ultrasonic instrument according to claim 1, further including a handle assembly, the proximal end of the outer tube being supported **adjacent the handle assembly**."  '544 Patent, Claim 9 (emphasis added).

- "An ultrasonic instrument according to claim 10, wherein the rotatable collar is positioned **adjacent the handle assembly**."  '544 Patent, Claim 12 (emphasis added).

Plaintiff would construe the term as "near the handle assembly," whereas defendant proposes, "directly next to the handle assembly."

The Court incorporates its discussion above concerning construction of a claim term including the word "adjacent" in Claim 12 of the '286 Patent and concludes that, in accordance with the decision in Free Motion Fitness, Inc. v. Cybex Int'l, Inc., 423 F.3d at 1348-49, supra, the appropriate construction of "adjacent the handle assembly" is, as plaintiff proposes, "near the handle assembly."

6.    Claim 23 ("positioned adjacent the jaw member")

Claim 23 (and dependent Claim 24) of the '544 Patent uses the claim term as follows: "An ultrasonic instrument according to claim 1, wherein the clamp includes at least one tissue receiving

34

stop which is **positioned adjacent the jaw member**."  '544 Patent,

Claim 23 (emphasis added).  Plaintiff's proposed construction is:

"Placed so as to be near the jaw member," while defendant

proposes, "placed so as to be directly next to the jaw member."

The parties' dispute concerning this claim term tracks that

discussed above with respect to Claims 9 and 12 of this patent

and Claim 12 of the '286 Patent.  As with those other claim

terms, nothing in the actual claim language or specifications

expressly states that these elements are "directly" adjacent to

one another.  And, as plaintiff argues, a construction using the

phrase "directly next to" would exclude the very instrument the

inventors were disclosing in the patent because there must be

some space between the two elements in order for the instrument

to work properly, and a claim interpretation that excludes the

device disclosed is rarely the correct interpretation.  See Pl.

Reply Br. at 4-5 & n.9, citing '544 Patent, 4:5-6, 11-13

(describing the dysfunctionality that would arise if the two

elements were "directly next to" each other); see also Playtex

Prods., 400 F.3d at 904 ("[C]laim constructions that exclude the

preferred embodiment are rarely, if ever, correct.") (internal

citation omitted).[14]  Accordingly, because nothing in the

_____

    [14]  Defendant further argues that the "tissue receiving
stops" must be "directly next to" the "blade surface," because
the pair of stops define the proximal end of the exposed blade
surface so as to prevent tissue from moving past the proximal end
of that surface.  See Def. Claim Construction Br. at 15-16; '544

intrinsic evidence supports adoption of defendant's more

restrictive definition and, in fact, such a definition might

exclude the patentees' preferred embodiment, the Court will

construe the claim term in accordance with the term "adjacent" in

Free Motion Fitness, 423 F.3d at 1348-49, supra, as "placed so as

to be near the jaw member."

## IV. CONCLUSION

The disputed claim terms are hereby construed as described

above.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton
United States District Judge

**Dated at New Haven, Connecticut this 23rd day of January, 2006.**

---

Patent, 4:5-6, 6:43-44.  This argument, however, ignores the use
of the word "proximal" in the specification language, and that a
construction of "adjacent" as simply "near" would also fulfill
the requirement that the pair of stops define the "proximal" end
of the blade surface and would prevent tissue from moving past
that "proximal" end.

36