# EXHIBIT E

LEXSEE 2005 U.S. DIST. LEXIS 15984

PFIZER INC., WARNER-LAMBERT COMPANY, and WARNER-LAMBERT COMPANY, LLC, Plaintiffs, v. AJIX, INC., d/b/a FARMACAPSULAS S.A., Defendant.

CIVIL ACTION NO. 3-03-cv-754 (JCH)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

2005 U.S. Dist. LEXIS 15984

July 29, 2005, Decided

LexisNexis(R) Headnotes

COUNSEL: [*1] For Pfizer Inc, Warner-Lambert Co., Warner-Lambert Co LLC, Plaintiffs: Eugene A. Feher, Ivor R. Elrifi, James M. Wodarski, Paul J. Hayes, Robert R. Gilman, Jr., Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., Boston, MA; Jennifer Beth Rufin, Mintz Levin Cohn Ferris Glovsky & Popeo-Stmfd, CT, Stamford, CT.

For AJIX Inc doing business as Farmacapsulas SA, Defendant: Ari J. Hoffman, Stewart I. Edelstein, Cohen & Wolf, P.C., Bridgeport, CT; Baldassare Vinti, James H. Shalek, John C. Stellabotte, Proskauer Rose - NY, New York, NY.

For AJIX Inc doing business as Farmacapsulas SA, Counter Claimant: Ari J. Hoffman, Stewart I. Edelstein, Cohen & Wolf, P.C., Bridgeport, CT.

For Pfizer Inc, Warner-Lambert Co, Warner-Lambert Co LLC, Counter Defendant: Eugene A. Feher, Ivor R. Elrifi, Paul J. Hayes, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., Boston, MA; Jennifer Beth Rubin, Mintz Levin Cohen Ferris Glovsky & Popeo-Stmfd, CT, Stamford, CT.

For AJIX Inc doing business as Farmacapsulas SA, Counter Claimant: Ari J. Hoffman, Stewart I. Edelstein, Cohen & Wolf, P.C., Bridgeport, CT; James H. Shalek, John C. Stellabotte, Proskauer Rose - NY, New York, NY.

For Pfizer [*2] Inc, Warner-Lambert Co, Warner-Lambert Co LLC, Counter Defendants: Eugene A. Feher, Ivor R. Elrifi, Paul J. Hayes, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., Boston, MA; Jennifer Beth Rufin, Mintz Levin Cohn Ferris Glovsky & Popeo-Stmfd, CT, Stamford, CT.

JUDGES: Janet C. Hall, United States District Judge.

OPINIONBY: Janet C. Hall

OPINION: RULING RE: MOTIONS FOR SUMMARY JUDGMENT [DOC. NOS. 90 and 93]

This is a patent infringement lawsuit brought by the plaintiffs (hereinafter "Pfizer") against its competitor, Ajix, Inc. ("Ajix"). Pfizer alleges that the New Farmalock capsule, manufactured by Ajix, infringes *U.S. Patent No. 5,769,267* ("the '267 patent"), held by Pfizer. Ajix contends that it is entitled to summary judgment on one or both of the following grounds. First, Ajix argues that the New Farmalock capsule does not infringe the *'267 patent*. Second, Ajix argues that the *'267 patent* is invalid as it was both anticipated and obvious in light of the prior art. Because the court finds that the New Farmalock capsule does not infringe the *'267 patent*, either literally or by application of the doctrine of equivalents, the court need not and does not reach the question of the validity [*3] of the *'267 patent*.

I. FACTS

Pfizer's *'267 patent*, issued June 23, 1998, describes a pharmaceutical capsule consisting of two components, a cap and a body. The cap slides over the body and the two components can be held together either in a temporary, or prelock, position or in a permanent position. The purpose of the prelock position is to allow the capsules to be transported prior to being filled with any pharmaceutical substance. Capsules in the prelock position are easily opened so that they can be filled. After the capsules have been filled, they are placed in the permanent lock position so that the components cannot separate and the pharmaceutical remains in the capsule until the capsule is

ingested. In the permanent lock position, the cap slides a greater distance over the body than it does so in the prelock position and a locking ring located on the cap snaps into a counter-locking ring on the body. The *'267 patent* teaches a capsule wherein the prelock mechanism consists of a number of elongated protrusions projecting inward from the inner wall of the cap and a holding ring located on the outer wall of the body. In the permanent lock position, a locking ring on [*4] the cap engages a counter-locking ring on the body.

The accused product, the New Farmalock capsule, also consists of a cap and a body that can be held together in both a prelock and permanent lock position. Local Rule 56(a)(1) Stmt. [Doc. No. 92] P 7-8; accord Local Rule 56(a)(2) Stmt. [Doc. No. 141] P 7-8. The body of the New Farmalock capsule includes a single radiused locking ring. Id. When the capsule is in its permanent lock position, that ring snaps into a locking ring on the cap. Id. The prelock position is achieved when the same single radiused locking ring on the body engages protrusions on the cap. Id.

## II. SUMMARY JUDGMENT STANDARD

In a motion for summary judgement, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgement as a matter of law. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000).* The burden of showing that no genuine factual dispute exists rests upon the moving party. *Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir. 2000)* [*5] (citing *Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1223 (2d Cir. 1994)).* Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," *Anderson, 477 U.S. at 255,* and present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).*

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgement is sought. *Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38.* "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." *Carlton, 202 F.3d at 134.* "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. *Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).*

"To support [*6] a summary judgment of noninfringement, it must be shown that, on the correct claim construction, no reasonable jury could have found infringement on the undisputed facts or when all reasonable factual inferences are drawn in favor of the patentee." *Network, LLC v. Centraal Corp., 242 F.3d 1347, 1353 (Fed. Cir. 2001).* "Where the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are obliged to grant partial or complete summary judgment." *Warner-Jenkinson Co. v. Hilton Davis Chemical, 520 U.S. 17, 39 n. 8, 137 L. Ed. 2d 146, 117 S. Ct. 1040 (1997).*

## III. INFRINGEMENTn1

n1 While the court reaches Pfizer's arguments with respect to infringement, it is noteworthy that an alternate basis for the court's grant of summary judgment is Pfizer's failure to share its theory of infringement with Ajix at any time prior to the filing of its opposition to the motions for summary judgment. Despite a lengthy and extensive discovery process, during which Pfizer engaged in sanctionable behavior, Pfizer failed to provide Ajix with relevant evidence, including an expert affidavit. The court is confused by Pfizer's continued assertions that Ajix' supposed infringement of the *'267 patent* is entirely straightforward given Pfizer's own inability to develop a theory of infringement throughout the discovery process. While the court considers the merits of the theory developed by Pfizer in response to the motions for summary judgment, it notes that given Pfizer's delay in disclosing said theory, an alternate basis for the grant of summary judgment is a refusal to consider this theory, disclosed for the first time months after the close of fact discovery.

[*7]

"A determination of infringement involves a two-step analysis." *Omega Engineering, Inc. v. Raytek Corp. 334 F.3d 1314, 1320 (Fed. Cir. 2003).* "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." *Carroll Touch, Inc. v. Electro Mech. Sys., Inc., 15 F.3d 1573, 1576 (Fed. Cir. 1993).* Claim construction, including interpretation of any terms of art, is a question of law. *Markman v. Westview Instruments, Inc., 517 U.S. 370, 391, 134 L. Ed. 2d 577, 116 S. Ct. 1384 (1996).* Whether the accused product infringes the patent, as construed by the court, is a question of fact.

**A. Construing the Claim**

Case 3:01-cv-00577-CFD   Document 167-7   Filed 02/17/2006   Page 4 of 10
Case 3:04-cv-00929-JBA   Document 98   Filed 10/28/2005   Page 3 of 9

Page 3

2005 U.S. Dist. LEXIS 15984, *

"Claim interpretation begins with the claims themselves, the written description, and, if in evidence, the prosecution history." *Microsoft Corp. v. Multi-Tech Systems, Inc.*, 357 F.3d 1340, 1346 (Fed. Cir. 2004). "Claims should be so construed, if possible, as to sustain their validity." *ACS Hosp. Sys., Inc. v. Montefiore Hosp.*, 732 F.2d 1572, 1577 (Fed. Cir. 1984). Each party claims that a recent case, *Phillips v. AWH Corp.*, F.3d , 2005 U.S. App. LEXIS 13954, (Fed. Cir. 2005), 2005 WL 1620331, [*8] confirms its construction of the disputed claim. Phillips clarifies the role that the specification may play in a court's reading of a claim. Because section 112 of the Patent Act, 35 U.S.C. § 112, "requires [courts] to look to the language of the claims to determine what 'the applicant regards as his invention'" the specification is certainly relevant to claim construction. *Phillips*, 2005 U.S. App. LEXIS 13954, 2005 WL 1620331, *4 (quoting § 112).

Pfizer alleges infringement of claims one, two, three, four, five, eleven, twelve, thirteen, and fourteen of the '267 patent. Claim one, the only independent claim at issue in this suit, reads as follows:

> 1. A container comprising: (a) a first part with at least a first pre-connection unit, said first pre-connection unit comprising: an elastic hollow-cylindrical inner wall defining a substantially outer-cylindrically delimited cavity and an insertion axis; an open end; at least a first prelock area on said hollow-cylindrical inner wall, said prelock area comprising several protrusions of elongated shape on said hollow-cylindrical inner wall; and (b) a second part with at least a second pre-connection unit, said second [*9] pre-connection unit comprising: a cylindrically shaped outer wall which is insertable into said outer-cylindrically delimited cavity along said insertion axis through said open end; and at least a second pre-lock area on said cylindrically shaped outer wall, said second prelock area having at least one indentation and being engageable with said first prelock area when said cylindrically shaped outer wall is inserted in said outercylindrically delimited cavity, thereby providing a releasable connection between said first part and said second part; further comprising at least a first engagement area on the hollow-cylindrical inner wall; and at least a second engagement area on the cylindrically shaped outer wall which is engageable with said first engagement ara when said cylindrically shaped outer wall is inserted into said outer-cylindrically delimited cavity, thereby providing a permanent connection between said first and said second part.

'267 Patent, col. 11, l. 45 - col. 12, l. 9.

The *'267 patent* teaches, therefore, a capsule with two components, "a first part," the cap, and "a second part," the body. The cap comprises an inner wall, an open end, a prelock area which consists [*10] of several protrusions of elongated shape, and an engagement area. Both the prelock and engagement areas on the cap are situated on the inner wall. The body comprises an outer wall, a prelock area that has at least one indentation and is engageable with the cap's prelock area, and an engagement area that is engageable with the engagement area on the cap. The body and cap are shaped such that the body can be inserted into the cap's open end. When the body is inserted into the cap and the prelock areas are engaged, the connection between the cap and body is releasable. Where the engagement areas are engaged, however, the connection is permanent. The terms engageable and indentation are not defined in the *'267 patent* and are disputed by the parties. Furthermore, the *'267 patent* does not indicate whether, on either the cap or the body, the same area may serve as both the prelock and engagement area. These questions are discussed below.

Dependent claims two through five and eleven through fourteen teach capsules where individual features, the protrusions of elongated length, the hollow-cylindrical inner wall, and the indentation, are described more specifically. It is a "fundamental principle [*11] of patent law that 'dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed.'" *Jeneric/Pentron, Inc. v. Dillon Co., Inc.*, 205 F.3d 1377, 1383 (Fed.Cir. 2000) (quoting *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed.Cir. 1989)). The court considers first, therefore, claim one.

> 1. Defining "Engageable." The term "engageable" is not defined in the patent. When considering the language of the claim, "there is a 'heavy presumption' that the terms used in claims 'mean what they say and have the ordinary meaning that would be attributed to those words by persons skilled in the relevant art.'" *Resonate, Inc. v. Alteon Websystems, Inc.*, 338 F.3d 1360, 1364 (Fed. Cir. 2003) (quoting *Tex. Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1201 (Fed. Cir. 2002)). "The ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*,

Case 3:01-cv-00577-CFD    Document 167-7    Filed 02/17/2006    Page 5 of 10
Case 3:04-cv-00929-JBA    Document 98    Filed 10/28/2005    Page 4 of 9

Page 4
2005 U.S. Dist. LEXIS 15984, *

*2005 U.S. App. LEXIS 13954, 2005 WL 1620331 at \*5.* Ordinarily, "the inquiry into how a person of ordinary [\*12] skill in the art understands a claim term provides an objective baseline from which to begin claim interpretation. Id. In this case, the court credits Pfizer's expert's assertion, uncontested by Ajix, that "the claim term 'engageable,' when read in context with the claim, specifically, 'thereby providing a releasable connection,' does not have a precise and generally understood meaning to one of ordinary skill in the art." Decl. of Dr. Mansoor Amiji [Doc. No. 139] P 24.

The court must, therefore, interpret the term "engageable." The court may first consider whether the ordinary meaning of claim language is "readily apparent even to lay judges" and whether this is a case that "involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips, 2005 U.S. App. LEXIS 13954, 2005 WL 1620331 at \*6.* The word "engage" has many meanings. The applicable definition in this context is "to fasten" or "to attach." Oxford English Dictionary (2d ed. 1989); see also *Acromed Corp. v. Sofamor Danek Group, Inc., 253 F.3d 1371, 1382 (Fed. Cir. 2001)* (construing the term "engage" to mean "to fit together"). While recent case law cautions against [\*13] the use of dictionaries, dictionaries "are often useful to assist in understanding the commonly understood meaning of words." *Phillips, 2005 U.S. App. LEXIS 13954, 2005 WL 1620331 at \*15.* Particularly in a case where a term does not have a generally understood meaning among those skilled in the art, the court ought to understand the common meaning of the term as it is most likely to guide an understanding of the inventor's intention is using that term. The term "engageable," then, would be commonly understood to mean "able to engage" and to describe an object that is able to or has the capacity to fasten or to attach.

The court next looks to the claim itself for instruction on the use of the term "engageable." See *Phillips, 2005 U.S. App. LEXIS 13954, 2005 WL 1620331 at \*6-\*7.* "Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Phillips, 2005 U.S. App. LEXIS 13954, 2005 WL 1620331 at \*7.* The same is true of a term used twice in the same claim. The use of the term "engageable" to describe both the permanent and temporary locks strongly suggests that the term does not incorporate the amount of [\*14] force necessary to separate the locked components. Furthermore, the use of the term "releasable" to describe the connection between the "engageable" areas suggests that the term "engageable" is not intended to incorporate the amount of force necessary to separate the components. Were the term "engageable" to be read as Pfizer argues, the term "releasable" would be redundant. The court reads the term "engageable" to refer to the ability of the cap and body to connect, not to the amount of force necessary to pull them apart.

The specification, while it ought not be read into the claims, should be used as necessary and appropriate to construe claim terms. "Although it is improper to read a limitation from the specification into the claims, claims must be read in view of the specification, of which they are a part." *Microsoft Corp. v. Multi-Tech Systems, Inc., 357 F.3d 1340, 1347 (Fed. Cir. 2004)* (internal citations, quotations, and alterations omitted). "Though understanding the claim language may be aided by the explanations contained in the written description, it is important not to import into a claim limitations that are not a part of the claim." *Resonate, Inc., 338 F.3d at 1364.* [\*15]

Pfizer urges the court to adopt an extremely specific definition of "engageable." According to Pfizer, the Preferred Embodiment requires the court to read the term narrowly. The Preferred Embodiment describes a number of different forces associated with effecting a preliminary and permanent lock and with releasing a preliminary lock. Specifically, the prefit force is defined as "the force which is needed to open a prelocked capsule for filling." *'267 patent*, col. 4, ll. 44-45 (emphasis added). The patent specifies that the prefit force "must neither be too high (otherwise separation problems will arise in the filling station) nor too low (danger of the capsule parts falling apart during transport)." *'267 patent*, col. 4, ll. 46-48. The patent describes a technique for measuring such forces and explains the role of the capsule's component parts on the prefit force. For example, Pfizer determined that a protrusion with circular crosssection resulted in reduced variation of prefit forces among capsules. *'267 patent*, col. 9, ll. 1-3. The patent further states that "in the present design, a reduction of the PREFIT force was desired" and that "protrusion heights in the range of 40 to [\*16] 80 [microns]" reduced the prefit force by approximately 30% from that of the prior art. *'267 patent*, col. 9, ll. 36-38.

Given the importance of the prefit force to the '267 capsule, Pfizer argues that the term "engageable . . . is properly interpreted to mean that the pre-lock area on the body interacts with the pre-lock area on the cap so as to reduce the pre-lock force needed to separate the body and cap for filling (e.g., below approximately 21.6 grams." Pl.'s Memo. of Law in Opp. to Ajix's Mot. for Summ. J. of Invalidity and Infringement (hereinafter "Pfizer Br.") [Doc. No. 135] at 30.

This analysis is flawed in two fatal respects. First, the term "engageable" is used to describe both the pre-lock and the permanent lock. "The same word appearing

Case 3:01-cv-00577-CFD   Document 167-7   Filed 02/17/2006   Page 6 of 10
Case 3:04-cv-00929-JBA   Document 98   Filed 10/28/2005   Page 5 of 9

Page 5
2005 U.S. Dist. LEXIS 15984, *

in the same claim should be interpreted consistently." *Digital Biometrics, Inc. v. Identix, Inc., 149 F.3d 1335, 1345 (Fed. Cir. 1998)*. Therefore, the term "engageable" cannot be interpreted to specify the force required to separate the cap from the body in the prelock position because that force will be significantly greater with respect to the engageable permanent lock areas. The capsule, when in the permanent lock [*17] position, should not be easily separated. *'267 Patent*, Col. 1, ll. 47-52 (describing potential difficulties should capsule components separate after pharmaceutical material has been placed in the capsule).

Second, the definition of "engageable" put forward by Pfizer is simply counter to common definitions of the word. In the instant case, the term has no intelligble meaning to persons skilled in the relevant art. "To engage," when used to describe a physical action, means to attach or to fasten. To interpret the term "engageable" to refer to the separation of two objects is illogical. It is simply more reasonable to analyze the term to describe two objects' ability or capacity to attach to one another. The instant context--a patent teaching a capsule with two components designed to interact with one another--only buttresses this view. Counter to Pfizer's contention, the instant context does not support a finding that the term "engageable" defines the force needed to separate the cap from the body. Indeed, the term "releasable," *'267 patent*, col. 11, l. 67, would be redundant if "engageable" were interpreted as Pfizer insists.

The court exercises discretion in determining what evidence [*18] to consider and what weight to give that evidence when construing a claim. *Phillips, 2005 U.S. App. LEXIS 13954, 2005 WL 1620331 at *11*. This claim construction prioritizes intrinsic evidence, the language of the claim itself, over extrinsic sources, such as dictionaries and expert testimony. To read the term "engageable" as Pfizer suggests is to ignore the plain language of the claim itself and to allow Pfizer to read the specification into the claim.

2. Defining "Indentation." Resolving the instant dispute also requires that this court interpret the word "indentatation." The patent describes the prelock area on the body as "having at least one indentation and being engageable with" the prelock area on the cap. *'267 patent*, col. 11, ll. 61-62. Dependent claim 5 describes "[a] container according to claim 1, wherein said indentation on said cylindrically shaped outer wall is a recessed ring-shaped holding ring." *'267 patent*, col. 12, ll. 18-20. The parties agree that the term "indentation" would be commonly understood by one of ordinary skill in the art as a "recess." Pfizer Br. at 9; accord Ajix's Reply Memo. [Doc. No. 151] at 5. Ajix argues, however, that the claim, specification, [*19] prosecution history, and prior art require that the court give the term "indentation" a narrower meaning than simply "recess." Dependent claims five through eight describe a capsule wherein the second prelock area's indentation is a "recessed ring-shaped holding ring." *'267 patent*, col. 12, ll. 19-20. Pfizer argues that structures other than rings, for example tapers and air vents, may be properly considered indentations. It argues that any indentation that is engageable with the first prelock area satisfies the requirements of claim one.

Again, the court first looks to the claim itself to understand the term's meaning. It is not, however, the indentation that must be engageable with the first prelock area, but the second prelock area in its entirety. *'267 patent*, col. 11, ll. 61-63 ("said second prelock area having at least one indentation and being engageable with said first prelock area"). While the second prelock area must be engageable with the first prelock area, the patent does not require that the "at least one indentation" play any role in "providing a releasable connection" between the two components. Id. at ll. 6166 . In fact, claim one of the *'267 patent* describes [*20] neither the nature or the function of the indentation(s). Therefore, the second prelock area could need only be engageable with the first prelock area and include an indentation, whether for air ventilation or even cosmetic purposes.

3. Can the Same Structure Serve as the "Second Prelock Area" and the "Second Engagement Area"? Nowhere does the *'267 patent* provide or suggest that the same physical structure can serve as both the "second prelock area," *'267 patent*, col. 11, l. 60, and the "second engagement area," *'267 patent*, col. 12, l. 3. In fact, the specification describes a capsule body that comprises the following:

> . . . the counter locking ring which matches the locking ring of the cap and has a depth of 25 to 70 [microns] and a width of 0.7 to 1.3 mm. Furthermore, at its open end the body is provided with an area of reduced diameter formed by a circular shaped ring with a depth of 10 to 60 microns and a width of 0.8 to 1.4 mm and a wider ring of symmetrical or asymmetrical cross-sectional profile to fit the elongated protrusions.

*'267 patent*, col. 3, ll. 56-63. Therefore, the specification expressly contemplates three separate rings on the body, two of [*21] which serve to effect a locking position, one permanent and one temporary. The parties do not dispute, nor would an argument to the contrary be sus-

Case 3:01-cv-00577-CFD   Document 167-7   Filed 02/17/2006   Page 7 of 10
Case 3:04-cv-00929-JBA   Document 98   Filed 10/28/2005   Page 6 of 9

Page 6
2005 U.S. Dist. LEXIS 15984, *

tainable, that a patent may provide for one structural element to perform multiple functions.

### B. The New Farmalock Capsule Does Not Infringe

Pfizer argues that the New Farmalock capsule literally infringes the *'267 patent*. Alternatively, it argues that the New Farmalock capsule should be found to infringe based on the doctrine of equivalents.

1. Literal Infringement. "To establish literal infringement, all of the elements of the claim, as correctly construed, must be present in the accused system." *Netword, LLC, 242 F.3d at 1353*. Ajix claims that the New Farmalock capsule does not infringe because it lacks "at least one indentation" on the prelock area of the body. Ajix claims that the *'267 patent* describes a capsule characterized by two separate areas (the second prelock area and the second engagement area), one which effectuates the prelock and one which effectuates the permanent lock. The New Farmalock capsule, on the other hand, has just one ring on the body which effectuates both the prelock and the permanent [*22] lock. Ajix claims that the New Farmalock capsule, thus, lacks the "at least one indentation" claimed by Pfizer in the *'267 patent*.

The court finds that the New Farmalock capsule does not literally infringe because it does not include two separate areas on the body, one of which effects a permanent lock and the other of which effects a temporary lock with the cap.

2. The Doctrine of Equivalents. Pfizer argues that even if the New Farmalock capsule does not literally infringe the *'267 patent*, it infringes by equivalency. "For infringement by equivalency, all of the elements of the claimed invention or an equivalent thereof must be present in the accused system." *Netword, LLC, 242 F.3d at 1354*. The court must consider, therefore, whether each element described in claim 1 can be found in the New Farmalock capsule. Because the New Farmalock capsule's body consists of just one holding ring that is engageable with both the prelock and engagement areas on the cap, the court must determine whether the New Farmalock capsule includes all elements of the *'267 patent*, including both the second prelock area and the second engagement area.

Pfizer argues that the New Farmalock [*23] capsule under the doctrine of equivalents. n2 "[A] product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner-Jenkinson Co. v. Hilton Davis Chemical, 520 U.S. 17, 21, 137 L. Ed. 2d 146, 117 S. Ct. 1040 (1997)*. "Each element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Id. at 29*. The scope of a patent may not be extended by the doctrine of equivalents to cover prior art. See *Tate Access Floors, Inc. v. Interface Architectural Resources, Inc., 279 F.3d 1357, 1367 (Fed. Cir. 2002)* (". . . the doctrine of equivalents cannot extend so broadly as to ensnare prior art . . .").

> n2 Subsequent to oral argument, plaintiff's counsel submitted a letter in which he stated that Pfizer did not rely on the doctrine of equivalents to prove the elements of the claim added by amendment and appearing in the patent at column 12, lines 1-9. However, it is exactly that portion of claim 1 that appears at column 12, lines 1-9 which is not literally infringed as discussed above and, thus, could only infringe under a doctrine of equivalents analysis.

[*24]

The court considers whether the *'267 patent*'s prosecution history estops Pfizer from arguing that a capsule wherein the body comprises just one holding ring, capable of effecting both a temporary and permanent lock with the cap, is equivalent to the capsule taught by the *'267 patent*. n3 "Prosecution history estoppel is a matter to be determined by the court." *Festo Corp., 344 F.3d at 1368*. "[A] narrowing amendment made to comply with any provision of the *Patent Act*, including § 112, may invoke an estoppel." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 344 F.3d 1359, 1366 (Fed. Cir. 2003)*. Pfizer's November 9, 1995 patent application included three independent claims. United States Patent Application of Lieven Duynslager, Paul Maes, Robert Scott, and Lieve Vanrusselt for Container (hereinafter "Patent Application") [Doc. No. 98, Ex. 2, Pfizer 8667]. Proposed claim number 15 was rejected under *35 U.S.C. § 102(b)* as being clearly anticipated by prior art, the Graham et al. patent. Office Action Summary, November 9, 1995 [Doc. No. 98, Ex. 2, Pfizer 8710]. In response, Pfizer submitted an Amendment which canceled claim [*25] 15 and made any permitted claims previously dependent on said canceled claim instead dependent on allowable claim 26. Amendment [Doc. No. 98, Pfizer 8717] at 8719.

> n3 Generally, "equivalency can also exist when separate claim limitations are combined into a single component of the accused device." *Dolly, Inc. v. Spalding & Evenflo Cos., 16 F.3d 394, 398 (1994)*. In this case, however, where

Case 3:01-cv-00577-CFD   Document 167-7   Filed 02/17/2006   Page 8 of 10
Case 3:04-cv-00929-JBA   Document 98   Filed 10/28/2005   Page 7 of 9

Page 7
2005 U.S. Dist. LEXIS 15984, *

there is an "additional limitation regarding the relationship of the two means to one another," *id. at 399*, the court questions whether it can find that the single ring on the body of the New Farmalock capsule is equivalent to the two rings on the body of the '267 capsule. Regardless, in this case, Pfizer is estopped from arguing as such because of the patent's prosecution history.

Proposed claim number 15 was identical to claim 1 of the *'267 patent* except insofar as it ended at what is the end of l. 64, col. 11 of the *'267 patent*. It did not include the language beginning "further comprising, [*26] " at l. 67, col. 11 and ending at l. 9, col. 12. Patent Application at Pfizer 8696. Allowable proposed claim 26 was what is now claim 1. Patent Application at Pfizer 8690.

Prosecution history estoppel is not an absolute bar to a patentee's argument that an accused product infringes based on the doctrine of equivalents. "If the patent holder demonstrates that an amendment required during prosecution had a purpose unrelated to patentability, a court must consider that purpose in order to decide whether an estoppel is precluded." *Warner-Jenkinson Co., 520 U.S. at 40-41*.

"The first question in a prosecution history estoppel inquiry is whether an amendment filed in the Patent and Trademark Office has narrowed the literal scope of a claim." *Festo Corp., 344 F.3d at 1366*. If the amendment narrowed the scope, "then the second question is whether the reason for that amendment was a substantial one relating to patentability." Id. If the prosecution history does not reveal that reason, the court will presume that the reason related to patentability. In order to rebut this presumption, "the patentee must show that the reason for the amendment was not one [*27] relating to patentability." *Id. at 1367*. Such rebuttal is "restricted to the evidence in the prosecution history record." Id. Where the patentee fails to rebut the presumption, the court must presume as a matter of law "that the patentee has surrendered all territory between the original claim limitation and the amended claim limitation." Id.

In this case, the prosecution history reveals the reason for the amendment. Given the examiner's comments in the November 9, 1995 Office Action Summary, there can be no doubt that the amendment which canceled claim 15 was made for a purpose related to patentability. Proposed claim 15, anticipated by the prior art, was determined not to be patentable. In the absence of any evidence to the contrary put forward by Pfizer the court must conclude that, by amending its claim, Pfizer ceded any ground between proposed claim 15 and proposed claim 26, ultimately allowed as claim 1. See *Festo Corp., 344 F.3d at 1366-67*.

This second presumption, that all such territory has been surrendered, is also rebuttable if the patentee can show that "the rationale underlying the narrowing amendment bore no more than a tangential [*28] relation to the equivalent in question." *Id. at 1369* (internal quotation marks and alternation omitted). Pfizer argues that the narrowing amendment in this case was made because the prior art, the Graham '495 patent, anticipated the cap taught by proposed claim 15. The additional limitation of a second engagement area located on the body, Pfizer argues, ought to be considered tangential. Furthermore, the prosecution history does not suggest that the "at least one indentation" on the second prelock area must be a different structure than the second engagement area.

The prosecution history does not reveal, however, such a limited purpose for the examiner's rejection of proposed claim 15. "Whether the patentee has established a merely tangential reason for a narrowing amendment is for the court to determine from the prosecution history record . . ." *Id. at 1370*. Pfizer had the option, following the rejection of proposed claim 15, to amend that claim so as to change only the cap. Instead, it substituted proposed claim 26 and made any allowed dependent claims previously dependent on proposed claim 15 now dependent on proposed claim 26. Pfizer has failed [*29] to rebut the presumption that it has ceded all ground between proposed claim 15 and what is now claim 1 of the *'267 patent*. Therefore, it is estopped from arguing that "at least one indentation" is equivalent to the "second engagement area." Were this the case, a substantial portion of proposed claim 26 would be superfluous. In addition, having determined that the term "engageable," as used in the *267 patent*, is not limited as insisted by Pfizer, the court must be careful not to construe the patent or its equivalents in such a way as to cover prior art.

Therefore, the court concludes that the New Farmalock capsule does not infringe, either literally or under the doctrine of equivalents. Having found that the accused capsule does not infringe claim 1 of the *'267 patent*, the only independent claim at issue in this case, the court need not consider the relevant dependent claims. See *Jeneric/Pentron, Inc., 205 F.3d at 1383*.

## IV. CONCLUSION

Because the court finds that Ajix's New Farmalock capsule does not infringe Pfizer's *'267 patent* and, therefore, awards summary judgment on that ground to Ajix, it need not reach the question of whether Pfizer's patent is [*30] valid. That question is mooted by this court's ruling on Ajix's Motion for Summary Judgment of Noninfringement. Therefore the Motion for Summary Judgment of Noninfringement [Doc. No. 90] is GRANTED

Case 3:01-cv-00577-CFD   Document 167-7   Filed 02/17/2006   Page 9 of 10
Case 3:04-cv-00929-JBA   Document 98   Filed 10/28/2005   Page 8 of 9

Page 8

2005 U.S. Dist. LEXIS 15984, *

and the Motion for Summary Judgment of Invalidity [Doc. No. 93] is DENIED AS MOOT.

**SO ORDERED**

Dated at Bridgeport, Connecticut this 29th day of July, 2005.

/s/ Janet C. Hall

United States District Judge