UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANTON/BAUER, INC.,<br>    Plaintiff,<br><br>v.<br><br>PAG, LTD.,<br>    Defendant,<br><br>v.<br><br>ANTON/BAUER, INC. and ALEX<br>DESORBO,<br>    Counterclaim and Third Party<br>    Defendants | Civil Action<br>File No.: 3:01-CV-577-CFD<br><br><br><br><br><br><br><br><br><br><br>MARCH 3, 2006 |

**DEFENDANT, PAG LTD'S, REPLY TO PLAINTIFF, ANTON/BAUER'S, MEMORANDUM IN RESPONSE TO DEFENDANT PAG, LTD'S OPENING CLAIM CONSTRUCTION ("MARKMAN") MEMORANDUM**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii
LIST OF DEFENDANT, PAG, LTD'S, EXHIBITS ............................................................. iii
I.     PAG'S REPLY ARGUMENT & CITATION OF AUTHORITY .................................. 1
     A. "Context" Is The Proper Claims Construction Methodology ....................................... 1
          1. In Context, The "Projections" of the '204 Patent Clearly Have Half-Moon Shaped End Portions ............................................................................. 1
          2. Anton/Bauer Improperly Ignores The Contextual Use Of "Projection" ............ 4
     B. "The Invention" Is Projections With Half-Moon Shaped End Portions ....................... 6
     C. The Doctrine of Claim Differentiation Is Irrelevant ..................................................... 8
II.    CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

I.   **CASE LAW**

Alloc, Inc. v. International Trade Comm'n, 342 F.3d 1361 (Fed. Cir. 2003)......................7

Curtiss-Wright Flow Control Corp. v. Velan, Inc., No. 05-1376,
2006 U.S. App. LEXIS 3521 (Fed. Cir. February 15, 2006)....................................1, 5, 6, 9

Honeywell Int'l v. United States, 66 Fed. Cl. 400; 2005 U.S. Claims LEXIS 165
(Fed. Cl. June 14, 2005)..........................................................................................8

Hormone Research Foundation, Inc. v. Genentech, Inc.,
904 F.2d 1558, 1567 n.15 (Fed. Cir. 1990).............................................................8

Microsoft Corp. v. Multi-Tech Sys., Inc., 357 F.3d 1340 (Fed. Cir. 2004).........................7

Multiform Desiccants, Inc. v. Medzam, Ltd., 133 F.3d 1473, 1479 (Fed. Cir. 1998).......10

Nystrom v. Trex Co., Inc., 424 F.3d 1136 (Fed. Cir. 2005) ............................................8, 9

Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005)................................................1, 5

SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.,
242 F.3d 1337 (Fed. Cir. 2001)..............................................................................1

Seachange Int'l, Inc. v. C-Cor Inc., 413 F.3d 1361, 1369 (Fed. Cir. 2005)...................9, 10

Watts v. XL Sys., Inc., 232 F.3d 877 (Fed. Cir. 2000)........................................................7

II.   **OTHER AUTHORITIES**

37 C.F.R. § 1.83(a)..............................................................................................................3

Manual For Patent Examining Procedure §608.02(d) .......................................................3

## LIST OF DEFENDANT, PAG, LTD'S, EXHIBITS

"A"   United States Patent No. 4,810,204

"B"   United States Patent No. 4,218,107

"C"   United States Patent No. 4,550,968

"D"   Plaintiff Anton/Bauer's Claim Constructions

"E"   Defendant, PAG, Ltd's Disputed Claim Term Constructions

"F"   Anton/Bauer Web Site Product Information For the Gold Mount® Quick Change System

"G"   <u>Curtiss-Wright Flow Control Corp. v. Velan, Inc.</u>, No. 05-1376, 2006 U.S. App. LEXIS 3521 (Fed. Cir. Feb 15, 2006)

"H"   <u>Honeywell Int'l v. United States</u>, 66 Fed. Cl. 400; No. 02-1909C, 2005 U.S. Claims LEXIS 165 (Fed. Cl. June 14, 2005).

"I"   U.S. Patent No. 6,486,286

"J"   U.S. Patent No. 5,769,267

I.  **PAG'S REPLY ARGUMENT & CITATION OF AUTHORITY**

  A.  **"Context" Is The Proper Claims Construction Methodology**

At least the parties agree on one point, the Federal Circuit's *en banc* decision in Philips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005) sets forth the mandatory method of claims construction. As set forth in Philips, a proper claims construction can no longer pull a so-called "ordinary meaning" definition of a claim term of out the sky. Philips, 415 F.3d at 1320. Instead, district courts must base their claims construction on the entirety of the specification of the patent at issue and the *context* in which the disputed claim phrase appears. Philips, 415 F.3d at 1313 ("Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."); Curtiss-Wright Flow Control Corp. v. Velan, Inc., No. 05-1376, 2006 U.S. App. LEXIS 3521, at *6 (Fed. Cir. Feb. 15, 2006)("This Court recently reiterated that the specification is the single best guide to the meaning of a claim term.")(attached hereto as DX "G"). In essence, the *context* in which a claim term is used is of overriding importance to claim construction.

  1.  **In Context, The "Projections" Of The '204 Patent Clearly Have Half-Moon Shaped End Portions**

When read cover-to-cover, a person of ordinary skill in the art is led to the "inescapable conclusion" that the projections of the '204 patent have "half-moon shaped" end portions. See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc., 242 F.3d 1337, 1342-45 (Fed. Cir. 2001)(drawing an "inescapable conclusion" after reading the intrinsic record).

1

In the first section of the '204 patent, the Background Of The Invention section, the '204 patent describes the problems with the prior art. See DX "A," '204 Patent at Column 1, Line 10 through Column 3, Line 12. In particular, the '204 patent states that:

> While *the foregoing* [prior art devices] generally proved satisfactory in use, the present invention is direct[ed] to *further improving* several features of the battery pack connection.

DX "A," '204 Patent at Column 3, Lines 13-15 (emphasis added). The '204 patent then tells the public that one of the "improvements" of the '204 design is that:

> Improved securement means [are provided] for the headed *projections* on the surface of the male plate to prevent loss thereof.

DX "A," '204 Patent at Column 3, Lines 45-47 (emphasis added).

In the second section of the '204 patent, the Summary Of The Invention section, the '204 patent more specifically tells the public that the projections of the improved securement means have half-moon shaped end portions:

> The headed *projections* on the male plate **have** *a half-moon shaped* back plate seated in a complementally shaped slot on the wall of the male plate to preclude inadvertent turning and loosening of the screwthreaded mounting of the headed projection with concomitant loss of the projection from the plate if its mounting completely comes apart.

DX "A," '204 Patent at Column 3, Lines 45-47 (emphasis added). Note that this passage, which precedes the Detailed Description section of the '204 patent, says that the projections "*have*" a half-moon shaped back plate or end portion. The statement, which summarizes the claimed invention, is not qualified or limited by language such as "in an embodiment," or "may" have. Instead, the '204 patent definitively proclaims that the projections of the '204 patent "*have*" half-moon shaped end portions. In addition, this

2

passage clearly states that the "half-moon shaped" feature accomplishes the "improvement" of preventing the loss of projections.

Continuing-on to the third section of the '204 patent, the Brief Description Of The Drawings section, the '204 patent further defines that:

> FIG. 5 is an exploded perspective view of the headed *projection* of the battery pack connection *of the present invention* and further illustrates its manner of securement to the male plate of the battery pack connection.

DX "A," '204 Patent at Col. 5, Lines 18-20 and lines 35-38 (emphasis added). Based on this statement, one of skill in the art would rightfully conclude that the "projection" claimed in the '204 patent is as shown in Figure 5.[1]

In a fourth section of the '204 patent, reference number "26" of Figure 5 shows the "projection" as a whole, and reference number "56" of Figure 5 specifically shows the "half-moon shaped" end portion of the "projection:"



---

[1] The Patent Rules require every feature or embodiment of a claimed invention to be shown in the Figures of a patent application. See 37 C.F.R. § 1.83(a) ("The drawing in a nonprovisional application *must* show *every feature* of the invention *specified in the claims*.")(emphasis added); Manual For Patent Examining Procedure §608.02(d) ("The drawing in a nonprovisional application *must* show *every feature* of the invention *specified in the claims*."). In the '204 patent, no projection, other than a half-moon shaped projection, is depicted in the '204 patent.

3

DX "A," '204 Patent at Figure 5 and Column 7, Lines 3-7.

Finally, in the fifth section of the '204 patent, the '204 patent confirms what the reader of the '204 patent has already come to understand, that the "projections" of the '204 patent have "half-moon shaped" end portions:

> The male plate 12 is formed with a plurality of *projections* 26, **each of which has** a large circular head 27 and an integral narrow leg portion 28 terminating in a *circular end portion 54 which is cut linearly along a top edge 56 to provide a substantial **half-moon shape***. Each projection 26 may be secured to the male plate 12 by being formed with an axial threaded hole 58 into which a screw 29 from the backside of the male plate is threadable. ***The half-moon shaped end portion 54*** is seated in a complementally shaped slot 60 on the front wall of the male plate 12 to *preclude inadvertent turning and loosening of the threaded projection 26*, with *concommitant loss of the projection from the plate 12* if its mounting completely comes apart.

DX "A," '204 Patent at Col. 7, Lines 3-16 (emphasis added). Here again, this passage states that "*each*" projection "*has*" a half-moon shaped end portion. As before, this statement is not qualified or limited by language such as "some" have, or "may" have. Instead, the '204 patent definitively proclaims that "*each*" projection of the '204 patent "*has*" half-moon shaped end portions.

Clearly, after having read the entirety of the specification of the '204 patent, the only manner and context in which the term "projection" is defined and referenced is as a projection with a "half-moon shaped" end portion.[2]

### 2. Anton/Bauer Improperly Ignores The Contextual Use Of "Projection"

---

[2] Anton/Bauer's citation to two 2005 District of Connecticut cases exemplifies Anton/Bauer's failure to grasp the notion of "context." Why the Court ruled as it did in those two cases is necessarily tied to the patents at issue in those cases. Anton/Bauer, however, fails to make any mention whatsoever of the patents at issue in those two cases, which are attached hereto as DX "I" and DX "J." Suffice it to say that, unlike the '204 patent at issue in this case, neither patent at issue in the two cited cases had at least four definitions, or contextual uses, of the disputed claim term prior to even reaching the Detailed Description sections of those patents.

Anton/Bauer's proposed construction for the "projections" claim phrase, and its attacks on PAG's proposed construction, should be rejected. Anton/Bauer's construction methodology attempts to do exactly what <u>Philips</u> says is now an old, outdated, and improper methodology. <u>Philips</u>, 415 F.3d at 1320 ("That approach, in our view, improperly restricts the role of the specification in claim construction."). Although Anton/Bauer's proposed claim construction methodology may have been logical in the past, it is not now. Indeed, the Federal Circuit's recent holding in <u>Curtiss-Wright</u>, is illustrative:

> The trial court's claim construction followed a logical path. The court first set forth the ordinary meaning of "adjustable": "capable of making a change to something or capable of being changed." Preliminary Injunction Order, slip op. at 10. The court then determined that a narrower construction of "adjustable" would be inconsistent with other claims in the '714 patent, which recite an adjustment mechanism that allows adjustment while the device is in use or operation. Id. at 11-13. In other words, the district court relied on claim differentiation during its claim construction. Finally, the district court explained that any construction of the term "adjustable" that requires the presence of the adjustment mechanism disclosed in the '714 patent would be an impermissible narrowing of that claim term to the structure of the preferred embodiment.
>
> While logical, *this chain of reasoning errs* because it places too much emphasis on the ordinary meaning of "adjustable" *without adequate grounding* of that term within *the context of the specification* of the '714 patent....
>
> Thus, the specification of the '714 patent consistently, and without exception, describes adjustment that occurs during operation of the de-header system....
>
> This court commends the district court's reluctance to narrow the claims to the preferred embodiment. In this instance, however, *that care is admirable but misplaced*. This case does not evince a situation where a party is attempting to import a limitation from the specification into the claims. Claim 14 already contains the "adjustable" limitation. Thus, the claim construction task requires this court to discern the meaning of that term in the context of this invention and field of art. *The specification provides that context and substantial guidance* on the meaning of "adjustable." In light of the specification, the term "adjustable" means that the dynamic, live loaded seat can be adjusted while the de-heading system of claim 14 is in use.

Curtiss-Wright, No. 05-1376, 2006 U.S. App. LEXIS 3521, at *5-7 (emphasis added)(attached hereto as DX "G").

As in Curtiss-Wright, this case does not present an instance where the Court should be fearful of improperly importing a limitation from the specification into the claims. As in Curtiss-Wright, the disputed term at issue here, "projections," is already present in claims 9 and 11 of the '204 patent. Thus, as in Curtiss-Wright, by adopting PAG's proposed construction this Court is not importing limitations into the claims, rather the Court is construing a term that is already present, "projections," as having half-moon shaped end portions.

### B. "The Invention" Is Projections With Half-Moon Shaped End Portions

PAG's construction should also be adopted because Anton/Bauer failed to address the fact that the '204 patent describes headed "projections" having "half-moon shaped" end portions as "the invention." PAG spent several pages explaining how and why the '204 patent's repeated characterization of projections with half-moon shaped end portions as "the invention" is definitive of the "projections" phrase. See PAG's Opening Memo at 19-22. Anton/Bauer completely ignored PAG's argument and case law.

In fact, the '204 patent characterizes "projections" with "half-moon shaped" end portions as "the invention" at least three times. DX "A," '204 Patent, "Summary Of The Invention" ("In accordance with the present invention.... The headed projections on the male plate *have* a half-moon shaped back plate...."); "Brief Description Of The Drawings" section ("FIG. 5 is an exploded perspective view of *the headed projection* of the battery pack connection of *the present invention* and further illustrates its manner of securement to the male plate of the battery pack connection."); and the "Detailed Description Of The Preferred Embodiment" section ("the

6

battery pack of *the present invention* is generally indicated by reference numeral 10 in FIG. 13 and includes a female plate 11 and a male plate 12.... The male plate 12 is formed with a plurality of *projections* 26, *each* of which *has* a large circular head 27 and an integral narrow leg portion 28 terminating in a circular end portion 54 which is cut linearly along a top edge 56 to provide a substantial *half-moon shape*.").

In support of its "the invention" position, PAG also cited several cases, such as Alloc, Microsoft, and Watts. Alloc, 342 F.3d at 1368-69 (The "specification describes 'the invention' under the heading 'Technical Problems and Objects of the Invention,' as ... where a play exists.... Thus, the specification teaches that the invention as a whole, not merely a preferred embodiment, provides for play in the positioning of floor panels."); Microsoft Corp., 357 F.3d at 1347-48 ("When the specification 'makes clear that *the invention* does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question.") ("In light of those clear statements in the specification that *the invention* ('the present system') is directed to communications 'over a standard telephone line,' we cannot read the claims... to encompass data transmission over a packet-switched network such as the Internet. Instead, the specification shared by all three patents leads to the 'inescapable conclusion' that the communications between the local and remote sites of the claimed inventions must occur directly over a telephone line.") (emphasis added); Watts, 232 F.3d at 883 ("the specification actually limits the invention to structures that utilize misaligned taper angles, stating that the '*present invention* utilizes [the varying taper angle] feature.").

Nonetheless, Anton/Bauer failed to address PAG's "the invention" specification cites, and PAG's case law. As a result, where, as here, the inventor of a patent makes general statements such as "the present invention is," those statements must be viewed as limiting the scope of the claimed invention consistent with the inventor's characterization of "the present invention." Id.[3] See PAG's Opening Memorandum at 19-22. The public is entitled to rely on what the inventor says is "the invention." Nystrom v. Trex Co., Inc., 424 F.3d 1136, 1145 (Fed. Cir. 2005)("What *Phillips* now counsels is that in the absence of something in the written description and/or prosecution history to provide explicit or implicit *notice to the public* -- i.e., those of ordinary skill in the art -- that the inventor intended a disputed term to cover more than the ordinary and customary meaning revealed by *the context of the intrinsic record,* it is improper to read the term to encompass a broader definition simply because it may be found in a dictionary, treatise, or other extrinsic source.")(emphasis added).

### C. The Doctrine of Claim Differentiation Is Irrelevant

Anton/Bauer's reliance on the Doctrine of Claim Differentiation is similarly misguided, as it is not applicable to the facts of this case. The Doctrine is only applicable when, after having reviewed the intrinsic and extrinsic evidentiary records, the disputed claim term at issue is ambiguous. Honeywell Int'l v. United States, 66 Fed. Cl. 400; No. 02-1909C, 2005 U.S. Claims LEXIS 165, at *37 (Fed. Cl., June 14, 2005)("the Federal Circuit has emphasized that the doctrine of claim differentiation is to be reserved only for those cases where neither intrinsic nor extrinsic evidence leads to a definite definition.")(attached hereto as DX "H")(citing Hormone

---

[3] Anton/Bauer's citation to the two District of Connecticut cases also exemplifies Anton/Bauer's failure to grasp PAG's "the invention" position. Neither one of the patents at issue in the two cited cases involved patents that repeatedly described "the invention" as having the disputed claim term and feature at issue. See DX "I," U.S. Patent No. 6,468,286 and DX "J," U.S. Patent No. 5,769,267.

8

Research Foundation, Inc. v. Genentech, Inc., 904 F.2d 1558, 1567 n.15 (Fed. Cir. 1990)). Here, neither party contends that, after reviewing the intrinsic record, the disputed "projections" phrase is indefinite or ambiguous. Thus, the Doctrine cannot be used.[4]

Even if the Court were to consider the Doctrine, the Court should recognize that the Doctrine is, at best, a "limited tool of claim construction" that is easily rebutted. Seachange Int'l, Inc. v. C-Cor Inc., 413 F.3d 1361, 1369 (Fed. Cir. 2005)("the doctrine [of claim differentiation] 'only creates a presumption that each claim in a patent has a different scope; it is not a hard and fast rule of construction.'")("that presumption is not a hard and fast rule [of claims construction] and will be overcome by a contrary construction dictated by the written description or prosecution history.").

More importantly, the Doctrine of Claim Differentiation cannot "contradict" the construction dictated from the definition of a disputed claim term that is derived from the "overall context" of the specification. Curtiss-Wright, No. 05-1376, 2006 U.S. App. LEXIS 3521 at *7 (holding it is improper to rely on the Doctrine of Claim Differentiation if it "is not consistent with the overall context of th[e] invention and th[e] field of art as described in the specification."); Seachange, 413 F.3d at 1369 ("The doctrine of claim differentiation can not broaden claims beyond their correct scope, determined in light of the specification and the prosecution history and any relevant extrinsic evidence.... Claims that are written in different words may ultimately cover substantially the same subject matter.")(citations omitted); Nystrom, 424 F.3d at 1143 ("Different terms or phrases in separate claims may be construed to cover the same subject matter where the written description and prosecution history indicate that such a

---

[4] Contrary to Anton/Bauer's slight, PAG's analysis of the Doctrine of Claim Differentiation was "remarkably absent" from PAG's Opening Memo because, for the reasons stated, it is not applicable to the facts of this case.

9

reading of the terms or phrases is proper.").[5]  Thus, even if the Court gives the Doctrine any consideration, the Doctrine's result cannot contradict the construction dictated by the specification's contextual use of the disputed "projections" claim phrase and the inventor's statement of what is "the invention."

## II. CONCLUSION

For the above-stated reasons, and also for the reasons set-forth in PAG's Opening Memorandum, PAG's proposed construction for the disputed "projection" claim phrase should be adopted by the Court.

---

[5] Anton/Bauer's statement at page 12 of its Response Memo that "Stated succinctly, a claim term cannot be determined to be limited to a specific purpose or a specific design, if the inventor set forth that specific purpose or design in another claim" is dead wrong.  The correct statement of the law is that as set-forth in Seachange, and many, many other cases: "The doctrine of claim differentiation can not broaden claims beyond their correct scope, determined in light of the specification and the prosecution history and any relevant extrinsic evidence.... *Claims that are written in <u>different words</u> may ultimately cover substantially the <u>same subject matter</u>.*" Seachange, 413 F.3d at 1369 (emphasis added).  Multiform Desiccants, Inc. v. Medzam, Ltd., 133 F.3d 1473, 1479 (Fed. Cir. 1998)("claims that are written in different words may ultimately cover substantially the same subject matter").

DEFENDANT,
PAG LIMITED


_____/s/_____
Jason M. Kuselias (ct20293)
Robinson & Cole LLP
280 Trumbull Street
Hartford, Connecticut 06103
Telephone: 860-275-8200
Facsimile: 860-275-8299
Email: jkuselias@rc.com

Stephen R. Risley (ct22652)
J. Scott Culpepper (ct22653)
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2600 One Atlanta Plaza
950 East Paces Ferry Road, NE
Atlanta, Georgia 30326
Telephone: 404-760-4300
Facsimile: 404-233-1267
Email: srrisley@rkmc.com
Email: jsculpepper@rkmc.com

11

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of "Defendant, PAG Ltd's, Reply To Plaintiff Anton/Bauer's Memorandum In Response To PAG, Ltd.'S Opening Claim Construction ("Markman") Memorandum" was served via first class mail, postage prepaid on the 3rd day of March, 2006 to:

James T. Shearin, Esq.
Pullman & Comley, LLC
50 Main Street
Bridgeport, CT 06604

Allen D. Brufsky, Esq.
Christopher & Weisberg, P.A.
200 E. Las Olas Boulevard, Suite 2040
Ft. Lauderdale, FL 33301

Jason M. Kuselias