Case 3:01-cv-00577-CFD    Document 168-10    Filed 03/03/2006    Page 1 of 27

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 30 of 116

*HN5* An applicant may seek damages caused by the issuance of a Secrecy Order. *See* 35 U.S.C. § 183 ("An applicant . . . whose patent is withheld as herein provided, shall have the right . . . to apply to the head of any department or agency who caused the order to be issued for compensation for the damage caused by the order of secrecy and/or for the use of the invention by the Government, resulting from his disclosure."). If full settlement of the matter is not achieved "the head of the department or agency may award and pay to such applicant . . . a sum not exceeding 75 per centum of the sum which the head of the department or agency considers just compensation for the damage and/or use." *Id.*

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[**45]**

**[*420]** The Complaint and Amended Complaint in this action properly invoke the court's jurisdiction under both of these federal statutes that authorize the award of monetary damages.

B. Standing.

1. Plaintiff.

Lower federal courts have been advised to "decide standing questions at the outset of a case. That order of decision (first jurisdiction then the merits) helps better to restrict the use of the federal courts to those adversarial disputes that Article III defines as the federal judiciary's business." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 111, 140 L. Ed. 2d 210, 118 S. Ct. 1003 (1998) (Breyer, J. concurring). *HN6* The party invoking federal jurisdiction, has the burden of proof and persuasion to satisfy the constitutional requirements of Article III standing. *See FEW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231, 107 L. Ed. 2d 603, 110 S. Ct. 596 (1990) (holding that the burden is on the party seeking to exercise jurisdiction by clearly alleging facts sufficient to establish jurisdiction).

*HN7* Section 281 of Title 35 of the United States Code provides that "[a] patentee shall have remedy by civil action for infringement of his patent." **[**46]** 35 U.S.C. § 281; *see also* 35 U.S.C. § 100(d) ("The word "patentee" includes not only the patentee to whom the patent was issued but also the successors in title to the patentee."); *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1376-77 (Fed.Cir. 2000) ("Standing to sue for patent infringement derives from the Patent Act, . . . 35 U.S.C. § 281."); *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1308 (Fed. Cir. 2003) (emphasis in original) ("This court has determined that in order to assert standing for patent infringement, the plaintiff must demonstrate that it held enforceable title to the patent *at the inception of the lawsuit.*"). The standard set forth by the United States Supreme Court over a century ago fully retains its vitality. *See Waterman v. Mackenzie*, 138 U.S. 252, 260, 34 L. Ed. 923, 11 S. Ct. 334, 1891 Dec. Comm'r Pat. 320 (1891) (citations omitted) ("There can be no doubt that he is 'the party interested, either as patentee, assignee, or grantee,' and as such entitled to maintain an action at law to recover damages for an **[**47]** infringement; and it cannot have been the intention of congress that a suit in equity against an infringer to obtain an injunction and an account of profits, in which the court is authorized to award damages, when necessary to fully compensate the plaintiff, and has the same power to treble the damages as in an action at law, should not be brought by the same person.").

Plaintiffs properly have alleged that, at the inception of the lawsuit and at the filing of the Amended Complaint on May 31, 2005, Honeywell Intellectual Properties Inc. was the owner of the '269 patent application and '914 patent and Honeywell International Inc. was an exclusive licensee of the '269 patent application and '914 patent.

Case 3:01-cv-00577-CFD    Document 168-10    Filed 03/03/2006    Page 2 of 27

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                     Page 31 of 116

[*421] 2. Intervenor.

*HN8* The United States Court of Federal Claims "may summon any and all persons with legal capacity to be sued to appear as a party . . . in any suit . . . of any nature whatsoever pending in said court to assert and defend their interests[.]" 41 U.S.C. § 114(b); *see also* RCFC 14(b) ("The court, . . . may notify any person with legal capacity to sue and be sued and who is alleged to have an interest in the subject matter of any pending action. [**48] "); *see also* RCFC 24(a) ("Upon timely application anyone shall be permitted to intervene in an action . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."); RCFC 24(b) ("Upon timely application anyone may be permitted to intervene in an action: . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.").

The Complaint alleged that aircraft manufactured by Lockheed Martin for the Government incorporate technology disclosed and claimed in the '269 patent application and '914 patent. *See* Compl. PP 53-60, Ex. B; *see also* Am. Compl. PP 24-28, Ex. B. Lockheed Martin initially filed a Motion to Intervene and the court subsequently granted Lockheed Martin's Motion. [**49] Following the court's January 26, 2005 Memorandum Opinion and Order, Lockheed Martin supplemented the record with three contracts that Lockheed Martin entered into with the Government, "all containing warranties that each aircraft provided by Lockheed Martin under the contracts 'shall be free of rightful claim of infringement of any United States Patent.'" *See* 3/30/05 Lockheed Martin Motion to Supplement the Record at 2 (citing Ex. 1 (Contract No. F33657-95-C-2055) at 14 (C-130J System Commercial Warranty), Part A(e), p. 42 of 165; Ex. 2 (Contract No. F33657-00-C-0018), Attachment 1 at 14 (C-130J System Commercial Warranty), Part A, e., p. 50 of 65; Ex. 3 (Contract No. 33657-03-C-2014), Attachment 1 at 13 (C-130J System Commercial Warranty), b(5), p. 34 of 48). The remedy for a breach of these warranties by Lockheed Martin would be "'reimbursement of the Government by [Lockheed Martin] of the amount of the Government's loss, cost or damage . . . arising out of such patent infringement.'" *See* 3/30/05 Lockheed Martin Motion to Supplement the Record at 3 and n.2. These contracts evidence that the disposition of this action may impair Lockheed Martin's interests, unless it enjoys [**50] all the rights of a party, including the right to appeal. Therefore, the court has determined that Lockheed Martin has standing to intervene in this case pursuant to RCFC 24(a).

C. Controlling Appellate Precedent Concerning Construction Of Patent Claims.

The United States Supreme Court's unanimous affirmance of the *en banc* decision of the United States Court of Appeals for the Federal Circuit in *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 978 (Fed. Cir. 1995) ("*Markman I* "), *aff'd* 517 U.S. 370, 134 L. Ed. 2d 577, 116 S. Ct. 1384 (1996) ("*Markman II* "), settled that *HN9* the meaning and scope of a patent's claims are issues of law to be determined by a federal trial judge. *Id.* A strong undercurrent, if not undertow, concerned the competence of a jury to understand, must less construe, technical terms of art and functional elements of a patent's claims. *See* Markman II, 517 U.S. at 384 ("We . . . consider both the relative interpretive skills of judges and juries and the statutory policies that ought to be furthered by the allocation."); *see also* [**51] id. at 388-89 (quoting *Parker v. Hulme*, 18 F. Cas. 1138, 1140, F. Cas. No. 10740 (E.D. Pa. 1849) ("The judge, from . . . training and discipline, is more likely to give a proper interpretation to such instruments than a jury; and . . . is, therefore, more likely to be right, in performing such a duty, than a jury can be expected to be.")).

*HN10* [*422] In *Markman I*, the United States Court of Appeals for the Federal Circuit

Case 3:01-cv-00577-CFD    Document 168-10    Filed 03/03/2006    Page 3 of 27

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!    Page 32 of 116

specified three sources relevant to construe a patent's claim: claim language; the specification; and prosecution history. See *Markman I, 52 F.3d at 979* (quoting *Unique Concepts, Inc. v. Brown, 939 F.2d 1558, 1561 (Fed. Cir. 1991)* ("'To ascertain themeaningofclaims, we consider three sources: The claims, the specification, and the prosecution history.'"). It is important to recognize, however, that in *Markman II* the United States Supreme Court did not constrain a federal trial court from adjudicating the terms of a claim by excluding any relevant and reliable evidence, including that of experts. See [**52] *Markman II, 517 U.S. at 390* ("The decisionmaker vested with the task of construing the patent is in the better position to ascertain whether an expert's proposed definition fully comports with the specification and claims and so will preserve the patent's internal coherence."). Instead, that decision was entrusted to the considered judgment of the federal trial judge to determine, but following the precedent of the United States Court of Appeals for the Federal Circuit that was established to bring uniformity and doctrinal stability to the decisions of the federal judiciary on all matters concerning patent law. *Id.* ("It was just for the sake of such desirable uniformity that Congress created the Court of Appeals for the Federal Circuit as an exclusive appellate court for patent cases, H.R. Rep. No. 97-312, pp. 20-23 (1981), observing that increased uniformity would 'strengthen the United States patent system in such a way as to foster technological growth and industrial innovation.' *Id.* at 20.").

1. A Federal Trial Judge Must First Attempt To Construe Ambiguous Claim Terms Utilizing Intrinsic Evidence.

**a. Claim Language.**

[**53] *HN11* A federal trial judge examines claim terms and phrases "through the viewing glass of a person skilled in the art." See *Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc., 334 F.3d 1294, 1298 (Fed. Cir. 2003); see also Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc., 222 F.3d 951, 955 (Fed. Cir. 2000)* ("Claim language must be given ordinary and accustomed meaning, as understood by one of ordinary skill in the art," at the time of the patent application.). In doing so, a federal trial judge in a patent infringement case must determine, as a threshold matter, whether there is ambiguity in any claim term requiring construction and, if so, to consider intrinsic evidence. See *Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996).* First, a federal trial judge must "look to the words of the claims themselves, both asserted and nonasserted, to define the scope of the patented invention." *Id.* Second, "it is always necessary to review the specification to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning. The specification acts as a dictionary when [**54] it expressly defines terms . . . or by implication." *Id.* Third, a federal trial judge may "consider the prosecution history of the patent, if in evidence." *Id.* The United States Court of Appeals for the Federal Circuit has decided that intrinsic evidence is the "most significant source of the legally operative meaning of disputed claim language." *Id.; see also Phonometrics, Inc. v. Northern Telecom Inc., 133 F.3d 1459, 1464 (Fed. Cir. 1998)* ("Proper construction requires an examination of claim language, the written description, and, if introduced, the prosecution history.").

b. Specification Explanation And Definition.

The United States Court of Appeals for the Federal Circuit recently reaffirmed that *HN12* the specification is often the best tool to ascertain the "technological and temporal context" of claims. See *Nazomi Communications, Inc. v. Arm Holdings, PLC, 403 F.3d 1364, 1368 (Fed. Cir. 2005)* (citing *Metabolite Labs, Inc. v. Lab. Corp. of Am. Holdings, 370 F.3d 1354, 1360 (Fed. Cir. 2004)* ("In most cases, the best source for discerning . . . [usage in context as understood by one skilled in the art at [**55] the time of the invention] is the patent specification wherein the patent applicant describes the invention.").

If a patent's claim language is ambiguous, the specification "including the inventors'

Case 3:01-cv-00577-CFD    Document 168-10    Filed 03/03/2006    Page 4 of 27

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!    Page 33 of 116

[*423] statutorily-required written description of the invention -- is the primary source for determining claim meaning." *Astrazeneca AB v. Mutual Pharm. Co., Inc.*, 384 F.3d 1333, 1336 (Fed. Cir. 2004); *see also id. at 1337* (quoting *Autogiro Co. of Am. v. United States*, 384 F.2d 391, 397-98, 181 Ct. Cl. 55 (Ct. Cl. 1967)) ("'Most courts have simply stated that the specification is to be used to explain the claims; . . . the patent is an integrated document, with the claims 'pointing out and distinctly claiming,' 35 U.S.C. § 112, the invention described in the rest of the specification and the goal of claim construction is to determine what an ordinary artisan would deem the invention claimed by the patent, taking the claims together with the rest of the specification."). Of course, the utility of the specification depends on whether the "written description of the invention [is] . . . clear and complete enough [**56] to enable those of ordinary skill in the art to make and use it." *Vitronics*, 90 F.3d at 1582.

The United States Court of Appeals for the Federal Circuit has held many times that "a patentee can act as his own lexicographer to specifically define terms of a claim contrary to their ordinary meaning[;]' the written description in such a case must clearly redefine a claim term 'so as to put a reasonable competitor or one reasonably skilled in the art on notice that the patentee intended to so redefine that claim term.'" *Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.*, 214 F.3d 1302, 1307 (Fed. Cir. 2000), *cert. denied*, 2000 U.S. App. LEXIS 17777 (2000) (quoting *Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1357 (Fed. Cir. 1999)); *see also Georgia-Pacific Corp. v. United States Gypsum Co.*, 195 F.3d 1322, 1332 (Fed. Cir. 1999) (citations omitted) (advising that the "specification of the patent in suit is the best guide to the meaning of a disputed term . . . [and if] intrinsic evidence is unambiguous, it is improper for the court to rely on extrinsic evidence to contradict [**57] the meaning of the claims."); *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 540 (Fed. Cir. 1998) (citation omitted) ("When 'the specification explains and defines a term used in the claims, without ambiguity or incompleteness, there is no need to search further for the meaning of the term' . . . [unless] such definition is challenged [then] it is often appropriate . . . to receive evidence of the meaning and usage of terms of art from persons experienced in the field of the invention."); *Vitronics*, 90 F.3d at 1582 (holding that, in ascertaining the scope of the patent, deference should be afforded claims, as defined by their "customary meaning," with the caveat that the law affords patentees the right to serve as a "lexicographer," if a special or unique definition is clearly stated in the specifications or prosecution history.). Federal trial judges also have been well advised not to construe a claim to exclude the preferred and only embodiment disclosed in a specification: "such an interpretation is rarely, if ever, correct[.]" [**58] *Vitronics*, 90 F.3d at 1583.

*HN14*In *Chemcast Corp. v. Arco Industries Corp.*, 913 F.2d 923, 926-27 (Fed. Cir. 1990), the United States Court of Appeals for the Federal Circuit also discussed the distinction between "enablement" and "best mode" requirements. n9 The specification discloses an invention "in such a manner as will enable one skilled in the art to make and utilize it." *Id. at 926*. The purpose of the "best mode," however, is to restrain inventors from applying for patents and concealing from the public preferred embodiments of their inventions. *Id. at 927*.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n9 The governing statute provides that the specification "shall set forth the best mode contemplated by the inventor of carrying out his invention." 35 U.S.C. § 112. Section 112 also requires disclosure of specific instrumentalities or techniques that are the best way of carrying out the invention. *Id.*

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

c. Prosecution History.

Case 3:01-cv-00577-CFD     Document 168-10     Filed 03/03/2006     Page 5 of 27

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                Page 34 of 116

[**59] Federal trial judges also have been instructed that *HN15* prosecution history is relevant to claim construction "because it may contain contemporaneous exchanges between the patent applicant and the [USPTO] about what the claim means." *Vitronics*, 90 F.3d at 1584. Prosecution history, however, can trump the importance of the specification in certain circumstances. For example, in *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 15 L. Ed. 2d 545, 86 S. Ct. 684 (1966), the United States Supreme Court held that if claims were narrowed to obtain issuance over [*424] prior art during prosecution, they may not later be interpreted by the specifications to cover what was disclaimed before the U.S. Patent Office. *Id.* at 33; *see also Schriber-Schroth Co. v. Cleveland Trust Co.*, 311 U.S. 211, 220-21, 85 L. Ed. 132, 61 S. Ct. 235, 1941 Dec. Comm'r Pat. 802 (1940) ("When . . . the patentee originally claimed the subject matter alleged to infringe but then narrowed the claim in response to a rejection, he may not argue that the surrendered territory compromised unforseen subject matter that should be deemed equivalent to the literal [**60] claims of the issued patent."). In sum, prosecution history may preclude "a patentee from regaining through litigation, coverage of subject matter relinquished during prosecution of the application of the patent." *Wang Labs v. Mitsubishi Electronics America, Inc.*, 103 F.3d 1571, 1577-78 (Fed. Cir. 1997), *cert denied*, 522 U.S. 818, 139 L. Ed. 2d 30, 118 S. Ct. 69 (1997).

2. Only In Limited Circumstances May A Federal Trial Judge Construe Claim Terms Utilizing Extrinsic Evidence.

*HN16* If analysis of intrinsic evidence resolves ambiguity about the meaning of the patent claim, as a matter of law, it is improper for a federal trial judge to cite to extrinsic evidence, *i.e.*, evidence outside of the patent record, including expert and inventor testimony, dictionaries, learned treatises, and articles. *See Vitronics*, 90 F.3d at 1584 (allowing extrinsic evidence "to help the court come to the proper understanding of the claims[,]" but not to contradict intrinsic evidence or vary the scope of the claims). That instruction was clarified in [**61] *Key Pharms. v. Hercon Lab. Corp*, 161 F.3d 709 (Fed. Cir. 1998):

> This court has made strong cautionary statements on the proper *use* of extrinsic evidence, which might be misread by some members of the bar as restricting a trial court's ability to *hear* such evidence. We intend no such thing. To the contrary, trial courts generally can hear expert testimony for background and education on the technology implicated by the presented claim construction issues, and trial courts have broad discretion in this regard.

> Furthermore, a trial court is quite correct in hearing and relying on expert testimony on an ultimate claim construction question in cases in which the intrinsic evidence (*i.e.*, the patent and its file history -- the "patent record") does not answer the question.

> What is disapproved of is an attempt to use extrinsic evidence to arrive at a claim construction that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent.

[**62] *Id.* at 716 (citations omitted); *see also Elekta Instrument*, 214 F.3d at 1307 (quoting *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1476 (Fed.Cir. 1998)) ("[A] court should rely upon 'the claim language, the written description portion of the

Case 3:01-cv-00577-CFD    Document 168-10    Filed 03/03/2006    Page 6 of 27

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!          Page 35 of 116

specification, the prosecution history, and if necessary to aid the court's understanding of the patent, extrinsic evidence.'"); _Zodiac Pool Care, Inc. v. Hoffinger Indus., Inc._, 206 F.3d 1408, 1414 (Fed. Cir. 2000) (affirming a federal trial court's claim construction and cautioning that "both intrinsic and extrinsic evidence [may be considered, however, a federal trial court should] turn[] to extrinsic evidence only when the intrinsic evidence is insufficient to establish the clear meaning of the asserted claim."); _Trilogy Communs., Inc. v. Times Fiber Communs., Inc._, 109 F.3d 739, 744 (Fed. Cir. 1997) ("When, as here, the district court has concluded that the patent specification and the prosecution history adequately elucidate the proper meaning of the claims, expert testimony is not necessary and certainly not crucial."). [**63]

_HN17_ Extrinsic evidence, however, may be particularly useful to determine how one of ordinary skill in the relevant art would interpret the claim language. See _Brookhill-Wilk 1, LLC, 334 F.3d at 1298_. For example, a federal trial judge should be able to consider extrinsic evidence to learn whether a common term has a special meaning in the relevant field. See _Microsoft Corp. v. Multi-Tech Sys., Inc._, 357 F.3d 1340, 1347 (Fed. Cir. 2004) (en banc) (quoting _Invitrogen Corp. v. Biocrest Mfg., L.P._, 327 F.3d 1364, 1367 **[*425]** (Fed. Cir. 2002)) ("Claim language generally carries the ordinary meaning of the words in their normal usage in the field of invention.").

a. Prior Art.

_HN18_ Depending on the clarity of a patent claim and specification, prior issued patents may provide a source of relevant evidence to determine how a term or phrase has been used or understood by one skilled in the art. That is true whether or not the prior art was referenced in the specification or the prosecution history. See **[**64]** _Arthur A. Collins, Inc. v. Northern Telecom, Ltd._, 216 F.3d 1042, 1044-45 (Fed. Cir. 2000) ("When prior art that sheds light on the meaning of a term is cited by the patentee, it can have particular value as a guide to the proper construction of the term, because it may indicate not only the meaning of the term to persons skilled in the art, but also that the patentee intended to adopt that meaning."); see also _Vitronics, 90 F.3d at 1583_. Within the hierarchy of extrinsic evidence, prior art is a more reliable source of evidence as to the meaning of words or phrases in a patent claim than expert testimony. _Id._

b. Technical Treatises And Technical Articles.

_HN19_ As with prior art, treatises and technical articles, particularly those of note, wide circulation, or likely to be utilized as standard desk reference material by an ordinary person skilled in the art at the time of the patent's issuance may be consulted in the discretion of the court. See _Dow Chem. Co. v. Sumitomo Chem. Co._, 257 F.3d 1364, 1372 (Fed. Cir. 2001) ("[Technical treatises, which are extrinsic evidence, hold a 'special place' and may sometimes be considered **[**65]** along with the intrinsic evidence when determining the ordinary meaning of claim terms."); see also _Vitronics, 90 F.3d at 1584 n.6_ ("Although technical treatises and dictionaries fall within the category of extrinsic evidence, as they do not form a part of an integrated patent document, they are worthy of special note. Judges are free to consult such resources at any time in order to better understand the underlying technology and may also rely on dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents.").

c. Expert Testimony.

The United States Court of Appeals for the Federal Circuit has instructed federal trial judges that _HN20_ expert testimony may be helpful in aiding an understanding of the patent, but not for the purpose of varying or contradicting the claims. See _Markman I, 52 F.3d at 981_. The

Case 3:01-cv-00577-CFD    Document 168-10    Filed 03/03/2006    Page 7 of 27

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!    Page 36 of 116

United States Court of Appeals for the Federal Circuit, however, has cautioned that expert testimony may be considered, but only insofar as it aids the trial court to understand the claim language, the specification, and **[\*\*66]** the prosecution history. *See Vitronics*, 90 F.3d at 1584 ("Indeed, where the patent documents are unambiguous, expert testimony regarding the meaning of a claim is entitled to no weight."); *see also CAEScreenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1318 (Fed. Cir. 2000) (holding that when "the intrinsic evidence is unambiguous, it is improper for a [federal trial] court to rely on extrinsic evidence such as expert testimony when construing disputed claim limitations."); *but see Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1308 (Fed. Cir. 1999) ("*Vitronics* does not prohibit courts from examining extrinsic evidence, even when the patent document is itself clear."); *see also id.* (emphasizing that *Vitronics* "does not set forth any rules regarding the admissibility of expert testimony into evidence. . . . [and] there are no prohibitions . . . on courts hearing evidence from experts. Rather, *Vitronics* merely warned courts not to *rely* on extrinsic evidence in claim construction to contradict the meaning of claims discernible from thoughtful examination of the claims, **[\*\*67]** the written description, and the prosecution history -- the intrinsic evidence."); *Key Pharm.*, 161 F.3d at 716 ("Trial courts generally can hear expert testimony for background and education on the technology implicated by the presented claim construction issues, and trial courts have broad discretion in this regard.").

**[\*426]** Federal trial courts also have been advised that **HN21** "it is entirely appropriate, perhaps even preferable, for a court to consult trustworthy extrinsic evidence to ensure that the claim construction it is tending to from the patent file is not inconsistent with clearly expressed, plainly apposite, and widely held understandings in the pertinent technical field." *Pitney Bowes*, 182 F.3d at 1309. In that case, Circuit Judge Rader wrote "Additional Views," joined by Circuit Judge Plager, to emphasize that *Vitronics* provides "good counsel when it urges trial judges to focus on the patent document -- notably the claims themselves -- to ascertain the scope of patent coverage." *Id. at 1314*. Federal trial judges, however, may turn to expert testimony to: "(1) supply a proper technological context to understand the claims **[\*\*68]** (words often have meaning only in context), (2) explain the meaning of claim terms as understood by one of skill in the art (the ultimate standard for claim meaning), and (3) help the trial court understand the patent process itself (complex prosecution histories--not to mention specifications--are not familiar to most trial courts."). *Id.* (citations omitted); *see also Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 976-77 (Fed. Cir. 1999) (reversing a federal trial court and stating that a court "may receive extrinsic evidence to educate itself about the invention and the relevant technology, but the court may not use extrinsic evidence to arrive at a claim construction that is clearly at odds with the construction mandated by the intrinsic evidence.").

d. Scientific Or Industry Specific Dictionaries.

Although many post-*Markman II* decisions have attempted to clarify the permissible use of dictionaries to define words in a claim, the United **[\*427]** States Court of Appeals for the Federal Circuit's initial guidance in *Markman I* remains sound: **HN22** "The district court's claim construction, enlightened by such extrinsic evidence as may be helpful, is still based **[\*\*69]** upon the patent and prosecution history." *Markman I*, 52 F.3d at 981; *see also Toro Co. v. White Consol. Indus., Inc.*, 199 F.3d 1295, 1299 (Fed. Cir. 1999) ("[The trial court should] not rely solely on a dictionary of general linguistic usage, but would understand the claims in light of the specification and the prior art, guided by the prosecution history and experience in the technologic field.").

e. Inventor Testimony.

The United States Court of Appeals for the Federal Circuit appropriately has viewed **HN23** post-issuance testimony by a patent's inventor as subjective opinion about the meaning of

Case 3:01-cv-00577-CFD     Document 168-10     Filed 03/03/2006     Page 8 of 27

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 37 of 116

claim terms that is entitled to little or no weight. See, e.g., _Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys., 132 F.3d 701, 706 (Fed. Cir. 1997)_ ("The testimony of an inventor often is a self-serving, after-the-fact attempt to state what should have been part of his or her patent application."); _Engel Indus. v. Lockformer Co., 96 F.3d 1398, 1405 (Fed. Cir. 1996)_ ("[The inventor's] subjective intent is of little or no probative weight in determining the scope of the claims, except as documented in the **[\*\*70]** prosecution history.").

3. A Federal Trial Court Should Construe Claims To Preserve A Patent's Validity Only Where All Other Tools Of Claim Construction Are Exhausted.

_HN24_ Where ambiguity remains after reviewing intrinsic evidence in construing patent claims, two doctrines have been employed to preserve the patent's validity. The United States Court of Appeals for the Federal Circuit has advised federal trial judges that claims should be construed to preserve a patent's validity, however, this presumption is applicable only "where the proposed claim construction is 'practicable,' . . . based on sound claim construction principles, and does not revise or ignore the explicit language of the claims." _Generation II Orthotics Inc. v. Med. Tech. Inc., 263 F.3d 1356, 1365 (Fed. Cir. 2001)_; see also _Liebel-Flarsheim Co. v. Medrad, Inc., 358 F.3d 898, 914 (Fed. Cir. 2004)_ (holding that "unless the court concludes, after applying all the available tools of claim construction that the claim is still ambiguous, the axiom regarding the construction to preserve the validity of the claim does not apply"). Likewise, the United States Court of Appeals for the Federal **[\*\*71]** Circuit has emphasized that the doctrine of **claim differentiation** is to be reserved only for those cases where neither intrinsic nor extrinsic evidence leads to a definite definition. See _Hormone Research Foundation, Inc. v. Genentech, Inc., 904 F.2d 1558, 1567 n.15 (Fed. Cir. 1990)_ ("[The doctrine of **claim differentiation**] although well established in our cases cannot overshadow the express and contrary intentions of the patent draftsman.").

4. The Import Of _Phillips v. AWH Corp., 376 F.3d 1382 (Fed. Cir. 2004)._

To the displeasure of the court, none of the parties initially recognized, much less discussed, the pending en banc consideration of _Phillips v. AWH Corp., 363 F.3d 1207, reh'g en banc granted,_

_j. vacated, 376 F.3d 1382 (Fed. Cir. 2004)_ ("_Phillips_") in their pre-claim construction briefs. See _Honeywell Int'l, Inc. v. United States, 2005 U.S. Claims LEXIS 161, No. 02-1909C, slip op. at 4-5 (Fed. Cl. Jan. 26, 2005, amended and reissued June 14, 2005)_ (Memorandum Opinion and Order); see also TR at 8-13. In _Phillips_, the United States Court of Appeals for **[\*\*72]** the Federal Circuit, sitting en banc, requested briefing and argument concerning seven core claim construction issues:

> 1. Is the public notice function of patent claims better served by referencing primarily to technical and general purpose dictionaries and similar sources to interpret a claim term or by looking primarily to the patentee's use of the term in the specification? If both sources are to be consulted, in what order?

> 2. If dictionaries should serve as the primary source for claim interpretation, should the specification limit the full scope of claim language (as defined by the dictionaries) only when the patentee has acted as his own lexicographer or when the specification reflects a clear disclaimer of claim scope? If so, what language in the specification will satisfy those conditions? What use should be made of general as opposed to technical dictionaries? How does the concept of ordinary meaning apply if there are multiple dictionary definitions of the same term? If the dictionary

Case 3:01-cv-00577-CFD    Document 168-10    Filed 03/03/2006    Page 9 of 27

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                Page 38 of 116

provides multiple potentially applicable definitions for a term, is it appropriate to look to the specification to determine what definition or definitions should apply?

3. If the **[\*\*73]** primary source for claim construction should be the specification, what use should made of dictionaries? Should the range of the ordinary meaning of claim language be limited to the scope of the invention disclosed in the specification, for example, when only a single embodiment is disclosed and no other indications of breadth are disclosed?

4. Instead of viewing the claim construction methodologies in the majority and dissent of the now-vacated panel decision as alternative, conflicting approaches, should the two approaches be treated as complementary methodologies such that there is a dual restriction on claim scope, and a patentee must satisfy both limiting methodologies in order to establish the claim coverage it seeks?

5. When, if ever, should claim language be narrowly construed for the sole purpose of avoiding invalidity under, *e.g.*, 35 U.S.C. §§ 102, 103, and 112?

6. What role should prosecution history and expert testimony by one of ordinary skill in the art play in determining the meaning of the disputed claim terms?

7. Consistent with the Supreme Court's decision in **[\*\*74]** *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 134 L. Ed. 2d 577, 116 S. Ct. 1384 (1996), and our *en banc* decision in *Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448 (Fed. Cir. 1998), is it appropriate for this court to accord any deference to any aspect of trial court claim construction rulings? If so, on what aspects, in what circumstances, and to what extent?

*Phillips,* 376 F.3d at 1383.

In post-claim construction hearing briefs, however, the parties rationalized their oversight by advising the court that the resolution of *Phillips* would not affect the claim construction in this case because the '914 claims are not dependent upon dictionary definition, but rather can be resolved by the claim language or description of the '914 **[\*428]** invention, as set forth in the specification and embodiments therein. *See* 4/1/05 Honeywell Brief at 9-10; *see also* 4/1/05 Gov't Brief at 12.

The Government's proposed construction of the term "red color band" in this case primarily relied on a dictionary definition. *See* 1/14/05 Def. Joint Brief at 30-33; 4/1/05 Gov't Brief at 37; 4/15 Gov't Brief at 21. In *Phillips* **[\*\*75]** , however, the Government wherein argued that "primary reliance on dictionaries that are not part of the patent's public record subordinates the patentee's own explanation of his invention in favor of a dictionary definition never at issue during the patent prosecution before the USPTO." 9/20/04 Brief for the United States as *Amicus Curiae* at 9, *Phillips* v. *AWH Corp.* The Government explained to the court that its proposed construction of the "red color band" was misstated and taken out of context in light of the Government's adherence to an "approach approved by the [United States Court of Appeals for the] Federal Circuit in cases such as *Key Pharmaceuticals v. Hercon Laboratories Corp.*, 161 F.3d 709 (Fed. Cir. 1998)." *See* 4/15/05 Gov't Brief at 3. The Government also was quick to point out that Honeywell equally was culpable of relying on extrinsic evidence in its proposed construction of the terms: "display system," *see* 12/23/04 Honeywell Brief at 9-11 (citing *e.g.*, WEBSTER'S;IEEEDICTIONARY; Dr. Task, TR at 31-32, 35; Mr. Tannas, TR at 34, 129); "optical filter," *see also id.* at 15-19

Case 3:01-cv-00577-CFD    Document 168-10    Filed 03/03/2006    Page 10 of 27

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!    Page 39 of 116

(citing, *e.g.*, APPLIED OPTICS; **[\*\*76]** McGRAW HILL; Mr. Tannas Initial Report (PMX34at P15); Mr. Tannas, TR at 168-71, 279-80, 351-52; Dr. Task, TR at 19, 31-32, 244-45, 247, 249-56); and "color band," *see also id.* at 24-26 (citing *e.g.*, WEBSTER'S; MCGRAW HILL; Mr. Tannas Initial Report (PMX 34 at P17); Mr. Tannas, TR at 183; Dr. Task's Initial Report ( PMX 35 at 27-28); Dr. Task, TR at 58, 63-65, 70-71, 127-29).

Since the infringement and potential damage claims in this case are scheduled for trial on August 1, 2005, the court has decided to issue this claim construction Memorandum Opinion, reserving the right to amend these constructions prior to the issuance of a Final Judgment, in light of any subsequent appellate precedent, including *Phillips*, and any further evidence that may be adduced at trial.

D. Construction Of Certain Claims Of <u>United States Patent No. 6,467,914</u>.

At a January 31, 2005-February 4, 2005 claim construction hearing, initially the parties requested that seventeen claims of the <u>'914 patent</u> be construed by the court. On April 14, 2005, the parties filed a Joint Stipulation to evidence their agreement of the meaning of six claims. Therefore, the court now is required only to construe **[\*\*77]** the eleven claims that remain in dispute.

For each claim term or phrase at issue, the court has set forth the parties' arguments before, during, and after the claim construction hearing to highlight those occasions where there was a shift, which sometimes was subtle and at other times stark. The court also has made liberal use of the transcript of the claim construction hearing to highlight the areas of the court's inquiry and representations made by counsel therein and to underscore the court's disposition of each word or phrase of a claim that was construed.

As a predicate to the following patent claim construction, the court has determined that one of ordinary skill in the art in 1985 would be knowledgeable about night vision compatible aids, compatible instrument and panel lighting, and manufacturing displays for military cockpits.

1. "Display System."

Preamble language common to both Claim 1 and Claim 2 of the <u>'914 patent</u> states that the invention is: *"A display system* for use in association with a light amplifying passive night vision aid and a local color display including a local source of light[.]" *See* **[\*\*78]** <u>'914 patent</u>, col. 5, ll. 31-33, col. 6, ll. 11-13 (emphasis added).

The parties have proposed the following competing constructions of "display system" and other claim language for the court's consideration: **[\*429]**

| **Honeywell's Proposed Construction** | **Defendants' Proposed Construction** |
| --- | --- |
| Display system for use in association with a light amplifying passive night vision aid and a local color display including a local source of light: No further construction is necessary. To the extent preamble needs to be construed at all, it should be construed as follows: complex unity subject to a common plan or serving a common purpose that combines a | "Display System for Use in Association With" means two or more filters, which are used in combination with a night vision aid, such as night vision goggles, and a local color display, to make the color display compatible with the night vision aid. For use in association with: in combination with. |

Case 3:01-cv-00577-CFD    Document 168-10    Filed 03/03/2006    Page 11 of 27

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                Page 40 of 116

light amplifying passive night
vision aid and a local color
including a local source of light.

*See* Honeywell *Markman* Slide 35; Gov't *Markman* Slide 002 (bold added by parties).

a. **[**79]** Honeywell's Proposed Construction.

i. Pre-Claim Construction Hearing Brief.

Honeywell's pre-hearing brief informed the court that no further construction of the language of the preambles common to both Claim 1 and Claim 2 was necessary. *See* 12/23/04 Honeywell Brief at 8. In the alternative, if the court decided to construe "display system," Honeywell urged the court to consider the entire preamble, not just the first seven words. *Id.* In addition, Honeywell proffered that either a traditional or specialized dictionary definition supported the "ordinary meaning" of "*system* as a complex unity formed of often diverse parts," which in this case includes, "a light amplifying passive night vision *aid* and a local color display including a local source of light." *Id.* (emphasis added). Honeywell cautioned, however, that the "fact that the *display system* is recited as being *for use in association with . . . a local color display* does not require that the display system be distinct from the local color display." *Id.* at 16 (emphasis added).

Next, Honeywell turned to the specification and figures therein to support the proposition that the "filter(s) may be **[**80]** *either* in front of the local color display or *within* the display." *Id.* at 10 (emphasis added); *see also id.* at 10-11 (*comparing* '914 patent, figure 1 showing filter 23 in front of 17, the local color display, *with* '914 patent, figure 3 showing filters 61, 62, and 63 within 37, the local color display).
**[*430]** ✦ <u> GET DRAWING SHEET 1 OF 2</u>

'914 patent, figure 1, sheet 1 of 2.
✦ <u> GET DRAWING SHEET 2 OF 2</u>

'914 patent, figure 3, sheet 2 of 2.

ii. At The Claim Construction Hearing.

At the claim construction hearing, initially Honeywell requested the court construe only the words "display system." TR at 126 ("I think perhaps on reflection the two terms, the two words that should be construed are 'display system.'"). After further inquiry by the court, Honeywell decided to request construction of "display system," as well as the remainder of the preamble language common to both Claims 1 and 2:

THE COURT: So you're arguing that the words that now - you want to argue just about the words "display system" and not the rest?

**[*431]** HONEYWELL'S COUNSEL: We are arguing . . . in our position on the whole **[**81]** preamble, the word -- we're going to *take display system first,* and then *address how* it's implicated *in the balance of the preamble*[.]

Case 3:01-cv-00577-CFD    Document 168-10    Filed 03/03/2006    Page 12 of 27

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 41 of 116

TR at 128 (emphasis added). Thereafter, Honeywell argued that "display system" means "the entire combination . . . [rather than being] confined to the two components[.]" TR at 129. In that regard, Honeywell argued "that display has to be a local color display or the local source of light, and it's got to have a night vision aid." TR at 152.

iii. Post-Claim Construction Hearing Briefs.

During post-hearing briefing, Honeywell argued that "display system" should be construed in accord with the ordinary meaning of "a system that *includes* a display or display functionality." 4/1/05 Honeywell Brief at 12 (emphasis added) and n.2 (citing IEEE DICTIONARY; PMX 28 at 264, 915; Lockheed PPT at 70-72); *see also* DMX 36 at D000087 (citing prosecution history where examiner construed "display system" to refer to a system having a "plurality of CRT's"); PMX 44 at 5:35 (Miller, '562 patent) ("display system" refers to "a system that includes a color CRT display and a contrast enhancement filter."). At this juncture, however, Honeywell **[**82]** appeared no longer to be arguing that a "display system" included both a night vision aid and a local color display, but only a "display or display functionality." *Compare* 12/23/04 Honeywell Brief at 8-9 *with* 4/1/05 Honeywell Brief at 12.

b. The Government's Proposed Construction.

i. Pre-Claim Construction Hearing Brief.

The Government's pre-hearing brief represented that the preamble language "establishes that this display system is comprised of two or more filters and not [the night vision goggles] and the local color display." 1/14/05 Def. Joint Brief at 8-9 (citing Ex. 1 '914 patent, col. 5, ll. 31-33 and col. 6, ll. 11-14). The Government also asserted that the '914 patent specification supported its construction, because the "Background of the Invention" section of the specification provided that: "the invention relates to electronic passive night vision aids *and* to a system for operating such night vision aids *in conjunction with* a local display such as a cockpit display." *Id.* at 9-10 (emphasis added) referring to '914 patent, col. 1, ll. 19-21. In addition, the "Summary of the Invention" section of the specification provided that: "*In accordance* **[**83]** *with* the present invention, an ANVIS aid, such as an ANVIS goggles set, is provided with an optical filter. A second optical filter blocking light in an opposite sense from the first optical filter is placed over displays, which may otherwise present light that would interfere with the ANVIS." '914 patent, col. 2, ll. 11-15 (emphasis added).

The Government further advised the court that the prosecution history established that the original '914 patent described an invention with "full color display which uses separate primary color light sources is made compatible with an ambient night vision (ANVIS) aid." Ex. 7 '914 Wrapper D0005. During prosecution, however, Honeywell distinguished the '914 patent invention from prior art representing that: "In order to enable highly-sensitive night vision (ANVIS) goggles to be operated in an environment having full color displays, it is necessary to provide a technique to protect the ANVIS goggles . . . . *The present invention accomplishes that by filtering* the display light with optical filters *and by providing an additional optical filter* at the night vision aid." Ex. No. 7 **[**84]** '914 Wrapper D000109 (emphasis added).

ii. At The Claim Construction Hearing.

At the claim construction hearing, the Government stated that it was seeking construction of more than "display system," but rather the phrase "display system for use in association with [.]" TR at 165.

Case 3:01-cv-00577-CFD    Document 168-10    Filed 03/03/2006    Page 13 of 27

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 42 of 116

GOVERNMENT'S COUNSEL: The display system is clearly the noun . . . . I think the "for use in association with" defines a separate clause that is a description **[*432]** of the intended use of the display system and nothing more.

THE COURT: Well, what do you do with the "including" phrase?

GOVERNMENT'S COUNSEL: Well, we believe that the "including" phrase, including a local source of light refers explicitly to the local color display. So the local color display includes a local source of light[.] . . . The specification makes very clear that the "including" phrase refers to the local color display, and not to the display system[.] . . . Let's go to the specification. . . . It states that, and it uses the phrase "system." "The invention relates to an electronic passive night vision aids and to a system for operating such night vision aids in conjunction with a local display, such as a cockpit display [ **[**85]** '914 patent, col. 1, ll. 19-21]." . . . the system is something that brings them together[.]

TR at 169-172.

iii. Post-Claim Construction Hearing Briefs.

During post-hearing briefing, the Government conceded that "display system" means "two or more filters," but that the "proper construction of 'for use in association with' . . . shows that the display system, comprising two or more filters, is intended to be used in combination with a night vision aid and a local color display, but that these elements are not *part* of the claimed invention." 4/1/05 Gov't Brief at 13 (emphasis in original). The Government emphasized that the '914 patent specification referred to "system" only once and in a way that supported the Government's construction, *i.e.*, the "Technical Field" portion of "Background of the Invention" stated: "This invention relates to electronic passive night vision aids and to a *system* for operating such night vision aids in conjunction with a local display such as a cockpit display." DMX 1 ( '914 patent, col. 1, ll. 19-21). Accordingly, the Government concluded that this phrase must mean that filters are the only required elements of the invention and **[**86]** that a night vision aid and a local color display are independent devices that operate in conjunction with the display system. *See* 4/1/05 Gov't Brief at 15-16. The Government also urged that during the '914 patent prosecution history, in response to the Examiner's rejection for obviousness in light of USPTO No. 3,517,122 (Maass), Honeywell represented that the '914 patent filters were for a different purpose than generating RBG color signals, *i.e.*, Honeywell filters "provide a technique to protect the ANVIS goggles from the relatively high intensity light produced by the local cockpit displays. The present [ '914 patent] invention accomplishes that by filtering the display light with optical filters." 4/1/05 Gov't Brief at 16 (citing DMX 7 at DE-328).

c. Intervenor Lockheed Martin's Proposed Construction.

i. Pre-Claim Construction Hearing Brief.

Lockheed Martin's construction of "display system" was the same as that of the Government. *See* 1/14/05 Def. Joint Brief at 8-14.

ii. At The Claim Construction Hearing.

The court considered the following colloquy at the claim construction hearing relevant to the

court's decision to construe the entire preamble language **[\*\*87]** common to Claim 1 and Claim 2.

LOCKHEED MARTIN'S COUNSEL: And it's one of the reasons you can't turn to a dictionary definition and say let's take the dictionary definition of system, or let's take the dictionary definition of system as modified by display. You really have to look to a definition of system as modified by display, and is modified by the phrase "for use in association with" a night vision goggle and a local color display, including a local source of light, and that's the only way you can come to a definition, and it's one of the reasons why you can't rely on a dictionary here.

TR at 183.

\* \* \*

LOCKHEED MARTIN'S COUNSEL: [Honeywell's counsel] in his initial brief indicated that the preamble did not need to be construed because it simply discussed the purpose, if you will, of the invention. I **[\*433]** believe he has moved away from the arguments from what I heard today, would indicate that he understands that the preamble does need to be construed[.]

TR at 184.

\* \* \*

LOCKHEED MARTIN'S COUNSEL: Your Honor, we were discussing the preamble, and you can see from the prosecution history -- . . . the preamble was considered to be a limitation on **[\*\*88]** the claim by Honeywell. Because it's a limitation, it needs to be construed. . . . We have an extract from the prosecution history where we deal with this issue of indefiniteness that we talked about before. . . . The words "in association with" to be "in combination with."

THE COURT: Well, this was the patent examiner who felt it was indefinite.

LOCKHEED MARTIN'S COUNSEL: Yes, this is the patent examiner finding that it was . . . . Indefiniteness is one of the first things you look for when you're looking at patent issue, and here they found indefiniteness, and a change was made in the preamble to indicate that the --basically changed it so the preamble read "in combination with a night vision goggle and a local display, a display system comprising."

TR at 186-87.

Case 3:01-cv-00577-CFD     Document 168-10     Filed 03/03/2006     Page 15 of 27

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 44 of 116

\* \* \*

LOCKHEED MARTIN'S COUNSEL: Also, Honeywell tried to argue around the
Patent Office's prior art rejections, and successfully did it by claiming that its
display system that was described in the body of the claim was distinct from prior
art systems. That's the type of thing that brings the preamble into play as a claim
limitation.

TR at 188.

\* \* \*

LOCKHEED MARTIN'S COUNSEL: The night vision **[\*\*89]** aid and the local color
display were essential limitations because, as the patent acknowledges, the
claimed novelty of the invention is the combination of filters which make up the
display system, with the night vision goggle, and the local color display, and the
only reference to night vision goggles and local color display is found in the
preamble. The preamble also needs to be --. . . construed because the preamble
is necessary to give life, meaning, and vitality to the claims.

TR at 189.

\* \* \*

LOCKHEED MARTIN'S COUNSEL: So turning to the specification, there are two
pieces of the specification that are relevant to the definition of the display
system, and both of those are consistent with the definition that - . . . in the
specification that needs to be considered when looking at the definition of display
system, and it is the statement in the specification that you find under the
heading "Background of the Invention," which states: "This invention relates to
electronic passive night vision aids and to a system for operating such night
vision aids in conjunction with a local display such as a cockpit display." My point
in quoting this is that this statement supports **[\*\*90]** the interpretation that we
have been discussing and it shows that there are three parts to this invention:
night vision aids, a system for operating those aids, and local displays. So it is a
night vision aid and a system that operates those night vision aids in conjunction
with a local display such as a cockpit display. . . . The summary of the invention
in the 914 patent, and it provides that, and I quote: "In accordance with the
present invention, an ANVIS aid such as an ANVIS goggle set is provided with an
optical filter. A second optical filter blocking light in an opposite sense from the
first optical filter is placed over the displays which may otherwise present light
that would interfere with the ANVIS." So again what we see here is we see a
reference to the ANVIS aid in the night vision goggles, a local display, and the
filters, each of them forming their own separate functions.

Case 3:01-cv-00577-CFD    Document 168-10    Filed 03/03/2006    Page 16 of 27

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 45 of 116

TR at 196-99.

\* \* \*

THE COURT: I'm not sure I read that that way in 44, because it says the present invention basically includes the goggles **[\*434]** that have a filter, and then there is a second optical filter blocking light in the opposite direction. I don't read it the way you do. What **[\*\*91]** am I missing?

LOCKHEED MARTIN'S COUNSEL: Well, it says you have with the present invention an ANVIS, such as goggles.

THE COURT: Got it.

LOCKHEED MARTIN'S COUNSEL: Which is provided with an optical filter.

THE COURT: Got it.

LOCKHEED MARTIN'S COUNSEL: Which [are] going to be part of the system.

TR at 198-99.

\* \* \*

LOCKHEED MARTIN'S COUNSEL: I am attempting to show that the display system is in fact separate from the local color display, and the night vision goggles,

I have a couple more slides along those lines that I would like to show the Court. The first is slide No. 58, and in this slide Honeywell is arguing in response to an action from the Patent Office that its claimed display system was distinct from prior art display systems that were cited when the Patent Office rejected its complaints.

THE COURT: Remind me what year this was that the PTO had this rejection. . . .

GOVERNMENT'S COUNSEL: It's September 9, 1986, and I know we were referring to -- I believe Lockheed is also referring to Bates Nos. D000108 to 109, I believe.

THE COURT: Okay. Now, I have on my chronology, see I just did my own little thing, November 13, 1989, I said PTO issued a notice **[\*\*92]** of allowability, and they did that after this episode --

GOVERNMENT'S COUNSEL: Right, right.

THE COURT: --in response. Okay.

GOVERNMENT'S COUNSEL: That would be right.

* * *

LOCKHEED MARTIN'S COUNSEL: So in order to show that their claimed display system was distinct from prior art display systems they argued to the Patent Office. It says, "In order to enable highly sensitive night vision ANVIS goggles to be operated in an environment having full color displays, it is necessary to provide a technique to protect the ANVIS goggles from relatively high intensity light produced by the local cockpit displays." And it goes on and states, "The present invention accomplishes that by filtering the display light with optical filters and providing an additional optical night vision aid. The filter for the night vision aid is adapted to block light from the preferred range of frequencies, thereby effectively blocking out light from the display." So again what this tells us is there is a display, the display is generating light, and their invention says let us filter that light so that we can keep offending light from reaching the night vision goggles. If we turn to slide 59, and here we **[**93]** have --again this is from Exhibit 7, the 914 file history, and the Bates number here is D000110. Honeywell makes another statement to the Patent Office which shows that its display system is operationally separate from the local color display. Here it says, "It is respectfully submitted that the prior art neither shows nor suggests that a multiple monochromatic tube color display be provided with separate filters in order to provide enhanced filtration of multi-color displays." So again what they are saying is is that their invention is to provide this enhanced filtration. This is the filtration that would filter out the offending light from reaching the night vision goggles.

THE COURT: I would read that that their enhancement would be the multiple monochromatic tube color display, which includes -- no, no, no --which is provided together with, okay, separate displays, and it's different than what you said.

LOCKHEED MARTIN'S COUNSEL: Well, I would say I was reading it. "Respectfully submit that the prior art neither shows nor suggests that a multiple monochromatic tube color display be provided with separate filters."

THE COURT: What I am saying back to you is what they are saying **[**94]** is that the prior art didn't talk about --

**[*435]** LOCKHEED MARTIN'S COUNSEL: That's correct.

THE COURT: --multiple monochromatic tube color display, but we are now. We meaning --

LOCKHEED MARTIN'S COUNSEL: I think if we read this whole thing in context, what I have done is extract something here, we see the whole contact saying --

THE COURT: Right.

LOCKHEED MARTIN'S COUNSEL: --that they were dealing with a piece of prior art that had multiple monochromatic displays, and in those monochromatic displays the displays were providing different colors, different primary colors that could be combined, and Honeywell tried to distinguish the prior art by saying, wait a minute, we're not just providing multiple monochromatic displays, we are providing a special filter, separate filters, and those separate filters are to give

Case 3:01-cv-00577-CFD    Document 168-10    Filed 03/03/2006    Page 18 of 27

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 47 of 116

enhanced filtration of multi-color displays in order to achieve the night vision compatibility goal of the invention.

THE COURT: Let me go back and ask something that may be intuitive to you but not necessarily to me. Was the prior art basically tubes that they put filters on, but tubes that did something else, project the real color?

LOCKHEED MARTIN'S COUNSEL: That's correct.  [**95]

THE COURT: Okay.

LOCKHEED MARTIN'S COUNSEL: What the prior art was you had a prior art display which consisted of three monochromatic tubes, each generating a primary color, red, blue, and green.

THE COURT: Okay.

LOCKHEED MARTIN'S COUNSEL: And through the electronic signals that went into those tubes you can manipulate the intensity of the color.

THE COURT: And that was the way they wanted to address the issue of the redness?

LOCKHEED MARTIN'S COUNSEL: Right, and those three tubes together could give you a full color display. . . .


TR at 208-13.

### iii. Post-Claim Construction Hearing Briefs.

After the claim construction hearing, Lockheed Martin advised the court that one of ordinary skill in the art would construe the preamble phrase "display system for use in association with" to mean "two or more filters which are used in combination with a night vision aid, such as night vision goggles ("NVG"), and a local color display, to make the color display compatible with the night vision aid." 4/1/05 Int. Brief at 10. Lockheed Martin maintained that Honeywell "claimed only a filtering system that would render a full color display compatible with NVG." *Id.* Stated another **[**96]** way, Lockheed Martin contended that Honeywell claimed only: "A (a display system) for use in association with B (a night vision aid) and C (a local color display), comprising: D (a first optical filter or a plurality of filters) and E (a second optical filter or a fourth optical filter)." *Id.* Honeywell did not claim: "A, comprising: B, C, D, and E." *Id.*; *see also* 4/15/05 Int. Brief at 3-8.

In the court's judgment, Lockheed Martin's post claim construction hearing brief best described the dispute over the term "display system." Lockheed Martin argued that Honeywell's construction asserted that "display system consists of the entire cockpit." 4/1/05 Int. Brief at 10. Stated differently, the filters in Honeywell's display system "may make the local color display [not only] compatible with the NVG, [but also] producing red, green, and blue color bands generated by the three light sources that combine to make a full color image." *Id.* Lockheed Martin argued that "nothing in the claims, the specification[,] or the file history indicate that Honeywell's display system performed any role in the production of the color emitted by the display." *Id.* at **[**97]** 11.

#### d. Specific Precedent Governing Construction Of A Patent's Preamble.

The United States Court of Appeals for the Federal Circuit has instructed federal **[\*436]** trial courts that *HN25* whether a preamble is treated as a limitation is determined "on the facts of each case in light of the claim as a whole and the invention described in the patent." *Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 831 (Fed. Cir. 2003); *see also Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1257 (Fed.Cir. 1989)(reviewing the "entirety of the patent [is necessary] to gain an understanding of what the inventors actually invented and intended to encompass by the claim."); *Bell Communications Research, Inc. v. Vitalink Communications Corp.*, 55 F.3d 615, 620 (Fed. Cir. 1995) (A claim preamble has the "import that the claim as a whole suggests for it. In other words, when the claim drafter chooses to use *both* the preamble and the body to define the subject matter of the claimed invention, the invention so defined, and not some other, is the one the patent protects.").

**[\*\*98]** Where the written description "consistently uses" specific terms to refer to the "invention as a whole, . . . [the] preamble of each claim serves as a convenient label [or descriptive name] for the invention as a whole." *Storage Tech.*, 329 F.3d at 831 (citing *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1434 (Fed. Cir. 2000) (merely giving a descriptive name to the claimed invention does not limit the scope of the claim). Where the preamble "defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention," it is not limiting. *See Rowe v. Dror*, 112 F.3d 473, 478 (Fed. Cir. 1997). On the other hand, where there is no "meaningful distinction to be drawn between the claim preamble and the rest of the claim, for only together do they comprise the 'claim.' . . . The preamble . . . is said to constitute or explain a claim limitation." *Pitney Bowes*, 182 F.3d at 1305.

In addition, where claim language derives an antecedent basis from the preamble, it may be considered as a necessary component of the claimed invention. *See* **[\*\*99]** *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) (quoting *Pitney Bowes*, 182 F.3d at 1305) ("In general, a preamble limits the invention if it recites essential structure or steps, or if it is 'necessary to give life, meaning and vitality' to the claim.").

e. The Court's Construction Of "A Display System For Use In Association With A Light Amplifying Passive Night Vision Aid And A Local Color Display, Including A Local Source Of Light, Comprising" In This Case.

In this case, the court has decided to construe all of the operative preamble language common to both Claim 1 and Claim 2 of the '914 patent, *i.e.,* "A display system for use in association with a light amplifying passive night vision aid and a local color display including a local source of light," as necessary to understanding the '914 patent and therefore as a limitation thereof. *See Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1339 (Fed. Cir. 2003) ("When limitations in the body of the claim rely upon and derive antecedent basis from the preamble, then the preamble may act as a necessary component of the claimed invention. **[\*\*100]** ").

The court begins with "system" in the aforementioned phrase modified by the adjective "display" to describe the general purpose or function of the system. The prepositional phrase "for use in connection with," applies to two other nouns that are objects of this phrase, *i.e.,* "aid" and "display." "Light amplifying," "passive" and "night vision" are adjectives modifying "aid." Likewise, "local" and "color" are adjectives modifying "display," when it is used as a noun. The placement of the terms "night vision aid" and "local color display" in the prepositional phrase prior to the verb "comprising" advised one of ordinary skill in the art that the claimed system may include or be used together or in combination with a "night vision aid" and a "local color display." *See* '914 patent, col. 5, ll. 22-28.

From the use of the verb "comprising," the court also construed the preamble language common to both Claims 1 and 2 as "presumptively open-ended," *i.e.,* encompassing display

Case 3:01-cv-00577-CFD    Document 168-10    Filed 03/03/2006    Page 20 of 27

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 49 of 116

systems that include a first optical filter, as described, and a second optical filter, as described. *See* **[\*\*101]** *Gillette Co. v. Energizer Holdings, Inc., 405 F.3d 1367, 1371-72 (Fed. Cir. [\*437] 2005)* (Where a claim uses the "word 'comprising' transitioning from the preamble to the body [it] signals that the entire claim is presumptively open-ended. . . . Because the patentee invoked this open-ended treatment . . . the scope of [the] claim . . . encompasses all [display systems] satisfying the elements set forth in [each] claim."); *see also Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc., 246 F.3d 1336, 1347 (Fed. Cir. 2000)* *HN26*☝("When a patent claim uses the word 'comprising' as its transitional phrase, . . . [it] creates a presumption that the body of the claim is open. In the parlance of patent law, use of [the] transitional phrase 'comprising' creates a presumption that the recited elements are only a part of the device, and that the claim does not exclude additional, unrecited elements."); *Genentech, Inc. v. Chiron Corp., 112 F.3d 495, 501 (Fed. Cir. 1997)* ("'Comprising' is a term of art used in claim language which means that the named elements are essential, but other elements may be added."); MANUAL OF PATENT **[\*\*102]** EXAMINING PROCEDURE § 2111.03 (8th ed. 2001) ("MPEP"). In addition, the court has determined that the '914 patent optical filters are "essential elements" thereof and that a night vision aid and local color display may be included or used together or in combination with these filters. *See* '914 patent, col. 5, l. 31. Claim 2 encompassed all display systems "comprising" a plurality of three filters, as described, and a fourth filter, as further described. *See* '914 patent, col. 6, ll. 12-28.

Therefore, the court construes the operative preamble language as follows:

> A system comprised of optical filters that can be used in combination with an aid, with light amplifying, passive, and night vision qualities, and a display of colors that includes a source of light perceptible by the night vision aid.

*See Pitney Bowes, 182 F.3d at 1306* ("If the claim preamble, when read in the context of the entire claim, recites limitations of the claim, or, if the claim preamble is 'necessary to give life, meaning, and vitality' to the claim, then the claim preamble should be construed as if in the balance of the claim.").

Since the court has determined that **[\*\*103]** the preamble language common to Claims 1 and 2 is unambiguous and not contradicted by the specification, the court rejects Honeywell's entreaty that it consider extrinsic evidence to interpret this claim, including the IEEE DICTIONARY and the testimony of the experts. *See, e.g.,*12/23/04 Honeywell Brief at 9-11; 4/1/05 Honeywell Brief at 12; 4/15/05 Honeywell Brief at 1.

2. "Local" And "Color Display."

The term "local color display" appears in the preamble to Claim 1: "A display system for use in association with . . . local color display including[.]" '914 patent, col. 5, ll. 31-32. The preamble to Claim 2 also utilizes the same language. *See* '914 patent, col. 6, ll. 11-13. In addition, in Claim 1(a), the '914 patent discusses "local color display" in the first two lines: "a first optical filter that filters light from the local color display[.]" '914 patent, col. 6, ll. 1-2. Claim 2(a)(1) also discusses "local color display" as "a plurality of filters at the local color display[.]" '914 patent, col. 6, l. 15.

The parties have proposed the following competing constructions of the term "local color display:"

Case 3:01-cv-00577-CFD    Document 168-10    Filed 03/03/2006    Page 21 of 27

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                Page 50 of 116

| Honeywell's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Local: located in the vicinity of the night vision aid | Local color display: a functional device in proximity to an operator or an observer within a defined area, such as a cockpit, that presents information in a visual format in more than one perceptible color |
| Color display: device that provides a visual representation of data using more than one color | |

**[\*\*104]**

Honeywell *Markman* Slides 60, 68; Gov't *Markman* Slide 008 (bold added by parties).

a. Honeywell's Proposed Construction.

i. Pre-Claim Construction Hearing Brief.

Honeywell's pre-hearing brief requested a separate construction of the word "local" and the term "color display," because "the problem addressed by the '914 patent is interference between a full color display and a night vision aid . . . [and] such interference occurs **[\*438]** only when the full color display is operated in the vicinity of the night vision aid[,] . . . [accordingly, the court was advised that] the most appropriate construction for *local* is located in the vicinity of the night vision aid." *See* 12/23/04 Honeywell Brief at 11 (quoting '914 patent, col. 2, ll. 1-3) (emphasis in original) ("[A] night vision aid such as ANVIS goggles [is to] be operable while a full color display is presented in the vicinity of the goggles [.]").

Honeywell criticized the Government's proposed construction of "*local*, as incorporated in its construction of *local color display*, [because] *first*, in the context of the patent, *local* means in the vicinity of the night vision aid, not **[\*\*105]** in the vicinity of an operator or observer." *Id.* at 12 (emphasis in original) (citing Dr. Tannas). Second, the court was warned that the Government's proposed construction "introduces an unnecessary and extraneous requirement, namely that the *local color display* be 'within a defined area, such as a cockpit.' Nothing in the language of the claims requires this limitation." *Id.* (emphasis in original). Honeywell insisted that "the claims are broad enough to encompass a *local color display* that is used in the vicinity of a *night vision aid*, but necessarily not in a defined area, such as a cockpit." *Id.* (emphasis in original). Moreover, Honeywell cited the specification as instructing that "'the present invention can be used by other viewers in association with environments other than an aircraft cockpit' without placing any limitation on the type of environment in which the invention can be used." *Id.* (citing '914 patent, col. 2, ll. 49-59) (emphasis in original).

ii. At The Claim Construction Hearing.

At the claim construction hearing, Honeywell's counsel pointed out that the term "local" appears "twice in the preamble, first, to modify color display, to **[\*\*106]** make it a local color display, and second, to modify source of light, to make it a local source of light." TR at 224. Honeywell's counsel further explained:

HONEYWELL'S COUNSEL: The normal rule for claim terms is that the same term

Case 3:01-cv-00577-CFD    Document 168-10    Filed 03/03/2006    Page 22 of 27

FOCUS – 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 51 of 116

gets the same construction each time it appears in the claim. Therefore, Honeywell took the approach to define local for all purposes. The only exception to that rule is where the specification or elsewhere in the intrinsic evidence the patentee clearly indicated that the term should have a different meaning in different contexts, and because we didn't see that in the claim, we defined local by itself to have the same meaning in each phrase. The Defendants, on the other hand, construed local color display and local source of light. . . . They say that local is in proximity to an operator or observer within a defined area such as a cockpit. But Honeywell's position is local is simply located in the vicinity of the night vision aid.

THE COURT: Why does it make a difference to you?

HONEYWELL'S COUNSEL: I'm not sure why it makes a difference. We tried to define the term as we thought it -- in accordance with the meaning given to it in the patent. Local [**107] does have a unique meaning in the patent. The whole patent is talking about the relationship between the light emitted from a display, and the night vision aid, and the light interferes with the night vision aid. The invention solves that problem. So local has the meaning of location, where are things located.

THE COURT: In relationship to something.

HONEYWELL'S COUNSEL: In relationship to something. I think the key here is the relationship between where the display is located in relation to the night vision aid. The operator, well, yes, the operator might be wearing night vision goggles, so that might be the same definition, but it might not in all cases. For example, if the display is located in the rear of the aircraft where there are no night vision goggles, but there is an operator viewing the display, then it wouldn't make sense to define local for local color display as being near an operator because that is not what's meant by the patent.

THE COURT: So if the operator is someplace totally different, then you don't –

[*439] HONEYWELL'S COUNSEL: That's right.

THE COURT: Obviously your patent is not going to be relevant –

HONEYWELL'S COUNSEL: That's right.

THE COURT: --to that [**108] fellow in the back seat.

HONEYWELL'S COUNSEL: Precisely. It's just as simple as that. We tried to define it as we understood the patent. So the first issue is . . . does local have a different meaning in those two phrases. Honeywell's answer to that is no, it has the same meaning. The second issue is does local, is that in relation to the night vision aid or the operator or the observer? And Honeywell's answer to that is it's in relation to the night vision aid. And the third question is, is local limited to a defined area such as a cockpit? And we think the term is not so limited. . . . I don't think Defendants have pointed to any place in the intrinsic evidence to indicate that the term should have a different meaning and a different –

THE COURT: But how does it harm you if I construe the language the way that the Defendant wishes to have it construed?

HONEYWELL'S COUNSEL: I think it's -- I'm not sure what they are trying to

accomplish by "in proximity to an operator" or -

THE COURT: Well, . . . I'm just asking you does it make any difference to you.

HONEYWELL'S COUNSEL: Not that I know of, but I don't want to have it misconstrued because I don't know what's coming down the **[**109]** pike. And within a defined area though, such as a cockpit, I think that does harm us, because I don't think the invention is limited to cockpit applications.

THE COURT: Give me an example.

HONEYWELL'S COUNSEL: An example would be --we gave the example later in our presentation of a foot soldier carrying a PDA and wearing night vision goggles, so there is light from the display.

THE COURT: All right, I need a PDA definition here.

HONEYWELL'S COUNSEL: Personal computer, like a palm pilot or -

THE COURT: Oh, okay, got it. All right. So he's carrying a palm pilot with his goggles on.

HONEYWELL'S COUNSEL: Right, and he's in a open area. There is no confined area such as a cockpit. . . . Like a handheld GPS as an example, Your Honor.

THE COURT: Okay, so?

HONEYWELL'S COUNSEL: I mean, in this case we're not aware of any such -

THE COURT: But that circumstance has nothing to do with your patent.

HONEYWELL'S COUNSEL: Well, as far as we know reading the claims, it would have something to do with the patent.

THE COURT: Why? You don't have the two pieces that you're looking for, the display system.

HONEYWELL'S COUNSEL: The display would be the PDA, the palm pilot with the screen that's **[**110]** lite, and light coming out of that display.

THE COURT: And you're saying . . . there is no filter on that, and there is nothing inside the machine that -

HONEYWELL'S COUNSEL: Well, you certainly could put the night vision filter concept in a PDA. There is nothing in the claim that says you couldn't. Just because the example is given in the patent of a cockpit and a pilot --

THE COURT: That's a much broader reading of display[.]

HONEYWELL'S COUNSEL: I don't think -

THE COURT: The display was the box. I mean, I'm pretty sure that's exactly the way you defined it. Here is the display.

HONEYWELL'S COUNSEL: We were talking about display system being --

Case 3:01-cv-00577-CFD    Document 168-10    Filed 03/03/2006    Page 24 of 27

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 53 of 116

THE COURT: Yes.

HONEYWELL'S COUNSEL: -- a comprehensive system.

THE COURT: Right.

HONEYWELL'S COUNSEL: That included the display, and the night vision aid, and
the filters. But the local color display is just that. It's a color display. It has to
 **[*440]** have more than one color. It has to display information to a viewer,
and local places it in the vicinity of a night vision aid. But other than that the
claim isn't limited. It doesn't say cockpit display. It isn't necessarily an
instrument that's in an airplane.

THE COURT: Well, that **[**111]** went to . . . my question about who was the
person that's skilled in the art.

HONEYWELL'S COUNSEL: Well, the history of the invention definitely goes back
to aircraft and aviation.

THE COURT: I don't have any trouble with that, but I guess I --I'm having
difficulty foreseeing whatever claims you may want to assert that may not even
be in this case that are broader.

HONEYWELL'S COUNSEL: But technology expands. Somebody invented the
personal computer, but nowadays we put computers in everything from
dishwashers to microwaves to television. They are all ubiquitous, but that doesn't
mean that the core invention of the computer isn't in these various devices. If the
claim doesn't say cockpit, it's not limited to a cockpit.

TR at 225-31.


\* \* \*

THE COURT: But one does have some sense about when privilege is given up for
a time period from the public to someone, what do they get for that period, and it
cannot be the universe. It's got to be something less than the universe, in my
view.

HONEYWELL'S COUNSEL: Well, I think we've heard many times from opposing
counsel the claims are king, and we agree with that principle, the claims are king.
 . . . And one of the concepts that **[**112]** comes out of Federal Circuit case
law, the *Rennashaw* case, for example, stresses the importance that you have to
find a word in the claim to define before you can engage in claim construction,
and here we're trying to engage in construing the claim "local."

THE COURT: Yes.

HONEYWELL'S COUNSEL: And local certainly pertains to location, and where
things are located in relationship to one another, but I don't believe there is
anything in the claim that limits the invention to a cockpit.

Case 3:01-cv-00577-CFD    Document 168-10    Filed 03/03/2006    Page 25 of 27

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                Page 54 of 116

THE COURT: Okay. . . . My local was not in relation to cockpit, it was a relationship to the pilot itself. I mean, without the pilot there is no -- none of the rest of this makes much difference.

HONEYWELL'S COUNSEL: But I think it does as Mr. Brafman's example pointed out because the night vision aid could be hooked up remote to a remote viewer, and he could be viewing the area outside whatever confined area he happens to be in.

TR at 236-38; *see also* TR at 248.

\* \* \*

In addition, Honeywell objected to the Government's proposed construction utilizing the words "visual" with "format," "functional" with "device," and "perceptible" with "color."

HONEYWELL'S COUNSEL: So Honeywell's **[\*\*113]** construction for color display alone is a device that provides visual representation of data using more than one color, and Defendants have modified that construction, and the portion of their construction that pertains to the color display is a functional device that presents information in a visual format in more than one perceptible color. So as you can see, there are not great differences between those two definitions. However, what Honeywell takes issue with is the addition of the words "functional" to modify "device," and the addition of the word "perceptible" to modify the word "color." We think those words are extraneous, and unnecessary to define what the claim terms.

THE COURT: How is perceptible extraneous?

HONEYWELL'S COUNSEL: We believe a color is inherently perceptible. Color pertains to human vision. Without the human there would be no color. The world doesn't know color without the human, and the human visual system, and therefore perception . . . . We also rely on Dr. Task's definition in his expert report and in his direct. The definition did not **[\*441]** change. He defined color as a display presenting more than one color. He did not believe it was necessary to insert the **[\*\*114]** word "perceptible." He did agree with it once Defendants adopted that, but he didn't believe it was necessary when he first defined it.

THE COURT: And functional, you disagree with that because you think that's redundant of device?

HONEYWELL'S COUNSEL: Right, a device -

THE COURT: Because a device is inherently functional?

HONEYWELL'S COUNSEL: -- is inherently functional, right.

TR at 240-42.

Case 3:01-cv-00577-CFD    Document 168-10    Filed 03/03/2006    Page 26 of 27

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 55 of 116

### iii. Post-Claim Construction Hearing Briefs.

During post-hearing briefing, Honeywell's briefs appeared to abandon arguing that "local" required construction separate from "color display" and, instead, moved to focus on "whether the starting period for filtering is inside or outside the local color display." 4/1/05 Honeywell Brief at

23. Here, Honeywell maintained that "all that is required is that you have 'light from the local color display' and a 'first optical filter' that filters such light[.]" *Id.* By shifting the argument to the location of the filters rather than construing the term "local color display," Honeywell failed to provide the court with any meaningful guidance as to the meaning of "local color display," other than to state: "in the case of the **[**115]** '914 patent, there is clear disclosure of filters located *inside* the local color display." *Id.* at 24 (emphasis in original). The court was advised, however, that "such filters filter light 'from the local color display,' even though the starting point for filtering is not external to the local color display, nor has the light left the local color display before it is filtered." *Id.* In addition, Honeywell asserted that "nothing in the language of the claims or the written description permits the court to limit the scope of claim 1 to the Figure 1 embodiment, in which a first optical filter 23 is 'located in front of local display 17.'" *Id.* at 25.

b. The Government's Proposed Construction.

i. Pre-Claim Construction Hearing Brief.

The Government's pre-hearing brief advised the court that one of ordinary skill in the art would conclude that the court should adopt the Government's proposed construction that a "local color display" is a "functional device that presents information in a visual format[,]" a fact the Government represented that Honeywell does not contest. *See* 1/14/05 Def. Joint Brief at 15 (citing 12/23/04 Honeywell Brief at 12). **[**116]** In support, the Government cites the portion of the '914 patent specification that instructed: "Figure 3 shows an arrangement in which the local source of light 50 comprises red 51, green 52, and blue 53 color bands sourced from the monochromatic display transducers." '914 patent, col. 4, ll. 40-48; *but compare* '914 patent, col. 1, ll. 25-26 ("It is intended that the local display may be viewed either with or without the night vision aid in use.") *with id.* ll. 42-48 ("A local color display . . . is also viewable by the crewmember . . . the local display is intended to be viewable without the aid of the ANVIS.") *with* '914 patent, col. 2, l. 57 (emphasis added) ("The cockpit has *several local displays such as color display*[.]"). The prosecution history indicated that the "local color display" may be "a full color cathode ray tube display." Ex. 7 '914 Wrapper D000018, ll. 35-36; *see also* Ex. 8 '760 Application D001179, ll. 29-30. In fact, Figure 3 of the specification depicts CRTs that provide "a monochromatic image . . . for full color display, which appears on a front screen as a combined full color image." Ex. 7 **[**117]** '914 Wrapper D000010, ll. 8-11; *see also* Ex. 8 '760 Application D001182, ll. 2-5.

**[*442]** ♦  GET DRAWING SHEET 2 OF 2

'914 patent, figure 3, sheet 2 of 2.

Therefore, the Government assured the court that "the proper reference point for 'local' . . . is the observer." 1/14/05 Def. Joint Brief at 15. But, the Government also argued that "'local' *refers to the location of the display within the cockpit* such that it is visible with or without the use of ANVIS." *Id.* (citing '914 patent, col. 2, ll. 46-48, 58-59; col. 1, ll. 41-46) (emphasis added). The Government concluded that "one of ordinary skill in the art could understand that a local color display must be *within a defined area* for an operator or observer to view and to act upon, if necessary, the data and information produced by the local color display." 1/14/05 Def. Joint Brief at 15 (emphasis added).

Case 3:01-cv-00577-CFD     Document 168-10     Filed 03/03/2006     Page 27 of 27

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 56 of 116

ii. At The Claim Construction Hearing.

At the claim construction hearing, the Government continued to argue that "local" means in reference to a human observer.

> GOVERNMENT'S COUNSEL: The differences are for local, what the reference point for vicinity is, and for color display, **[\*\*118]** the functional and the perceptible. And we don't think that any of these terms are necessarily superfluous. We don't think that they are wrong. With respect to local, we believe that the correct reference point is the observer. This is straight out of the patent specification, and specifically out of the specification where it states that the local color display, . . . needs to be visible to a viewer. So for example, the first section I cited here, which is column 2, lines 46 through 48, says that "The local display is intended to be viewable without the aid of the ANVIS," referring to, of course, as I spoke about before, the goggle sits in front of the eyes but not against the eyes so you can look around the goggles, so you can look down and see the display. The second provision is, "The cockpit has several local displays, such as a local color display, which are illuminated so as to be clearly visible without the use of ANVIS." Again, it makes it clear that the observer is the one that's going to be looking at the displays. So the reference point is again the observer. And finally, the last provision says, "It is important that the display indicators remain illuminated not only for **[\*\*119]** the benefit of the crewmen who are not wearing night vision aids, but also because those using the goggles will typically view the instruments by looking under the goggles." And again this just recognizes the point that the observer is going to be viewing the display without the goggle. So really what should be important is whether the viewer is local to the display and not the goggle, because if the viewer is not **[\*443]** local to the display, he can't view it anyway.

TR at 243-44.


* * *

> GOVERNMENT'S COUNSEL: We believe Honeywell's construction runs counter to the expressed purposes of the patent, which is to get a full color display which you can view without the goggles, and it doesn't overwhelm you [sic] goggles. So you want to be able to look around your goggles and see a full color display. If it wasn't important for the observer to be able to look at a display without the goggles and see color, then you wouldn't have any reason to have this patent.

TR at 245.


* * *

> GOVERNMENT'S COUNSEL: We think it's clear that local refers to a defined area.