Case 3:01-cv-00577-CFD    Document 168-11    Filed 03/03/2006    Page 1 of 26

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!    Page 57 of 116

It doesn't have to be a cockpit enclosure. It could be some other defined area. But we believe that local carries with **[\*\*120]** it the implication that there is a defined area. The phrase from the patent that was recited, it's column 2, lines 53 through 54, I believe, "The present invention can be used by other viewers in association with environments other than an aircraft cockpit." We believe that phrase --that term "environment" also implies that there is a recognized environment. There is a recognized region around the observer and the display that local implies. So it's a defined area, whether it's an environment, whether it's an enclosure, whether it's a cockpit, but we believe that all of this comes out of the clear meaning of local. If the Court is satisfied, I'll turn to perceptible in the color display. We don't believe the perceptible before color is superfluous. The whole point is having a full color display meaning it has to show more than one color. If the colors are not perceptibly different, then it doesn't look like a color display. It looks like a monochrome display. That's the only reason . . . perceptible is in there. It's not superfluous, and it just shows that the colors need to be perceptibly different. And then finally, going back to the functional language, we don't believe that is **[\*\*121]** superfluous either. As we discussed before with respect to display system, the --I'm sorry -- as related to the display system, the color display has to be functional apart from Honeywell's proposed system. So saying it's a functional device implies that it is functional on its own. It doesn't require the patent to perform its function.


TR at 246-47.

iii. Post-Claim Construction Hearing Briefs.

The Government's post-claim construction brief conceded that "local" means "in proximity to," but that the display should be proximate to an observer or operator, despite the fact that Honeywell maintained that "local" means in proximity to the location of the night vision aid. *See* 4/1/05 Gov't Brief at 20. Since the specification clearly indicated that local color display may be seen by a crew member not wearing night vision goggles, the Government argues that Honeywell's proposed construction is wrong. *Id.; see also id.* at 21 (citing '914 patent, col. 1, ll. 41-46) ("It is important that the display indicators remain illuminated, not only for the benefit of the crewmen who are not wearing night vision aids, but also because those using the goggles will typically view **[\*\*122]** the instruments by looking under the goggles.").

c. Intervenor Lockheed Martin's Proposed Construction.

i. Pre-Claim Construction Hearing Brief.

Lockheed Martin's construction of "local color display" was the same as that of the Government. *See* 1/14/05 Def. Joint Brief at 14-16.

ii. At The Claim Construction Hearing.

At the claim construction hearing, Lockheed Martin disagreed with Honeywell's explanation that "local is used differently when it's referring to the local display and local source of light . . . the ordinary, customary meaning of local source of light is that the local source of light must be part of the local **[\*444]** color display." TR at 253. As for the specification, it teaches that the "original Figure 3 . . . shows the local source of light as being integral to the local color display." TR at 257. In sum, the claims and specification "lead to the conclusion that local source of light must mean that . . . it is integral to and part of the local color display." TR at 257.

Case 3:01-cv-00577-CFD    Document 168-11    Filed 03/03/2006    Page 2 of 26

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 58 of 116

iii. Post-Claim Construction Hearing Briefs.

After the claim construction hearing, Lockheed Martin advised the court that the " **[\*\*123]** '914 patent's claims do not expressly define the proper reference point for the local color display. . . . A review of the specification establishes, however, that the reference point for the 'local' is the observer and not simply the night vision aid." 4/1/05 Int. Brief at 24. Subsequently, Lockheed Martin appeared to move to seek a construction of a different phrase, "light from the local color display." 4/15/05 Int. Brief at 12. In that regard, Lockheed Martin argued that Claim 1 "applies to filters located outside of the [local color display] and Claim 2 applies to filters located inside the display." *Id.* at 13.

d. The Court's Construction Of "Local Color Display" In This Case.

The court has declined to construe the word "local" in the abstract. Construing an adjective without the object noun provides no guidance to the parties or the public as to how the court has determined the legal parameters of the '914 patent subject matter.

i. In The Preambles To Claim 1 And Claim 2.

The court has determined that a "local color display" is a device that may be used together or in combination with optical filters, *i.e.*, "a display system." *See* **[\*\*124]** '914 patent, col. 5, l. 31; *see also* '914 patent, col. 6, l. 13. In the preamble language common to Claims 1 and 2, a "local color display" is also one that shows or exhibits at least one color perceptible to an observer or observers who may be located near or in proximity to the "local display system." Since a display system would be irrelevant without an observer or observers capable of perceiving the display, necessarily a "local color display" also must be perceptible to an observer or observers, *i.e.*, one utilizing a night vision aid. Therefore, the court construes "local color display" as:

> A device that may be used together or in combination with optical filters and shows or exhibits at least one color perceptible to an observer or observers utilizing a night vision aid.

This construction is not contradicted by the specification. *See* '914 patent, col. 2, ll. 46-48 and 58-59 (emphasis added) ("as the local color display is intended to be *viewable*"); *see also* '914 patent, col. 1, ll. 63-64 ("filtration of light according to wavelengths generally permits the use of full color displays").

ii. In Claim 1(a).

 **[\*\*125]** Claim 1(a) describes "a first optical filter that filters light from the *local color display*." '914 patent, col. 6 ll. 1-2 (emphasis added). The court does not construe this language to limit the location of the "first optical filter" 23, described in Claim 1(a), to a location external to the "local color display." *Id.* The "first optical filter," whether located internal or external to the "local color display" is included in the claimed invention. *Id.*

iii. In Claim 2(a).

In Claim 2(a), a "local color display" includes a source of light having blue, red and green color bands. *See* '914 patent, col. 6, ll. 13-14. Therefore, the court construes "local color

Case 3:01-cv-00577-CFD     Document 168-11     Filed 03/03/2006     Page 3 of 26

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 59 of 116

display" in Claims 2 and 2(a) to include a source of light presenting at least one or more colors. *See* '914 patent, col. 6, ll. 12, 15. Similar to the "first optical filter" in Claim 1(a), the "plurality of filters at the local color display" is not limited to a location internal or external to the local color display. *See* '914 patent, col. 6, ll. 15-22. The plurality of filters, whether located internal or external to the "local color display," is included in the claimed invention. *Id.*

Since the **[\*\*126]** court has determined that claim term "local color display" is unambiguous and not contradicted by the specification, the **[\*445]** court considers it unnecessary to consider any extrinsic testimony regarding the meaning of "local color display."

3. "Local" And "Source of Light."

The term "local source of light" appears in the preambles to Claim 1 and Claim 2 to describe part of the "local color display." *See* '914 patent, col. 5, l. 33; '914 patent, col. 6, l. 13.

The parties have proposed the following competing constructions of "local source of light:"

| **Honeywell's Proposed Construction** | **Defendants' Proposed Construction** |
| --- | --- |
| Source of Light: device that emits electromagnetic radiation within the visible spectrum and may also emit infrared radiation | A local source of light: the integral element of the local color display that provides the light that enables the display to be seen by the human eye |

Honeywell *Markman* Slide 73; Gov't *Markman* Slide 012 (bold added by parties).

a. Honeywell's Proposed Construction.

i. Pre-Claim Construction Hearing Brief.

Honeywell's pre-hearing brief represented that "the term *light* usually refers to electromagnetic **[\*\*127]** radiation in the visible spectrum." 12/23/04 Honeywell Brief at 13 (citing WEBSTER'S at 1308) (emphasis in original). In addition, Honeywell asserted that "it is clear that the *source of light* may also emit infrared radiation, *i.e.,* longer wavelengths of electromagnetic radiation that are invisible." 12/23/04 Honeywell Brief at 14 (emphasis in original) (citing '914 patent, col. 1, ll. 38-40). The specification language cited by Honeywell, however, provides: "illumination from cockpit display sources overwhelms sensor elements which are used in such night vision aids, and thereby interrupts the night vision aid for up to several minutes." '914 patent, col. 1, ll. 37-40. The remainder of Honeywell's pre-hearing brief weaved in extrinsic evidence, particularly that of Dr. Task, to persuade the court that "the claim states that the local color display *includes* the local source of light, [and therefore], it is superfluous to specify that it is *integral* with the display." 12/23/04 Honeywell Brief at 14-15 (emphasis in original).

ii. At The Claim Construction Hearing.

At the claim construction hearing, Honeywell continued to argue that the "ordinary meaning of source **[\*\*128]** of light does not require . . . that it be an integral element of the local color display." TR at 250-51.

Case 3:01-cv-00577-CFD    Document 168-11    Filed 03/03/2006    Page 4 of 26

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 60 of 116

HONEYWELL'S COUNSEL: So now I'll go to source of light, and this again is in the preamble, and Honeywell again has construed the term "source of light," and Defendants have construed the entire phrase "local source of light." And here the key difference between the parties' proposed constructions is the requirements in Defendant's construction that the local source of light be an integral element of the local color display.

TR at 250.

    * * *

THE COURT: Well, I would think the "local," going back to your prior discussion, would be the focus for you.

HONEYWELL'S COUNSEL: But once again, there is no indication in the patent that the term "local" when it modifies color display has a different meaning from when it modifies source of light, and the principle is that when the same term is used in different places in the patent, it has to be given the same meaning, and I don't believe Defendants have tied integral to local. They haven't come out and construed local differently when it comes to local source of light. I think what they rely on is the term "includes," [**129] but includes is not limited to a device that is integral. It has to include it. It has to be part of it, but it need not be integral. I don't believe Defendants have pointed to anything in the claim language itself or the specification that requires that the source of light be integral with the local color display, so it's a narrow difference.

TR at 251-52.

During rebuttal, Honeywell's counsel argued:

[*446] HONEYWELL'S COUNSEL: They say, "The ordinary and customary meaning of local source of light is the local source of light be part of the local color display." And Honeywell agrees with that, and we would accept that as the construction. And then . . . with Figure 3, first of all, to address the new matter argument, the examiner approved the amendment of Figure 3, and held it was not new matter, so I think that's a red herring. Then we believe Defendants make irreconcilably different arguments with respect to these two figures. First, when they are talking about filter 61, 62, 63, they say those are functionally distinct from the local color display. But then when it comes to the local source of light, 51, 52, 53, they say those are integral with the local color display. We accept [**130] that both are integral. However, this is only one embodiment of the invention. The claims are not limited either to integral filters or integral source of [light]. But the Defendant[s'] arguments can't be reconciled, and do not support reading the term "integral" into "local source of light" because this is only one embodiment of the invention.

Case 3:01-cv-00577-CFD     Document 168-11     Filed 03/03/2006     Page 5 of 26

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 61 of 116

TR at 258-59.

### iii. Post-Claim Construction Hearing Briefs.

In post-claim construction hearing briefs, Honeywell reminded the court that Claim 1(a) does not require that "the starting point for filtering the source of light . . . is the local color display." 4/1/05 Honeywell Brief at 23. Instead, Honeywell argued that the claim is satisfied whether the "starting point for filtering is inside or outside the local color display. All that is required is that you have 'light from the local color display' and a 'first optical filter' that filters such light[.]" *Id.* Figures 2 and 3 demonstrate that filters 61, 62, and 63 are located inside the local color display 37 filtering light "from the local color display." *Id.* at 24. Therefore, Honeywell concluded that "nothing in the language of the claims or written description **[\*\*131]** permits the court to limit the scope of Claim 1(a) to the Figure 1 embodiment, in which you have a first optical filter 23 is 'located in front of the local display 17.'" *Id.* at 25 (citing '914 patent, col. 3., l. 15); *see also* 4/15/05 Honeywell Brief at 8. In fact, Figures 2 and 3 show that the filtering is done within the local color display. *See* 4/1/05 Honeywell Brief at 24.

b. The Government's Proposed Construction.

i. Pre-Claim Construction Hearing Brief.

The Government countered that one of ordinary skill in the art would conclude that the "local source of light is an integral part of the local color display . . . . Honeywell's [use] of the word 'including,' . . . indicates that [Honeywell] intended for the local source of light to be part of, and not external to, the local color display[.]" 1/14/05 Def. Joint Brief at 17. The Government relied on two portions of the specification in support. *Id.* at 17 (citing '914 patent, col. 3, ll. 9-10 ("it may be necessary to filter light from the local light source 50 of the display[.]")); *see also id.* (citing **[\*\*132]** '914 patent, figure 3 (showing the local source of light 50 as being within the display)).

ii. At The Claim Construction Hearing.

At the claim construction hearing, the Government deferred to the argument of Lockheed Martin. *See* TR at 257, ll. 18-23.

iii. Post-Claim Construction Hearing Brief.

The Government's initial post-hearing brief urged the court to construe "local source of light" to mean "the integral element of the local color display that provides the light that enables the display to be seen by the human eye." 4/1/05 Gov't Brief at 21. In doing so, the Government appeared to abandon prior reliance on specification requirements in column 3, ll. 9-10, and instead argued that "[the] proposed construction arises from the plain language of the claim: The preambles of both claims state that the local display includes - -*i.e.*, has an integral part - - a local source of light nothing more is necessary[.]" 4/1/05 Gov't Brief at 22. The Government also argued that Honeywell adopted the Government's construction at the claim construction **[\*447]** hearing. *Id.* (citing TR at 258) (Honeywell's Counsel: "The local source of light [must] be part of the local color display. **[\*\*133]** Honeywell agrees with that, and we would accept that as the construction. We accept that both [the filters and local source of light] are integral.").

c. Intervenor Lockheed Martin's Proposed Construction.

i. Pre-Claim Construction Hearing Brief.

Case 3:01-cv-00577-CFD    Document 168-11    Filed 03/03/2006    Page 6 of 26

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!    Page 62 of 116

In the pre-hearing brief, Lockheed Martin's construction of "local source of light" was the same as that of the Government. *See* 1/14/05 Def. Joint Brief at 17-18.

ii. At The Claim Construction Hearing.

At the claim construction hearing, Lockheed Martin warned the court that:

> LOCKHEED MARTIN'S COUNSEL: The cases indicate look at words in context, look at the totality of the words to arrive at a meaning. And when you look at the totality . . . here you are going to find that local is used differently when it's referring to the local display and the local source of light. And we are focusing on the definition of "local" when we talk about local source of light. . . . The ordinary, customary meaning of local source of light is that the local source of light must be part of the local color display.

TR at 253.

> \* \* \*

> LOCKHEED MARTIN'S COUNSEL: If we turn to the specification, . . . we see . . . new Figure 3 on the **[\*\*134]** right, new Figure 3, that is, is the Figure 3 that appears in the 914 patent as opposed to the original application. And we have the description that new Figure 3 shows an arrangement in which the local source of light comprises red, blue, and green color bands sourced from monochromatic display transducers such as the three cathoid ray tubes which are used to provide a color display. We heard earlier today from [Honeywell's counsel] . . . that the local source of light, that source of light was part of that display, was in that display. Certainly if we look to the original Figure 3 . . . we find that the local source of light, which are the cathode ray tubes 51, 52, and 53. They are integral to or part of that local display. It's important to look at this original figure because . . . *Tanden Corporation*. . . basically holds that amendments to a patent cannot change the disclosure in any way contrary to its substance as filed. So when the Court looks at the prosecution history, looks at the different drawings, what you have to do is consider them in light of the original application.

TR at 254-55.

iii. Post-Claim Construction Hearing Brief.

**[\*\*135]** Lockheed Martin's initial post-hearing brief represented that one of ordinary skill in the art would conclude that "local source of light" means "the integral element of the local color display that provides the light that enables the display to be seen by the human eye." 4/1/05 Int. Brief at 26. The court also was advised that the specification does not show that Honeywell defined this term differently. *See* '914 patent, col. 3, ll. 9-10 ("it may be necessary to filter light from the source 50 of the display[.]"). Lockheed Martin also made no further argument about the meaning of "local source of light." *See* 4/15/05 Int. Brief at i.

Case 3:01-cv-00577-CFD    Document 168-11    Filed 03/03/2006    Page 7 of 26

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 63 of 116

d. The Court's Construction Of "Local Source Of Light" In This Case.

For the reasons previously discussed, the court has declined to construe the word "local" in the abstract. Construing an adjective without the object noun provides no guidance to the parties or the public as to how the court has determined the legal parameters of the '914 patent subject matter.

The court has determined, in the preamble language common to Claims 1 and 2, that "local source of light" as:

> An essential element of the local color display that must be perceptible **[**136]** to an observer or observers with a night vision aid.

 **[*448]** This construction is not contradicted by the specification. *See* '914 patent, col. 2, ll. 46-48; *see also* '914 patent, col. 1, ll. 63-64.

4. "Optical Filter" And "Filter. "

The parties have agreed that the terms "optical filter" and "filter," when used as nouns in the claims of the '914 patent, mean "a device that selectively passes and blocks electromagnetic radiation." n10 The parties agree that "filters" (plural), when used as a noun, means two or more filters.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n10 The United States Court of Appeals for the Federal Circuit recently observed in *Nellcor Puritan Bennett, Inc. v. Masimo Corp.*, 402 F.3d 1364, 1367 (Fed. Cir. 2005) that the AUTHORITATIVE DICTIONARY OF THE INSTRUMENTS OF ELECTRICAL AND ELECTRONICS ENGINEERS STANDARD TERMS 435 (7th ed. 2000) lists eight different meanings for "filter" when this word is used as a noun.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

5. "Filters" And "Filtering."

 **[**137]** The parties have agreed that the terms "filter" and "filtering," when used as verbs in the claims of the '914 patent, mean "selectively to allow (or allowing) light to pass and be blocked." Jt. Stip. P 2.

6. "Filters Light From The Local Color Display."

In Claim 1(a), "a first optical filter" is described as one that "filters light from the local color display." '914 patent, col. 6, ll. 1 and 2. No other claim recites this specific language.

The parties have proposed the following competing constructions of "filters light from the local color display":

| Honeywell's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| Filters light from the local color | Filters light from the local color |

Case 3:01-cv-00577-CFD    Document 168-11    Filed 03/03/2006    Page 8 of 26

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 64 of 116

display:                                         display:
No further construction is                       the starting point for filtering
necessary. To the extent this                    the source of light is the local
phrase needs to be construed at                  color display
all, it should be construed as
follows: "filters light coming from
the local source of light that is
part of the local color display and
the filtered light is transmitted
from the local color display."

Honeywell *Markman* Slide 91; Gov't *Markman* [**138] Slide 021 (bold added by parties).

a. Honeywell's Proposed Construction.

i. Pre-Claim Construction Hearing Brief.

In Honeywell's pre-hearing brief, the court was advised that the proposed construction of "filters light from the local color display" is consistent with the plain meaning of the claim and specification and that nothing therein requires that the starting point for filtering the source of light occur at the "local color display." *See* 12/23/04 Honeywell Brief at 19. The court was warned that it would be improper to limit Claim 1 to "embodiments wherein the optical filter is 'located in front of the display' or 'is placed over displays.'" 12/23/04 Honeywell Brief at 20 (citing '914 patent, col. 3, ll. 15-16; *see also* '914 patent, col. 2, l. 13).

The specification's use of the phrase "light . . . from the local color display" includes the embodiment of Figure 2 that shows local color display 37, without any filter in front of the display. *Id.* at 20. Honeywell also argued that Figure 3 shows "the same local color display 37 as shown in Figure 2, but in more detail." *Id.* (citing [**139] '914 patent, col. 4, ll. 44-46). And, Figure 3 shows that "light from the local color display 37 is filtered by filters 61, 62, and 63, all of which are "part of and located within the local color display." *Id.* at 20. In addition, the specification described the filtering in Figure 3 uses the same language as Claim 1(a), *i.e.*, "a filter 61, such as a band pass *filter*, may be used with CRT 51 so that any *light* within a narrow range of frequencies may be transmitted *from the local color display* 37." *Id.* (emphasis added) (citing '914 patent, col. 4, ll. 49-57). Accordingly, Honeywell concluded that the specification is clear that filtering light from the local color display does not require an external filter in front of or over the local color display or that the starting point for filtering is the local color display. *Id.*

[*449] ii. At The Claim Construction Hearing.

At the claim construction hearing, Honeywell reiterated that:

> HONEYWELL'S COUNSEL: The plaintiff's primary position is that [this] term ["filters light from the local color display"] does not require any construction whatsoever. . . . If it does need to be construed, it has got to mean [**140] at least what we say . . . . So the plain meaning of the claim then is clear from its face and there is no reason to rewrite the English here, Your Honor. We have

Case 3:01-cv-00577-CFD    Document 168-11    Filed 03/03/2006    Page 9 of 26

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 65 of 116

light from the local color display and we have a first optical filter that filters light
and that's exactly what the claim says. Nothing in the claim places that filter
anywhere.

TR at 329; *see also* TR at 331.

iii. Post-Claim Construction Hearing Briefs.

After the claim construction hearing, Honeywell continued to argue that the phrase "filters
light from the local color display" in Claim 1 does not require that the local color display be
the "starting point" for filtering light. *See* 4/1/05 Honeywell Brief at 23. Instead, Honeywell
advised the court that this claim only required that there be "light from the local display" and
a "first optical filter" that filters that light. The starting point for filtering may be either inside
or outside the local color display. *Id.* In support, Honeywell emphasized that Figure 2,
showing a local color display at 37, and Figure 3, showing the filters at 61, 62, and 63 within
the display, teach that they all filter light "from the local color display, the starting
point **[**141]** for filtering is not external to the local color display and the light is filtered
before it exits the local color display." 4/1/05 Honeywell Brief at 23-24.

In addition, Honeywell disputed defendants' dictionary definition of "from" to require that the
first optical filter must filter light that has left the color display. *See* 4/15/05 Honeywell Brief
at 8. Instead, Honeywell suggested that an alternative definition that designated the "source
or origin" of light as the color display. *Id.* at 8-9. Honeywell also relied on specification
language instructing that "a filter 61 . . . may be used with CRT 51 so that only light with a
narrow range of frequencies may be transmitted from the local color display 37." *Id.* at 9
(citing '914 patent, col. 4, ll. 54-57). In addition, Figure 3 teaches that the starting point of
the color band is *not* the local color display, but filter 61 inside the local color display. *Id.*
Therefore, Honeywell disputed defendant's attempt to limit Claim 1 to Figure 1 since the
phrase "from the local color display" is used to describe Figure 2 and Figure 3. *Id.*

b. The Government's Proposed Construction.

i. Pre-Claim Construction Hearing **[**142]** Brief.

The Government, in its pre-claim hearing brief, conceded that the '914 patent "indicates that
some of the filters for its display system will be placed external to the local color display and
thereby filter light from the local display." 1/14/05 Def. Joint Brief at 24 (citing '914 patent,
col. 3, ll. 15-24) ("first optical filter is placed over displays"); *see also* '914 patent, col. 2, ll.
10-15 (emphasis added) ("an [aviator's night vision ("ANV")] aid, such as [a] . . . goggles
set, is provided with an optical filter. A second optical filter blocking light in an opposite sense
from the first optical *filter is placed over displays*, which may otherwise present light that
would interfere with the ANVIS.").

ii. At The Claim Construction Hearing.

At the claim construction hearing, the Government's principal focus was the preposition
"from" in the phrase: "filters light from the local color display."

> GOVERNMENT'S COUNSEL: We believe the claim term "from" does need to be
> construed. It provides structure and function to the claim. There is obviously a
> disagreement over what it means, so it is obviously ripe for construction. . . .

First optical filter that filters [**143] light from the local color display. I don't think that could be any clearer that the light has to be from the local color display before it is filtered. [*450] It is the clear meaning, it is absolutely clear from the English grammar what we're talking about here.

TR at 337-38.

\* \* \*

GOVERNMENT'S COUNSEL: [Honeywell] started talking about figure 3 and I think a couple misrepresentations were made and I want to clear that up. But first I want to just note that the specification uses this sort of the same way. It shows that filter can be placed over displays. [Honeywell's counsel] spoke at length about figure 3 and how it shows things inside the displays. I don't think that's clear from the specification at all. . . . It shows that there are filters at the display in figure 3, but . . . figure 3 is even irrelevant to what we're talking about here because . . . we have figure 1, which actually [Honeywell's counsel] started to try to put up in front of figure 3 when we started talking about this[.] Figure 1 is obviously what is being described by claim 1. There is no requirement that every claim read on every embodiment of the invention. Claim 1 can pertain to figure 1. Claims [**144]  2 and 3 could pertain to figures 2 and 3. There is nothing saying that claim 1 has to cover figure 3. So I don't think that argument carries any weight at all. As you see from figure 1, there is clearly a filter on top of the display. The specification clearly says located in front of the local display, 17, is a first optical filter 23. That filter is on top of it, would filter light from the local color display. Again, as I mentioned before, Honeywell turns to figures 2 and 3 and which there is absolutely nothing in the patent tying claim 1 to figures 2 and 3. There is nothing in there that says figures 2 and 3 show a filter filtering light *from* the local color display.

TR at 339-40 (emphasis added).

\* \* \*

GOVERNMENT'S COUNSEL: Claim 1 talks about something with two filters but also says the first filter filters light from the local color display. When we get to claims 2 and 3 we're talking about a different embodiment. Now, that's what figures 1, 2, and 3 show is different embodiments, different examples of the different embodiments. So figure 1, again, is relevant because it shows light being filtered from the local color display; whereas 2 and 3 don't.

[**145] TR at 341.

Case 3:01-cv-00577-CFD    Document 168-11    Filed 03/03/2006    Page 11 of 26

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 67 of 116

* * *

GOVERNMENT'S COUNSEL: And there is nothing in the specification that would tie claim 1 to figures 2 and 3, which plaintiff is trying to do. I don't have much else to say on this. I think it is absolutely clear from the language, from the grammatical usage of the word "from" in the common, ordinary meaning of "from."

TR at 342.

The Government also argued that it was not necessary to consult the specification because the clarity of the language at issue:

GOVERNMENT'S COUNSEL: The claims are clear. It says filters light from the local color display. You don't need to look at the specification. You don't need to look at the figures. If you do look at those things, they confirm our construction, but it is a clear reading of the English that it filters light from the local color display. I don't know how you can be any clearer than that. Now, we got into this argument about preferred embodiments and that you can't read the claims to exclude preferred embodiments. That is accurate law. I agree. We have two things missing here. One, *there is no preferred embodiment listed in the claims or listed in the specification*, so I don't know what they are saying **[**146]** is the preferred embodiment. . . . I would like to hear it but I don't know.

THE COURT: So it is not the three figures?

GOVERNMENT'S COUNSEL: I don't know. There is nothing in there that says in a preferred embodiment, this happens. You see that sometimes in patent language in the specification, but I don't think it is in the specification here. The other thing is that the rule is that the claims cannot be construed to exclude the preferred embodiment. Each claim does not have to cover each embodiment. And that's the difference. **[*451]** You can't construe the claims as a whole such that it would read out the preferred embodiment because that makes sense, if you have a preferred embodiment, the inventor would have drafted the claims to cover it. But what does not follow from that is that claim 1 has to cover every embodiment, claim 2 has to cover every embodiment. That's wrong. It is also wrong to characterize claim 1 as a generic claim. There are *Vitronics* claims, and then you can have, they are genus and species, sometimes, that's what they are called, but that's not what we're talking about here. We're talking about claims that are directed to different embodiments. And, again, it **[**147]** comes out in a clear reading of the claims. It doesn't have to say in the specification that claim 1 pertains to one embodiment and claim 2 to a different embodiment. It just comes out of the claims.

TR at 362-64 (emphasis added).

iii. Post-Claim Construction Briefs.

The Government's post-hearing brief argued that the "claim construction analysis [of "filters light from the local color display"] can literally 'begin and end' with the words of the claim." 4/1/05 Gov't Brief at 27. Here, the Government made three

Case 3:01-cv-00577-CFD    Document 168-11    Filed 03/03/2006    Page 12 of 26

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 68 of 116

new arguments. First, that Honeywell's construction improperly reads "from" out of the phrase "filters light from the local color display." *Id.*

Second, Honeywell's reference to Figure 3 confused the issue by misreading language that provides: Figure 3 shows "light within a narrow range of frequencies may be transmitted from the local color display." *Id.* at 28. Instead, the Government argued that this language confirms that because Figure 3 shows exiting the display that light is being transmitted from the display and hence is filtered external to the display. *Id.*

Third, the Government criticized Honeywell for misreading *Vitronics* for the proposition **[**148]** that a claim should not be construed to exclude preferred embodiments. *Id.* The Government distinguished *Vitronics* as inapplicable because there was only one claim at issue in that case, and the court excluded the only embodiment in the patent. *Id.* (citing *Vitronics*, 90 F.3d at 1583). Accordingly, the Government reasoned that *Vitronics* did not establish a rule that all claims must cover all embodiments described in the specification. Therefore, since the Government concluded that the '914 patent did not state a preferred embodiment in this case, the law does not require that Claim 1 "cover Figure 3" or that all claims be construed to cover all figures. *Id.* Instead, a patent claim should be "construed to encompass at least one disclosed embodiment in the written description." *Id.* at 29 (quoting *Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1355 (Fed. Cir. 1998)).

c. Intervenor Lockheed Martin's Proposed Construction.

i. Pre-Claim Construction Hearing Brief.

Lockheed Martin's proposed construction of "light from the local color display" was the same as that of the Government. *See* 1/14/05 Def. Joint Brief at 24. **[**149]**

ii. At The Claim Construction Hearing.

>   LOCKHEED MARTIN'S COUNSEL: And for our definition of the term "from" we mean "from" when it is used "with". From the local color display means the starting point for filters the source of light is the local color display. So the filtering occurs outside the local color display, not in the local color display under our recitation. . . . Claim 1 recites a first optical filter that filters light from the local color display. And the plain and ordinary meaning –

>   THE COURT: Why is it that the box at the bottom of the 3 doesn't do that? Explain that to me.

>   LOCKHEED MARTIN'S COUNSEL: You know, it is interesting when you look at the box at 3. You can't tell where those filters are located when you look at that particular box. It is indeterminate. The box is not like – we see in figure 1 of the patent that I'm showing up here where we **[*452]** show the filter 23 being outside the display 17.

TR at 342-43.

\* \* \*

LOCKHEED MARTIN'S COUNSEL: You can't tell whether those filters are inside or outside from that particular diagram, whether those filters are inside or outside the local display. We have tried. Everybody has tried to look at it, but **[\*\*150]** you can't tell from that particular one. If you looked at original figure 3, which we don't have, you would see those filters are inside the local display.

THE COURT: That's what I thought.

LOCKHEED MARTIN'S COUNSEL: In the original figure 3. The original figure 3 is that rectangular box that shows the three cathode ray tubes and filters in front of them. Now, under the rules that we talked about yesterday, you would have to read this figure 3 as being consistent with the original figure 3, so you would say that -

THE COURT: They would have to be then outside?

LOCKHEED MARTIN'S COUNSEL: On the inside. They would have to be on the inside because they were in the original specification that was filed, they were on the inside. And figure 3 can't change the original -- and that was figure 3 in the original specification.

THE COURT: Okay.

LOCKHEED MARTIN'S COUNSEL: So the new figure 3 can't change that specification. But the key term is it filters light from the local display. It does not filter light in the local color display. And we know that figure 1 is an embodiment that shows a filter being outside the display, not only from figure 1 itself, but also from the statement that **[\*\*151]** appears in the patent in column 2, line 13 that says a first optical filter is placed over displays. So . . . the ordinary meaning of the term "from the first optical display" means that it must filter light that has left the local color display at a filter that's located inside or internal to the display, cannot filter light from the display, it can only filter light in the display. The Federal Circuit has held in the *Forest Laboratories* [v.] *Abbott Laboratories* case at <u>239 F.3d 1305</u>, that there is a difference in meaning and scope presumed when different words are used in different claims. And if . . . we were to look at the claims, claim 2, comparing it to claim 1, claim 2 recites a plurality of filters at the local color display. And from [WEBSTER'S] we know that "at" can mean "in" and we also know from [WEBSTER'S] that "from" can never mean "at" or can never mean "in." Consequently, we have different meanings. "From" is different from -- "from" is different from "at." The terms were used differently and that further supports the argument that "from" should be interpreted that way that we believe it should be interpreted. If we look at the page provided **[\*\*152]** to us . . . by Honeywell. All that this page says is that there is light that may be transmitted from the local color display. And that's all that it supports. It doesn't address the claim where the claim is reciting an optical filter, a first optical

Case 3:01-cv-00577-CFD    Document 168-11    Filed 03/03/2006    Page 14 of 26

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!    Page 70 of 116

filter for filtering light from the local display. So what we have here in this provision of the specification is a discussion of a different embodiment of the invention than we see in figure 1. It is the embodiment we see in figure 3. So to sum it up, again, "from" never means "in." It means external. It means away from. And, therefore, the term "from" should be construed in the manner we suggest.

TR at 344-47.

\* \* \*

LOCKHEED MARTIN'S COUNSEL: Just three brief points. It seems to me that it is impossible to have a filter inside a display that can filter light from the display. I don't know how you do that. [Honeywell's counsel] suggests that you can but it seems to me that that violates the law of physics. With respect to . . . my comment on figure 3 . . . was that you can't tell from figure 3, the figure 3 that's in the patent, where those filters are. I then went on to describe the figure 3 that appeared in the original **[\*\*153]** application, and saying there it showed in the original application that the filters were inside the display, **[\*453]** but the original application of figure 3 also showed things that you don't see in this figure 3. It showed three cathode ray tubes, each of which provided individual sources of light. So there are differences between the two figures. . . . And in respect to the issue on embodiments, a lot has been made out of the fact that every claim has to include an embodiment. It can't exclude an embodiment. [Honeywell's counsel] just got up here and said claims 2 and 3 do exclude embodiments, that they are limited to the embodiments only shown in figures 2 and 3. And there are patents issued every day by the Patent Office where claims are listed in a hierarchical fashion or listed in series, where you have a separate set of claims, that the only way you would read them was to read them as being limited to one embodiment. And the specification may have five embodiments and you will find five sets of claims in the patent, each directed at different embodiments. That's what we had in this case. When we look at the history of this case, we started out with the **[\*\*154]** '637 patent, which eventually was spun off in a continuation. Part of it was spun off in a continuation. The '637 patent claims are limited to particular embodiments and that's the use of polarizers. The claims in the '637 patent that dealt with band pass filters were the ones that appear in the continuation and show up in the '914 patent. So even in the history here, we have a situation where we have claims limited to particular embodiments and that's the standard practice of drafting claims.

TR at 370-72.

iii. Post-Claim Construction Hearing Briefs.

Case 3:01-cv-00577-CFD     Document 168-11     Filed 03/03/2006     Page 15 of 26

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 71 of 116

After the claim construction hearing, Lockheed Martin argued that "from" in Claim 1 means "a starting point" and cannot be constructed to mean "at." *See* 4/15/05 Int. Brief at 13. Therefore, Claim 1 "applies to filters located outside of the display and Claim 2 applies to filters located inside the display." *Id.* Lockheed Martin discounted Honeywell's argument that both Figure 2 and Figure 3 disclose that the filters are located inside the local color display and that Claim 1 therefore covers both of these embodiments, because not every claim must read on every embodiment. *Id.* (citing **[**155]** *Johns Hopkins,* 152 F.3d at 1355). In addition, Lockheed Martin asserted that Honeywell admitted at the claim construction hearing that Claim 2 does not read on Figure 1. *See* TR at 359.

d. The Court's Construction Of "Filters Light From The Local Color Display" In This Case.

The term "a first optical filter" in Claim 1(a) of the '914 patent consists of the noun "filter," modified by the adjectives "first" and "optical" to describe the order and functional type of filter. The term "filter" also is modified first by the phrase "filters light from the local color display" that described the purpose or function of the "first optical filter," which necessarily requires: 1.) the presence of a local color display; 2.) light emanating from the local source of light; and 3.) light filtered at least once thereafter, *i.e.*, by the first filter.

Accordingly, the court construes "filters light from the local color display" as: "the starting point for filtering light occurs at the filters."

Contrary to the Government's representation, *see* TR 362, the specification at the Detailed Description of the Invention Section does designate Figure 1 as the preferred embodiment. **[**156]** *See* '914 patent, col. 2, l. 49. The specification clearly provides that the "display system" invention "can be used by other viewers." *See* DMX 1 ('914 patent, col. 2, l. 52).

7. "Notch Filter."

The language of Claim 1(a) states that "a first optical filter . . . is a notch filter that passes light . . . and that substantially blocks light associated with color bands[,] other than predetermined color bands." '914 patent, col. 6, ll. 1-6.

The parties have proposed the following competing constructions of "notch filter:"

**[*454]**

| Honeywell's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Notch filter: optical filter that either passes or blocks a narrow range of wavelengths of electromagnetic radiation | Notch filter: a narrowband filter that may block light within the narrow wavelength band or may pass light within the narrow band, and do the opposite outside of the narrow wavelength band |

Honeywell *Markman* Slide 102; Gov't *Markman* Slide 026 (bold added by parties).

Case 3:01-cv-00577-CFD    Document 168-11    Filed 03/03/2006    Page 16 of 26

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!    Page 72 of 116

a. Honeywell's Proposed Construction.

i. Pre-Claim Construction Hearing Brief.

Honeywell's proposed claim construction of "notch filter" did not [**157] differ with that of the defendants, insofar as all parties agree that a "notch filter" either passes or blocks a narrow range of wavelengths of light. See 12/23/04 Honeywell Brief at 22. Honeywell, however, disputed defendants' imposition of "an additional limitation, namely that the notch filter [does] the opposite outside of the narrow wavelength band," as being inconsistent with the language of the claims and the specifications. Id. Therefore, Honeywell warned the court that if defendants' construction was adopted, it would "exclude a common type of notch filter, namely a filter with multiple notches, such as a triple notch filter." Id.

ii. At The Claim Construction Hearing.

At the claim construction hearing, Honeywell advised the court that the use of "notch filter" was generic and therefore could be limited to either a single notch filter or a multi-notch filter.

HONEYWELL'S COUNSEL: Plaintiff's construction of notch filter is that it is an optical filter that either passes or blocks a narrow range of wavelengths of electromagnetic radiation. Defendant's construction generally agrees with that -- well, does agree with the first part of our construction, but [**158] then inserts a second component to the construction that says that it does the opposite outside of the narrow wavelength band. And what this is all about is that --

THE COURT: Let's talk about what a notch is.

HONEYWELL'S COUNSEL: Yes. I have that, Your Honor. First of all, a notch filter, the key issue is whether or not a notch filter has this element of requiring to do the opposite, and what this goes to, Your Honor, once again, is the notion of whether a notch filter is limited to a single notch or excludes multi-notches as it is used in the patent and understood by one skilled in the art. And I can show you what a notch filter is.

THE COURT: Good.

HONEYWELL'S COUNSEL: Okay. A notch filter is a filter that has a portion, it is used to basically allow a range of wavelengths to be passed or blocked. So you can think of that, if I have a red filter, just a single red filter that I put over a white light, Your Honor, which has the entire visible spectrum in there all mixed together, which is why it is white. And if you put the red filter over that, the filter will only permit the red light to go in, go out, and it will exclude the other red light to go out, if it is a single notch [**159] filter. If it is a multi-notch filter, it may permit, say, red, green and blue light to come out, but block everything else in between.

THE COURT: So what, notch means one color?

HONEYWELL'S COUNSEL: Notch means -- notch is referring to the notch in the wavelength spectrum which you see up here, Your Honor. The reason it is called a notch filter is that this is the notch. Here is the wavelength. This is the light. If this is your white light coming out of here, this spectrum was all the white coming out. The notch, see, this is zero and this is -- well, in this particular

Case 3:01-cv-00577-CFD    Document 168-11    Filed 03/03/2006    Page 17 of 26

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                Page 73 of 116

instance, it will be not letting any light through in these wavelength ranges and only letting out what they call a notch. And they call it a notch because it sort of cuts out of the spectrum a notch and let's the red light through. And this notch filter, you have the light letting through -- the filters are letting through the blue line, the green light, and the red light and blocking everything in between. So it has got a notch - and this has notch, okay? Now, in the patent, that is significant, because we use **[*455]** these notch filters in the patent to alter the characteristics of the light. Remember when we talked **[**160]** in the beginning about using, for example, a red filter, which is one notch of the notch filter, to block certain wavelengths and pass certain wavelengths, lambda 1 is the light permitted through the notch. It would look like the red notch over there. Likewise, the green filter passes only the green notch and the blue filter only the blue notch. And then you combine those three colors together on the front face of the projector, which is defined as 55 in the display, to combine them all together to make an image just like here.

THE COURT: What does the word notch mean?

HONEYWELL'S COUNSEL: The notch means the notch out of the visible spectrum that is either allowed to pass through or not allowed to pass through.

THE COURT: One notch equals one color?

HONEYWELL'S COUNSEL: One notch equals -- well, it can or cannot be limited to one color but it is at least limited to a wavelength range. It doesn't have to be associated with a particular color, so one notch per wavelength range.

THE COURT: All right.

HONEYWELL'S COUNSEL: Now, the defendants would like to limit the term, notch filter, to read in that it is a single notch filter, and they say that instead of meaning notch filter **[**161]** in the claim, they meant to write single notch filter and that would then limit it to the circumstances you have on the left-hand side. The plaintiffs make -

THE COURT: What would the plural of notch filter be, notch filters?

HONEYWELL'S COUNSEL: No, no, you would use --the generic term is notch filter. And if you want to have a single notch, you call it single notch filter. If you want multi-notch, you call it multi-notch filters. Again, we will --

THE COURT: But you didn't use the word multi-notch.

HONEYWELL'S COUNSEL: We didn't use the term single notch either. The generic term is notch. That's the point of the discussion here. There is nothing in the ordinary meaning of notch filter that requires a single notch. To the contrary, it is common parlance, both within the industry, filter area, and even in patents to use the term notch to talk about either single or multi-notch filters, okay?

TR at 385-89.

Honeywell also argued that the language referring to color bands in Claim 1 "are multiple bands being passed . . . that correspond to the multiple notches. A fair reading of the patent is there is no way to get those multiple bands or to cover a full color display unless **[**162]**

Case 3:01-cv-00577-CFD    Document 168-11    Filed 03/03/2006    Page 18 of 26

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 74 of 116

you, in fact, have a notch filter which is passing multiple bands which makes it a multi-notch filter. So from the face of the patent and the claim itself, it is clear that certainly multi-notch filters are contemplated." TR at 391. Therefore, Honeywell concluded that since the specification contemplates a full color display, multiple notches must be used and the term "notch filter" must not read a multi-notch filter out of the claim. *See* TR at 392.

iii. Post-Claim Construction Briefs.

In Honeywell's post-claim construction briefs, prior art is discussed, *i.e.*, U.S. Patent No. 4,663,562 (the "Miller Patent") that discloses a multi-notch filter in the specification thereof. *See* 4/1/05 Honeywell Brief at 28. The Miller Patent also used the specific terms "multi-notch didymium filter" and a "multi-notch filter" in the claim language, although the latter uses the term "notch filter." Honeywell represents that the "use of a multi-notch filter [in the Miller Patent] was "indicative of what those skilled in the art generally believe a certain term means." *Id.* at 29 (quoting **[**163]** *Vitronics*, 90 F.3d at 1584). Therefore, Honeywell concluded that "multiple color bands implies multiple notches, one for each color band, as taught for example, by the Miller patent." 4/15/05 Honeywell Brief at 10.

 **[*456]** b. The Government's Proposed Construction.

i. Pre-Claim Construction Hearing Brief.

The Government argued that "one of ordinary skill in the art would conclude that the term notch filter means a narrowband filter that may block light within the narrow wavelength band or may pass light within the narrowband, and do the opposite outside the narrow wavelength band." 1/14/05 Def. Joint Brief at 25. Although the Government recognized that the term notch filter is not defined in the '914 specification, the Government argued that Claim 1 provides that "the first optical filter is a notch filter that passes light, comprising predetermined color bands . . . and that substantially blocks light associated with color bands [.]" '914 patent, col. 6, ll 2-3, 5. Therefore, a notch filter is one that both "passes light" and "substantially blocks light." *Id.* The specification, however, provides that the "light blocking device 39 on the ANVIS *may* therefore be **[**164]** a notch filter for blocking light corresponding to the narrow color band ." '914 patent, col. 5, ll. 13-15 (emphasis added).

ii. At The Claim Construction Hearing.

At the claim construction hearing, the Government argued that a notch filter "could also be termed . . . a band pass filter . . . no light is getting through, and then . . . you let some light through and then you go back up on the other side." TR at 400-01. "At zero . . . no light is getting through and then as you get to this wavelength here, you drop down and you . . . let some light through . . . now what you have is a pass, passage of a band of light. . . . The other thing is what is called a band stop filter which according to this representation here, you would have something going along at the bottom and it would peak up like this and come back down. . . . And so there you would have light over a broad range transmitted and only blocked within a certain area. And that's what's called a band stop filter." *Id.* In addition, the Government asserted that notch filter "can either pass or block light with that narrow range of wavelengths . . . the patent as a whole is silent on what the transmission of a notch filter **[**165]** looks like." TR at 401-02.

THE COURT: Let's flip back to your other chart, you go to "it may block light or may pass light."

GOVERNMENT'S COUNSEL Right.

Case 3:01-cv-00577-CFD     Document 168-11     Filed 03/03/2006     Page 19 of 26

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 75 of 116

THE COURT: What would be required for [a notch filter] to do either?

GOVERNMENT'S COUNSEL Well, it has to do one or the other. It may block light or it may pass light. And I think that that's just implicit in the --they say either passes or blocks. We say may block light or may pass light. I think we were trying to be more explicit, that it may do one or may do the other.

THE COURT: I thought the notch filter always passed the light.

GOVERNMENT'S COUNSEL If you have one -- no. And I think that comes out here. And I will show you how it comes out in the specification as well that the patent contemplates that it can pass or block within a narrow range.

THE COURT: What features does it have that makes it do that or what makes it do that?

GOVERNMENT'S COUNSEL What makes it sensitive to that one band?

THE COURT: Yes. What about the notch filter allows it to do one or the other?

GOVERNMENT'S COUNSEL It is the construction of the filter. I'm not a filter expert. I think once we get our experts on the stand they can explain [**166] it better than me. It has to do with -- they are typically called interference filters. And as I understand it that means that the light interferes with itself in certain wavelength ranges and doesn't in others. So it is able to go through in some and not in others.

THE COURT: But there is nothing inherent within a notch filter which does one or the other?

GOVERNMENT'S COUNSEL Well, I think once you have built it, it is a notch filter and so it does one or the other. But when you say notch filter, it could mean one or the other. You are talking about [*457] two different pieces of hardware. Notch filter could be a band pass or a band stop filter. . . . Now, you asked me why it must block when all the examples we saw from [Honeywell's counsel] were passing a narrow range. I think that comes straight out of the specification, which says light blocking device may be a notch filter for blocking light corresponding to the narrow color band, lambda sub 1. There you go. Going back to it has to be read in light of the specification. The specification clearly says that the notch filter blocks light within a narrow band. Now, it also comes out here, why it must do the opposite outside of that, [**167] because, as I have highlighted there, this provides a minimum of filtration of total light input. The idea is the --you want to block light in the narrowest band possible and let the rest of the light in because as you can see on figure 3, the excerpt I pulled out there, the filter they are talking about is the filter on the ANVIS. As we talked about before there is always a trade off with the sensitivity of the ANVIS versus what lights are getting out of the display. So you want your ANVIS to be able to see as much light as possible because it allows you to see better at night. So you want lambda sub 1 to be as narrow as possible. And you want to allow all the other light in that you can. That's what this part of the specification talks about. It shows clearly that it needs to --

THE COURT: What do I do with the word "may"?

GOVERNMENT'S COUNSEL Right. It is because as I said before, the figures are exemplary. They show that this is one embodiment of the invention. We believe

Case 3:01-cv-00577-CFD    Document 168-11    Filed 03/03/2006    Page 20 of 26

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 76 of 116

that it is clear that notch filter must do at least what it says that it may do. Now, it may do other things as well, or, as I said before, as [Honeywell's counsel] put up here, it may be a band pass filter **[**168]** which would be the opposite of what it is talking about here. But you have got --it would be the conversion. You can think of them as mirror images of one another, the mirror image of a band pass filter would be a band stop filter, if you inverted it.

THE COURT: Okay. Both of which could be notch filters?

GOVERNMENT'S COUNSEL Yes, Your Honor.


TR at 402-05.

iii. Post-Claim Construction Hearing Briefs.

The Government's post-claim construction hearing briefs continued to insist that in addition to passing or blocking light, the specification required that the notch filter also "must have a specified characteristic outside the narrow band." 4/1/05 Gov't Brief at 29. Therefore, the Government asserted that the filter "'does the opposite' - namely block - light outside the narrow range." *Id.* at 30. Not surprisingly, the Government dismissed Honeywell's view that the notch filter could include multiple notches as contrary to the claim and specification language. *Id.* at 31; *see also* 4/15/05 Gov't Brief at 12-13.

c. Intervenor Lockheed Martin's Proposed Construction.

i. Pre-Claim Construction Hearing Brief.

Lockheed Martin's pre-hearing construction of "notch filter" **[**169]** was the same as that of the Government. *See* 1/14/05 Def. Joint Brief at 25-26.

ii. At The Claim Construction Hearing.

At the claim construction hearing, the issue of whether notch filters meant a single notch or permits the use of a multi-notch filter was explained by Lockheed Martin:


LOCKHEED MARTIN'S COUNSEL: So what we're saying is that the notch filter here is referring to a single notch. I will discuss that a little bit more but it is referring to a single notch that passes light comprising predetermined color bands and also has a feature that it substantially blocks light. It passes light including a predetermined red color band and then substantially blocks light associated with color bands other than said predetermined color bands. So it doesn't define the size of the notch but it simply defines the size **[*458]** of the characteristic which are to be both pass and block.

THE COURT: By size, you're not meaning several notches, you are saying how long?

LOCKHEED MARTIN'S: Right. It doesn't say how wide, how wide or how long.

THE COURT: How much of the band is taken up?

Case 3:01-cv-00577-CFD    Document 168-11    Filed 03/03/2006    Page 21 of 26

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 77 of 116

LOCKHEED MARTIN'S: Right, how much of the band is taken up, how deep is the notch. And it doesn't say, there [**170] is no reference there that there is more than one notch. Now, our position is based on the language of the claim that's understood by one of ordinary skill in the art, and, again, it doesn't, this construction doesn't contradict the intrinsic evidence and specification and prosecution history. The specification --

THE COURT: You mean, do we run into a problem with this notch filter issue, meaning "a" doesn't mean one?

LOCKHEED MARTIN'S: We run into a problem where "a" means one or more notch filters? You do when you say a first optical filter is a notch filter. But it is describing here what we have, it is describing a notch filter. So, I mean, if they are going to say one or more optical filters that are one or more notch filters, I think we run into problems with whether "a" means one or more.

THE COURT: Well, the word "is" before that, though, the tense on that would imply that it is single.

LOCKHEED MARTIN'S: Exactly. We're saying the filter is a notch filter.


TR at 411-12. * * *

In addition to discussing the specification references cited in its brief, Lockheed Martin also discussed the relevance of the prosecution history of "notch filter:" [**171]


LOCKHEED MARTIN'S COUNSEL: We see a reference to a letter that the Patent Office issued on March 20th, 2001. And that letter, by the way, went to both the '760 application and the '914, the application that was then the '914 application because the '760 application had not yet been banded. So the identical letter went out for both the '760 and the application that was the then --the one that was supporting the '914 patent. And there the Patent Office rejected the claims that were pending as being unpatentable over a patent issued to Swift. And what the Patent Office did is it gave their interpretation of the application, that was the '914 and '760 application.

THE COURT: Were they any more specific in saying why it was unpatentable?

LOCKHEED MARTIN'S COUNSEL: There are more details that go into --on the next page.

THE COURT: Okay.

LOCKHEED MARTIN'S COUNSEL: We have, we give you more from that, more of an extract from it but essentially what you had in Swift was you had a filter, a notch filter at the goggles, not at the display. And the notch filter at the goggles had basically a hole in them to allow a certain amount of light, for example, green light, to pass through because [**172] green light doesn't interfere with the night vision goggles. And so there was some ability to look at a, to have that type of light in the cockpit without interfering with the night vision goggles. But, anyway, what the patent examiner said is that Swift teaches "an effective filter

Case 3:01-cv-00577-CFD    Document 168-11    Filed 03/03/2006    Page 22 of 26

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!    Page 78 of 116

by virtue of the operation" and it is a reference to filter 9 in column 3, where "it may be such as to transmit all available light in the circumstances of use, except for one narrow spectral band." Our point in citing this correspondence is that here the patent examiner is rejecting the application and the claims in the application based on the conclusion by the patent examiner that what was taught in the applications was a notch filter that had one narrow spectral band.

TR at 414-15.

iii. Post-Claim Construction Hearing Briefs.

In the post-hearing brief, Lockheed Martin argued that the specification descriptions concern a single notch filter, although Claim 1(a) admittedly did not specify whether a **[*459]** notch filter is a single notch filter or multi-notch filter. *See* 4/1/05 Int. Brief at 38 (citing **[**173]** '914 patent, col. 3, ll. 34-38) (specification providing that either the first or second filter (23 or 25) will be a notch filter; the other filter (23 or 25) will substantially block the "light of a predetermined red color band, passed by the notch filter."); *see also* '914 patent, col. 5, ll. 13-15 (the "light blocking device 39 on the ANVIS may therefore be a notch filter for blocking light corresponding to the narrow color band ."); '914 patent, col. 4, ll. 52-57 ("a filter 61, such as a bandpass filter [a type of notch filter], may be used with CRT[.]"); '914 patent, col. 4, ll. 59-61 (CRTs "may be provided with high pass . . . filters 62 and 63[.]").

d. The Court's Construction Of "Notch Filter" In This Case.

Honeywell's proposed construction, defining an optical filter that "*either* passes *or* blocks," must be rejected since the claim language provides that a notch filter *both* "passes" *and* "substantially blocks light." '914 patent, col. 6, ll. 2-5 (emphasis added). Since the court is satisfied that the claim language clearly delineates the purpose and function of a notch filter, the court also declined to adopt the Government's more restrictive construction, **[**174]** *i.e.*, defining a "notch filter" as a "*narrow* filter that *may* block light . . . or *may* pass light . . ., and do the opposite outside the narrow wavelength band." *See Renishaw PLC, 158 F.3d at 1248* [HN27] ("A party wishing to use statements in the written description to confine or otherwise affect a patent's scope must, at the very least, point to a term or terms in the claim with which to draw in those statements; without any claim term that is susceptible to clarification by the written description, there is no legitimate way to narrow the property right."); *see also id. at 1249* (quoting *Speciality Composites v. Cabot Corp., 845 F.2d 981, 987 (Fed.Cir. 1988)* ("Where a specification does not *require* a limitation, that limitation should not be read from the specification into the claims."). Although the term "notch filter" is "susceptible" to further clarification, the specification of the '914 patent does not require that the "notch filter" exclude multi-notch filters. A

Accordingly, the court construes "notch filter" to be "an optical filter that has the capacity both to pass and substantially block light **[**175]** and may be a single-notch filter or a multi-notch filter."

8. "Passes."

The parties have agreed that the term "passes," as used in the claims of the '914 patent, means "allows to go through." Jt. Stip. P 3.

9. "Color Bands."

"Color band" does not appear in the '914 patent, although the plural "color bands" is found in

Case 3:01-cv-00577-CFD    Document 168-11    Filed 03/03/2006    Page 23 of 26

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                          Page 79 of 116

Claim 1 (a) to describe the light that is passed at a filter notch, *i.e.*, "a notch filter that passes light comprising predetermined color bands." *See* '914 patent, col. 6, ll. 2-3 (emphasis added).

The parties have proposed the following competing constructions of "color bands:"

| **Honeywell's Proposed Construction** | **Defendants' Proposed Construction** |
| --- | --- |
| Color Band: range of wavelengths within the visible spectrum | Color Band: a range of wavelengths within a single color |

Honeywell *Markman* Slide 118; Gov't *Markman* Slide 031 (bold added by parties).

a. Honeywell's Proposed Construction.

i. Pre-Claim Construction Hearing Brief.

Honeywell's pre-hearing brief argued that "color band" means "a range of wavelengths within the visible spectrum." 12/23/04 Honeywell Brief at 25. Honeywell asserted that defendants agreed with **[**176]** this definition but also imposed an impermissible limitation that the range of wavelengths be "within a single color." *Id.* Honeywell further asserted that because the '914 patent does not specify any particular division of the visible spectrum, there is "no requirement that a particular color band falls within a single color." *Id.* at 26.

**[*460]** ii. At The Claim Construction Hearing.

> HONEYWELL'S COUNSEL: What we say is a color band is a range of wavelengths in the visible spectrum. Visible spectrum is what you can see, it is this.
>
> THE COURT: Correct.
>
> HONEYWELL'S COUNSEL: And the parties agree that a color band is explained as a range of wavelengths. And what we disagree on is that the defendants seek to say, add the word, the color band means a single color band, okay?

TR at 461-62.

\* \* \*

> HONEYWELL'S COUNSEL: The color band definition, like what we discussed before, the color band is a continuum. There are any number of ways around the color band. What we call those colors is a matter of convention, not a matter necessarily of science. It is what individuals over the years have been programmed to call red or to call green or to call blue. And, in fact, you might **[**177]** go to other countries and they refer to it differently. It is frankly very much a cultural thing. It is an industry-specific thing. And so the reason we say that you should not be talking about a color band as limited to a specific

Case 3:01-cv-00577-CFD    Document 168-11    Filed 03/03/2006    Page 24 of 26

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 80 of 116

single color by name is, first of all, the band is a continuum around here. This is the visible spectrum, if you will. And what single color you name it depends very much on how you carve it. Are you going to call it red or reddish orange? And the notion that you would call, pick a single name is not just the -- it doesn't make any sense because what one person calls red, somebody else might call reddish-orange. And what one band, the band includes what somebody calls red, might be a band somebody else calls reddish-orange. And the notion of a color band generically is only intended to make it clear that . . . it starts with wavelengths down here, which are x-rays, for example. And then you have got all the --from there you go to the other end, which is, you know, long electrical oscillations and microwave, infrared, we have x-rays, gamma rays, cosmic rays. These are all in the electromagnetic spectrum. Each one of these can be defined as a range of wavelengths [**178] in the electromagnetic spectrum, but they are not colors because they are not in the visible spectrum. So the notion of a color band is nothing more in this patent than a band . . . that covers the visible spectrum. It is something within the visible spectrum and it is called a color band because the visible spectrum can differentiate it from an x-ray band, cosmic ray band, it is a range of wavelengths. The patent, on the other hand, when it wants to talk about a particular band, it does so. When it wants to talk about the red color band, it calls it the red color band. And when it talks about the green color band, it calls it the green color band. And you can have an orange-red color band and a green-blue color band, it would be a wider band. So the idea that there is nothing in the way the term color band is used that suggests it should be a single color. That doesn't make any sense to suggest that --whether it is a single color or multiple colors depends on how thin you slice it.

THE COURT: Let me ask you this . . . under claim 1(a), you used the word predetermined red color band. Now, to me what that means is you have wavelengths within the parameters of what is red that you predetermined. [**179]

HONEYWELL'S COUNSEL: Yes.

THE COURT: It could be from wavelength here to here, all these are red, or it may be within that red grouping.

HONEYWELL'S COUNSEL: That's correct, Your Honor. We start out with color band and sort of whistle your way down. Color band is something within the visible spectrum, and then you can have a red color band which says that red color band is now within the red portion or red region of the visible spectrum. And now you can have a predetermined color band or I think it is also called, in claim 2, the narrow band of the red color band, so you can have a portion of the red color band. So in each instance, though, the patentee has said when he wants to refer to a particular aspect of the color band, of the visible [*461] spectrum, he tells you what aspect he has in mind.

THE COURT: Now, why wouldn't the inventor put in . . . specific, wavelengths between X and Y? . . . Why don't they say, including - I don't know how you measure these things, but by wavelength 1 to wavelength 3?

HONEYWELL'S COUNSEL: -- actually, the inventors certainly could have written a claim that said we want to block everything between 620 and 630. I think that's your question, Your Honor, [**180] why don't they instead say we're going to call that a predetermined color band.

THE COURT: Right.

Case 3:01-cv-00577-CFD    Document 168-11    Filed 03/03/2006    Page 25 of 26

FOCUS - 12 Results – public w/3 notice w/25 claim w/3 constru!                    Page 81 of 116

HONEYWELL'S COUNSEL: I think the answer is that shows manifest intention that the claim shouldn't be narrowly limited to a specific range of wavelengths, but should be limited to what the people consider to be the red color band and red region.

TR at 467-72.

\* \* \*

HONEYWELL'S COUNSEL: We would agree with the defendants that the color band is a range of wavelengths. And I believe we have agreement that that range of wavelengths has to be within the visible spectrum. The place we seemingly disagree with the defendants on is whether or not you need to be -- a color band has to be associated with a specific single color. And just to point out the dilemma in doing that, Your Honor, as I indicated previously, you can divide up the spectrum by any variety of color names, but if you look, for example, over here, that -- this would be a color band[.]

TR at 479-80.

\* \* \*

HONEYWELL'S COUNSEL: Your Honor, let me answer the question you were interested in first and then I will hit the other points. . . . When we get to the claim on color bands, we're not designing to [\*\*181] a color band. We're designing to the red, green, and blue color bands, which are later on specified in the claim. For example, here, in claim 1, we're designing to the red color band and if we had claim 2 up, I have it here, because [the Government's counsel] put it up, there you are designing to the specifics called out, blue, green, and red color bands. What I mean by that is when you want to practice the invention, you know you need a blue, green, and red color band. And the engineer, the person who -

THE COURT: But the second portion of 1(a) says associated with color bands other than predetermined ones, which could be a large --that could be a bit of a guessing game, wouldn't it?

HONEYWELL'S COUNSEL: No, because you know which ones you are blocking. It says it is a filter that passes light comprising a predetermined color band, including the red color band. That means it has to be at least red, it is passing some other colors, that's how you get the color display. And it substantially blocks light associated with the other color bands. All that says, Your Honor, is we're going to figure out which ones are passing, it is going to be red and something else. So if it is a full [\*\*182] color display, it is passing red, green, and blue, and it is blocking -

THE COURT: What about the associated with? What does that mean, associated with color bands?

HONEYWELL'S COUNSEL: And blocks light associated -

Case 3:01-cv-00577-CFD    Document 168-11    Filed 03/03/2006    Page 26 of 26

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 82 of 116

THE COURT: Next to?

HONEYWELL'S COUNSEL: Because the color bands are the mathematical formulations of what is part of the spectrum.

THE COURT: What does associated with mean?

HONEYWELL'S COUNSEL: So it is the light, it is the light that is in those wavelengths of that color band. So the light associated with the red color band, if we assume the red color band was 600 to 620, the light associated with the color band would be the light at 600 to 620.

THE COURT: Isn't that substantially blocks light within, would have been a better way of saying it if that's what you wanted to do?

[*462] HONEYWELL'S COUNSEL: No, not if it is. This is the predetermined color band. So it is –

THE COURT: I am looking at the part that goes, "and that substantially blocks light associated with color bands other than said predetermined color bands."

HONEYWELL'S COUNSEL: Yeah, maybe within or maybe at. We can always sit here and sort of figure out another way to write it, but that's what it means. [**183] I think that's -- I have never got focused on that language. It is clearly the light, though, at those wavelengths. I don't think that's particularly in dispute. So it blocks the light. Let's assume we said that the color band that is --it says it is passing certain light, that's the reds and greens, and it is blocking the blues, okay. Then it is blocking the light associated with the blue color band, but the claim --which would be the range of wavelengths that are blue. But the claim is not attempting to specify anything other than say -- which is they clearly want to block red and depending on what other colors you want to let through, you are either going to block them or pass them. It doesn't really have anything to do with what the color bands are in terms of how you specify them. What is claim --

THE COURT: Well, within this, let's just stay within 1(a) right now. Is the only thing that's predetermined is red?

HONEYWELL'S COUNSEL: The only thing that is required to be predetermined is red. But it says it passes light comprising predetermined color bands, plural, including a red. So it has got to be more than one band but at least one of the bands has to be red. This all goes [**184] to the notion that claim 1 is, again, not specific to whether it is full color, whether you have the idea of three bands or two bands. You know you have to have more than one band. The claim is being drafted in a way that is broad enough to be multiple color bands, whether it is two or three, and doesn't tell you which ones are being blocked and which ones are being passed. And it doesn't need to. All it is telling you is for sure you have to block the red.

THE COURT: Wasn't that this other gentleman's point, it doesn't tell you that and how would someone know?

HONEYWELL'S COUNSEL: You don't have to know. The invention only worries about making sure you block the red. And whatever else comes and goes, is going to affect the color gamut associated, the colors you can get out of your display.

THE COURT: Because the red is the only thing we're worried about.

HONEYWELL'S COUNSEL: So the claim is intentionally broad to make sure, okay, we know red has to be stopped, but now there is going to be other things that are stopped, other