Case 3:01-cv-00577-CFD    Document 168-12    Filed 03/03/2006    Page 1 of 23

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 83 of 116

things that pass. And we're not necessarily going to decide here now because that's not really the important part of the invention. The important part of [**185] the invention is making sure that you at least block the predetermined red color band.

THE COURT: Why are they making the argument they are making? I am going to flip it on you.

HONEYWELL'S COUNSEL: I don't know for sure, but I have a guess. I am trying to think of what is the best exhibit to use to explain this. Maybe it is -- this is the Westinghouse guide, Plaintiff's Markman Exhibit 24. This is a phosphor handbook. This is a book we're going to see more of these later on, but these are specifications for particular phosphors. And in this particular case, it is -- it happens to be an orange, what they call an orange - red phosphor. And so what that means is that this area from here to here (indicating) is clearly a range within the color portion of the spectrum. It satisfies our definition. And our definition never says it is the entire spectrum. It says it is a range within. So we're not trying to cover the entire visible spectrum. It is always a subset of it. But you see this particular one goes back all the way down from roughly 550 and all the way up to --I don't know where it trails off and that clearly would be a band, it clearly is associated with something, with red and [**186] orange, but it is not associated with a single color. But it is a range of wavelengths in the [*463] color spectrum. And I assume that they would probably want to say that this is not a color band. I think it also comes into play when they try to carve up certain bands, they want to call in Plaintiff's Markman Exhibit 44. . . . When they were trying to -- when defendants were trying to explain their theory of why claim 1 has multiple color bands instead of just one, they said, well, under their definition, maybe not ours, this band covers both red and orange. So they would want to say that's multiple bands, and in our definition, we would say, no, that is a band within the visible spectrum here. It happens, and it is a range within, it is not the whole spectrum, and it is a range within the color portion, which makes it a color band. And it happens to be associated with these two, this area, which, one may call --they would call, red and orange. So they would say that's not one band, it is two, and we say no, it is one band, it is one range, it is within the color spectrum. And just because somebody chose to call it red versus orange doesn't make it two color bands. It clearly -- see, it [**187] has, this is a filter, but if you assume this is light, it has, you see, the characteristics of being one band. This also gets to the point that [the Government's counsel] said, which was what he said, in claim 2, that he says when they meant bands, plural, they said bands, and when they meant band, singular, they must mean band singular, so it must mean one color. And he pointed to the claim where he talks about having blue, red, and green color bands, plural, and he said uh-huh, down here, when they want to talk about one band, they talk about the green color band. That's, I think, making our point once again, that there are --see, we're not suggesting that the color band is the entire spectrum. And when you talk about red, green, and blue, they are separated apart. So they are separate bands. They happen to be called red, green, and blue. And when you want to talk about one of those bands, one of those ranges within the color spectrum, you talk about a red band. We're not saying, we have never said this whole thing is one big band and then that's why it should be singular, not plural. So the claim is entirely consistent. There are three bands, that's why you use, when [*464] you are [**188] talking about all three, it uses a plural. And when it talks about the single band, it talks about it in the singular. But nothing in the definition of color band by itself says we have to figure out and call it by some conventional single name. And if we can't find the color system that comes up with a name that particular band, it is not a color band. It is clearly a range within, regardless of what you call it.

TR at 500-08.

b. The Government's Proposed Construction.

i. Pre-Claim Construction Hearing Brief.

Case 3:01-cv-00577-CFD     Document 168-12     Filed 03/03/2006     Page 2 of 23

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 84 of 116

Lockheed Martin's pre-hearing construction of "color band" was the same as that of the Government. *See* 1/14/05 Def. Joint Brief at 28-34.

ii. At The Claim Construction Hearing.

GOVERNMENT'S COUNSEL: We agreed that color band is a range of wavelengths. And we actually agree that it is the range of visible wavelengths. The difference is whether it is within a single color. We believe it is clear from the extrinsic evidence, clear from claim construction rules you don't read a word out of the claims that it needs to be within a particular color. I want to point out that -

THE COURT: How would they be reading out? . . . So, in other words, that his construction [**189] would be band equals a range of wavelengths? Is that what you are saying?

GOVERNMENT'S COUNSEL: Right, Your Honor, by adding in color, specifying it is a color.

TR at 483.

* * *

GOVERNMENT'S COUNSEL: Claim 2 uses color bands a number of times. But if you notice, every time it refers to one color, it is a color band. Every time it refers to multiple colors, it is color bands. I think that clearly shows that every time you are talking about a color band, you are talking about one color, a primary color. It doesn't have to be a primary color but the claim clearly shows that it is a primary color. The only thing time you get into multiple colors, the blue, red and green is color bands.

THE COURT: But how could you convey to someone that you are just working within the wavelengths that we, most people look at as blue without saying it the way they did? What would you suggest they do?

THE WITNESS: I guess I don't follow the question.

THE COURT: Well, what you are arguing is that every time they use bands they have several colors. Every time they use the word band, they only have one color. And therefore, what you are suggesting is that your argument is band means one [**190] color. And they are saying, no, it is the entire, it can be the spectrum or portion of the spectrum, depending on kind of what you want to convey.

GOVERNMENT'S COUNSEL: Yes, Your Honor. I think it is clear from this, and I will show you some more evidence, more intrinsic evidence that a color band is also referred to as being within one color. You are not talking about the whole spectrum. It doesn't make sense to say the red, orange, yellow, green, blue, color band. It just doesn't make sense to say that.

Case 3:01-cv-00577-CFD    Document 168-12    Filed 03/03/2006    Page 3 of 23

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 85 of 116

THE COURT: I would agree with you on that.

GOVERNMENT'S COUNSEL: As I said before, claims never refer to a color band as containing more than one color. So when you use color bands, plural, it refers to more than one color. The specification says --figure 2, each color band provides a monochromatic image in one primary color.

THE COURT: Each.

GOVERNMENT'S COUNSEL: Each color band, meaning one color band provides a monochromatic image in one primary color. Because what this is referring to is figure 3 that they keep flashing up, there is 51 through 53, 51, 52, 53 are the color bands. Each one is one color. And again, the portion of the specification that discusses figure 3 says [**191] figure 3 shows an arrangement in which the local source of light, 50, comprises red, green, and blue color bands. Source for monochromatic display transducers, again, monochromatic again meaning one color.

THE COURT: One color.

GOVERNMENT'S COUNSEL: Again, this is going back to what I said before. The color band under their definition could cover the entire spectrum. Again, reading color out of the claims, you talk about, you know, as I said before, red, orange, yellow color bands. It doesn't make sense to say it that way. Now, there is no evidence where a color band refers to more than one color. And that's just -- you read the whole entire specification, every time you talk about a color band, it is one color. You don't say the red-blue color band. It doesn't make any sense.

THE COURT: Your argument is there are color bands within the spectrum and really what they are using is using the word color band to mean spectrum?

GOVERNMENT'S COUNSEL: That would be the effect of their interpretation, Your Honor, is that the entire visible spectrum could be a color band.

THE COURT: And what you are saying is that their use of color band means this effect or where you are defining it as [**192] each color is a band?

GOVERNMENT'S COUNSEL: That's correct, Your Honor.


TR at 489-92.



* * *

GOVERNMENT'S COUNSEL: One of skill in the art reads red and they say, oh, I know exactly what that means. The lay person has to pick up a dictionary or treatise and educate themselves up to that level of skill but that's what you get when you read it. So there is no need to put that in there. Some level of knowledge is always assumed or else patents would be hundreds of pages long.

THE COURT: Well, I guess I can see your construction by looking at 1(a) because

Case 3:01-cv-00577-CFD    Document 168-12    Filed 03/03/2006    Page 4 of 23

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 86 of 116

[*465] when they decided to talk about red color and they have got that -- and then they have associated with other color bands, meaning other bands of color. That's what I was mentioning before. So they did not really mean to have it being associated with the entire spectrum.

GOVERNMENT'S COUNSEL: Exactly, Your Honor.

TR at 495-96.

iii. Post-Claim Construction Hearing Briefs.

In the Government's post-hearing brief, "color band" was asserted, without citation, to mean: "range of visible wavelength within a single color." 4/1/05 Gov't Brief at 32. The Government also argued that Honeywell agreed during the claim construction [**193] hearing that "color band" means "a range of visible wavelengths, but later modified its construction to mean "light that can be characterized by color." *Id.*; *see also* TR at 479 (Honeywell's Counsel: "We would agree with the defendants that the color band is a range of wavelengths . . . and . . . that range of wavelengths has to be within the visible spectrum."). The court, however, did not find that portion of the record inconsistent with Honeywell's argument that "color bands" means a range of wavelengths within the visible spectrum.

c. Intervenor Lockheed Martin's Proposed Construction.

i. Pre-Claim Construction Hearing Brief.

Lockheed Martin's construction of "color bands" was the same as that of the Government. *See* 1/14/05 Def. Joint Brief at 28-29.

ii. At The Claim Construction Hearing.

At the claim construction hearing, Lockheed Martin argued that unless color band is defined by a specific color: "how does the optical engineer know which wavelengths are of interest? If a color band can go across individual color bands, what do you design to [in order to avoid infringement]?" TR at 498.

LOCKHEED MARTIN'S COUNSEL: I think that when you subject any of the [**194] terms that Honeywell is or any of the definitions or constructions that Honeywell is proposing throughout the course of the Markman hearing, and you subject them to the analysis that [Lockheed Martin's co-counsel] set forth under *Vitronics*, what you are going to conclude is that they don't work. . . . There is going to be examples where Honeywell acted as a lexicographer. There are going to be examples where the specification defines things in a manner that is inconsistent with the construction that is being proposed by Honeywell. And the other thing you are going to find is that there are numerous instances in the intrinsic evidence, the patent file history, where they have surrendered the broader definition that they are now trying to take back and they can't do that.

THE COURT: But they didn't do that on color band.

LOCKHEED MARTIN'S COUNSEL: No, ma'am, they didn't.

Case 3:01-cv-00577-CFD     Document 168-12     Filed 03/03/2006     Page 5 of 23

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 87 of 116

TR at 499-500.

iii. Post-Claim Construction Hearing Briefs.

Lockheed Martin further asserted that "one of ordinary skill in the art would conclude that the term 'color band' means 'a range of visible wavelengths within a single color.'" 4/1/05 Int. Brief at 40. The court was warned that Honeywell's **[\*\*195]** proposed construction reads the adjective "color" out of the term "color bands." *Id.* Therefore, Lockheed Martin argued that the specification refers to single primary individual color bands. *See* '914 patent, col. 4, ll. 46-47 ("each color band 51-53 provides a monochromatic image in one primary color for the full color display.").

d. The Court's Construction Of "Color Bands" In This Case.

The specification provides no definition of "color band." "Color bands" appears at '914 patent, col. 4, l. 51, wherein we are informed that the invention has "different" color bands that are to be filtered by "multiple monochromatic display transducers." '914 patent, col. **[\*466]** 4, ll. 51-52. In Claim 1, where "colorbands" is used, without such adjectives as "predetermined" or "predetermined red," the court construes "color bands" as: "a range of visible wavelengths that may include all colors visible to the human eye." *See* '914 patent, col. 6, l. 5.

On the other hand, when "color bands" is used in Claim 2(a), with adjectives such as "blue, red, and green color bands," the court construes "color bands" "to include the range of wavelengths, within which the colors blue, red, and green are **[\*\*196]** visible to the human eye." *See* '914 patent, col. 6, ll. 13-14.

This construction is consistent with the specification that discusses "color band" in two contexts. First, the specification refers to single primary individual color bands. *See* '914 patent, col. 4, ll. 46-47 ("Each color band 51-53 provides a monochromatic image in one primary color for the full color display."). Second, in Figure 3, local source of light without reservation "comprises red, green, and blue color bands[.]" '914 patent, col. 4, l. 41.

10. "Predetermined Color Bands."

The parties have agreed that the term "predetermined color bands," as used in Claim 1(a) of the '914 patent, requires no further construction aside from the term "color band." Jt. Stip. P 4.

11. "Red Color Band."

The term "red color band" appears in the preamble to Claim 2 and in Claim 2(a)(3) of the '914 patent. The preamble to Claim 2 speaks of "a local source of light having . . . red . . . color bands[.]" '914 patent, col. 6, ll. 13-14. Claim 2(a)(3) provides for a "third filter for filtering the red color band." **[\*\*197]** '914 patent, col. 6, l. 21. n11

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n11 Claim 2(b) and Claim 3 include the term "narrowband of the red color band," which the parties have agreed means "a narrow range of wavelengths within the red color band." Jt. Stip. P 6.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Case 3:01-cv-00577-CFD     Document 168-12     Filed 03/03/2006     Page 6 of 23

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 88 of 116

The parties have proposed the following competing constructions of "red color band:"

| **Honeywell's Proposed Construction** | **Defendants' Proposed Construction** |
| --- | --- |
| Red Color Band: range of wavelengths within the red region of the visible spectrum | Red Color Band: a range of color in the range from 622 to 770 nanometers |

Honeywell *Markman* Slide 130; Gov't *Markman* Slide 043 (bold added by parties).

a. Honeywell's Proposed Construction.

i. Pre-Claim Construction Hearing Brief.

Honeywell's pre-hearing brief argued that the term "red color band" means a "range of wavelengths within the red region of the visible spectrum." 12/23/04 Honeywell Brief at 27. Honeywell asserted that this construction also is consistent with the specification wherein there is a reference **[**198]** to "the first monochromatic display transducer, such as a CRT providing a red color band 51, projects an image in the red spectrum." '914 patent, col. 4, ll. 52-54. In addition, the '914 patent provides: "In the case of CRT displays, the narrow color band may be defined for example as the band at which the most light is transmitted by a phosphor coating on the CRT." '914 patent, col. 5, ll. 8-11. Honeywell insisted that this language "clearly defines the narrow band, (an example of a red color band) as the region of the spectrum where a red phosphor emits most of its light." 12/23/04 Honeywell Brief at 32. Honeywell also argued that since the '914 patent does not define a red color band by reference to any specific range of wavelengths, it would be improper for the court to limit this claim term in that manner. *See* 12/23/04 Honeywell Brief at 27 (citing *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 327 F.3d 1364, 1371 (Fed. Cir. 2003) ("The district court properly declined to read into the claim any specific numerical improvement, such as ten-fold increase in competence."); **[**199]** *RF Delaware, Inc. v. Pac. Keystone Techs., Inc.*, 326 F.3d 1255, 1263 (Fed. Cir. 2003) ("When a claim term is expressed in general descriptive words, it typically will not be limited to a numerical range."). In the alternative, Honeywell argued that if the court were to define "red color band" by using a specific wavelength, a plethora of extrinsic evidence contradicts defendants' selection of 622 nanometers **[*467]** as the lower limit of the "red color band." *See* 12/23/04 Honeywell Brief at 28-33.

ii. At The Claim Construction Hearing.

> HONEYWELL'S COUNSEL: We believe that both parties agree that a color band is a range of wavelength, as we have talked about. We believe that for purposes of the patent, it is more appropriate to define it as the red region of the spectrum, but not to pick one set of numbers that define that with sharp boundaries because we don't think it lends itself to sharp boundaries, as I will go into more detail. We think that the patent itself gives you guidance as to how to determine whether you are red or not[.]

TR at 509-10.

Case 3:01-cv-00577-CFD    Document 168-12    Filed 03/03/2006    Page 7 of 23

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 89 of 116

* * *

HONEYWELL'S COUNSEL: The question is, you know, is this the proper time for the Court to engage **[\*\*200]** in fact-finding, to try to define an absolute bright line lower boundary for red because we don't believe we're ever going to get there in this case. I mean, that could be figured out through testing and psychological studies or through other resources and references, perhaps, but that hypothetical exercise is not going to be important because we know that the displays have red. The government calls them red. And we know that they are right within the range of what people call red, so we will never have to figure that out. Even if you did, that number just won't --doesn't square with the display industry. So maybe if I walk through it, it will become clearer as well. So we had based our construction on the intrinsic evidence, which the patent itself does not put wavelengths in, because everybody knows what the red color band in [sic]. It is a region within the red portion of the spectrum.

TR at 512-13.

iii. Post-Claim Construction Hearing Briefs.

After the claim construction hearing, Honeywell continued to argue that "red color band," as "described in the specification and set forth in the claims of the **[\*\*201]** '914 patent, is light from the local source of light that provides the *primary red color* for producing a full color image in the display." 4/1/05 Honeywell Brief at 30 (emphasis added) (citing '914 patent, col. 4, ll. 46-54) ("*Each color band 51-53 provides a monochromatic image in one primary color for the full color display*, which appears on a front screen 15 as a combined full color image . . . For example, . . . the first monochromatic display transducer, such as a CRT providing a red color band 51, projects an image in the red spectrum[.]"); *see also* '914 patent, figure 3 (wherein the red color band 51 is mixed with the blue and green primaries to generate a full color image).

Honeywell's revised proposed construction was submitted to conform to the evidence at the claim construction hearing that "red color band" could be differentiated from other color bands by wavelengths. *See* 4/1/05 Honeywell Brief at 31. As Honeywell recognized, however, at least three extrinsic sources were cited as providing a wavelength for the "red color band," *e.g.*, the CIE color chromatic diagram, Munsell coordinates, and dominate wavelength. *Id.* Therefore, Honeywell urged **[\*\*202]** the court to adopt "dominant wavelength," *i.e.*, 600 nm "or greater" to demark the boundaries of the "red color band." *Id.* at 31-32.

b. The Government's Proposed Construction.

i. Pre-Claim Construction Hearing Brief.

The Government's pre-hearing brief advised the court that "red color band" inherently would be understood by one of ordinary skill in the art to be "light in wavelengths from 622 to 770 nanometers." 1/14/05 Def. Joint Brief at 30 (citing MCGRAW-HILL DICTIONARY OF SCIENTIFIC AND TECHNICAL TERMS (3d ed. 1984) at 1344); *see also id.* at 31 (citing Ex. 22 at 52 (RCA ELECTROOPTICS HANDBOOK) that red is in the 622 nm-770 nm range). The court also was advised that the prosecution history supported this proposed construction. *See* 1/14/05 Def. Joint Brief at **[\*468]** 31 (citing Ex. 7 '914 patent Wrapper at DOOO364-5,369) (referring to French patent application concerning night vision goggles compatible with "rouge" wavelengths bounded at approximately 620-770 nanometers); *see also id.*

Case 3:01-cv-00577-CFD    Document 168-12    Filed 03/03/2006    Page 8 of 23

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 90 of 116

(citing Ex. 7 '914 patent Wrapper at D000633) (referring to United States Department of Navy document discussing night vision goggles compatible with a color chart showing a boundary [**203] of red at approximately 620 nanometers).

In addition, the inventor of the '914 patent testified during his deposition that "Red is in the range of 625 to 700 (nanometers)." Ex. 5 at 66.

ii. At The Claim Construction Hearing.

GOVERNMENT'S COUNSEL: We talked a lot about color. I want to go back. I mean, I know that Your Honor has had a chance to review the primer, but color is a psychological response to a physical perception.

THE COURT: I found that very interesting when I read that. Because I certainly -- did not consider it that way.

GOVERNMENT'S COUNSEL: You ask the inventors, I don't remember which one said it, but I asked him, you know, how would you determine if something is red and he said -

THE COURT: Psychological primer.

GOVERNMENT'S COUNSEL: There was a little bit of dispute over which one. I think -- I mean, I think there is a physical element to it as well, but whichever one, the key is it is psychological. We asked one of the inventors how would you define what red is. He said I would ask a bunch of graduate students and do a study, but the key is the study has been done and that's what that Beare study that was cited by the plaintiffs talks about.

[**204] TR at 549-50.

* * *

GOVERNMENT'S COUNSEL: You look at the claim context first. I know a lot of times I will come across things I know from the context I can't figure out, and I have to go to the dictionary. This is one of the instances where that's the case here. So we believe that since the patent doesn't define it, it is not defined anywhere in the intrinsic evidence, you have to say, well, what does one of ordinary skill in the art say about it. And we believe the [MCGRAW-HILL DICTIONARY] authoritative, famous book, shows clearly 622 to 770. There is no disputing that's what it says. Now, it is backed up by the [RCA ELECTRO-OPTICS HANDBOOK.]

TR at 552.

Case 3:01-cv-00577-CFD    Document 168-12    Filed 03/03/2006    Page 9 of 23

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 91 of 116

* * *

GOVERNMENT'S COUNSEL: Now, I want to talk about Honeywell's construction briefly. There are a number of problems with it, but I think the Court is focused in on the most important one. They say: Well, okay, it is inappropriate to construe red color band to any particular range of wavelengths. [Honeywell's counsel] said today maybe we can do a study and figure out what it is. That's not what that says in their brief. I don't know what their position is. But if it is this first one, patent is **[**205]** indefinite, claim is indefinite because you can't figure out whether you are in the red color band or not.

THE COURT: That's why I asked this gentleman before, why didn't the Patent Office pick that up.

GOVERNMENT'S COUNSEL: I mean, I really can't say. I think it is because the patent examiner has the same understanding of what red means as we do, which is that it is set within a particular well-known wavelength range. Now, what I am saying is that if you adopt their definition, it is indefinite because you cannot find whether you are inside the claim or outside the claim. . . . That's only if one of skill in the art would understand the bounds of the claim, when you read the claim. Now, we think that they would. They think that one skilled in the art wouldn't. And you would have this vague -

THE COURT: Remember yesterday when I asked the question, who was the person skilled in the art and whether or not they had to have --I probably said it inartfully, but aviation background, okay? **[*469]** And it seemed to me that that question is equally relevant here because one who is skilled in the art, it is more than just aviation, it is in terms of what is used in [instrument and panel lighting, **[**206]** ] IPL they would have to be skilled in IPL?

GOVERNMENT'S COUNSEL: I think the knowledge of night vision goggle compatible lighting is relevant.

THE COURT: Which is the broader category.

GOVERNMENT'S COUNSEL: But the claims are construed as one of skill in the art at the time of the invention.

THE COURT: And you wouldn't have had the IPL at that time?

GOVERNMENT'S COUNSEL: You would have had IPL. You wouldn't have had NVIS red. So you go and ask -

THE COURT: Which came up in '88.

GOVERNMENT'S COUNSEL: Right. So that's another reason why we think NVIS red is inapplicable. The wavelength cutoff, sure, they don't change over time, but somewhere, [the inventor] writing the patent in 1985 had no idea what NVIS red was because it didn't exist yet, so how could he have referenced that?

THE COURT: Right. And you don't want to use the word IPL. You gave me -

GOVERNMENT'S COUNSEL: Instrument and panel lighting.

THE COURT: I have got that. There was a broader category you used a moment ago.

Case 3:01-cv-00577-CFD     Document 168-12     Filed 03/03/2006     Page 10 of 23

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 92 of 116

GOVERNMENT'S COUNSEL: Aviation red.

THE COURT: No, no.

GOVERNMENT'S COUNSEL: Night vision compatible lighting?

THE COURT: Yes.

GOVERNMENT'S COUNSEL: Okay.

THE COURT: Hold on. . . . If I use **[**207]** that term in the time the patent was filed, that would have been a known specialty?

GOVERNMENT'S COUNSEL: I think if you talk to someone who was knowledgeable in night-vision goggle compatible lighting and displays, we will add that in there since this talks about displays, that they would have had knowledge in display, manufacturing for cockpits.


TR at 572-75.

c. Intervenor Lockheed Martin's Proposed Construction.

i. Pre-Claim Construction Hearing Brief.

Lockheed Martin's pre-hearing construction of "red color band" was the same as that of the Government. *See* 1/14/05 Def. Joint Brief at 29-35.

ii. At The Claim Construction Hearing.


LOCKHEED MARTIN'S COUNSEL: Honeywell's construction potentially includes any range of visible wavelengths. And it is regardless of the color, and so there are no divisions. There are potentially no limits. And we think that such a construction really violates one of the fundamental tenets of patent law that we have been talking about over the past two days. And that is that a patent has to have metes and bounds. It has to have some definite tightness to it so people that are trying to improve upon what's there or make it better know **[**208]** what the invention is so they know what they are trying to improve upon. And we think that the construction of color band doesn't enable people to accomplish that.

THE COURT: Why wasn't that picked up by the patent examiner?

LOCKHEED MARTIN'S COUNSEL: I don't know, Your Honor. It could have been the patent examiner interpreted the term in accordance with our definition. Because, again, yesterday when –

THE COURT: Because if your point is valid, that is a big issue.

Case 3:01-cv-00577-CFD    Document 168-12    Filed 03/03/2006    Page 11 of 23

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 93 of 116

TR at 496-97.


* * *

LOCKHEED MARTIN'S COUNSEL: If you look at Honeywell's proposed construction, it doesn't provide any guidance. **[*470]** If a color band isn't a specific band of blue, red, or green, how does the optical engineer know which wavelengths are of interest? If a color band can go across individual color bands, what do you design to? So in order to know which color bands to design to --

THE COURT: That's a very good point.


TR at 498.

iii. Post-Claim Construction Hearing Briefs.

Lockheed Martin represented that "based on the intrinsic evidence, one of ordinary skill in the art would determine that the term "red color band" means a "range of colors . . . from 622 to 700 nanometers." 4/1/05 Int. **[**209]** Brief at 41. For the construction of this term, the court was advised that it was appropriate to consult dictionaries and technical treatises, along with the intrinsic evidence, *i.e.,* specifically the MCGRAW-HILL TECHNICAL DICTIONARY ( DMX 18 at DE-963; DMX 21 at DE-980) or the RCA ELECTRO-OPTICS HANDBOOK (DMX 22).

Here, Lockheed Martin emphasized the relevance of the prosecution history to the need to construe the color red within a specified wavelength range. Since Honeywell relies on a February 14, 2001 Information Disclosure Statement citing a French patent designating that the "red color band" begins at approximately 622 nanometers. *See* IMX 36 at DE-1401. Therefore, on June 20, 2002, Honeywell submitted a Supplemental Disclosure Statement, to include a technical article by Breitmaier and Reetz that contained the Kelly Chart of Color Designation of Lights, showing that the "red color band" begins at 622 nanometers. *See* IMX 36 at DE-1670.

Therefore, Lockheed Martin argued that this prior art confirms that one of ordinary skill in the art would define the color "red" in accordance with the defendants' proposed definition, rather than by dominant wavelength, particularly **[**210]** since the '914 patent does not specify a dominant wavelength and the only reference in the specification are to peak wavelength. *See* 4/1/05 Int. Brief at 46 (citing '914 patent, col. 5, ll. 8-12) ("the narrow color band may be defined . . . as the band at *which most light is transmitted* by a phosphor coating on the CRT, typically a five to twenty nanometer band.").

Nevertheless, Lockheed Martin insisted that peak wavelength is "more important" than the dominant wavelength because "optical filters filter the physical manifestation of light, *i.e.,* the peak wavelengths of phosphors in the visible range of the electromagnetic spectrum, and not the dominant wavelength, which is the wavelength at which the human eye perceives color." 4/1/05 Int. Brief at 46. Lockheed Martin also pointed out that Honeywell could have drafted the patent to cover specific lower wavelengths or define red to include "reddish orange, orangey red, or orange," but did not do so. *Id.* at 47. Therefore, Honeywell should not now be allowed to interpret words "to convey the special definition it now asserts." *Id.*

In Lockheed Martin's April 15, 2005 post-hearing brief, the court was urged "to

Case 3:01-cv-00577-CFD    Document 168-12    Filed 03/03/2006    Page 12 of 23

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!    Page 94 of 116

define [**211] the term 'red color band' according to its peak wavelengths," because "one of ordinary skill in the art would utilize peak wavelength because this is where the filtering will occur." 4/15/05 Int. Brief at 20 (citing '914 patent, col. 5, ll. 8-11). In this regard, Lockheed Martin staked out a more aggressive position than the Government by arguing that "subsumed within Honeywell's construction is the apparent belief that if a display produces a color that is defined by a dominant wavelength, then the device must infringe irrespective of the wavelengths filtered by Honeywell's display system." 4/15/05 Int. Brief at 21.

d. The Court's Construction Of "Red Color Band" In This Case.

The term "red color band" is not defined in the claims or specification. Honeywell conceded that wavelengths are an appropriate measure of this term, as it must, in light of numerous citations to the symbol in the specification. See '914 patent, col. 3, l. 38; col. 4, l. 56; col. 5, ll. 7-8, 15. The court, however, declines to construe "red color band" without defining a specific range of light wavelengths, because the claim would be indefinite, in light of the psychological and subjective nature of [**212] the term without such [*471] parameters. n12

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n12 The court is mindful that in Modine Mfg. Corp. v. U.S. Int'l Trade Comm'n, 75 F.3d 1545, 1557 (Fed. Cir. 1996), the United States Court of Appeals for the Federal Circuit held that "technical terms are not per se indefinite when expressed in qualitative terms without numerical limits . . . mathematical precision should not be imposed for its own sake." The court, however, does not view "red color band" as a technical term, but rather as a synonym for wavelengths expressed within a range measure of nanometers. See, e.g., '914 patent, col. 4, l. 13 ("colors at lower wavelengths (red)").

In addition, as will be discussed below, after the claim construction hearing, Honeywell changed its position to agree to defendants' proposed construction of "blue color band" and "red color band" by specific ranges of wavelengths. Therefore, Honeywell's continued insistence that the court should not construe the "red color band" by a specific range of wavelengths, but may do so with regard to "blue color band" and "green color band," has no credible basis in logic.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [**213]

Since defendants agree that the prosecution history of the '914 patent recognized the lower end of a red color band is 620 nm, rather than 622 nm, the court construes 620 nm as the lower end wavelength boundary of the "red color band." See 1/12/05 Def. Joint Brief at 31 (citing '914 Wrapper at D000364-65, 368-69); see also D000633. The court is aware that Honeywell's expert, Mr. Tannas, criticized Dr. Task's opinion that red color band begins at 622 nm, because "numerous prior patents . . . (see U.S. Patent Nos. 4,542,084; 4,390,637; 3,742,277; and 3,721,849) [have] cited a lower range." See PMX 36 P 15 at 4. None of these patents, however, are listed as prior art of the '914 patent. See DMX 1. Moreover, although Honeywell introduced these patents at trial, see PMX 3-6, they are still extrinsic evidence that the court does not need to consult at this juncture in light of the fact that the intrinsic evidence provides a low range parameter in this case.

To determine the high end of the red color band, the court has no alternative based on the record, but to turn to extrinsic evidence. Although both the MCGRAW HILL and RCA ELECTROOPTICS HANDBOOK define [**214] the upper end of the red color band range as 770 nm, the court must decline to adopt that suggested construction since prior art of a related technology is more relevant than dictionary or treatise definitions, albeit latter are



industry-specific and widely respected reference sources. In this case, USPTO No. 4,390,637, filed on September 9, 1981 and issued on June 28, 1983, "X-Ray Absorbing Glass For A Color Cathode Ray Tube Having a Controlled Chromaticity Value And A Selective Light Absorption" describes "highly transparent for the red color light (the wavelength of about 610-780 m)[.]" 4,390,637 patent, col. 1, ll. 29-30. n13 The court has reviewed the entire prosecution history of the '914 patent and related patents and found no reference to USPTO No. 4,390,637. Nevertheless, this prior art is extrinsic evidence and, in the court's judgment, more relevant and reliable than either industry-specific references and the expert testimony proffered by the parties. Therefore, the court construes "red color band" in this case as having an upper end range of 780 nm. n14

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

N13 The invention described in this patent "relates to glass for use as a color cathode ray tubes, and in particular, to X-ray absorbing glass for use as panels of color television tubes having a selective light absorption and a controlled chromaticity value." 4,390,637, col. 1, ll. 8-12. [**215]

n14 Although several federal trial courts have issued constructions related to the wavelength of the color red, these constructions have not been reviewed by the United States Court of Appeals for the Federal Circuit. See, e.g., Metrologic Instruments, Inc. v. PSC, Inc., 2003 U.S. Dist. LEXIS 26636, 2003 WL 22077652, at *2 (D.N.J. 2003) ("Because laser light is usually measured in the range of 640-670 nanometers, . . . the appropriate wavelength of the color red . . . . The 'high band-pass filter, which blocks ambient light with wavelengths above 640 nanometers, is also called the red pass filter. [The invention at issue] lies at 670 nanometers, in the visible region of the electromagnetic spectrum, at or near the color red."); Carl Zeiss Jena Gmbh v. Bio-Rad Labs., Inc., 2002 U.S. Dist. LEXIS 1729, 2002 WL 181699, at *12 (S.D.N.Y. 2002) (federal trial court relying on EUGENE HECHT AND ALFRED ZAJAC, OPTICS (1974), stating that the low end of the red color range was 622 nm and the high end was 780 nm).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Honeywell also argued that in the event that the court construed "red color band" [**216] by a range of wavelengths, the court also should specify that the "dominant wavelength" should be 600 nm or greater. See 4/1/05 Honeywell Brief at 31. Although there was a great deal of discussion at the claim construction hearing about the relevance of dominant [*472] versus peak wavelengths, since the '914 patent did not specifically address this issue, the court has declined to import what might be viewed as a limitation into the '914 patent by construing "red color band" either by a dominant or peak wavelength. See Nellcor Puritan Bennett, Inc. v. Masimo Corp., 402 F.3d 1364, 1370 (Fed. Cir. 2005) (forbidding a federal trial judge from adding a "limitation that is not present in the claim language and is not supported by the specification or prosecution history"). n15

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n15 On April 20, 2005, after the claim construction hearing, Honeywell moved for leave to supplement the record with: Dr. Darrel Hopper, "Draft Standard for Color Active Matrix Liquid Crystal Displays in U.S. Military Aircraft: Recommended Best Practices" (Doc. No. GVT032-0001-00740). Honeywell represented to the court that this document states that red is defined by a dominant wavelength and in the field of military cockpit display, a claimed

Case 3:01-cv-00577-CFD    Document 168-12    Filed 03/03/2006    Page 14 of 23

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!    Page 96 of 116

wavelength of 610 nanometers is considered "red." *See* 4/20/05 Honeywell Motion at 1-5 (citing GVT032-00034; GVT032-00037, Table 4). The court admitted this document into the record to create a complete record, but has not relied on it to construe "red color band" because the document was published in June 1994, almost a decade after the '914 patent issued and therefore is irrelevant. Moreover, the document is not a party admission against interest for several reasons, not the least of which is it is a "draft" and never formally was adopted by the Government for any purpose.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*\*217]**

12. "Predetermined Red Color Band."

The parties have agreed that the term "predetermined red color band," as used in the claims of the '914 patent, means "a specific range of wavelengths within the red color band." Jt. Stip. P 5.

13. "Substantially Blocks."

Claim 1(a) describes a display system comprising a first optical filter that "filters light" and "substantially blocks light[.]" '914 patent, col. 6, ll. 1, 5. Claim 1(b) describes a display system comprising a second optical filter that also "filters light" and "substantially blocks light." '914 patent, col. 6, ll. 7, 8-9.

Claim 2(b) describes a display system comprising a fourth filter that "filters light" and "cooperating with said plurality of filters to substantially block at least said narrowband of the red color band[.]" '914 patent, col. 6, l. 26.

The parties have proposed the following competing constructions of "substantially blocks":

| **Honeywell's Proposed Construction** | **Defendant's Proposed Construction** |
| --- | --- |
| Substantially blocks: obstructs the | Substantially blocks: to render |
| passage of light sufficiently to | a large degree of light unsuitable |
| permit the night vision aid to be | for passage by an optical filter, |
| used for its intended purpose | such that the invention is fit |
| | for the intended purpose |

**[\*\*218]**

Honeywell *Markman* Slide 180; Gov't *Markman* Slide 066 (bold added by parties).

a. Honeywell's Proposed Construction.

i. Pre-Claim Construction Hearing Brief.

In Honeywell's pre-hearing brief, the court was advised that "as used in the patent, *substantially blocks* means to obstruct the passage of light sufficiently to permit the **[\*473]** night vision aid to be used for the intended purpose." 12/23/04 Honeywell Brief at 34 (citing PMX 37 (Tannas Suppl. Report) P 2 at 2; WEBSTER'S at 235 defining "block"). In all three claims utilizing the term "substantially blocks," Honeywell argued that "the objective of the substantially blocking is to permit the night vision aid to work . . . without being disrupted by light from the local color display." 12/23/04 Honeywell Brief at 35 (citing '914 patent, col. 2, ll. 5-7) ("To permit light which originates at the full color display from overwhelming the night vision aid."). The court further was advised that the "benchmark" for determining

Case 3:01-cv-00577-CFD    Document 168-12    Filed 03/03/2006    Page 15 of 23

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!    Page 97 of 116

whether light is "*substantially blocked* is whether the night vision aid can be used for its intended purpose." 12/20/04 Honeywell Brief at 36 (emphasis added).

ii. At The Claim Construction Hearing. **[**219]**

At the claim construction hearing, Honeywell argued that "substantially blocks" is "talking about what night vision goggles do." TR at 702.

> HONEYWELL'S COUNSEL: So Plaintiff's construction is that it obstructs the passage of light sufficiently to permit the night vision aid to be used for its intended purpose.

TR at 704.

> * * *

> THE COURT: Is your noun the same for all of the . . .

> HONEYWELL'S COUNSEL: The noun is different . . . in ours [construction of "substantially blocks"], we're saying it's the night vision aid, to render night vision aid suitable. And in the second, in Defendant's construction, they are saying it renders the invention suitable.

> THE COURT: Is there a difference?

> HONEYWELL'S COUNSEL: Well, we think there is a difference, Your Honor. I don't know how --this is one of those where we're just trying to do what we think the claim says. I'm not sure why -- what the significance of what the issue is, but it's one we didn't reach agreement on. I think the claim example here, it's quite clear substantial blocking -- this is claim 2, substantial blocking that is associated with the fourth filter which is on the night vision aid. So the whole **[**220]** notion is that you're blocking to make the night vision aid work the way it's supposed to work. The --likewise, here, you are substantially blocking --this is in claim 1, to make the night vision aid work. And then substantial blocking up here. It all seems -- the whole invention is associated with preventing interfering with the night vision aid. So I'm not sure what it means when they say, you know, the -- render the entire invention suitable for its intended purpose, versus a night vision aid. So since we don't know what they're getting at, and we do think the claim itself, the whole substantial blocking aspect was relating to the proper functionality of the night vision aid, that's why we have focused on that in our construction. And perhaps we'll learn more from the Defendants and why they think that's incorrect. But there's no requirement --substantially blocked imposes no particular requirement on the colors that are displayed on the local color display itself. It's all -- it's all surrounding what -- it's all happening for the functionality of the night vision aid in both claims. Here even in claim 1, in 1(a), we have substantially blocks the light. But, again, that blocking, going back **[**221]** to figure 1, which there's no -

Case 3:01-cv-00577-CFD    Document 168-12    Filed 03/03/2006    Page 16 of 23

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 98 of 116

TR at 704-06.


\* \* \*

HONEYWELL'S COUNSEL: So in any event, the -- the substantial blocking, again, if you look at figure 1, remember, the whole notion of why we're doing this blocking is to permit the night vision aid to operate as it's intended to, at the same time that it, again, doesn't -- without interfering with the display itself[.]

THE COURT: So the pilot can look at the display and look straight out into the . . . window?

HONEYWELL'S COUNSEL: Right. So there are three areas we disagree on. We already touched on one. I haven't got much more to say on it other than the fact that the third one, which is what we just covered --substantially blocks requires that the night vision aid or the entire --whether substantially blocks requires the night vision aid or the entire invention to be used for its intended purpose. That's the question. We think that intended purpose is a perfectly good way to characterize this term. But we think the perfectly good ought to be looked at in the context of the night vision aid.

THE COURT: Well, your construction . . . you're using the word obstruct the passage of light sufficiently, which to [**222] me means "a lot of."

HONEYWELL'S COUNSEL: Actually, I think it might be the other way around. We're not trying to quantify it. Our second issue -

THE COURT: You're not.

HONEYWELL'S COUNSEL: No. The quantification is does it work for its intended purpose. In other words --but there's no quantification of this in the patent, nor should there be. If the thing works and it's doing what it's supposed to do, then so be it.

THE COURT: Let's back up . . . is there a finite amount of light that needs to be either blocked or obstructed?

 [*474] HONEYWELL'S COUNSEL: The reality --

THE COURT: Do we know?

HONEYWELL'S COUNSEL: Well, I think --I don't think there's a number that exists.

THE COURT: Could you put a number there?

HONEYWELL'S COUNSEL: There certainly have been - there are certainly numbers of things that have been done, well after the patent, to try to figure out well, how good does it have to be, you know, and so forth. That wasn't in existence at the time of the patent. That wasn't in the inventor's head. In the inventor's head was I am going to make something which is unsuitable suitable. Our view is that's sort of self-explanatory in the end, frankly, if this thing makes its way [**223] into a $ 500 million aircraft with a several hundred thousand

Case 3:01-cv-00577-CFD    Document 168-12    Filed 03/03/2006    Page 17 of 23

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 99 of 116

dollar display, it must be there because it's doing its job. And I --we don't think there's really any more that needs to be said about that in these patents. One might come up with another patent that has all sorts of other things and tests and parameters, but that's not what this patent is all about. This patent tells you you're going to do this and make it, and it's going to do what it's supposed to do.

THE COURT: Let's go back to the idea of the engineer looking at this and wants to make one of these things, or make something better than what you have. How does that person know that a -- a person skilled in the art know how much [light] to block?

HONEYWELL'S COUNSEL: Well, you know, frankly, there's no you have to see if it works. There's nothing in the rules or the law that says you can't do routine experimentation. Not everything in the world is set down and quantified. But if it's doing its job, if it's blocking --if it didn't work adequately without the filters and it does work adequately with the filters, it's substantially blocking and it's achieving its intended purpose.

THE COURT: Well, is the amount blocked **[\*\*224]** each time different? In other words -

HONEYWELL'S COUNSEL: Well, I think --I guess, the reality is if the display has a changing image, what's actually blocking is going to vary with what's in the -- what the output is of the display.

THE COURT: Of the display.

HONEYWELL'S COUNSEL: I think as a general matter the filter properties are not going to change, you know. So that's an implementation area. But, again, this is not a patent that's designed to sort of figure out exactly how you implement, nor do you have to. But the invention here is the notion of striking a compromise, it's block some light that makes the night vision goggles suitable and, you know, permit enough so you can see color in the display. . . . There are really three issues. The first one, I think we've actually touched on the first one a little bit here, because the claim talks about substantially blocks. We've talked about obstructing passage sufficient to work for its intended purpose. And the Defendants have added in the word, a large degree. Well -

THE COURT: Go back . . . It seems to me - obstructed to me is kind of a measure. It seems to me that you're --it implies to me that you are blocking more in your **[\*\*225]** definition than they are in theirs.

HONEYWELL'S COUNSEL: That's funny, because I certainly hadn't intended that, Your Honor. We say obstructs it sufficiently to make it work. They say obstructs a large degree. I guess our view is it doesn't make much sense to go from substantially to large degree. You're substituting one word of degree for another one, . . . they're trying to import a large measure of blockage in there. And it may not have to be a large amount. It just has to be substantial enough to do the job. So we think [the defendants are] the ones who are putting in a measure of degree of blockage that's just not there. And it really doesn't make much sense to take one relative term of degree and swap it out for another one. Claim construction doesn't sort of compel you to sort of say let's change every word in the claim and come up with a synonym for it. Because it's not particularly helpful to go from one synonym **[\*475]** to another, . . . there's nothing that's compelling. Large degree, for example, is not anywhere in the claim. It may well be . . . one of many definitions of substantially[.] But I don't think that means . .

Case 3:01-cv-00577-CFD    Document 168-12    Filed 03/03/2006    Page 18 of 23

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!    Page 100 of 116

. we haven't gone in the claim and every word you find **[\*\*226]** substitute a dictionary definition. And oftentimes dictionary definitions don't shed any light on things.


TR at 707-12.


\* \* \*

HONEYWELL'S COUNSEL: The claim language itself says substantially blocks. And in their construction, they then convert that. I think their large degree of is probably their synonym for substantially. So what they're doing is saying let's take substantially, which is a matter of degree in the claim, and let's stick in a large degree in lieu of that word in our construction. And I don't think that necessarily sheds a lot of light on the subject. And frankly, whether it's a large degree or an adequate degree or a -- is -- all that really matters is is it doing the job.

THE COURT: Would it be the same if they had you eliminate the words a large degree so it would be to render light unsuitable?

HONEYWELL'S COUNSEL: I have a problem with that part of the construction, too. . . . they have substituted blocks . . . if you were to figure out where that came from, the light -- the unsuitable for passage is a dictionary definition -- one dictionary definition for the word blocks. I can block the door and render it unsuitable for passage, right. In the **[\*\*227]** context of a filter and light, it's just not the appropriate definition because --actually filters don't render light unsuitable for passage. That's not what [filters] do. So it's just the wrong definition. Filters do block. Or they can absorb or they can reflect. There's all sorts of ways filters work. They don't render light unsuitable for passage. It's just not technically correct. It doesn't do anything for the light. It either sort of turns it into heat or redisburses it. So we don't think it's a proper choice for a dictionary definition in this case. So for that reason we -- we think that the more proper --the notion of blockage is obstructs the passage.

THE COURT: All right.

HONEYWELL'S COUNSEL: We agree it obstructs the passage, but doesn't render the light unsuitable. And . . . the last point, substantially blocks requires that the night vision aid --or doesn't require the night vision aid or the entire invention to be used for its intended purpose. I'm not quite sure where the Government is going with that. But the claim itself to us seems to suggest that the substantially blocked terminology is being used in the context of the night vision aid. . . .

THE COURT: Are **[\*\*228]** you going to move to the difference between [defendants'] use of the word invention and your use of the word night vision aid? Because your invention is larger than just -- or more than just the aid itself.

HONEYWELL'S COUNSEL: Well, the invention is . . . what the filter is doing . . . it's the filter that is substantially blocking. And that's the filter on the night vision aid to render the night vision aid unsuitable. I don't know that that's a huge issue for us. I just think that what we've proposed is correct. . . . I don't want to

Case 3:01-cv-00577-CFD    Document 168-12    Filed 03/03/2006    Page 19 of 23

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                Page 101 of 116

muddy up the issue into . . . I don't know what [defendants are] suggesting we
have to prove when they say the invention is used by --I guess I don't
understand -- I don't think they've helped us any here.

TR at 707-16.

iii. Post-Claim Construction Hearing Briefs.

In post hearing briefing, Honeywell reaffirmed that "substantially blocks" appears in three
claims to describe the "function of three different filters," *i.e.*, 1.) the first optical filter in
Claim 1; 2.) the second optical filter in Claim 1; and 3.) the fourth filter in Claim 2. *See*
4/1/05 Honeywell Brief at 47 (citing **[\*\*229]** '914 patent, col. 6, ll. 5, 8-9, 26). Therein,
Honeywell contended that the term "substantially blocks" has the same meaning in each of
the claims, *i.e.*, "obstructs the passage of light sufficiently to permit the night vision aid to be
used for its intended purpose." *Id.* Each term has the same **[\*476]** meaning each time that
it is used, *i.e.*, "obstruct the passage of light sufficiently to permit the night vision aid to be
used for its intended purpose." 4/1/05 Honeywell Brief at 47. When "block" is used in context
with the claim, Honeywell asserts that it is clear that "light is being rendered unsuitable and
that the 'obstruction' is an optical filter." *Id.* at 36 (citing '914 patent, claim 1, *i.e.*, "optical
filter . . . that substantially blocks light."). Honeywell further advised the court that the
"objective of the substantial blocking is to prevent light from the local display from interfering
with the night vision goggles . . . [*i.e.*,] the appropriate benchmark for measuring the degree
to which light must be blocked is whether the night vision aid works for its intended
purpose." *Id.*; *see also* 4/15/05 Honeywell Brief at 23 (emphasis added) ("no
quantitative **[\*\*230]** test is required for those skilled in the art to understand the meaning
of *substantially blocks* or determine the limits of the claim.").

Honeywell also attacked defendants' interpretation of "substantially" to require that the
offending light is to be blocked "to a large degree." 4/1/05 Honeywell Brief at 47. To which
Honeywell appropriately asked the rhetorical question: by how large a degree? *Id.* at 48.
Although Honeywell conceded that no quantifiable answer is provided by the Government,
the court was informed that the '914 patent "implicitly defines *substantially blocks* by
describing the objective of filtering light for the display 'to prevent light which originates at
the full color display from overwhelming the night vision aid.'" *Id.* at 48 (citing '914 patent,
col. 2, ll. 6-7). Therefore, "substantially" should be construed as "requiring the night vision
aid to function for its intended purpose." *Id.* (citing *Seattle Box Co., Inc. v. Indus. Crating
&Packing, Inc.*, 731 F.2d 818, 826 (Fed. Cir. 1984) ("[The] court must determine whether
the patent's specification provides some standard for measuring that degree."). **[\*\*231]**
Honeywell also urged that "in the context of the '914 patent , 'substantially' should be
construed as requiring the night vision aid to function for its intended purpose . . ., *i.e.*, if the
filters do not block light for the display sufficiently to allow night vision goggles to be used in
the cockpit, then the claim is not infringed." 4/1/05 Honeywell Brief at 48.

Finally, Honeywell challenged defendants' proposed construction of "such that the invention
is fit for the intended purpose" to render the claim "vague and indefinite." 4/1/05 Honeywell
Brief at 48. Honeywell asserted, however, without citation, that "the '914 patent imposes no
such requirement." *Id.* On one hand, Honeywell argued that "the objective of substantially
blocking 'light from the local color display' pertains solely to the night vision aid." *Id.* On the
other, Honeywell argued that "one of the objectives of the ['914 display system] invention is
to allow the *full color* display in a NVIS compatible cockpit" - -an "objective not invoked by
the substantially blocks." *Id.* (emphasis in original). Nevertheless, the court was advised that
the objective of allowing a full color display in a NVIS **[\*\*232]** compatible cockpit is
"achieved by . . . the requirement for a *color display* and a *red color band*." *Id.* (emphasis
added) (citing *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1331 (Fed. Cir. 2004)

Case 3:01-cv-00577-CFD    Document 168-12    Filed 03/03/2006    Page 20 of 23

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 102 of 116

(holding that patentees are not required to include in each claim all of the "advantages or features described as significant or important in the written description."); _Resonate Inc. v. Alteon Websystems, Inc._, 338 F.3d 1360, 1367 (Fed. Cir. 2003) ("When the written description sets out two different problems present in the prior art, is it necessary that the invention claimed, and thus each and every claim in the patent, address both problems? We conclude . . . the answer is no.").

b. The Government's Proposed Construction.

i. Pre-Claim Construction Hearing Brief.

Prior to the claim construction hearing, the Government argued that the "'ordinary meaning' of 'substantially blocks' is clear from intrinsic evidence . . . the claim terms . . . read in light of the specification, _i.e._, "filtration must 'be _very_ efficient' so light from the display will be nearly completely blocked." _See_ 1/14/05 Def. Joint Brief at 36-37 (citing **[**233]** '914 patent, col. 1, ll. 1-54). Since the purpose of the optical filter "is to allow **[**477]** the use of a color display in connection with an NVG . . . 'substantially' means 'to a larger degree . . . such that the invention is fit for its intended purpose.'" 1/14/05 Def. Joint Brief at 37 (citing '914 patent, col. 3, ll. 8-11) ("The purpose of the optical filter is to allow the use of a color display in the connection with an NVG.").

The Government, however, appeared so uncertain about the persuasiveness of this argument that it resorted to a dictionary definition and expert testimony in support before even mentioning the prosecution history in passing, that it attempted to reinforce by the disfavored testimony of the inventor. _Compare_ 1/14/05 Def. Joint Brief at 36-37 (citing WEBSTER'S and Dr. Task) _with_ 1/14/05 Def. Joint Brief at 38 ("This purpose is evident from . . . the prosecution history and repeated by the inventors.") (citing '914 Wrapper D000109; Ex. 5 Cohen 7, ll. 16-18).

On the other hand, the Government persuasively argued that the word "overwhelm" is not defined in the patent, discussed in the prosecution history, and apparently is not a common term used by one **[**234]** skilled in the art. Therefore, to define "substantially blocks" by reference to "overwhelm" could render Claim 1(a), Claim 1(b) and Claim 2(b) indefinite. _See_ 1/14/05 Def. Joint Brief at 38.

ii. At The Claim Construction Hearing.

At the claim construction hearing, the Government summarized the three significant differences in the parties' construction of the term "substantially blocks."

> GOVERNMENT'S COUNSEL: The biggest difference . . . is the invention versus night vision aid. . . . We believe that [our construction] provides a workable test as one reading the patent would understand it. . . . One skilled in the art . . . in night vision goggle compatible, will understand what the invention as a whole was meant to do.
>
> THE COURT: I was surprised that both sides decided they wanted to construe this. Do you want to shed some light as to why?
>
> GOVERNMENT'S COUNSEL: Why construe this at all? . . . Well, Your Honor, I think it becomes necessary because, first of all, substantially . . . has different meanings depending on the application and depending how the specification shows you should use it.

Case 3:01-cv-00577-CFD    Document 168-12    Filed 03/03/2006    Page 21 of 23

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!    Page 103 of 116

THE COURT: Okay.

GOVERNMENT'S COUNSEL: Second of all, substantially has different [**235] meanings depending on what the purpose of the invention is. So we wanted to make clear what the purpose of the invention was. Also we want to give Your Honor sort of a context

for deciding this in terms of what someone would understand substantially blocked to mean.

THE COURT: Okay.

GOVERNMENT'S COUNSEL: Substantially blocked was used in the claims. Your Honor was right to point out that there are three times it's used. We don't believe it's always used in conjunction with the goggles. . . . You can see that from 1(a). It says the filter passes light comprised of predetermined color bands, including predetermined red color band, and substantially blocks light associated with color bands other than that predetermined color band. That filter is on the display.

TR at 717-18.

* * *

GOVERNMENT'S COUNSEL: The filter in part A is the filter on the display. . . . This filter in part B is the filter on the goggles. Both of them must substantially block, whatever that means, whatever we decide that to mean.

THE COURT: Right. But they're two different items.

GOVERNMENT'S COUNSEL: Two different items. Two different things. We think that draws the invention in as a whole [**236] as opposed to just the night vision aid. . . . There's nothing in the claim that tells you exactly what substantially means and what it doesn't. It doesn't give you a whole lot of context. But the specification uses substantially blocked only once. And, again, it's not extremely helpful. But what it does tell you is that the other filters, 23, 25, . . . probably 24 may need to be in there as well, and that refers to figure 3, [*478] which - . . . 23 and 25 are the filters that -- you know, it says 25 being a notch filter. The other filter 23, 25, I think that's probably a typo. I think they probably meant to refer to one or the other. Substantially blocks light in a predetermined red color band. So that's the one use of it in the specification. . . .

THE COURT: Let me ask you something totally different. Is substantially blocks in one sense redundant if you use the word notch?

GOVERNMENT'S COUNSEL: No, Your Honor. Because it has to block light or substantially block light of –

THE COURT: But I thought that's what [it] did, when we were looking at what a notch was, the notch did block within that range. . . . Do you remember what I'm talking about?

Case 3:01-cv-00577-CFD    Document 168-12    Filed 03/03/2006    Page 22 of 23

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 104 of 116

GOVERNMENT'S COUNSEL: I do exactly [**237] know what you're talking about. . . . Filters don't have to be 100 percent blocking or passing.

THE COURT: So the notch itself is not a total block.

GOVERNMENT'S COUNSEL: You could have a notch that only blocks at 50 percent.

THE COURT: Okay.

GOVERNMENT'S COUNSEL: I think that what this does is it adds in it must substantially block, whatever substantially means. Now, we think there's context for this given in the specification, because it says filtration of the objectionable light must be very efficient because small amounts of light within the active frequency range of the night vision goggle will overwhelm the aid. So it ties it to very efficient blocking. The blocking must be very efficient.

THE COURT: I thought that was an unusual use of words, too. . . . Filtering needs to be efficient.

TR at 719-22.


* * *

GOVERNMENT'S COUNSEL: Now, the term substantially blocks isn't used in the prosecution history [or] in any of the art. We believe that it's a common word without special meaning. A dictionary definition is appropriate. The renders light unsuitable for passage comes straight out of [WEBSTER'S] dictionary. They use [WEBSTER'S] dictionary as well, [**238] a different definition. We believe ours is appropriate because it's a transitive verb, and because it says that the filter substantially blocks light. So if the filter is acting on the light and needs to render the light unsuitable for passage. . . . Now, getting to . . . substantially in patent law is a term of magnitude or approximation. . . . If you look at claim 3, [it] says substantially 5 to 20 nanometers wide. We haven't even discussed claim 3 . . . . But substantially is used there as an approximation term. Approximately 5 to 20 nanometers wide. But it can also be used as magnitude. Now what you do to determine which one is you look at the specification and how it's used in the specification. The specification says it must be very efficient. Okay. Well, what does very efficient mean. That's a matter of degree as well. So that leads you to the conclusion that substantially means to a large degree. Now, [Honeywell's counsel] has said well, that's just substituting one -- one word for another. . . . But we think that it's actually clarifying between the two uses of substantially in patent law, which is that it's signifying a large degree. Now, I would also point out that [Honeywell's] [**239] construction suffers from the same fault, which is they use sufficiently. That's a matter of degree as well . . . substantially necessarily has a sort of mushy definition. And so sufficiently large degree, . . . [defendants' construction] is more appropriate because of the very efficient language. You understand that it has to be, to a fairly high degree, a blockage. That's why we inserted that language there. And I don't think it's redundant . . . [or] useless to make that construction. Now, I want to also talk briefly about how one of skill in the art would understand what substantially block means, because

Case 3:01-cv-00577-CFD    Document 168-12    Filed 03/03/2006    Page 23 of 23

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!                    Page 105 of 116

I think that goes to the invention as a whole.

THE COURT: That's why you use the word invention in your definition. . . . As opposed to just the night vision aid.

[*479] GOVERNMENT'S COUNSEL: That's correct, Your Honor. We believe the law is clear that when you're construing substantially, you look to the purpose of the invention. And so substantially has to mean that whatever it does, it achieves the purposes of the invention. I think that's pretty much common sense, but it's also the law. So you need to look at the invention as a whole. Now, what's the purpose of the invention [**240] as a whole? Is it to have a workable night vision aid? Yes. But there's more to it than that. Because it's also you have to have a color display –

THE COURT: You've got to be able to read at the same time.

GOVERNMENT'S COUNSEL: That's readable, usability within the same environment as the night vision aid. So that adds a little bit more complexity to the whole question. I -- I think it's going to come out later, and again, I don't want to get into it too much, but I think that the --the night vision aid being workable is not a usable distinction. And --a usable measure of what substantially blocks is. If you look at the invention as a whole, there were known ways to measure compatibility between a color display and a night vision goggle in 1985. And I'll give you two of them right here.

THE COURT: In terms of quantitative - quantified?

GOVERNMENT'S COUNSEL: There's both a quantitative and a qualitative way to do it. The quantitative way to do it is you measure overlap, you look at the curve that the filtered light is putting out. And you look at the curve that the sensitivity of the goggle is. Then you do sort of a mathematical integration under the overlap. Because they're going [**241] to overlap . . . the area under that had to be under a certain amount. . . . It was called ANVIS radiance. . . . That's actually how the military measures compatibility today. But it was coming out in 1985 . . . is even talked about in the prosecution history as one of the ways [the military was] looking at making things compatible and measuring whether things are compatible.

* * *

THE COURT: Well, could they have put a measurement into the claim? . . . Or is this one . . . where you don't need to because the person skilled in the art automatically is going to know what that number is?

GOVERNMENT'S COUNSEL: . . . Someone skilled in the art would understand. Now, I'm not saying that they adopted it. As I'm going to say here, there are two measurements. We think they give about the same answer.

THE COURT: And what type of skill would the person have to have to know both of these measurements?

GOVERNMENT'S COUNSEL: These were known in the field in 1985. And by the field, I mean the field of night vision goggle compatible lighting and displays.

THE COURT: Okay.