Case 3:01-cv-00577-CFD    Document 168-13    Filed 03/03/2006    Page 1 of 11

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!    Page 106 of 116

GOVERNMENT'S COUNSEL: It was being developed by the military. They were really the ones that were looking for how to [**242] do all of this. Now the qualitative measurement, as I was getting to, is what you would do is . . . put a user in a cockpit with the goggles on in a dark hangar, simulating night. And you put a chart with a whole bunch of lines, a contrast chart on the far wall of the hangar. With the lights off. Then you turn on the cockpit lights. And he would be looking through the goggles at this chart. If there was any degradation of performance, they didn't pass this test. . . . The first one was designed to sort of mimic the second, but you can get a quantitative measurement rather than qualitative. Now the reason I bring this up is that these were tests that were known at the time. Again, it goes back to definiteness. And a claim has to be understood, the metes and bounds have to be understood by those skilled in the art. And we believe these were out here and they were understood. And, therefore --and these measure whether the invention as a whole -

THE COURT: And the patent examiner would know all that just by looking at this? He would have understood that these two measurements -

[*480] GOVERNMENT'S COUNSEL: I think he would have learned by reviewing the prosecution history. . . . [**243] I'm assuming, because I don't know what the examiner was reviewing. . . . The problem with --with focusing on whether the NVGs operate is problematic. First of all, . . . it's contrary to the stated purpose of the invention, which comes out at the very beginning of the ['914] patent language, . . . [and] says [that] it is desired that a night vision aid be operable while a full color display is . . . presented in the vicinity of the goggles. And in particular, to operate them in an environment in which a full color display is illuminated. So you've got to have a workable goggle and workable display. If you just focus on the goggle, you can just turn off the display. Or you can cover it up so it's not readable during daylight. That's a big problem. Because if you put too thick of a filter over the top of it, you can't read it during the day. . . . But the problem is Honeywell can't tell you what the test for goggles working for an intended purpose is. They're going to say, well, you look at the patent and the patent says it won't overwhelm the goggles. What does overwhelm mean? And they'll give you a list of things. Now, my problem with that is that if you've got five different [**244] tests and you meet three of them, do you fall within or without the claims. And that's the real problem here. So our view is that, if you only look at the goggles, the claims become indefinite because you can't --*there's no accepted, in 1985, measure for whether a goggle works for its intended purpose.* That's why you need to look at the invention as a whole. . . . The prosecution history . . . comes out of the same article that we were discussing earlier with the Kelly chart, which is by two gentlemen named Breitmaier and Reetz. And if you recall, Your Honor, . . . Ferdinand Reetz was the gentleman who drafted that document that described the rationale behind the military standard. . . [that] comes from a --the 10th European Rotorcraft Forum that - . . . is August 28th through 31st, 1984. . . . It's part of Defendant's Exhibit 36 . . . DE 1621[.]

THE COURT: Okay.

GOVERNMENT'S COUNSEL: Now, do you see the spectral radiance limitations in . . . the middle of the page? It talks about defining a new quantity called ANVIS radiance, defined in the units of AR. It's the amount of energy emitted by a light source that is visible through the ANVIS defined as the integral of the curve [**245] generated by multiplying the spectral radiance of the light source by the relative spectral response of the ANVIS. That's what I was talking about before, the two curves. When you multiply the two curves together, you get some --some function. And then what this shows you is that ANVIS radiance

Case 3:01-cv-00577-CFD    Document 168-13    Filed 03/03/2006    Page 2 of 11

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!    Page 107 of 116

is you integrate from 450 to 930 the -- that function.

THE COURT: And why do you want to know that?

GOVERNMENT'S COUNSEL: Because . . . that's a measure of how much light is getting through. . . . And so if you integrate under it, that gives you the area under the curve.

THE COURT: So under . . . is what you're telling me is that you could actually determine whether it was substantially blocked or not by utilizing this formula?

GOVERNMENT'S COUNSEL: There was a standard set -and it's in here that the military says [its] --okay. . . . They wanted to use --helicopter pilots wanted to use these goggles. The problem was . . . defoliated trees, trees with no leaves on them are very dark, don't reflect very much light at all. And you want to fly on nights where there's no full moon. You want no moon at all because you want the other guy not to see you coming. . . . Now the problem is . . . you [**246] don't want anything to show up brighter than tree bark and starlight. So what they did is calculated what the radiance was of tree bark and starlight and came up with a number. . . . That ends up being this number here. It says that the cockpit lights should be no brighter than the outside scene when viewed through the ANVIS. The ANVIS radiance of the cockpit lights should not exceed 1.7 times 10 to the negative 10 AR when the cockpit is lighted to an acceptable level. So that was a standard that [*481] was known . . . you could use that to determine whether a display was compatible with your night vision goggle.

THE COURT: Okay. And how does that affect the substantially blocks?

GOVERNMENT'S COUNSEL: We believe that that is one measure that one of skill in the art would use to determine --

THE COURT: To determine whether it's substantially blocked.

GOVERNMENT'S COUNSEL: Whether it was substantially blocked. If it met that standard, it would be substantially blocked. . . . This was known, this is a test that was known --

THE COURT: At the time of the patent.

GOVERNMENT'S COUNSEL: -- in 1985. And -

THE COURT: Why wasn't it referenced then? Does it need to be?

GOVERNMENT'S COUNSEL: [**247] Well, I don't know. I think it was referenced in that it was inserted in the prosecution history.

THE COURT: Okay.

GOVERNMENT'S COUNSEL: So it was before the Patent Office. . . . The examiners presumed to have considered everything in the prosecution history. . . . So it was at least familiar with this. As I said, there was another measure that was being used at the time that was this qualitative measurement, you sat in the cockpit and looked at the chart. But I think that the idea was that those were approximations. I don't think Honeywell is going to give you a test such as this that is going to give you . . . what can the night vision goggle be used for. What is the intended purpose of the night vision goggle. Well, it's to look outside. Well,

Case 3:01-cv-00577-CFD    Document 168-13    Filed 03/03/2006    Page 3 of 11

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!    Page 108 of 116

> what is preventing the intended use from happening? Is it a 10 percent reduction
> in view? Is it a 20 percent reduction in view? They don't know. We don't know.
> So you . . . need to look at the whole thing.

TR at 722-37 (emphasis added).

iii. Post-Claim Construction Hearing Briefs.

The Government's post-hearing claim construction brief argued, again without citation to authority, that the "ordinary meaning of 'substantially blocks' [**248] . . . is to render a large degree of light unsuitable for passage by an optical filter, such that the invention is fit for the intended purpose." 4/1/05 Gov't Brief at 44. Moreover, in this regard, the Government advised the court that it is necessary to consider "some extrinsic evidence to determine the degree of blocking that would have been considered 'substantial' at the time of the invention . . . because the claims . . . [*i.e.*, the specification and prosecution history] context provides little information as to the meaning of the term 'substantially.'" *Id.* The Government conceded, however, that the specification's use of "blocks" implies that an optical filter was acting on "incident light to obstruct or prevent its passage." *Id.* (citing '914 patent, col. 3, ll. 22-24).

c. Intervenor Lockheed Martin's Proposed Construction.

i. Pre-Claim Construction Hearing Brief.

Lockheed Martin's proposed construction of "substantially blocks" was the same as that of the Government. *See* 1/14/05 Def. Joint Brief at 36-38.

ii. At The Claim Construction Hearing.

Lockheed Martin also adopted the Government's proposed construction of "substantially blocks" at the claim construction [**249] hearing. *See* TR at 737.

iii. Post-Claim Construction Hearing Briefs.

Likewise, in Lockheed Martin's post-claim construction briefs, the Government's proposed construction of "substantially blocks" also was adopted. *See* 4/1/05 Int. Brief at 48; *see also* 4/15/05 Int. Brief at 24.

d. The Court's Construction Of "Substantially Blocks" In This Case.

In Claim 1(a), a first optical filter is described as a notch filter that "substantially blocks" light associated with color bands. [*482] *See* '914 patent, col. 6, l. 5. The court construes the verb "blocks" as preventing light from a color display from reaching the night vision aid and "substantially" to mean in a sufficient amount to enable the night vision aid to function. *See* '914 patent, col. 2, ll. 6-7 ("It is . . . desired to prevent light which originates at the full color display from overwhelming the night vision aid."); *see also* '914 patent, col. 2, ll. 13-15 ("The first optical filter is placed over displays, which may otherwise present light that would interfere with the ANVIS."); [**250] *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1367 (Fed. Cir. 2001) (quoting *Pall Corp. v. Micron Seps.*, 66 F.3d 1211, 1217 (Fed. Cir.1995)) ("We note that like the term . . . HN28'substantially' is a descriptive term commonly used in patent claims to 'avoid a strict numerical boundary to the specified parameter.'"); *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 837 F.2d 1044, 1056 (Fed. Cir. 1988) (The term "'substantially' . . . must be interpreted in light of the specification and prosecution

Case 3:01-cv-00577-CFD    Document 168-13    Filed 03/03/2006    Page 4 of 11

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!    Page 109 of 116

history[.]").

In Claim 1(b), a second optical filter is described as a notch filter that "substantially blocks" light associated with color bands. See '914 patent, col. 6, ll. 8-9. Here, too, the court construes the verb "blocks" as preventing light from a color display from reaching the night vision aid and "substantially" to mean in a sufficient amount to enable the night vision aid to function. *Id*.

In Claim 2(b), a fourth filter located at the night vision aid works with other filters to "substantially block" at least a narrowband of the red color band from being admitted into the night vision aid. The court construes the verb "block, [**251] " at a minimum, as preventing light from the narrowband of the red color band from entering the night vision aid. The use of the verb "being admitted" renders the term "substantially blocks" unnecessary surplusage, since if the light at issue is prevented from being admitted into the night vision aid, *ipso facto*, such light also is substantially blocked.

14. "First," "Second," "Third," "Fourth," And "Filter."

Claim 1(a) includes the term "first optical filter" twice. See '914 patent, col. 6, ll. 1-2. Claim 2(b) includes the term "second optical filter" twice. See '914 patent, col. 6, ll. 7-8. Claim 2(a)(1) includes the term "first filter." See '914 patent, col. 6, l. 6. Claim 2(a)(2) includes the term "second filter." See '914 patent, col. 6, l. 18. Claim 2(a)(3) includes the term "third filter." See '914 patent, col. 6, l. 20. Claim 2(a)(4) includes the term "fourth filter" twice. See '914 patent, col. 6, ll. 23-24.

The parties have proposed the following competing constructions of "First," "Second," "Third," "Fourth," and "Filter:"

| Honeywell's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| First Filter: a filter | First Filter: being number one in a countable series |
| Second Filter: another filter in addition to the first filter | Second Filter: being number two in a countable series |
| Third Filter: another filter in addition to the first and second filter | Third Filter: being number three in a countable series |
| Fourth Filter: another filter in addition to the first, second and third filters | Fourth Filter: being number four in a countable series |

[**252]

Honeywell *Markman* Slide 188; Gov't *Markman* Slide 075 (bold added by parties).

The court has not repeated the parties' arguments here since, as a matter of law, it is settled that the use of "first," "second," "third" is clearly "not a serial or numerical limitation, [because] the claim does not follow a consecutive order. . . . The claim is thus clearly not using the ordinals-first, second, third-to show a consecutive numerical limit but only to distinguish or identify the various members of the group." Gillette Co. v. Energizer Holdings, Inc., 405 F.3d 1367, 1373 (Fed. Cir. 2005); see also 3M Innovative Properties Co. v. Avery Dennison Corp., 350 F.3d 1365, 1371 (Fed. Cir. 2003) ("The use of the terms 'first' and 'second' as common patent-law convention to distinguish between repeated instances of an element or limitation."). Accordingly, the court declined to construct "first," "second," "third,"

Case 3:01-cv-00577-CFD    Document 168-13    Filed 03/03/2006    Page 5 of 11

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!    Page 110 of 116

etc., to impose a serial limitation on a claim, but rather identify the various members of a group. See **[\*\*253]** Gillette, 405 F.3d at 1373-74.

**[\*483]** 15. "Blue Color Band."

The term "blue color band" appears in the Preamble to Claim 2. See '914 patent, col. 16, l. 13. In addition, "blue color band" appears in Claim 2(a)(1). See '914 patent, col. 16, l. 17.

The parties have proposed the following competing constructions of "blue color band:"

| Honeywell's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Blue Color Band: range of wavelengths within the blue region of the visible spectrum | Blue Color Band: a range of color in the range from 455 to 492 nanometers |

Honeywell *Markman* Slide 190; Gov't *Markman* Slide 079 (bold added by parties).

a. Honeywell's Proposed Construction.

i. Pre-Claim Construction Hearing Brief.

In Honeywell's pre-hearing brief, the court was advised that "in the context of the patent, *blue color band* means a range of wavelengths with the blue region of the visible spectrum." 12/23/05 Honeywell Brief at 36 (emphasis in original) (citing Tannas Initial Report P 17; Tannas Rebuttal Report P 18). This construction was represented as being consistent with the specification wherein the "*blue color* **[\*\*254]** *band* 53 is the light emitted by a monochromatic display transducer, such as a CRT, in the blue region of the visible spectrum." 12/23/04 Honeywell Brief at 37 (citing '914 patent, col. 4, ll. 40-43) ("the local source of light 50 comprises . . . blue 53 color bands sourced from monochromatic display transducers, such as for example three monochromatic cathode ray tubes[.]"); see also id. at '914 patent, col. 4, ll. 46-47 ("Each color band 51-53 provides a monochromatic image in one primary color for the full color display."). Honeywell argued that it is improper to define "blue color band" using specific wavelengths. See 12/23/04 Honeywell Brief at 37. In the alternative, if the court were to define "blue color band" by wavelength, Honeywell asserted that the defendants' proposed ranges are incorrect, referencing U.S. Patent No. 4,390,637, wherein the following wavelengths for the blue color band emitted by a cathode ray tube were represented to be 430-460 nanometers, as opposed to the defendants' proposed 455-492 nanometers. Id. (citing USPTO **[\*\*255]** Patent No. 4,390,637, col. 5, ll. 20-22). Based on this prior art, and other extrinsic evidence, Honeywell warned the court that defendants have specified a lower limit for the blue color band that excludes the wavelengths emitted by a blue CRT, which the '914 patent provides as "an example of a *blue color band*." 12/23/04 Honeywell Brief at 38 (citing '914 patent, col. 4, ll. 40-43).

ii. At The Claim Construction Hearing.

> HONEYWELL'S COUNSEL: Our position, for the same reasons we described previously, is that it's just not appropriate to put wavelength ranges. And now I have this same concern that I'm --that once you start using these ranges which came from the same source, I don't know what they mean or how they get

Case 3:01-cv-00577-CFD   Document 168-13   Filed 03/03/2006   Page 6 of 11

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!   Page 111 of 116

interpreted. I'm not so sure --I have now come to the conclusion they don't shed much light on the subject. I'm not sure if anybody is any better off trying to figure out what's red, green or blue based upon these numbers, because we're all interpreting the actual numbers differently. But we do think, once again, there is, as you remember from all of the arguments --literature I showed Your Honor has RGB, red, green, blue. So the same sort of data that's out [**256] there to define or empirically establish red is out there to empirically establish green and blue. So I think in the end these issues are going to -- I think ought to resolve themselves the same way, however that is. And for that reason, we haven't said a whole lot about this. Again, as you'll see, the specification, in the same area it does talk about the green and blue bands the same way it talks about the red band. And by the way, just to I didn't address [Government's counsel's] point before, but I'm happy to do it. These are not -- there are no such things as monochromatic CRTs, but you can get pretty close. If you look at the --they are in a sense one color, which is what is meant by that, but they're not monochromatic in the Kelly chart sense. Because there is no such thing as a phosphor that looks like that. They all have a spike and a wavelength around them. So this is perhaps not [*484] the most artful language, but those skilled in the art would certainly understand there is no such thing as a monochromatic CRT, at least I don't think there is.

TR at 686-87.

* * *

HONEYWELL'S COUNSEL: And that is because, if you look, they have selected a range of 455 to 492, [**257] for example, for blue. If you look at the Kelly chart -- and by the way, there's absolutely -- there's only one Kelly chart. So whatever is in the intrinsic evidence, whatever-- it's got to be a bad copy, because there aren't different versions of the Kelly chart. And that's what's referenced in the Breitmaier and Reetz thing. So whether it looks like 620 or not, it's just not 620. Because it says it's the Kelly chart. And blue on the Kelly chart starts at around 460 and ends at 480. And their construction is 455 to 492. So once again, 492 extends all the way out to about here. So once again, you know, we have lots of experts disagreeing on those ranges. This came out of [MCGRAW-HILL] again. This is the Kelly chart, yet a different one. And JEDEC would be different still.

TR at 688-89.

iii. Post-Claim Construction Hearing Briefs.

After the claim construction hearing, Honeywell conceded that the "blue color band" could be construed as "light that can be characterized . . . between approximately 455 and 492 nanometers." 4/1/05 Honeywell Brief at 47. Although Honeywell changed its position regarding the nanometer ranges that the defendants designated for "blue color band, [**258] " Honeywell, nevertheless, maintained that if "blue color band" is to be construed by specific wavelengths, the court should specify a "dominant wavelength for the same reasons argued regarding the 'red color band.'" *Id.*

Case 3:01-cv-00577-CFD   Document 168-13   Filed 03/03/2006   Page 7 of 11

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!   Page 112 of 116

b. The Government's Proposed Construction.

i. Pre-Claim Construction Hearing Brief.

The Government advised the court that "blue color band" means "a range of color in the range from 455 and 492 nanometers." 1/14/05 Def. Joint Brief at 39 (citing Ex. 30 MC-GRAW HILL at 701-02). The Government challenged Honeywell's construction based on extrinsic patents and phosphor references as providing "no metes or bounds." 1/14/05 Def. Joint Brief at 39. The Government also noted that Honeywell's reliance on a numerical indication of acceptable wavelengths from phosphor references is an impermissible use of extrinsic evidence, since the '914 patent contains no mention of specific phosphors, but, relies on such sources to expand the claim terms - - to the point of indefiniteness. Id.

ii. At The Claim Construction Hearing.

> GOVERNMENT'S COUNSEL: We've, again, shown what one of ordinary skill in the art would understand, which is definite wavelength boundaries. . [**259] . . We believe this is known to those skilled in the art. The analysis is exactly the same as with red.

TR at 692.

\* \* \*

> GOVERNMENT'S COUNSEL: And, again, blue, 455 to 492, bleu, 455 to 492. The brief -- and Mr. Gotts didn't turn to this, but their brief cites two things, one is the Westinghouse phosphor guide, we've discussed that to death. And then the U.S. patent 4,390,637, they say that shows different ranges than ours. I don't care. It's extrinsic. It doesn't matter. And finally, I don't know what their construction is anymore. The one that was popped up there, the one they had before that was in the briefs, the blue region and green region, again the same problem with the red color bands. It's unworkable, it's indefinite. Or if it is definite, we should decide where the boundaries are.

> THE COURT: But the PTO didn't bounce it for that reason.

> GOVERNMENT'S COUNSEL: No, because we think that one of skill in the art, [*485] when they look at blue . . . color bands, something clicks in their mind and they know what the wavelength boundaries are. But you and I maybe don't, and so we need to go to the dictionary. The PTO, the examiner is either one of skill in the art or [**260] he educates himself to skill in the art. So he didn't bounce it for that same reason. He knew --

> THE COURT: As someone who works with color in patents.

> GOVERNMENT'S COUNSEL: Possibly. Or again, he can educate himself just as well as we can.

Case 3:01-cv-00577-CFD   Document 168-13   Filed 03/03/2006   Page 8 of 11

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!   Page 113 of 116

> THE COURT: Okay.
>
> GOVERNMENT'S COUNSEL: So I don't know what their new definition is that they're going to come up with, the same way they come up with the red one. I don't know if they are. If they don't, I think that's wrong and indefinite. If they do come up with a new one, if it's anything like the red one, I again think it's wrong. That's all I have.

TR at 693-94.

iii. Post-Claim Construction Hearing Briefs.

Although Honeywell changed its position after the claim construction hearing to agree with the Government that the nanometer range of "blue color band" was "between approximately 455 and 492 nanometers," Honeywell continued to seek a construction that designated a dominant wavelength. 4/1/05 Gov't Brief at 47. Likewise, the Government continued to argue that Honeywell's assertion that peak wavelength should be adopted as the "proper measure" was erroneous. 4/1/05 Gov't Brief at 48; see also id. at 34.

c. Intervenor [**261] Lockheed Martin's Proposed Construction.

i. Pre-Claim Construction Hearing Brief.

Lockheed Martin adopted the Government's proposed construction of "blue color band." See 1/21/05 Def. Joint Brief at 39.

ii. At The Claim Construction Hearing.

Lockheed Martin also adopted the Government's position regarding the meaning of "blue color band" at the claim construction hearing. TR at 694.

iii. Post-Claim Construction Hearing Briefs.

After the claim construction hearing, Lockheed Martin continued to adopt the Government's proposed construction of "blue color band." See 4/1/05 Int. Brief at 50.

d. The Court's Construction Of "Blue Color Band" In This Case.

The court construes "blue color band" as a range of color from 455 nm to 492 nm. For the reasons discussed in the court's construction of "red color band," however, the court has declined to designate a dominant or peak wavelength to the construction of "blue color band."

16. "Green Color Band."

The parties have proposed the following competing constructions of "green color band:"

| Honeywell's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Green Color Band: range of wavelengths within the green region of the visible spectrum [**262] | Green Color Band: a range of color in the range from 492 to 577 nanometers |

Case 3:01-cv-00577-CFD    Document 168-13    Filed 03/03/2006    Page 9 of 11

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!    Page 114 of 116

Honeywell *Markman* Slide 190; Gov't *Markman* Slide 079 (bold added by parties).

a. Honeywell's Proposed Construction.

i. Pre-Claim Construction Hearing Brief.

In Honeywell's pre-hearing brief, the court was advised that "in the context of the patent, *green color band* means a range of wavelengths within the green region of the visible spectrum." 12/23/04 Honeywell Brief at 36 (emphasis in original) (citing Tannas Initial Report P 17, Tannas Rebuttal Report P 18). The court was informed that this construction is consistent with the specification wherein the "green color band 52 is the light emitted by a monochromatic display [*486] transducer, such as a CRT, in the green region of the visible spectrum." 12/23/04 Honeywell Brief at 37 (citing '914 patent, col. 4, ll. 40-43) ("The local source of light 50 comprises . . . green 52 . . . color bands sourced from the monochromatic display transducers, such as for example three monochromatic cathode ray tubes[.]"); see also id. (citing '914 patent, col. 4, ll. 46-47) ("Each color band 51-53 provides a monochromatic image in one primary color and for the full color display."). [**263] Honeywell also argued that it is improper to define "green color band" using specific wavelengths. See 12/23/04 Honeywell Brief at 37. In the alternative, if the court were inclined to define "green color band" by wavelengths, Honeywell asserted that defendants' proposed wavelengths are incorrect, referencing U.S. Patent No. 4,390,637, wherein the following wavelengths for the green color band emitted by a cathode ray tub is represented to be 500-570 nanometers, as opposed to defendants' proposed 492-577 nanometers. *Id.* (citing U.S.P.T.O. Patent No. 4,390,637, col. 5, ll. 20-22). Based on this prior art, and other extrinsic evidence, Honeywell concludes that defendants have specified a lower limit that excludes the wavelengths emitted by the green CRT. See 12/23/04 Honeywell Brief at 37.

ii. At The Claim Construction Hearing.

Honeywell argued at the claim consideration hearing that "green color band" should be construed under the same parameters as "blue color band." *See* TR at 685.

iii. Post-Claim Construction Hearing Briefs.

After the claim construction hearing, Honeywell changed its position to agree with the Government that the nanometer range of the "green [**264] color band" was "between approximately 492 and 577 nanometers." 4/1/05 Honeywell Brief at 47. Honeywell continued to insist that the "green color band" should be construed by a dominant wavelength.

b. The Government's Proposed Construction.

i. Pre-Claim Construction Hearing Brief.

The Government advised the court that "green color band" means a "range of color in the range from 492 to 577 nanometers." 1/14/05 Def. Joint Brief at 39 (citing Ex. 30 MCGRAW-HILL at 197).

ii. At The Claim Construction Hearing.

> GOVERNMENT'S COUNSEL: One of skill in the art, when they look at . . . green color bands, something clicks in their mind and they know what the wavelength boundaries are.

Case 3:01-cv-00577-CFD   Document 168-13   Filed 03/03/2006   Page 10 of 11

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!   Page 115 of 116

TR at 693.

iii. Post-Claim Construction Hearing Briefs.

After the claim construction hearing, the Government continued to press the court to construe "green color band" by peak wavelength. See 4/1/05 Gov't Brief at 48; see also 4/15/05 Gov't Brief at 23.

c. Intervenor Lockheed Martin's Proposed Construction.

i. Pre-Claim Construction Hearing Brief.

Lockheed Martin's proposed construction of "green color band" was the same as the Government. See 1/14/05 Def. Joint Brief at 39.

ii. [**265] At The Claim Construction Hearing.

Lockheed Martin supported the Government's proposed construction of "green color band" at the claim construction hearing. See TR at 694.

iii. Post-Claim Construction Hearing Briefs.

Lockheed Martin's proposed construction of "green color band" continued to be the same as that of the Government. See 4/1/05 Int. Brief at 50; see also 4/15/05 Int. Brief at 23.

[*487] d. The Court's Construction Of "Green Color Band" In This Case.

The court construes "green color band" as a range of color from 492 nm to 577 nm. For the reasons discussed in the court's construction of "red color band," however, the court has declined to designate either a dominant or peak wavelength to the construction of "green color band."

17. "Narrowband Of The Red Color Band."

The parties have agreed that the term "narrowband of the red color band," as used in the claims of the '914 patent, means "a narrow range of wavelengths within the red color band." Jt. Stip. P 6.

IV. CONCLUSION.

For the reasons discussed herein, defendant-intervenor Lockheed Martin Corp. is hereby granted the right to intervene in this case pursuant to RCFC 24(a). In addition, the court has determined [**266] as a matter of law that the disputed claims discussed herein are to be construed consistent with this Memorandum Opinion and Order Construing Certain Claims of United States Patent No. 6,467,914.

IT IS SO ORDERED.

SUSAN G. BRADEN

Judge

Case 3:01-cv-00577-CFD   Document 168-13   Filed 03/03/2006   Page 11 of 11

FOCUS - 12 Results - public w/3 notice w/25 claim w/3 constru!   Page 116 of 116

Source: Legal > Cases - U.S. > **Federal Court Cases, Combined**
Terms: public w/3 notice w/25 claim w/3 constru! (Edit Search | Suggest Terms for My Search)
Focus: **claim w/ 2 differentiation** (Exit FOCUS™)
View: Full
Date/Time: Monday, February 20, 2006 - 3:27 PM EST

\* Signal Legend:
- ● - Warning: Negative treatment is indicated
- Q - Questioned: Validity questioned by citing refs
- ⚠ - Caution: Possible negative treatment
- ◆ - Positive treatment is indicated
- A - Citing Refs. With Analysis Available
- I - Citation information available

\* Click on any *Shepard's* signal to *Shepardize*® that case.

  About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.