## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANTON/BAUER, INC., | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action |
| v. | ) | File No.: 3:01-CV-577-CFD |
| | ) | |
| PAG, LTD., | ) | |
| Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANTON/BAUER, INC. and ALEX | ) | |
| DESORBO, | ) | |
| Counterclaim and Third Party | ) | |
| Defendants | ) | |
| _____ | ) | |

### DEFENDANT PAG LTD'S PROPOSED CLAIM CONSTRUCTION ("MARKMAN") RULING & ORDER

Stephen R. Risley (ct22652)
J. Scott Culpepper (ct22653)
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2600 One Atlanta Plaza
950 East Paces Ferry Road, NE
Atlanta, Georgia 30326
Telephone: 404-760-4300
Facsimile: 404-233-1267

Counsel for Defendant,
PAG, LTD

Jason M. Kuselias (ct20293)
ROBINSON & COLE, LLP
280 Trumbull Street
Hartford, Connecticut 06103
Telephone: 860-275-8200
Facsimile: 860-275-8299

As ordered by the Court, Defendant PAG, Ltd. ("PAG") hereby submits its proposed Claims Construction ("*Markman*") Ruling & Order. For the Court's convenience, PAG also has attached as Exhibit "A" a copy of the Court of Appeals for the Federal Circuit's June 22, 2006 decision in <u>Honeywell Int'l, Inc. v. ITT Indus., Inc.</u>, 452 F.3d 1312, No. 05-1407, 2006 U.S. App. LEXIS 15553 (Fed. Cir. June 22, 2006). In <u>Honeywell v. ITT</u>, the Federal Circuit held that where a patentee states *four times* what "the invention" is, the "public is entitled to take the patentee at his own word" when construing the claims of "the invention." <u>Honeywell</u>, 452 F.3d 1312, No. 05-1407, 2006 U.S. App. LEXIS 15553, at *17. As explained in greater detail below, the <u>Honeywell v. ITT</u> holding is directly applicable to the present case, because here, the patentee stated *five times* that "headed projections" with "half-moon shaped end portions" is "the invention."

\*  \*  \*  \*  \*  \*  \*  \*

**ORDER**

**CLAIMS CONSTRUCTION**

Having heard oral argument, having read the parties' briefs, and having considered the merits and demerits of the parties' respective positions, the Court issues the following claims construction ruling.

## I.    CLAIMS CONSTRUCTION LAW

"It is well-settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history…. Such intrinsic evidence is the most significant source of the

legally operative meaning of the disputed claim language." <u>Vitronics Corp. v. Conceptronic,</u> <u>Inc.</u>, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

A.    **Intrinsic Evidence**

When the Court considers the intrinsic evidence, it must do so through the eyes of a person having ordinary skill in the art.  The person of ordinary skill in the art does not construe the words of a claim in a vacuum, but rather only after having read the entire intrinsic record, in particular, the specification of the patent at issue.  <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1313 (Fed. Cir. 2005) ("Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification.").

The specification of the patent-in-suit must be studied in order to determine what the inventor truly invented because "[t]he patent system is based on the proposition that claims cover only the invented subject matter." <u>Phillips</u>, 415 F.3d at 1321; <u>Renishaw PLC v. Marposs</u> <u>Societa' per Azioni</u>, 158 F.3d 1243, 1250 (Fed. Cir. 1998) ("Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim.  The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.").

1.    **The Claim Language**

"[T]he words of a claim 'are generally given their ordinary and customary meaning.'" <u>Phillips</u>, 415 F.3d at 1312.  "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e. as of the effective filing date of the patent application." <u>Phillips</u>, 415 F.3d at

1312; Bell Atlantic Network Servs., Inc. v. Covad Comms. Group, Inc., 262 F.3d 1258, 1267 (Fed. Cir. 2001) ("As a starting point, we give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art.").

The ordinary meaning of a disputed claim term, however, can only be determined after reading the entire patent. Phillips, 415 F.3d at 1321 ("Properly viewed, the 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent."); Phillips, 415 F.3d at 1313 ("Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification.").

## 2.    The Specification

The specification of a patent is the most important source for claim interpretation because it shows what the inventor truly invented and claimed as his/her invention. Curtiss-Wright Flow Control Corp. v. Velan, Inc., 438 F.3d 1374, 1378 (Fed. Cir. 2006) ("This Court recently reiterated that the specification is the single best guide to the meaning of a claim term."); Vitronics, 90 F.3d at 1582 (the specification "is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term."); Standard Oil Co. v. American Cyanamid Co., 774 F.2d 448, 452 (Fed. Cir. 1985) ("[t]he descriptive part of the specification aids in ascertaining the scope and meaning of the claims in as much as the words of the claims must be based on the description.  The specification is, thus, the primary basis for construing the claims."); Phillips, 415 F.3d at 1317 ("It is therefore entirely appropriate for a court, when conducting claim construction, to rely heavily on the written description for guidance as to the meaning of the claims.").

The specification is the most important claim construction tool because it provides the context in which the disputed claim terms appear, and in which they must be interpreted. Medrad, Inc. v. MRI Devices Corp., 401 F.3d 1313,1319 (Fed. Cir. 2005) ("we must look at the ordinary meaning in the context of the written description and the prosecution history."); Netword, LLC v. Central Corp., 242 F.3d 1347, 1352 (Fed. Cir 2001) ("The claims are directed to the invention that is described in the specification; they do not have meaning removed from the context from which they arose."); CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359, 1366 (Fed. Cir. 2002) (the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess).

The meaning of the disputed claim terms cannot be construed in a vacuum. Medrad, 401 F.3d at 1319 ("We cannot look at the ordinary meaning of the term... in a vacuum. Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history."); Markman v. Westview Instrus., Inc., 517 U.S. 370, 389 (1996) ("[A claim] term can be defined only in a way that comports with the instrument as a whole.") Renishaw, 158 F.3d at 1250 ("The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.").

i.    Reading-In Limitations vs. Construing "The Invention"

Although the specification of a patent is critical to proper claim construction, limitations that appear in the specification of a patent, but not the claims, generally are not read into the claims. Comark Communications v. Harris Corp., 156 F.3d 1182, 1186 (Fed. Cir. 1998). There is, however, a delicate balance between properly using the specification for claim construction purposes and improperly using the specification to read limitations into a claim. This balance turns on how the specification characterizes "the invention." Sunrace Roots Enter. Co., LTD v.

SRAM Corp., 336 F.3d 1298, 1305 (Fed. Cir. 2003) ("That balance turns on how the specification characterizes the claimed invention.").

To determine the tip of the balance, the Court must look to whether the specification refers to a limitation only as a part of less than all possible embodiments, or whether the specification, read as a whole, suggests that the very character of the invention requires the limitation be a part of every embodiment. Honeywell Int'l, Inc. v. ITT Indus., Inc., 452 F.3d 1312, No. 05-1407, 2006 U.S. App. LEXIS 15553 (Fed. Cir. June 22, 2006); Alloc, Inc. v. International Trade Comm'n, 342 F.3d 1361, 1370 (Fed. Cir. 2003). Where the specification makes clear at various points that the claimed invention is narrower than the claim language might imply, it is entirely permissible and proper to limit the claims to what is described in the specification. Honeywell v. ITT, 452 F.3d 1312, No. 05-1407, 2006 U.S. App. LEXIS 15553, at *13-19 (holding "fuel injection system component" claim term is limited to a "fuel filter" because the patentee stated that "the invention" was a "fuel filter" four times in the written description); SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc., 242 F.3d 1337, 1345 (Fed. Cir. 2001).

Certainly, where the inventor of a patent makes general statements such as "the present invention is," those statements must be viewed as limiting the scope of the claimed invention consistent with the inventor's characterization of "the present invention." Alloc, 342 F.3d at 1368-69 ("A patent applicant may consistently and clearly use a term in a manner either more or less expansive than its general usage in the relevant art, thereby expanding or limiting the scope of the term in the context of the patent claims.") (The "specification describes 'the invention' under the heading 'Technical Problems and Objects of the Invention,' as... where a play exists.... Thus, the specification teaches that the invention as a whole, not merely a preferred

embodiment, provides for play in the positioning of floor panels."); Microsoft Corp. v. Multi-Tech Sys., Inc., 357 F.3d 1340, 1347-48 (Fed. Cir. 2004) ("When the specification 'makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question.") ("In light of those clear statements in the specification that the invention ('the present system') is directed to communications 'over a standard telephone line,' we cannot read the claims... to encompass data transmission over a packet-switched network such as the Internet.  Instead, the specification shared by all three patents leads to the 'inescapable conclusion' that the communications between the local and remote sites of the claimed inventions must occur directly over a telephone line.") (emphasis added); Watts v. XL Sys., Inc., 232 F.3d 877, 883 (Fed. Cir. 2000) ("the specification actually limits the invention to structures that utilize misaligned taper angles, stating that the 'present invention utilizes [the varying taper angle] feature."); Modine Mfg. Co. v. United States Int'l Trade Comm'n, 75 F.3d 1545, 1551 (Fed. Cir. 1996) ("When the preferred embodiment is described in the specification as the invention itself, the claims are not necessarily entitled to a scope broader than that embodiment.").

This is particularly true when the inventor makes statements of what "the invention" is in the "Summary of the Invention" section of the specification, or any other section of a patent prior to the "Detailed Description" section of the patent.  Microsoft, 357 F.3d at 1348 ("Those statements, some of which are found in the 'Summary of the Invention' portion of the specification, are not limited to describing a preferred embodiment, but more broadly describe the overall inventions of all three patents."); Bell Atlantic, 262 F.3d at 1270 (description of "the

invention" was set forth in the Summary of the Invention section of the patent "before we even reach the Detailed Description of the Preferred Embodiments").

### ii.    Public Notice Dictates That Repeated Descriptions Of "The Invention" Are Determinative

As set forth in the Federal Circuit's recent decision in <u>Honeywell Int'l, Inc. v. ITT Indus., Inc.</u>, 452 F.3d 1312, No. 05-1407, 2006 U.S. App. LEXIS 15553 (Fed. Cir. June 22, 2006), the patentee's description of "the invention" is determinative of the meaning of a disputed claim term because "[t]he public is entitled to take the patentee at his word...." <u>Honeywell v. ITT</u>, 452 F.3d 1312, No. 05-1407, 2006 U.S. App. LEXIS 15553, at *17. In <u>Honeywell v. ITT</u>, the disputed claim term was "fuel injection system component." The accused infringer contended that, based on the specification's description of "the invention," the phrase "fuel injection system component" was limited to a fuel filter. In contrast, the patentee contended that that phrase covered any "component," not just a fuel filter.

The Federal Circuit affirmed the district court's construction of the phrase "fuel injection system component" as meaning a fuel filter because "[o]n at least four occasions, the written description refer[ed] to the fuel filter as 'the invention' or 'the present invention'...." <u>Honeywell v. ITT</u>, 452 F.3d 1312, No. 05-1407, 2006 U.S. App. LEXIS 15553, at *13-19. The Federal Circuit also noted that "[t]he written description's detailed discussion of the prior art problem addressed by the patented invention... further supports the conclusion that the fuel filter is not a preferred embodiment, but an only embodiment." <u>Honeywell v. ITT</u>, 452 F.3d 1312, No. 05-1407, 2006 U.S. App. LEXIS 15553, at *17. The Federal Circuit further noted that the applicant's express statements made during the prosecution of the patent at issue that the claimed invention was broader than just a fuel filter did not overcome the written description's definitive statements of what the invention is or the public's right to take the patentee at his word.

Honeywell v. ITT, 452 F.3d 1312, No. 05-1407, 2006 U.S. App. LEXIS 15553, at *19 ("Where, as here, the written description clearly identifies what his invention is, an expression by a patentee during prosecution that he intends his claims to cover more than what his specification discloses is entitled to little weight."). Thus, where a patentee states "the invention is," the claims should be so construed because "[t]he public is entitled to take the patentee at his word…." Honeywell v. ITT, 452 F.3d 1312, No. 05-1407, 2006 U.S. App. LEXIS 15553, at *17.

### iii.    A Patentee Can Be A Lexicographer

A patentee may act as a lexicographer and define words in the specification either expressly or by implication. Bell Atlantic, 262 F.3d at 1269 ("the patentee may act as his own lexicographer by using the specification to define terms either expressly or 'by implication.'"). A patentee defines a term by implication when the patentee uses the term consistently throughout the specification and no other definition or embodiment is suggested for that term. Bell Atlantic, 262 F.3d at 1271 ("when a patentee uses a claim term throughout the entire patent specification, in a manner consistent with only a single meaning, he has defined that term 'by implication.'").

### iv.    Distinguishing The Invention From The Prior Art

The invention, and corresponding claim terms, can also be defined by statements made in the specification in an effort to distinguish the patented invention from the prior art. O.I. Corp. v. Tekmar Co., 115 F.3d 1576, 1581 (Fed. Cir. 1997) (limiting claims because the specification described only non-smooth or conical passages and distinguished over the prior art based on these characteristics); Honeywell v. ITT, 452 F.3d 1312, No. 05-1407, 2006 U.S. App. LEXIS 15553, at *17 ("[t]he written description's detailed discussion of the prior art problem addressed

by the patented invention… further supports the conclusion that the fuel filter is not a preferred embodiment, but an only embodiment.").

### v.    Claims May Be Properly Limited To The Only Disclosed Embodiment

When the specification of a patent only discloses one embodiment, the claims may be properly limited to the sole embodiment.  Toro Co. v. White Consolidated Indus., Inc., 199 F.3d 1295, 1301-02 (Fed. Cir. 1999) ("the specification describes the advantages of the unitary structure as important to the invention…. This is not simply the preferred embodiment; it is the only embodiment.") ("This is not a case of limiting the claims to a 'preferred embodiment' of an invention that has been more broadly disclosed…. No such broader invention is here described."); Wang Lab., Inc. v. America Online, Inc., 197 F.3d 1377, 1382-83 (Fed. Cir. 1999) (limiting claims to the only embodiment described, a character-based protocol, and specifically not encompassing a bit-mapped protocol); Modine, 75 F.3d at 1551 ("When the preferred embodiment is described in the specification as the invention itself, the claims are not necessarily entitled to a scope broader than that embodiment.").

### 3.    The Prosecution History

If it is in evidence, the prosecution history must also be considered by the Court. Vitronics, 90 F.3d at 1582.  The prosecution history, however, often is not helpful as compared to the specification of the patent.  Phillips, 415 F.3d at 1317 (the prosecution history "often lacks the clarity of the specification and thus is less useful for claim construction purposes.").

### 4.    The Doctrine of Claim Differentiation

The doctrine of claim differentiation stems from "the common sense notion that different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope." Seachange Int'l, Inc. v. C-Cor Inc., 413 F.3d 1361, 1368 (Fed. Cir. 2005).

The doctrine is, at best, a limited tool of claim construction that is easily rebutted. <u>Seachange</u>, 413 F.3d 1361, 1369 (Fed. Cir. 2005) ("the doctrine [of claim differentiation] 'only creates a presumption that each claim in a patent has a different scope; it is not a hard and fast rule of construction.'") ("that presumption... will be overcome by a contrary construction dictated by the written description or prosecution history.").

The doctrine of claim differentiation "can not broaden claims beyond their correct scope, determined in light of the specification and the prosecution history and any relevant extrinsic evidence." <u>Seachange</u>, 413 F.3d at 1369 ("Claims that are written in different words may ultimately cover substantially the same subject matter."); <u>Multiform Desiccants, Inc. v. Medzam, Ltd.</u>, 133 F.3d 1473, 1479 (Fed. Cir. 1998) ("claims that are written in different words may ultimately cover substantially the same subject matter").

The doctrine is only applicable when, after having reviewed the intrinsic and extrinsic evidentiary records, the disputed claim term at issue is ambiguous. <u>Honeywell Int'l, Inc. v. United States</u>, 66 Fed. Cl. 400; No. 02-1909C, 2005 U.S. Claims LEXIS 165, at *37 (Fed. Cl., June 14, 2005) ("the Federal Circuit has emphasized that the doctrine of claim differentiation is to be reserved only for those cases where neither intrinsic nor extrinsic evidence leads to a definite definition.") citing <u>Hormone Research Foundation, Inc. v. Genentech, Inc.</u>, 904 F.2d 1558, 1567 n.15 (Fed. Cir. 1990).

The doctrine of claim differentiation cannot "contradict" the construction dictated from the definition of a disputed claim term that is derived from the "overall context" of the specification. <u>Curtiss-Wright</u>, 438 F.3d at 1381 (holding it is improper to rely on the doctrine of claim differentiation if it "is not consistent with the overall context of th[e] invention and th[e] field of art as described in the specification."); <u>Seachange</u>, 413 F.3d at 1369 ("The doctrine of

claim differentiation can not broaden claims beyond their correct scope, determined in light of the specification and the prosecution history and any relevant extrinsic evidence.... Claims that are written in different words may ultimately cover substantially the same subject matter.")(citations omitted); <u>Nystrom</u>, 424 F.3d at 1143 ("Different terms or phrases in separate claims may be construed to cover the same subject matter where the written description and prosecution history indicate that such a reading of the terms or phrases is proper."). Thus, the doctrine's result cannot contradict the construction dictated by the specification's contextual use of the disputed claim phrase and the inventor's statement of what is "the invention."

The Federal Circuit's recent holding in <u>Curtiss-Wright</u>, is illustrative of the interplay between the doctrine of claim differentiation and the written description of "the invention:"

> The trial court's claim construction followed a logical path. The court first set forth the ordinary meaning of "adjustable": "capable of making a change to something or capable of being changed." Preliminary Injunction Order, slip op. at 10. The court then determined that a narrower construction of "adjustable" would be inconsistent with other claims in the '714 patent, which recite an adjustment mechanism that allows adjustment while the device is in use or operation. Id. at 11-13. In other words, the district court relied on claim differentiation during its claim construction. Finally, the district court explained that any construction of the term "adjustable" that requires the presence of the adjustment mechanism disclosed in the '714 patent would be an impermissible narrowing of that claim term to the structure of the preferred embodiment.

> While logical, this chain of reasoning errs because it places too much emphasis on the ordinary meaning of "adjustable" without adequate grounding of that term within the context of the specification of the '714 patent... Moreover, to the extent this reasoning relies on claim differentiation, it misapplies that limited tool of claim construction....

> Thus, the specification of the '714 patent consistently, and without exception, describes adjustment that occurs during operation of the de-header system....

> This court commends the district court's reluctance to narrow the claims to the preferred embodiment. In this instance, however, that care is admirable but misplaced. This case does not evince a situation where a party is attempting to import a limitation from the specification into the claims. Claim 14 already contains the "adjustable" limitation. Thus, the claim construction task requires

this court to discern the meaning of that term in the context of this invention and field of art. The specification provides that context and substantial guidance on the meaning of "adjustable." In light of the specification, the term "adjustable" means that the dynamic, live loaded seat can be adjusted while the de-heading system of claim 14 is in use.

Curtiss-Wright, 438 F.3d at 1378-80.

**B.    Extrinsic Evidence**

The parties are not relying on extrinsic evidence. The Court, therefore, finds that the use of extrinsic evidence is not required to construe the claim terms of the patent-in-suit.

**II.    THE DISPUTED CLAIM TERMS**

Plaintiff, Anton/Bauer, Inc. ("Anton/Bauer") alleges that Defendant, PAG, Ltd. ("PAG"), infringes claims 9 and 11 of the patent-in-suit, U.S. Patent No. 4,810,204 (the "'204 Patent"). No other claim of the '204 Patent is at issue. Thus, the Court need only construe the terms of claims 9 and 11. The two disputed terms of claims 9 and 11 are: (1) "headed projections;" and (2) "or the like."

**A.    "headed projections"**

The parties' dispute with respect to this claim term is whether or not the claimed "headed projections" are required to have "half-moon shaped end portions." For the following reasons, the Court construes the term "headed projections" as requiring half-moon shaped end portions.

**1.    In Context, The "Projections" Of The '204 Patent Clearly Have Half-Moon Shaped End Portions**

When read in its entirety, a person of ordinary skill in the art is led to the "inescapable conclusion" that the projections of the '204 Patent have "half-moon shaped" end portions. See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc., 242 F.3d 1337, 1342-45 (Fed. Cir. 2001) (drawing an "inescapable conclusion" after reading the intrinsic record).

In the first section of the '204 Patent, the Background Of The Invention section, the '204 Patent describes the problems with the prior art. '204 Patent at Column 1, Line 10 through Column 3, Line 12. In particular, the '204 Patent states that:

> While the foregoing [prior art devices] generally proved satisfactory in use, the present invention is direct[ed] to further improving several features of the battery pack connection.

'204 Patent at Column 3, Lines 13-15. The '204 Patent then tells the public that one of the "improvements" of the '204 design is:

> improved securement means for the headed projections on the surface of the male plate to prevent loss thereof.

'204 Patent at Column 3, Lines 45-47.

In the second section of the '204 Patent, the Summary Of The Invention section, the '204 Patent more specifically tells the public that the projections of the improved securement means have half-moon shaped end portions:

> The headed *projections* on the male plate **have** *a half-moon shaped* back plate seated in a complementally shaped slot on the wall of the male plate to preclude inadvertent turning and loosening of the screwthreaded mounting of the headed projection with concomitant loss of the projection from the plate if its mounting completely comes apart.

'204 Patent at Column 4, Lines 43-49 (emphasis added). The Court notes that this passage, which precedes the Detailed Description section of the '204 Patent, says that the projections "*have*" a half-moon shaped back plate or end portion. Microsoft, 357 F.3d at 1348 ("Those statements, some of which are found in the 'Summary of the Invention' portion of the specification, are not limited to describing a preferred embodiment, but more broadly describe the overall inventions of all three patents."); Bell Atlantic, 262 F.3d at 1270 (description of "the invention" was set forth in the Summary of the Invention section of the patent "before we even reach the Detailed Description of the

Preferred Embodiments"). The statement, which summarizes the claimed invention, is not qualified or limited by language such as "in an embodiment," or "may" have. Instead, the '204 Patent definitively proclaims that the projections of the '204 Patent "_have_" half-moon shaped end portions. In addition, this passage clearly states that the "half-moon shaped" feature accomplishes the "improvement" of preventing the loss of projections. Honeywell v. ITT, No. 05-1407, 2006 U.S. App. LEXIS 15553, at *17 ("[t]he written description's detailed discussion of the prior art problem addressed by the patented invention... further supports the conclusion that the fuel filter is not a preferred embodiment, but an only embodiment.").

Continuing-on to the third section of the '204 Patent, the Brief Description Of The Drawings section, the '204 patent further defines that:

> FIG. 5 is an exploded perspective view of the _headed projection_ of the battery pack connection _of the present invention_ and further illustrates its manner of securement to the male plate of the battery pack connection.

'204 Patent at Col. 5, Lines 18-20 and lines 35-38 (emphasis added). Based on this statement, one of skill in the art would rightfully conclude that the "projections" claimed in the '204 Patent are as shown in Figure 5.[1]

---

[1] The Patent Rules require every feature or embodiment of a claimed invention to be shown in the Figures of a patent application. See 37 C.F.R. § 1.83(a) ("The drawing in a nonprovisional application must show every feature of the invention specified in the claims.")(emphasis added); Manual For Patent Examining Procedure §608.02(d) ("The drawing in a nonprovisional application must show every feature of the invention specified in the claims."). In the '204 patent, no projection, other than a half-moon shaped projection, is depicted in the '204 patent.

In a fourth section of the '204 Patent, reference number "26" of Figure 5 shows the "projection" as a whole, and reference number "56" of Figure 5 specifically shows the "half-moon shaped" end portion of the "projection:"



'204 Patent at Figure 5 and Column 7, Lines 3-7.

Finally, in the fifth section of the '204 Patent, the '204 Patent confirms what the reader of the '204 Patent has already come to understand, that the "projections" of the '204 Patent have "half-moon shaped" end portions:

> The male plate 12 is formed with a plurality of projections 26, *__each__* of which *__has__* a large circular head 27 and an integral narrow leg portion 28 terminating in a circular end portion 54 which is cut linearly along a top edge 56 to provide a substantial *__half-moon shape__*. Each projection 26 may be secured to the male plate 12 by being formed with an axial threaded hole 58 into which a screw 29 from the backside of the male plate is threadable. The half-moon shaped end portion 54 is seated in a complementally shaped slot 60 on the front wall of the male plate 12 to preclude inadvertent turning and loosening of the threaded projection 26, with concommitant loss of the projection from the plate 12 if its mounting completely comes apart.

'204 Patent at Col. 7, Lines 3-16 (emphasis added).  Here again,  this passage states that "each" projection "has" a half-moon shaped end portion.  As before, this statement is not qualified or

limited by language such as "some" have, or "may" have. Instead, the '204 Patent definitively proclaims that "each" projection of the '204 Patent "has" a half-moon shaped end portion.

After having read the entirety of the specification of the '204 Patent, the only manner and context in which the term "projection" is defined and referenced is as a projection with a "half-moon shaped" end portion.

The Honeywell v. ITT decision is particularly applicable to the facts of this case. In Honeywell v. ITT, the patentee stated four times that "the invention" was a fuel filter. In the present case, as set forth above, the patentees stated five times that the projections of "the invention" have half-moon shaped end portions. In addition, in Honeywell v. ITT, the patentee's written description provided a discussion of the prior art problem addressed by the patented invention. Here, in the case of the '204 Patent, the patentees' written description also specifically states that "the present invention is direct[ed] to further improving several features of the [prior art] battery pack connection," including an "[i]mproved securement means for the headed projections on the surface of the male plate to prevent loss thereof," i.e. headed projections with half-moon shaped end portions. Finally, in Honeywell v. ITT, the patentee failed to disclose any embodiment of a fuel injection system component other than a fuel filter. This also is the case in the present dispute. No projection is disclosed in the '204 Patent other than a projection with a half-moon shaped end portion as is shown in Figure 5 and as is described throughout the '204 Patent.

### 2.    Anton/Bauer's Proposed Construction Improperly Ignores The Contextual Use Of "Projection"

Anton/Bauer's proposed construction of the "headed projection" claim term fails to account for the overall context in which that term is used throughout the specification of the '204

Patent, and in particular, the patentees' repeated definitions of the headed projections of "the invention." Thus, the Court does not adopt Anton/Bauer's proposed construction.

Although Anton/Bauer urges the Court to consider the doctrine of claim differentiation, the doctrine of claim differentiation does not apply to the facts of this case for several reasons. First, the parties do not contend that the meaning of the disputed "headed projections" term is ambiguous. Thus, it is improper for the Court to apply the doctrine. Honeywell Int'l, Inc. v. United States, 66 Fed. Cl. 400; No. 02-1909C, 2005 U.S. Claims LEXIS 165, at *37 (Fed. Cl., June 14, 2005) ("the Federal Circuit has emphasized that the doctrine of claim differentiation is to be reserved only for those cases where neither intrinsic nor extrinsic evidence leads to a definite definition.") citing Hormone Research Foundation, Inc. v. Genentech, Inc., 904 F.2d 1558, 1567 n.15 (Fed. Cir. 1990).

Second, the dependent claim upon which a claim differentiation argument is based, should depend from the independent claim at issue. Nazomi Comm's, Inc. v. Arm Holdings, PLC, 403 F.3d 1364, 1370 (Fed. Cir. 2005) ("Claim differentiation 'normally means that limitations stated in dependent claims are not to be read into the independent claim from which they depend.'"). In the present case, the basis of Anton/Bauer's claim differentiation argument is premised on dependent claim 8, which depends from independent claim 1, not asserted independent claim 9.

In addition, there are several "meaningful differences" between unasserted independent claim 1, from which the doctrine-based claim 8 depends, and asserted independent claim 9. As admitted by Anton/Bauer during the oral hearing, claim 9 clearly requires several elements that are not found in independent claim 1, such as "at least one rotatable member," "a pin on said rotatable member," and a "means urging the member to a closed position…." See '204 Patent at

Claim 9, Col. 12, Lines 56-60 and Claim 1, Col. 11, Lines 28-57. Thus, independent claim 9 has several meaningful differences between it and independent claim 1 and dependent claim 8. As a result, the doctrine of claim differentiation does not apply to the facts of this case.

Third, even if the Court were to apply the doctrine, the doctrine is easily rebutted and overcome by the patentees' repeated description of "the invention" as headed projections with a half-moon shaped end portion. Curtiss-Wright, 438 F.3d at 1381 (holding that the doctrine of claim differentiation notwithstanding, the claim construction task requires this court to discern the meaning of the disputed term in "the overall context of th[e] invention and th[e] field of art as described in the specification."); Seachange, 413 F.3d 1361, 1369 (Fed. Cir. 2005) ("the doctrine [of claim differentiation] 'only creates a presumption that each claim in a patent has a different scope; it is not a hard and fast rule of construction.'") ("that presumption… will be overcome by a contrary construction dictated by the written description or prosecution history."). Thus, if the doctrine was applied, the Court would find that it has been rebutted by the patentees' repeated description of "the invention" as headed projections with half-moon shaped end portions.

**B.      "or the like"**

The parties' dispute with respect to this claim term is whether or not the phrase "or the like" is too vague for construction. PAG contends that the phrase "or the like" is so vague that it cannot be construed. Anton/Bauer contends that the phrase is not vague and that "or the like" should be construed as "a similar functional structure to a battery pack, i.e. to furnish electric current." Anton/Bauer's Memorandum at 10. Anton/Bauer further contends that examples of "or the like" devices include:

> other power or electronic control connections such as the connection of AC power
> supplies, power taps, micro controls, camera control equipment and the like….

'204 Patent at Col. 11, Lines 20-23; Anton/Bauer's Memorandum at 11 ("these similar structures... AC power supplies; power taps").

The Court rejects Anton/Bauer's proposed definition. On one hand, Anton/Bauer suggests that "a battery pack 'or the like'" should be construed as "a structure that furnishes power." Anton/Bauer's Memorandum at 10-11. On the other hand, however, Anton/Bauer suggests that an example of such a "structure" is a device that taps, or actually drains, power namely a "power tap." Anton/Bauer's Memorandum at 11 ("these similar structures... AC power supplies; power taps"); '204 Patent at Col. 11, Lines 20-23 ("power taps... and the like"); Anton/Bauer Web Site Product Information For the Gold Mount® Quick Change System (a power tap "allows a camera mounted light, wireless microphone, or other D.C. accessory to be powered from the camera battery."). Thus, Anton/Bauer's proposed definition, which includes a power tap, cannot be correct because a "structure" that is like "a battery pack" furnishes power, it does not "tap" or drain power.

In addition, according to Anton/Bauer's construction, the battery pack is associated with the male plate of the claim. The power tap, on the other hand, has no direct connection or interaction with the male plate. Rather, the power tap connects to the female plate through a separate plug on the side of the female plate – not with the three depending slots on the plate. Anton/Bauer's proposed construction of the term "or the like" cannot be correct.

Anton/Bauer's proposed contradictory definition only supports PAG's contention that, based on the intrinsic record of the patent-in-suit, the phrase "a battery pack 'or the like,'" is so vague and indefinite that it cannot be construed.

### C.    Undisputed Claim Terms

At the claims construction hearing, PAG acknowledged that it is not disputing Anton/Bauer's proposed claims constructions for any other term of claims 9 or 11 of the '204 Patent. The Court, therefore, adopts Anton/Bauer's proposed constructions for those terms.

SO ORDERED this ___ day of _____, 2006 at Hartford, Connecticut.

_____

CHRISTOPHER F. DRONEY
UNITED STATES DISTRICT JUDGE

\*    \*    \*    \*    \*    \*    \*    \*

Respectfully submitted this 16th day of August, 2006.

_____

Jason M. Kuselias (ct20293)
ROBINSON & COLE, LLP
280 Trumbull Street
Hartford, Connecticut 06103
Telephone: 860-275-8200
Facsimile: 860-275-8299
Email: jkuselias@rc.com


 /s/   Stephen R. Risley_____
Stephen R. Risley (ct22652)
J. Scott Culpepper (ct22653)
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2600 One Atlanta Plaza
950 East Paces Ferry Road, NE
Atlanta, Georgia 30326
Telephone: 404-760-4300
Facsimile: 404-233-1267
Email: srrisley@rkmc.com
Email: jsculpepper@rkmc.com

Counsel for Defendant, PAG, Ltd.

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANTON/BAUER, INC., | ) |
|     Plaintiff, | ) |
| | )    CIVIL ACTION NO. |
| v. | )    3:01-CV-577-CFD |
| | ) |
| PAG, LTD. | ) |
|     Defendant, | ) |
| | ) |
| v. | ) |
| | ) |
| ANTON/BAUER, INC. and | ) |
| ALEX DESORBO, | ) |
|     Counterclaim and Third | ) |
|     Party Defendants | ) |
| | ) |

## CERTIFICATE OF SERVICE

I hereby certify that on **August 16, 2006**, a copy of foregoing **"DEFENDANT, PAG LTD'S, PROPOSED CLAIMS CONSTRUCTION RULING & ORDER"** was filed electronically and served by mail on the party listed below and on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

**James T. Shearin**
**PULLMAN & COMLEY, LLC**
50 Main Street
Bridgeport, CT 06604

/s/ Stephen R. Risley
Jason M. Kuselias (ct20293)
Stephen R. Risley (ct22652)
J. Scott Culpepper (ct22653)

Attorneys for Defendant,
PAG, LTD